# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| L.G.M.L., L.M.R.S., M.O.C.G., H.L.E.C, T.A.C.P., M.F.A.P.V., L.F.M.M., G.A.B.B., A.R.M.D. M.Y.A.T.C. [1] *on behalf of themselves and all others similarly situated by and through their next friend*, YOUNG CENTER FOR IMMIGRANT CHILDREN'S RIGHTS,<br><br>     *Plaintiffs*,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of the U.S. Department of Homeland Security, U.S. DEPARTMENT OF HOMELAND SECURITY; TODD LYONS, in his official capacity as Acting Director of the Director of U.S. Immigration and Customs Enforcement, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, ANGIE SALAZAR in her official capacity as Acting Director of the Office of Refugee Resettlement, OFFICE OF REFUGEE RESETTLEMENT, PAMELA BONDI, in her official capacity as Attorney General, U.S. DEPARTMENT OF JUSTICE, MARCO RUBIO, in his official capacity as Secretary of State, U.S. STATE DEPARTMENT,<br><br>     *Defendants*. | Case No.   25-cv-2942<br><br><br>**PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND MEMORANDUM OF LAW IN SUPPORT**<br><br>**FLIGHTS DEPARTING UNITED STATES IN THE NEXT FOUR HOURS** |

---

[1] Motion for these Plaintiffs to proceed under pseudonym forthcoming.

1

## INTRODUCTION

Plaintiff Children seek emergency relief to prevent irreparable harm to hundreds of minors because Defendants are planning to remove them to Guatemala imminently and in violation of multiple laws. **Plaintiffs' counsel has learned that flights are reportedly scheduled to depart the United States within the next 2 -4 hours.**

Although these children are supposed to be in the care and custody of the Office of Refugee Resettlement ("ORR"), defendants are illegally transferring them to Immigration and Customs Enforcement ("ICE") custody to put them on flights to Guatemala, where they may face abuse, neglect, persecution, or torture. Defendants are further depriving Plaintiff Children of due process by preventing these children from pursuing claims of asylum or other forms of immigration relief before the immigration courts. Plaintiffs seek emergency relief from this Court in order to prevent grave and irreparable harms resulting from Defendants' reckless and illegal actions.[2]

## LEGAL AND FACTUAL BACKGROUND

On August 29, 2025, reports surfaced that the administration is planning to remove hundreds of Guatemalan children in government custody who arrived in the United States alone.[3] These children, currently in the custody of the Office of Refugee Resettlement—a component of the Department of Health and Human Services that is charged with caring for unaccompanied children—are waiting to be released to a relative or guardian in the United States who can care

---

[2] One other court has already issued a TRO enjoining Defendants from removing named petitioners from the United States in an action filed by Guatemalan unaccompanied minors in Illinois. *See* Emergency Order Concerning Stay of Transfer or Removal, *J.J.T.S. v. Francis*, No.1:25-cv-10428 (N.D. Ill. Aug. 30, 2025), ECF No. 4.

[3] Priscilla Alvarez, *Exclusive: Trump administration plans to send hundreds of Guatemalan children in government custody back to home country*, CNN (Aug. 29, 2025), https://www.cnn.com/2025/08/29/politics/migrant-kids-guatemala-immigration; Jody Garcia *et al.*, *U.S. is Working With Guatemala to Return Hundreds of Children*, N.Y. Times (Aug. 29, 2025), https://www.nytimes.com/2025/08/29/us/immigration-guatemala-children.html.

for them while they make their case for protection before the immigration courts. Instead, they are being returned to Guatemala.

The administration has reportedly identified more than 600 children from Guatemala to potentially deport as a part of a first of its kind pilot program through an agreement negotiated with the Guatemalan government.[4] Defendants have not provided notice to unaccompanied minors subject to summary removal and have not provided them an opportunity to contest their summary removal. Rather, in certain instances, Defendants have simply removed minors' pending cases from the immigration court docket in preparation for their summary removal. Ex. J, Declaration of Laura Fisher Flores, Legal Director, South Texas Asylum Representation Project ("ProBAR") ¶8 ("Fisher Decl.").  Accordingly, Defendants are not complying with their obligations to provide access to counsel or with the mandated safeguards it must implement before any child requests voluntary departure, which must be approved by an immigration judge. *Perez-Funez v. District Director*, 619 F. Supp. 656 (C.D. Cal. 1985).

Plaintiff Children are ten unaccompanied minors from Guatemala between the ages of 10 and 17 whom Defendants are seeking to remove from the United States in clear violation of the unambiguous protections that Congress has provided them as vulnerable children. Ex. A-J. Defendants do not currently have authority under the immigration statutes to remove any of the Plaintiff Children. Many have active proceedings before immigration courts across the country, yet Defendants plan to remove them in violation of the Trafficking Victims Protection Reauthorization Act of 2008, the Immigration and Nationality Act, and the Constitution.

### A. Protections for Children under the Trafficking Victims Protection Reauthorization Act of 2008

#### 1. Right to Removal Proceedings under 8 U.S.C. §1229a

---

[4] *Id.*

The Trafficking Victims Protection Reauthorization Act ("TVPRA") of 2008, Pub. L. No. 110-457, 122 Stat. 5044 (2008), embodies Congress' intent to provide unique substantive and procedural protections to unaccompanied minors seeking refuge in the United States and represents the culmination of two decades of bipartisan advocacy on behalf of this uniquely vulnerable population.[5] The TVPRA and related statutes create a comprehensive scheme that mandates special procedures for adjudicating removal proceedings against an unaccompanied minor and for caring for unaccompanied minors during the pendency of their removal proceedings.

Pursuant to the TVPRA, any unaccompanied child sought to be removed from the United States by the Department of Homeland Security ("DHS"), except for certain unaccompanied children from a contiguous countries, shall be (i) placed in removal proceedings under 8 U.S.C. § 1229a; (ii) eligible for relief under 8 U.S.C. § 1229c at no cost to the child; *and* (iii) provided access to counsel in accordance with subsection (c)(5). 8 U.S.C. § 1232 (a)(5)(D). (emphasis added). Guatemala is not a country that is contiguous to the United States, as they share no border. As such, the mandate provided in 8 U.S.C. § 1232(a)(5)(D) applies to Guatemalan unaccompanied children.

By requiring that DHS place unaccompanied children in § 1229a removal proceedings, the TVPRA exempts unaccompanied children from placement expedited removal proceedings pursuant to 8 U.S.C. § 1225(b). 8 U.S.C. §§ 1232(a)(2)(B), (a)(3), (a)(5)(D). Under the expedited removal statute, certain noncitizens with limited ties to the United States may be removed without a hearing. 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii)(II). However, all unaccompanied children—regardless of the circumstances of their arrival to the United States—receive the

---

[5] *See, e.g.*, Cong. Research Serv., Unaccompanied Alien Children: An Overview 5-6 (Sept. 5, 2024), *available at* https://sgp.fas.org/crs/homesec/R43599.pdf/.

benefit of full immigration proceedings, including a hearing on claims for relief before an immigration judge.  Congress provided even further procedural protection to unaccompanied minors in removal proceedings by mandating that their claims for asylum be heard in the first instance before an asylum officer in a non-adversarial setting rather than in an adversarial courtroom setting. 8 U.S.C. § 1158(b)(3)(C).

The TVPRA contains no exceptions to its protections, confirming Congress's clear directive regarding the removal protections afforded to unaccompanied children. It does not distinguish between unaccompanied children who have or do not have prior immigration histories. More specifically, it does not exclude those who have prior removal orders. The TVPRA does not allow DHS to bypass § 1229a proceedings and remove children without observance of the procedures of the Immigration and Nationality Act ("INA") and without their day in court.

### 2.  *Access to Counsel*

In addition, U.S.C. § 1232(c)(5) requires, in its use of "shall," that the Secretary of Health and Human Services ensure, to the greatest extent practicable, that all unaccompanied alien children who are or have been in the custody of the Secretary or the Secretary of Homeland Security (other than those children from contiguous countries as described in (a)(2)), have counsel to represent them in legal proceedings or matters and protect them from mistreatment, exploitation, and trafficking.

### 3.  *Safe Repatriation*

The TVPRA also provides special procedures to ensure the safe repatriation of unaccompanied minors who seek to depart the United States voluntarily or who are ordered removed at the termination of removal proceedings. Once placed in § 1229a proceedings, only an

immigration judge may grant an unaccompanied minor's voluntary departure pursuant to §
1229c. Voluntary departure is a form of immigration relief that allows certain noncitizens in
removal proceedings to request to depart the United States without the issuance of a removal
order and generally occurs at the noncitizen's expense. 8 U.S.C. § 1229c(a)(1).  The TVPRA
mandates, however, that unaccompanied minors granted voluntary departure not bear the cost of
their repatriation. 8 U.S.C. § 1232 (a)(5)(D)(ii).

To further protect children from traffickers and other persons seeking to victimize
children, DHS, in conjunction with the Department of State, DOJ, and HHS, bears an affirmative
responsibility to ensure the safety of any unaccompanied seeking repatriation through a
voluntary departure order or ordered removed from the United States. 8 U.S.C. § 1232(a)(1).

The TVPRA similarly requires DHS and HHS to work together to ensure "safe and
sustainable repatriation and reintegration" of unaccompanied minors into their countries of
nationality or last habitual residence, "including placement with their families, legal guardians,
or other sponsoring agencies." 8 U.S.C. § 1232(a)(5).

### 4.  *Exclusive ORR Custody*

The TVPRA, along with the Homeland Security Act ("HSA"), Pub. L. No. 107-296, §
462, 116 Stat. 2135 (2002), creates a unique system for housing and caring for unaccompanied
children in government custody and for ensuring their safety when released from government
custody. This system is wholly separate from the detention program operated for adult
noncitizens by Defendant ICE. ORR is the only agency authorized to retain custody of
unaccompanied minors. The TVPRA provides that, except in the case of unaccompanied minors
from a contiguous country, "the care and custody of all unaccompanied alien children, including
responsibility for their detention, where appropriate, shall be the responsibility of the Secretary

of Health and Human Services." 8 U.S.C. § 1232(b)(1); *accord* 6 U.S.C. § 279(b); 45 C.F.R. §§ 410.1002-1004. Any federal department or agency that has an unaccompanied minor in its custody must transfer the minor to ORR custody "not later than 72 hours after determining" that the minor is unaccompanied. 8 U.S.C. § 1232(b)(3). Unaccompanied minors in ORR custody "shall be promptly placed in the least restrictive setting that is in the best interest of the child." *Id*. § 1232(b)(c)(2). The HSA further charges ORR with "ensuring that the interests of the child are considered in decisions and actions relating to the care and custody of an unaccompanied alien child." 6 U.S.C. § 279(b)(1)(B).

ORR has promulgated detailed regulations for making placement determinations as to unaccompanied minors (*i.e.*, determining where to house them while in custody), 45 C.F.R. §§ 410.1100-1109, and for determining when and to whom to release an unaccompanied minor in ORR custody. *Id*. §§ 410.1200-1210. The regulations require that "unaccompanied children shall be treated with dignity, respect, and special concern for their particular vulnerability," *id*. § 419.1003(a), and that "ORR shall place each unaccompanied child in the least restrictive setting that is in the best interests of the child, giving consideration to the child's danger to self, danger to others, and runaway risk." *Id*. § 419.1003(f).[6]

## I.    Other Legal Safeguards for Unaccompanied Minors

### A.    *Flores Settlement*

---

[6] ORR is mandated to follow certain procedures for the care and custody of unaccompanied minors and is tasked with their safe reunification with family members OR ensure their safe repatriation should the immigration court determine that that is the best interest of the child while in their care. The ORR Policy Guide provides guidance to care providers and other service providers regarding the placement, care, and services provided to unaccompanied alien children in ORR custody consistent with ORR's legal authorities (e.g., section 462 of the Homeland Security Act of 2002, Public Law 107-296, 6 U.S.C. 279; section 235 of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), Public Law 110-457, 8 U.S.C. 1232; the Unaccompanied Alien Children Program Foundational Rule, codified at 45 C.F.R. Part 410; the Standards to Prevent, Detect, and Respond to Sexual Abuse and Sexual Harassment Involving Unaccompanied Alien Children Interim Final Rule, codified at 45 C.F.R. Part 411; and the Investigations of Child Abuse and Neglect Interim Final Rule, codified at 45 C.F.R. Part 412).

Prior to the enactment of the HSA and the TVPRA, federal courts intervened on several occasions to protect unaccompanied minors from abuses in the immigration system. These protections remain binding on Defendants. In 1997, a federal court in the Central District of California approved a consent decree covering "[a]ll minors who are detained in the legal custody of the INS [Immigration and Naturalization Service]." Stipulated Settlement Agreement, *Flores v. Reno*, No. CV 85-4544-RJK(Px), ¶ 10 (C.D. Cal. Jan. 17, 1997).[7] Among other requirements, the Flores Settlement Agreement directs the INS to "treat all minors in its custody with dignity, respect and special concern for their particular vulnerability as minors" and to "place each detained minor in the least restrictive setting appropriate to the minor's age and special needs." *Id.* Section 462 of the HSA extended to all the key protections of the *Flores* Settlement Agreement, including its "least restrictive setting" requirement. Pub. L. No. 107-296, § 462, 116 Stat. 2143 (2002).

**B. *Perez-Funez Permanent Injunction***

In 1985, another court in the Central District of California issued a permanent injunction granting certain special protections to unaccompanied children before they can accept voluntary departure. *Perez-Funez v. District Director*, 619 F. Supp. 656 (C.D. Cal. 1985). This lawsuit arose out of the then-INS coercive practices and its protections are now implemented by regulation. 8 C.F.R. §§ 236.3(g)-(h), 1236.3(g)-(h). (1) a written notice of rights; (2) a list of free legal service providers; and (3) access to telephones and notice that they may call a parent, close relative, friend, or attorney. Additionally, for unaccompanied children from noncontiguous

---

[7] *Available at* http://www.aila.org/File/Related/14111359b.pdf [hereinafter the "Flores Settlement Agreement"]. After *Flores*, the INS was dissolved and subsumed into DHS, whereupon DHS inherited the INS' obligations under the *Flores* Settlement Agreement.

countries (i.e. children not from Canada or Mexico), DHS must ensure that the child in fact communicates with a parent, adult relative, friend, or attorney. *Id*. §§ 236.3(g), 1236.3(g).

## II.    Protections for all Noncitizens under Immigration and Nationality Act

The special protections afforded to unaccompanied minors in removal proceedings in light of their vulnerability complement the more general statutory procedures that guarantee fairness in all removal proceedings and the rights of all people seeking refuge in the United States. These general procedures are also binding on Defendants when they seek to remove an unaccompanied minor.

For many decades, the Immigration and Nationality Act ("INA"), as amended, has provided for a comprehensive system of procedures that the government must follow before removing a noncitizen from the United States. The INA provides the exclusive procedure by which the government may determine whether to remove an individual, including children. 8 U.S.C. § 1229a(a)(3). Once immigration proceedings have been initiated, ICE cannot unilaterally cancel them as jurisdiction is vested with the immigration judge. 8 C.F.R. § 239.2. Once a Notice to Appear is filed with the court, the child's removal proceedings have begun, and the decision to dismiss proceedings rests only with the immigration court.

In addition to laying out the process by which the government determines whether to remove an individual, the INA also enshrines certain forms of humanitarian protection. First, the INA provides that "[a]ny alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival . . . ), irrespective of such alien's status," may apply for asylum. 8 U.S.C. § 1158(a)(1). To qualify for asylum, a noncitizen must show a "well-founded fear of persecution" on account of a protected ground, such as race, nationality, political opinion, or religion. 8 U.S.C. § 1101(a)(42)(A).

Second, Congress has barred the removal of an individual to a country where it is more likely than not that he would face persecution on one of these protected grounds. 8 U.S.C. § 1231(b)(3). That protection implements this country's obligations under the 1951 Refugee Convention and the 1967 Protocol relating to the Status of Refugees. The relevant form of relief, known as "withholding of removal," requires the applicant to satisfy a higher standard with respect to the likelihood of harm than asylum; granting that relief is mandatory if the standard is met absent limited exceptions.

Third, the Convention Against Torture ("CAT") prohibits the government from returning a noncitizen to a country where it is more likely than not that he would face torture. *See* 8 U.S.C. § 1231 note. That protection implements the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, div. G, Title XXII, § 2242. As with withholding of removal, CAT relief also requires the applicant to satisfy a higher standard with respect to the likelihood of harm than asylum and relief is mandatory if that standard is met. There is no exception to CAT relief.

## PLAINTIFFS

Plaintiff Children are Guatemalan unaccompanied minors who face imminent risk of summary removal to Guatemala without proceedings before an immigration judge. The children range in age from 7 to 17. They are in custody at facilities operated by ORR the United States. *See* Ex. A-I. The majority of Plaintiff Children are in the middle of the § 1229a removal proceedings mandated by the TVPRA. Many have hearings scheduled in the next few weeks. *See, e.g.*, Ex. I, Declaration of A.R.M.D ¶4 (next hearing scheduled for October 1, 2025) ("A.R.M.D. Decl."); Ex. D., Declaration of H.L.E.C. ¶3 ("H.L.E.C. Decl."); Ex. C, Declaration of M.O.C.G. ¶7 ("M.O.C.G. Decl."); Ex. E, Declaration of T.A.C.P. ¶4 ("T.A.C.P. Decl.") (next

hearing scheduled for November 26, 2025); Ex. H, Declaration of G.A.B.B. ¶5 ("G.A.B.B. Decl."). Several are also pursuing asylum through the non-adversarial procedure that the TVRPA uniquely affords them by filing affirmative asylum applications with the United States Citizenship and Immigration Service ("USCIS"). Plaintiff L.P.M.M., for example, is a sixteen year-old who states, "I am now just waiting for an asylum interview to be scheduled. I still have the right to continue fighting for protection." Ex. G, Declaration of L.F.M.M. ¶3 ("L.F.M.M. Decl."); *see also* Ex. J, Declaration of M.Y.A.T.C. ¶4 ("M.Y.A.T.C. Decl.").

Many Plaintiff Children recently learned that the government is seeking to remove them summarily from the United States. In the face of this troubling news, they uniformly express a desire to remain in the United States and to continue seeking immigration relief. *See, e.g.*, A.R.M.D. Decl. ¶¶4, 6, Ex. I ("I want to be able to attend my court hearing and be able to present my case . . . . I do not wish to return to Guatemala because Guatemala is not safe for me."); H.L.E.C. Decl. ¶¶6, 8, Ex. D ("I came to the United States after experiencing abuse and neglect from my father and from the father of my child . . . . I want to remain the United States and continue to fight my case in Immigration Court[.]"); T.A.C.P. Decl. ¶5, Ex. E ("I want the opportunity to stay here in the United States where I am safe. I want the U.S. government to respect my rights.").

Counsel for Plaintiff Children learned at the time of filing that summary removals of Guatemalan unaccompanied minors were imminent. Defendants have not provided Plaintiff Children or their counsel notice of their plan to subject them to summary removal. In at least some cases, after reports of Defendants' plan emerged, counsel surmised that certain unaccompanied Guatemalan minors would be subject to summary removal when their cases disappeared from the immigration court docket. *See* Fisher Decl. ¶9. Homeland Security

Investigations, a component of Defendant DHS, has conducted interviews of several Plaintiff Children in which they asked them about their family members in Guatemala. *See, e.g.*, Fisher Decl. ¶¶6, 7; A.R.M.D. Decl. ¶2, Ex. I; H.L.E.C. Decl. ¶5, Ex. D; M.O.C.G. Decl. ¶5, Ex. c; *see also* M.Y.A.D.T. Decl. ¶6, Ex. J ("A few weeks ago, in August 2025, my parents, who live in Guatemala, told me that they received a strange phone call. The person told them that the U.S. government is planning to deport me with a larger group of Guatemalan minors."). The legal director of a nonprofit organization providing pro bono legal services to unaccompanied minors reports that HSI proceeded with the interviews even when minors asked for their attorneys to be present or declined to be interviewed. Fisher Decl. ¶6.

## LEGAL STANDARD

To obtain a temporary restraining order, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014); *Am. Foreign Serv. Ass'n v. Trump*, No. 1:25-cv-352 (CJN), 2025 WL 435415, at *1 (D.D.C. Feb. 7, 2025). The standards for issuing a temporary restraining order and a preliminary injunction are "the same." *Doe v. McHenry*, No. 1:25-cv-286-RCL, 2025 WL 388218, at *2 (D.D.C. Feb. 4, 2025).

## ARGUMENT

### A. Plaintiffs Are Likely to Succeed on the Merits.

1. *Defendants' summary removal of Plaintiffs violates the statutory protections afforded to unaccompanied minors.*

Plaintiffs are likely to succeed on the merits of their claim that Defendants' summary removals violate the TVPRA and the INA and the due process clause. These statutes

unambiguously mandate a specific procedure for determining whether unaccompanied minors may be removed from the United and specific protections that the government has no discretion to ignore. Defendants' summary removal of Plaintiffs while their removal proceedings are pending deprives them of the substantive and procedural protections Congress has afforded unaccompanied minors and of the general protections Congress has afforded noncitizens in removal proceedings. Further, Defendants' deliberate targeting of Guatemalan children for removal violates the due process clause of the Fifth Amendment, as it constitutes unlawful discrimination based on national origin.

The TVPRA "guarantees certain protections for unaccompanied children—irrespective of the specific circumstances that led an unaccompanied child to arrive at the border." *Immigrant Defs L. Center v. DHS*, No. 21-cv-395 (FMO), 2025 WL 1191572, at *12 (C.D. Cal. March 14, 2025). The TVPRA requires that any unaccompanied child sought to be removed by DHS— except for certain unaccompanied children from a contiguous country subject to exceptions not applicable here—shall (i) be placed in removal proceedings under section  8 U.S.C. § 1229a; (ii) be eligible for relief under 8 U.S.C. § 1229c [voluntary departure] at no cost to the child; ***and*** (iii) be provided access to counsel in accordance with subsection (c)(5). 8 U.S.C. § 1232 (a)(5)(D) (emphasis added); *see also Immigrant Defs L. Center*, 2025 WL 1191572, at *12 ("§ 1232(a)(5)(D)(i) entitles '[a]ny unaccompanied alien child' to placement in § [1229a] proceedings as an unaccompanied child with the full range of protections to which unaccompanied children are entitled.").

Guatemala is not a country that is contiguous to the United States, as they share no border. As such, the mandate provided in 8 U.S.C. § 1232(a)(5)(D) and any other statutory language regarding unaccompanied minors unambiguously apply to Guatemalan unaccompanied

13

children like Plaintiffs and the putative class. Section 1232(a)(5)(D) contains no exceptions other than those for minors from contiguous countries. By summarily removing Plaintiffs, Defendants are violating the statutory mandate of § 12232(a)(5)(D).

The TVPRA contains numerous other provisions that enshrine the substantive and procedural rights of unaccompanied minors and demonstrate Congress' intent to provide them with special protections. *See, e.g.*, 8 U.S.C. § 1232(a)(3)(5) (directing HHS to "ensure, to the greatest extent practicable" that unaccompanied minors "has counsel to represent them in legal proceedings or matters and protect them from mistreatment, exploitation, and trafficking"); *id.* § 1232(a)(5)(6) (authorizing HHS "to appoint independent child advocates for trafficking victims and other vulnerable unaccompanied alien children"); *id.* § 1232(d)(8) (stating that "[a]pplications for asylum and other forms of relief from removal in which an unaccompanied alien child is the principal applicant shall be governed by regulations which take into account the specialized needs of unaccompanied alien children and which address both procedural and substantive aspects of handling unaccompanied alien children's cases."); *id.* § 1232(e) (requiring DOS, DHS, HHS, and DOJ to "provide specialized training to all Federal personnel, and upon request, state and local personnel, who have substantive contact with unaccompanied alien children.").

The TVPRA also amended the asylum statute to provide that, even when an unaccompanied minor has been placed in removal proceedings, "[a]n asylum officer [rather than the immigration judge] shall have initial jurisdiction over any asylum application filed by an unaccompanied alien child." 8 U.S.C. § 1158(b)(3)(C); *see also O.A. v. Trump*, 404 F. Supp. 3d 109, 121-22 (D.D.C. 2019) (noting that the TVPRA entitles unaccompanied minors to present their asylum claims "in the first instance in a non-adversarial setting."); *J.O.P. v. DHS*, 338

F.R.D. 33, 65 (D. Md. 2020) (enjoining DHS from applying eligibility criteria that would deprive certain unaccompanied minors of initial non-adversarial review). Thus, summary removal of vulnerable unaccompanied minors in the middle of their removal proceedings is manifestly incompatible with these special protections.

Once an unaccompanied minor is placed in § 1229a proceedings, the government cannot simply choose to cancel those proceedings by removing cases from the immigration court's docket. The INA provides that, "[u]nless otherwise specified in this chapter, a proceeding under [§ 1229a] shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States." 8 U.S.C. § 1229a(a)(3). The INA also provides all noncitizens in § 1229a proceedings the right to appeal an unfavorable decision to the Board of Immigration Appeals ("BIA") and to petition a Court of Appeals for judicial review. *See* 8 U.S.C. §§ 1229a(c)(5); 1252(b). A removal order can only be effectuated upon the commencement of a 90-day removal period, which "begins on the latest of three dates: (1) the date the order of removal becomes 'administratively final,' (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the alien is released from non-immigration detention or confinement." *Johnson v. Guzman-Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(1)(B)). Regulations provide specific mechanisms and conditions under which DHS may seek to cancel a Notice to Appear after jurisdiction has vested with the immigration court and before the issuance of a removal order. *See* 8 C.F.R. § 239.2.

The government likewise cannot simply ignore the TVPRA's statutory mandate that it provide unaccompanied minors with the opportunity to seek voluntary departure under 8 U.S.C. § 1229c. *See, e.g.*, *Immigrant Defs. L. Center*, 2025 WL 1191572, at *14 ("The

language of § 1232(a)(5)(D)(ii) is clear that '[a]ny unaccompanied alien child' – meaning all

unaccompanied children – must be eligible for voluntary departure.") (citing A. Scalia & B.

Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 140 (2012)). 8 U.S.C. § 1229c

in turn authorizes the Attorney General "[to] permit an alien voluntarily to depart from the

United States" subject to certain restrictions. Voluntary departure is a form of immigration that

only an immigration judge can grant. The TVPRA contains numerous provisions that ensure

that unaccompanied minors do not bear the cost of their voluntary repatriation, 8 U.S.C. § 1232

(a)(5)(D)(ii), and that the government ensure their safety and sustainable repatriation. *Id*. §§

1232(a)(1), (5); *see also Perez-Funez v. District Director*, 619 F. Supp. 656 (C.D. Cal. 1985)

(granting unaccompanied minors special protection before they can accept voluntary

departure); 8 C.F.R. §§ 236.3(g)-(h), 1236.3(g)-(h) (providing procedural rights for voluntary

departure). Although Plaintiffs seek to remain in the United States, Defendants' summary

removals nonetheless deprive them of their statutory right to request voluntary departure under

special conditions.

Defendants' summary removals of unaccompanied minors while their § 1229a

proceedings are pending are an obvious violation of the TVPRA and the INA. "[T]he President

and federal agencies may not ignore statutory mandates or prohibitions merely because of policy

disagreement with Congress." *In re Aiken Cnty.*, 725 F.3d 255, 261 (D.C. Cir. 2013). Plaintiffs

are likely to succeed on the merits.

*2.  Plaintiffs are likely to succeed on their Equal Protection claim because they face*
*discrimination on the basis of national origin.*

Plaintiffs are likely to succeed on the merits of their claim that Defendants' actions

constitute discrimination on the basis of national origin, in violation of the equal protection

16

guarantee of the Due Process clause of the Fifth Amendment.

All Plaintiffs and putative class members are Guatemalan nationals. Defendants seek to expeditiously remove children of Guatemalan nationality in ORR custody. This constitutes unconstitutional discrimination on the basis of national origin.

The Supreme Court has consistently applied a strict scrutiny standard to government actions that discriminate on the basis of national origin. *See, e.g., Yick Wo v. Hopkins*, 118 US 356, 374 (1886); *Clark v. Jeter*, 486 U.S. 456, 461 (1988); *City of Cleburne v. Cleburne Living Center*, 473 US 432, 440 (1985); *United States Railroad Retirement Board v. Fritz*, 449 US 166, 174 (1980); *Pena-Rodriguez v. Colorado*, 137 S Ct 855, 883 (2017) (Alito dissenting).

Here, Plaintiffs are likely to succeed on the merits because Defendants are targeting them based on national origin. Defendants' actions are not narrowly tailored, and there is no compelling government interest to justify such targeting on the basis of national origin. Thus, Defendants' actions violate the equal protection guarantee of the Fifth Amendment.

3. *Plaintiffs are likely to succeed on the merits because Defendants' actions violate Due Process.*

Plaintiffs are likely to succeed on their claim that their summary removal while their removal proceedings are pending violates the Due Process Clause of the Fifth Amendment. "'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 145 S. Ct. 1003, 1006 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). As children, Plaintiffs are entitled to special due process protections. The Supreme Court has noted that, "[v]iewed together, our cases show that although children generally are protected by the same constitutional guarantees as are adults, the State is entitled to adjust its legal system to account for children's vulnerability and their needs for concern, sympathy, and paternal attention." *Bellotti v. Baird*, 443 U.S. 622, 635 (1979)

(quotation marks, alterations, and citation omitted). "The three basic elements of a procedural

due process claim are (1) a deprivation, (2) of life, liberty, or property, (3) without due process of

law." *Morris v. Carter Global Lee, Inc.*, 997 F. Supp. 2d 27, 35-36 (D.D.C. 2013).

Plaintiffs have a liberty interest in avoiding summary removal. *See, e.g.*, *J.G.G*, 145 S.

Ct. at 1006 ("The detainees' rights against summary removal . . . are not currently in dispute.").

The TVPRA and the INA further substantiate their protected interest. A statute creates a

protected interest where it includes "rules or understandings that secure certain benefits and that

support claims of entitlements to those benefits." *The Board of Regents of State Colleges v. Roth*,

408 U.S. 464, 577 (1972); *see also Abrego Garcia v. Noem*, 777 F. Supp. 3d 501 (D. Md. 2025)

(finding that INA's withholding of removal provision created a protected interest "in avoiding

forcible removal to El Salvador" by limiting DHS's discretion to remove noncitizen absent

process), *aff'd in relevant part sub. Nom*, 145 S. Ct. 1017 (2025). The TVPRA mandates several

special procedural protections for unaccompanied minors that demonstrate their protected

interest in avoiding summary removal: placement in § 1229a removal proceedings (*i.e.*, an

exception from expedited removal proceedings), 8 U.S.C. § 1232(a)(5)(D)(i); eligibility for

voluntary departure at no cost to the child, *id*. § 1232(a)(5)(D)(ii); enhanced access to counsel,

*id*. §§ 1232(a)(5)(D)(iii), (c)(5); and special non-adversarial consideration of their asylum

applications. 8 U.S.C. § 1158(b)(3)(C). Each of rules mandatorily structure removal proceedings

in such a way as to protect and benefit unaccompanied minors in light of their unique

vulnerabilities.

Defendants are depriving Plaintiffs of their interest in avoiding summary removal. As

described *supra*, Defendants are unlawfully ignoring the mandatory procedures and protections

that amount to Plaintiff's protected interest. Moreover, Defendants have offered Plaintiffs *no*

18

procedure whatsoever by which to challenge their summary removal. *See, e.g.*, Flores Decl. ¶10. Nor have Defendants provided them adequate notice that they will be imminently subject to summary removal, choosing instead in certain cases to simply remove their cases from the immigration court docket without observance of any procedure. *See id.*; *see also, e.g.*, *Abrego Garcia*, 777 F. Supp. 3d at 517 ("Defendants deprived Abrego Garcia of this right without *any procedural protections* due to him. Indeed, nothing in the record suggests that Abrego Garcia received any process at all."); *cf. A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1367-68 (2025) ("Due process requires notice that is 'reasonably calculated, under all the circumstances, to apprise interested parties' and that 'afford[s] a reasonable time ... to make [an] appearance.'") (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Plaintiffs therefore show a likelihood of success on the merits of their claim that their imminent summary removals violate the Due Process Clause of the Fifth Amendment.

### B.  Plaintiffs will suffer irreparable harm if removed

The threat of removal without the opportunity to apply for humanitarian protection or other immigration relief for which Plaintiffs are eligible further heightens the irreparable injury. *Huisha-Huisha v. Mayorkas*, 560 F. Supp. 3d 146, 172 (D.D.C. 2021) (finding irreparable harm where plaintiffs "face the threat of removal prior to receiving any of the protections the immigration laws provide"), aff'd in part, rev'd in part on other grounds, 24 F.4th 718 (D.C. Cir. 2022); *P.J.E.S. ex rel. Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492, 517 (D.D.C. 2020) (irreparable injury exists where class members were "threatened with deportation prior to receiving any of the protections the immigration laws provide"); *Orantes-Hernandez v. Meese*, 685 F. Supp. 1488, 1504– 05 (C.D. Cal. 1988) (plaintiffs would suffer irreparable harm if they were summarily removed without being afforded opportunity to exercise their right to apply for

asylum).

Here, Plaintiff children have demonstrated clear and irreparable harms if removed to Guatemala. Several plaintiffs lack guardians who can provide safety and care. Many fear return and wish to continue pursuing their asylum claims before the immigration courts. Facing risks of persecution and torture. Further, Defendants have failed to comply with legal obligations to ensure safe repatriation to Guatemala. As a result, Plaintiffs are at risk of not receiving care and access to basic needs such as shelter, food, and education that Defendants are legally required to provide either in ORR custody or through safe repatriation *after* unaccompanied children have completed their removals proceedings or chosen to voluntarily depart with legally mandated safeguards. Once they are removed to Guatemala, harms will be irreparable.

For these reasons, Plaintiffs satisfy their burden to show that they are at imminent risk of irreparable harm unless the Court grants temporary emergency relief.

### C. The Balance of Equities and Public Interest Weigh Decidedly in Favor of a Temporary Restraining Order.

The balance of equities and the public interest factors merge in cases against the government. *See Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (citations omitted). Where, as here, the challenged governmental conduct deprives Plaintiffs of their rights and is contrary to the rule of law, both factors weigh in Plaintiffs' favor. The public—and therefore the government—has an interest in protecting people in government custody, particularly children. *See Nken v. Holder*, 556 U.S. 418, 436 (2009) (describing the "public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm"); *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 105 (D.D.C. 2012) ("It is always in the public interest to prevent the violation of a party's constitutional rights." (quotation marks and citations omitted)); *Torres v. U.S. Dep't of*

20

*Homeland Sec.*, 2020 WL 3124216, at *9 (C.D. Cal. Apr. 11, 2020) ("[T]he public has an interest in the orderly administration of justice[.]").  In this case, the public has a particular interests in ensuring children are not unlawfully removed to unsafe conditions.

**D.  The Court Should Not Require Plaintiffs to Provide Security Prior to the Temporary Restraining Order.**

Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damage sustained by any party found to have been wrongfully enjoined or restrained." However, "courts in this Circuit have found the Rule 'vests broad discretion in the district court to determine the appropriate amount of an injunction bond,' including the discretion to require no bond at all." *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 107 (D.D.C. 2012) (internal quotation marks, citation, and alterations omitted). District courts exercise this discretion to require no security in cases brought by indigent and/or incarcerated people, and in the vindication of immigrants' rights. *See, e.g.*, *P.J.E.S. by & through Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492, 520 (D.D.C. 2020). This Court should do so here as well. Alternatively, the Court should order Plaintiffs to post security in the amount of $1.00.

## <u>CONCLUSION</u>

The Court should grant Plaintiffs' motion for a temporary restraining order for them and putative class members.


Dated: August 31, 2025                          Respectfully submitted,

                                                 /s/ Hilda Bonilla

                                                 Hilda Bonilla (D.C. Bar No. 90023968)

Efren Olivares*
Lynn Damiano Pearson*
Kevin Siegel*
NATIONAL IMMIGRATION LAW CENTER
1101 14th Street, Suite 410
Washington, D.C. 20005
Tel: (213) 639-3900
Fax: (213) 639-3911
bonilla@nilc.org
olivares@nilc.org
damianopearson@nilc.org
siegel@nilc.org


*Counsel for Plaintiffs*
*\*Pro Hac Vice application forthcoming*

**CERTIFICATE OF SERVICE**

I, <u>Hilda Bonilla</u>, certify that a true and correct copy of this Request for Emergency Temporary

Restraining Orders was filed via the Court's CM/ECF filing system and will be served on all

Defendants in accordance with the Federal Rules of Civil Procedure.


<u>  */s/ Hilda Bonilla*     </u>

Hilda Bonilla
Attorney for Plaintiffs

Dated: August 31, 2025

Respectfully submitted,

/s/ Hilda Bonilla

Hilda Bonilla (D.C. Bar No. 90023968)
Efren Olivares*
Lynn Damiano Pearson*
Kevin Siegel*
NATIONAL IMMIGRATION LAW
CENTER
1101 14th Street, Suite 410
Washington, D.C. 20043
Tel: (213) 639-3900
Fax: (213) 639-3911
bonilla@nilc.org
olivares@nilc.org
damianopearson@nilc.org
siegel@nilc.org


*Counsel for Plaintiffs*
*\*Pro hac vice application forthcoming*