# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| L.G.M.L., address omitted per LCvR 5.1; | |
| L.M.R.S., address omitted per LCvR 5.1; | |
| M.O.C.G., address omitted per LCvR 5.1; | Case No. _____ |
| H.L.E.C, address omitted per LCvR 5.1; | |
| T.A.C.P., address omitted per LCvR 5.1; | **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |
| M.F.A.P.V., address omitted per LCvR 5.1; | |
| L.F.M.M., address omitted per LCvR 5.1; | |
| G.A.B.B., address omitted per LCvR 5.1; | |
| A.R.M.D., address omitted per LCvR 5.1; and | |
| M.Y.A.T.C. [1], address omitted per LCvR 5.1, on behalf of themselves and all others similarly situated by and through their next friend, | |
| YOUNG CENTER FOR IMMIGRANT CHILDREN'S RIGHTS, 228 S Wabash Ave, Chicago, IL 60604 | |
| *Plaintiffs*, | |
| v. | |
| KRISTI NOEM, in her official capacity as Secretary of the U.S. Department of Homeland Security, 245 Murray Lane SW, Washington, DC 20528; | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, 245 Murray Lane SW, Washington, | |

---

[1] Motion for these Plaintiffs to proceed under pseudonym forthcoming.

DC 20528;

TODD LYONS, in his official capacity as Acting
Director, U.S. Immigration and Customs
Enforcement, 500 12th Street SW, Washington,
DC 20536;

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, 500 12th Street SW,
Washington, DC 20536

ROBERT F. KENNEDY, JR. in his official
capacity as Secretary of Health and Human
Services, 200 Independence Avenue SW,
Washington, DC 20201;

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES, 200 Independence Avenue
SW, Washington, DC 20201;

ANGIE SALAZAR, in her official capacity as
Acting Director of the Office for Refugee
Resettlement, 330 C Street SW, Room 5123
Washington, DC 20201

OFFICE OF REFUGEE RESETTLEMENT, 300
C Street SW, Washington, DC 20201;

PAMELA BONDI, in her official capacity as
Attorney General, 950 Pennsylvania Avenue NW,
Washington, DC 20530;

U.S. DEPARTMENT OF JUSTICE, 950
Pennsylvania Avenue NW, Washington, DC
20530

MARCO RUBIO, in his official capacity as
Secretary of State, 1600 Pennsylvania Avenue
NW, Washington, DC 20500; and

U.S. STATE DEPARTMENT, 2201 C Street
NW, Washington, DC 20520

*Defendants*.

## INTRODUCTION

1.      This is an emergency complaint accompanied by a request for a temporary restraining order on behalf of hundreds of Guatemalan children at imminent risk of unlawful removal from the United States.

2.      Plaintiffs are ten (10) unaccompanied minors from Guatemala between the ages of 10 and 17 whom Defendants are seeking to remove from the United States in clear violation of the unambiguous protections that Congress has provided them as vulnerable children. Plaintiffs have active proceedings before immigration courts across the country, yet Defendants plan to remove them in violation of the Trafficking Victims Protection Reauthorization Act of 2008, the Immigration and Nationality Act, and the Constitution.

3.      Recognizing their unique vulnerability, Congress has created a special statutory scheme to ensure that unaccompanied minors receive enhanced protection and care whenever the government seeks to remove them from the United States. Summary removal plainly violates this statutory scheme. Under U.S. law, an unaccompanied minor is defined as a child who "(A) has no lawful immigration status in the United States; (B) has not attained 18 years of age; and (C) with respect to whom— (i) there is no parent or legal guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2). Once a child is designated as an unaccompanied minor, numerous legal protections guarantee that they are not removed without due process and are able to pursue forms of relief from deportation for which they may be eligible.

4.      On August 29, 2025, several media outlets reported that Defendants are planning to imminently remove hundreds of Guatemalan unaccompanied minors to Guatemala. Although Congress requires that unaccompanied minors be in the care and custody of the Office of

1

Refugee Resettlement ("ORR") and permits their removal only in specific circumstances provided by statute, Defendants are imminently planning to illegally transfer Plaintiffs to Immigration and Customs Enforcement ("ICE") custody to put them on flights to Guatemala, where they may face abuse, neglect, persecution, or even torture, against their best interests.

5.      Plaintiffs and putative class members seek emergency relief from this Court in order to prevent grave and irreparable harms to these children resulting from Defendants' unlawful and reckless attempts to summarily remove them from the United States.[2]

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the claims in this case arise under the laws of the United States, including but not limited to the William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA"), Pub. L. No. 110-457, 122 Stat. 5044 (2008), the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.* and its implementing regulations; the Convention Against Torture ("CAT"), Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), and the Fifth Amendment to the U.S. Constitution.

7.      Venue is proper under 28 U.S.C. § 1391(e) because Defendants are agencies and officers of the United States sued in their official capacity, the action does not involve real property, and/or the majority of Defendants reside in this district, and/or a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

### A.  Plaintiffs

---

[2] One other court has already issued a TRO enjoining Defendants from removing named petitioners in a habeas action from the United States. *See* Emergency Order Concerning Stay of Transfer or Removal, *J.J.T.S. v. Francis*, No.1:25-cv-10428 (N.D. Ill. Aug. 30, 2025), ECF No. 4.

8.     Plaintiff L.G.M.L. is a 10-year-old Guatemalan child. She is indigenous and speaks a rare language.  She is detained at Urban Strategies San Benito children's Shelter in San Benito, Texas. Her mother is deceased and she suffered abuse and neglect from other caregivers.

9.     Plaintiff L.M.R.S. is a sixteen-year-old Guatemalan girl with a 10-month daughter in ORR Custody detained at Kidspeace facility in Bethlehem, Pennsylvania. She is in ongoing removal proceedings and wishes to remain in the United States. She was recently interviewed by Homeland Security Investigations and the Guatemalan Consulate.

10.     Plaintiff M.O.C.G. is a sixteen-year-old Guatemalan boy. He is currently in the custody of Defendant ORR detained at Crittenton Long Term Foster Care in Fullerton, California. He is in removal proceedings before the immigration court, and even though his proceedings were administratively closed, the Immigration Court has not decided his case. He has expressed fear of returning to Guatemala.

11.     Plaintiff H.L.E.C. is a sixteen-year-old Guatemalan girl. She is currently in the custody of Defendant ORR detained at the New Life Foster Family Agency Long Term Foster Care in Riverside, California. She is in removal proceedings before the immigration court and has expressed fear of being returned to Guatemala.

12.     Plaintiff T.A.C.P. is a minor and a Guatemalan boy. He is currently in the custody of Defendant ORR detained at the Trinity Youth Services in El Monte, California. He is in removal proceedings before the immigration court, and he has expressed fear of returning to Guatemala.

13.     Plaintiff M.F.A.P.V. is a minor and Guatemalan national. She is currently in the custody of Defendant ORR in the care of a foster care program located in Modesto, California, and living with a foster family in Fresno, California. She is currently in removal proceedings before the immigration court and has expressed a fear of returning to Guatemala.

14.     Plaintiff L.F.M.M. is a sixteen-year-old Guatemalan boy. He is currently in the custody of Defendant ORR detained at the Wayfinder the Haven facility in Los Angeles, California. He is in removal proceedings before the immigration court and has expressed fear of being returned to Guatemala.

15.     Plaintiff G.A.B.B. is a seventeen-year-old Guatemalan national. He is currently in the custody of Defendant ORR detained at the Everstand - Caminos West facility in Mechanicsburg, Pennsylvania. He is in removal proceedings before the immigration judge and has express fear or returning to Guatemala.

16.     Plaintiff A.R.M.D. is a seventeen-year-old Guatemalan boy. He is currently in the custody of Defendant ORR detained at the Cross Connections Henderson in Harlingen, Texas. He is in removal proceedings before the immigration court and has expressed fear or returning to Guatemala.

17.     Plaintiff M.Y.A.T.C. is an sixteen-year-old Guatemalan girl at the Long Term Foster Care in the Bronx, New York.  She is in 11th and is pursuing her removal case before the immigration court.

**B. Defendants**

18.     Defendant Pamela J. Bondi is the U.S. Attorney General at the U.S. Department of Justice, which is a cabinet-level department of the United States government. She is sued in her official capacity.

19.     Defendant Kristi Noem is the Secretary of the U.S. Department of Homeland Security, which is a cabinet-level department of the United States government. She is sued in her official capacity. In that capacity, Defendant Noem is responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103.

20.     Defendant U.S. Department of Homeland Security ("DHS") is a cabinet-level department of the United States government. Its components include Immigration and Customs Enforcement ("ICE").

21.     Defendant Todd Lyons is the Acting Director of ICE. Defendant Lyons is responsible for ICE's policies, practices, and procedures, including those relating to the detention of immigrants during their removal procedures. Defendant Lyons is a legal custodian of Petitioners. Defendant Lyons is sued in his official capacity.

22.     Defendant ICE is the subagency of DHS that is responsible for carrying out removal orders and overseeing immigration detention. Defendant ICE is a legal custodian of Petitioners.

23.     Defendant Marco Rubio is the Secretary of State at the U.S. Department of State, which is a cabinet-level department of the United States government. He is sued in his official capacity.

24.     Defendant U.S. Department of State is a cabinet-level department of the United States government.

25.   Defendant Robert F. Kennedy, Jr. is the Secretary of Health and Health and Human Services ("HHS"), which is a cabinet-level department of the United States Government. Defendant Kenney is sued in his official capacity.

26.   Defendant U.S. Department of Health and Human Services is a cabinet-level department of the United States government. Its components include the Office of Refugee Resettlement ("ORR") that is responsible for overseeing the care and custody of unaccompanied minors.

27.   Defendant ORR is the subagency of HHS that is responsible for overseeing the care and custody of unaccompanied minors.

28.  Defendant Angie Salazar is the Acting Director of ORR. Defendant Salazar oversees the care and custody of unaccompanied minors. Defendant Salazar is sued in his official capacity.

## BACKGROUND

**I.  Protections for Children under the Trafficking Victims Protection Reauthorization Act of 2008**

**A.  *Right to Removal Proceedings under 8 U.S.C. §1229a***

29.  The Trafficking Victims Protection Reauthorization Act ("TVPRA") of 2008, Pub. L. No. 110-457, 122 Stat. 5044 (2008), embodies Congress' intent to provide unique substantive and procedural protections to unaccompanied minors seeking refuge in the United States and represents the culmination of two decades of bipartisan advocacy on behalf of this uniquely vulnerable population.[3]

30.  The TVPRA and related statutes create a comprehensive scheme that mandates special procedures for adjudicating removal proceedings against an unaccompanied minor and for caring for unaccompanied minors during the pendency of their removal proceedings.

31.  Pursuant to the TVPRA, any unaccompanied child sought to be removed from the United States by the Department of Homeland Security ("DHS"), except for certain unaccompanied children from a contiguous countries, shall be (i) placed in removal proceedings under 8 U.S.C. § 1229a; (ii) eligible for relief under 8 U.S.C. § 1229c at no cost to the child; ***and*** (iii) provided access to counsel in accordance with subsection (c)(5). 8 U.S.C. § 1232 (a)(5)(D). (emphasis added).

---

[3] *See, e.g.*, Cong. Research Serv., Unaccompanied Alien Children: An Overview 5-6 (Sept. 5, 2024), *available at* https://sgp.fas.org/crs/homesec/R43599.pdf/.

32.   Guatemala is not a country that is contiguous to the United States, as they share no border. As such, the mandate provided in 8 U.S.C. § 1232(a)(5)(D) applies to Guatemalan unaccompanied children.

33.   By requiring that DHS place unaccompanied children in § 1229a removal proceedings, the TVPRA exempts unaccompanied children from placement expedited removal proceedings pursuant to 8 U.S.C. § 1225(b). 8 U.S.C. §§ 1232(a)(2)(B), (a)(3), (a)(5)(D). Under the expedited removal statute, certain noncitizens with limited ties to the United States may be removed without a hearing. 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii)(II). However, all unaccompanied children—regardless of the circumstances of their arrival to the United States—receive the benefit of full immigration proceedings, including a hearing on claims for relief before an immigration judge.

34.   Congress provided even further procedural protection to unaccompanied minors in removal proceedings by mandating that their claims for asylum be heard in the first instance before an asylum officer in a non-adversarial setting rather than in an adversarial courtroom setting. 8 U.S.C. § 1158(b)(3)(C).

35.   The TVPRA contains no exceptions to its protections, confirming Congress's clear directive regarding the removal protections afforded to unaccompanied children. It does not distinguish between unaccompanied children who have or do not have prior immigration histories. More specifically, it does not exclude those who have prior removal orders.

36.   The TVPRA does not allow DHS to bypass § 1229a proceedings and remove children without observance of the procedures of the Immigration and Nationality Act ("INA") and without their day in court.

**B.   *Access to Counsel***

37.   In addition, U.S.C. § 1232(c)(5) requires, in its use of "shall," that the Secretary of Health and Human Services ensure, to the greatest extent practicable, that all unaccompanied alien children who are or have been in the custody of the Secretary or the Secretary of Homeland Security (other than those children from contiguous countries as described in (a)(2)), have counsel to represent them in legal proceedings or matters and protect them from mistreatment, exploitation, and trafficking.

### C.   *Safe Repatriation*

38.   The TVPRA also provides special procedures to ensure the safe repatriation of unaccompanied minors who seek to depart the United States voluntarily or who are ordered removed at the termination of removal proceedings.

39.   Once placed in § 1229a proceedings, only an immigration judge may grant an unaccompanied minors voluntary departure pursuant to § 1229c. Voluntary departure is a form of immigration relief that allows certain noncitizens in removal proceedings to request to depart the United States without the issuance of a removal order and generally occurs at the noncitizen's expense. 8 U.S.C. § 1229c(a)(1).

40.   The TVPRA mandates, however, that unaccompanied minors granted voluntary departure not bear the cost of their repatriation. 8 U.S.C. § 1232 (a)(5)(D)(ii).

41.   To further protect children from traffickers and other persons seeking to victimize children,, DHS, in conjunction with the Department of State, DOJ, and HHS, bears an affirmative responsibility to ensure the safety of any unaccompanied seeking repatriation through a voluntary departure order or ordered removed from the United States. 8 U.S.C. § 1232(a)(1).

42.   The TVPRA similarly requires DHS and HHS to work together to ensure "safe and sustainable repatriation and reintegration" of unaccompanied minors into their countries of

nationality or last habitual residence, "including placement with their families, legal guardians, or other sponsoring agencies." 8 U.S.C. § 1232(a)(5).

**D.** ***Exclusive ORR Custody***

43. The TVPRA, along with the Homeland Security Act ("HSA"), Pub. L. No. 107-296, § 462, 116 Stat. 2135 (2002), creates a unique system for housing and caring for unaccompanied children in government custody and for ensuring their safety when released from government custody. This system is wholly separate from the detention program operated for adult noncitizens by Defendant ICE.

44. ORR is the only agency authorized to retain custody of unaccompanied minors. The TVPRA provides that, except in the case of unaccompanied minors from a contiguous country, "the care and custody of all unaccompanied alien children, including responsibility for their detention, where appropriate, shall be the responsibility of the Secretary of Health and Human Services." 8 U.S.C. § 1232(b)(1); *accord* 6 U.S.C. § 279(b); 45 C.F.R. §§ 410.1002-1004. Any federal department or agency that has an unaccompanied minor in its custody must transfer the minor to ORR custody "not later than 72 hours after determining" that the minor is unaccompanied. 8 U.S.C. § 1232(b)(3). Unaccompanied minors in ORR custody "shall be promptly placed in the least restrictive setting that is in the best interest of the child." *Id*. § 1232(b)(c)(2).

45. The HSA further charges ORR with "ensuring that the interests of the child are considered in decisions and actions relating to the care and custody of an unaccompanied alien child." 6 U.S.C. § 279(b)(1)(B).

46. ORR has promulgated detailed regulations for making placement determinations as to unaccompanied minors (*i.e.*, determining where to house them while in custody), 45 C.F.R. §§

9

410.1100-1109, and for determining when and to whom to release an unaccompanied minor in ORR custody. *Id.* §§ 410.1200-1210. The regulations require that "unaccompanied children shall be treated with dignity, respect, and special concern for their particular vulnerability," *id.* § 419.1003(a), and that "ORR shall place each ～shall place each～ unaccompanied child in the least restrictive setting that is in the best interests of the child, giving consideration to the child's danger to self, danger to others, and runaway risk." *Id.* § 419.1003(f).

## II.   Other Legal Safeguards for Unaccompanied Minors

### A.  *Flores Settlement*

47.   Prior to the enactment of the HSA and the TVPRA, federal courts intervened on several occasions to protect unaccompanied minors from abuses in the immigration system. These protections remain binding on Defendants.

48.   In 1997, a federal court in the Central District of California approved a consent decree covering "[a]ll minors who are detained in the legal custody of the INS [Immigration and Naturalization Service]." Stipulated Settlement Agreement, *Flores v. Reno*, No. CV 85-4544-RJK(Px), ¶ 10 (C.D. Cal. Jan. 17, 1997).[4] Among other requirements, the Flores Settlement Agreement directs the INS to "treat all minors in its custody with dignity, respect and special concern for their particular vulnerability as minors" and to "place each detained minor in the least restrictive setting appropriate to the minor's age and special needs." *Id.*

49.   Section 462 of the HSA extended to all the key protections of the *Flores* Settlement Agreement, including its "least restrictive setting" requirement. Pub. L. No. 107-296, § 462, 116 Stat. 2143 (2002).

---

[4] *Available at* http://www.aila.org/File/Related/14111359b.pdf [hereinafter the "Flores Settlement Agreement"]. After *Flores*, the INS was dissolved and subsumed into DHS, whereupon DHS inherited the INS' obligations under the *Flores* Settlement Agreement.

### B. *Perez-Funez Permanent Injunction*

50.   In 1985, another court in the Central District of California issued a permanent injunction granting certain special protections to unaccompanied children before they can accept voluntary departure. *Perez-Funez v. District Director*, 619 F. Supp. 656 (C.D. Cal. 1985). This lawsuit arose out of the then-INS coercive practices and its protections are now implemented by regulation. 8 C.F.R. §§ 236.3(g)-(h), 1236.3(g)-(h). (1) a written notice of rights; (2) a list of free legal service providers; and (3) access to telephones and notice that they may call a parent, close relative, friend, or attorney. Additionally, for unaccompanied children from noncontiguous countries (i.e. children not from Canada or Mexico), DHS must ensure that the child in fact communicates with a parent, adult relative, friend, or attorney. *Id*. §§ 236.3(g), 1236.3(g).

### III.   Protections for all Noncitizens under Immigration and Nationality Act

51.   The special protections afforded to unaccompanied minors in removal proceedings in light of their vulnerability complement the more general statutory procedures that guarantee fairness in all removal proceedings and the rights of all people seeking refuge in the United States. These general procedures are also binding on Defendants when they seek to remove an unaccompanied minor.

52.   For many decades, the Immigration and Nationality Act of 1952 ("INA"), as amended, has provided for a comprehensive system of procedures that the government must follow before removing a noncitizen from the United States. The INA provides the exclusive procedure by which the government may determine whether to remove an individual, including children. 8 U.S.C. § 1229a(a)(3).

53.   Once immigration proceedings have been initiated, ICE cannot unilaterally cancel them as jurisdiction is vested with the immigration judge. 8 C.F.R. § 239.2. Once a Notice to Appear

is filed with the court, the child's removal proceedings have begun, and the decision to dismiss proceedings rests only with the immigration court.

54.   All noncitizens ordered removed at the conclusion of § 1229a proceedings have the right to appeal that decision to the Board of Immigration Appeals ("BIA") and to petition a Court of Appeals for judicial review. 8 U.S.C. §§ 1229a(c)(5); 1252(b). A removal order cannot be executed during the pendency of the appeal period or of the appeal itself. 8 U.S.C. § 1231(a)(1)(B); 8 C.F.R. § 1241.1.

55.   In addition to laying out the process by which the government determines whether to remove an individual, the INA also enshrines certain forms of humanitarian protection.

56.   First, the INA provides that "[a]ny alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival . . . ), irrespective of such alien's status," may apply for asylum. 8 U.S.C. § 1158(a)(1). To qualify for asylum, a noncitizen must show a "well-founded fear of persecution" on account of a protected ground, such as race, nationality, political opinion, or religion. 8 U.S.C. § 1101(a)(42)(A).

57.   Second, Congress has barred the removal of an individual to a country where it is more likely than not that he would face persecution on one of these protected grounds. 8 U.S.C. § 1231(b)(3). That protection implements this country's obligations under the 1951 Refugee Convention and the 1967 Protocol relating to the Status of Refugees. The relevant form of relief, known as "withholding of removal," requires the applicant to satisfy a higher standard with respect to the likelihood of harm than asylum; granting that relief is mandatory if the standard is met absent limited exceptions.

58.   Third, the Convention Against Torture ("CAT") prohibits the government from returning a noncitizen to a country where it is more likely than not that he would face torture. *See* 8 U.S.C.

12

§ 1231 note. That protection implements the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, div. G, Title XXII, § 2242. As with withholding of removal, CAT relief also requires the applicant to satisfy a higher standard with respect to the likelihood of harm than asylum and relief is mandatory if that standard is met. There is no exception to CAT relief.

## IV.     Defendants' Plans to Remove Guatemalan Children

59.   On August 29, 2025, reports surfaced that the Trump administration is planning to remove hundreds of unaccompanied Guatemalan children in government custody as soon as this weekend.[5] Many of these children in ORR custody are waiting to be released to a relative or guardian "sponsor" in the United States who can care for them while they make their case for protection before the immigration courts. Instead, Defendants seek to return then to Guatemala in violation of the law.

60.   Upon information and belief, the administration has identified more than 600 children from Guatemala to potentially deport as a part of a first of its kind pilot program through an agreement negotiated with the Guatemalan government.

61.   Upon information and belief, Defendants have not provided notice to unaccompanied minors subject to summary removal and have not provided them an opportunity to contest their summary removal. Rather, in certain instances, Defendants have simply removed minors' pending cases from the immigration court docket in preparation for their summary removal.

---

[5] Priscilla Alvarez, *Exclusive: Trump administration plans to send hundreds of Guatemalan children in government custody back to home country*, CNN (Aug. 29, 2025), https://www.cnn.com/2025/08/29/politics/migrant-kids-guatemala-immigration; Jody Garcia *et al.*, *U.S. is Working With Guatemala to Return Hundreds of Children*, N.Y. Times (Aug. 29, 2025), https://www.nytimes.com/2025/08/29/us/immigration-guatemala-children.html.

62. Defendants, along with Guatemalan consulate, have also conducted interviews of unaccompanied minors that, upon information and belief, have been planned in preparation for their summary removal.

63. Upon information and belief, the children, who range in age, do not have a parent in the United States, though some may have a relative.

64. Many of these children, including Plaintiffs, are in ongoing removal proceedings before the immigration court where they are represented by counsel pursuant to the TVPRA.

65. Upon information and belief, no Plaintiff is subject to an executable final order of removal.

66. Upon information and belief, officials have internally referred to these removals as "repatriations" and not deportations, implying the children impacted are not being involuntarily removed.[6] However, there is no indication that ICE is complying with its obligations outlined above to provide access to counsel or with the mandated safeguards it must implement before children agree to voluntary departure under *Perez-Funez*.

## V. Harm to Plaintiffs

67. If removed to Guatemala, Plaintiffs will suffer grievous and irreparable injury.

68. Plaintiffs will lose the opportunity to seek permanent status in the United States in immigration court. Plaintiffs fear persecution in Guatemala. By removing them before they have had the opportunity to present their fear-based claims, they are at risk of persecution, torture, or death.

69. Defendants have failed to comply with legal obligations to ensure safe repatriation to Guatemala. As a result, Plaintiffs are at risk of not receiving care and access to basic needs such

---

[6] *See* Alvarez, *supra* note 7.

as shelter, food, and education they would otherwise be legally required to provide in ORR custody.

70. Defendants' actions are thus exposing children to multiple harms in returning them to a country where they fear persecution and by flouting their legal obligations to care for them in the United States.

## CLASS ALLEGATIONS

71. Class Representative Plaintiffs bring this action under Federal Rules of Civil Procedure 23(a) and 23(b)(2) on behalf of themselves and a class of all other persons similarly situated.

72. In this action, Class Representative Plaintiffs seek to represent the following Proposed Class: all Guatemalan unaccompanied minors in ORR custody who are not subject to an executable final order of removal.[7]

73. The proposed class satisfies the requirements of Rule 23(a)(1) because the class is so numerous that joinder of all members is impracticable. Hundreds of Guatemalan unaccompanied minors in government custody across the country will potentially be subjected to summary removal under the Trump administration's plans.

---

[7] A removal order can only be effectuated upon the commencement of a 90-day removal period, which "begins on the latest of three dates: (1) the date the order of removal becomes 'administratively final,' (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the alien is released from non-immigration detention or confinement." *Johnson v. Guzman-Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(1)(B)). In general, a removal order becomes administratively final upon dismissal of an appeal by the BIA, upon waiver of appeal by a noncitizen, or at the expiration of the appeal period. 8 C.F.R. § 1241.1.

Immigration judges are authorized to dismiss or terminate removal proceedings in certain circumstances. 8 C.F.R. §§ 1003.10(b); 1003.18(d); 1239.2(c). Dismissal and termination are dispositions that do not result in an order of removal.

74.   The class satisfies the commonality requirements of Rule 23(a)(2). The members of the class are subject to a common practice: summary removal without proceedings before an immigration judge. This suit also raises questions of law common to members of the proposed class, including whether the administration's plans violate the TVPRA, the INA, the Fifth Amendment, and the Equal Protection Clause.

75.   The proposed class satisfies the typicality requirements of Rule 23(a)(3), because the claims of the Class Representative Plaintiffs are typical of the claims of the class. Each proposed class member, including Class Representative Plaintiffs, faces the same principal injury (summary removal to Guatemala without proceedings before an immigration judge), based on the same government practice (the administration's attempts to remove hundreds of Guatemalan unaccompanied minors), which is unlawful as to the entire class because it violates statutory and constitutional protections.

76.   The proposed class satisfies the adequacy requirements of Rule 23(a)(4). The Class Representative Plaintiffs seek the same relief as the other members of the class—among other things, an order granting a temporary restraining order to preserve the status quo pending further proceedings, declaring that Defendants' attempts to remove Guatemalan unaccompanied minors without proceedings before an immigration judge violates the TVPRA, the INA, and the Fifth Amendment, and enjoining Defendants from removing Guatemalan unaccompanied minors who have not been ordered removed by an immigration judge. In defending their rights, Class Representative Plaintiffs will defend the rights of all proposed class members fairly and adequately. The Class Representative Plaintiffs are members of the class, and their interests do not conflict with those of the other class members.

16

77.   The proposed class is represented by experienced attorneys from the National Immigration Law Center. Proposed Class Counsel have extensive experience litigating class action lawsuits and other complex systemic cases in federal court on behalf of noncitizens.

78.   The proposed class also satisfies Rule 23(b)(2). Defendants have acted (or will act) on grounds generally applicable to the class by subjecting them to summary removal rather than affording them the protection of immigration laws. Injunctive and declaratory relief is therefore appropriate with respect to the class as a whole.

## CAUSES OF ACTION[8]

### FIRST CLAIM FOR RELIEF

**Violation of the Trafficking Victims Protection Reauthorization Act of 2008, 8 U.S.C. § 1232(a)(5)(D)**
**(All Defendants)**

79.   Plaintiffs reallege and incorporate the allegations of all the preceding paragraphs.

80.   Plaintiffs are unaccompanied alien children as defined in 6 U.S.C. § 279(g)(2).

81.   Under the TVPRA, Plaintiffs are legally entitled to pursue claims of asylum and other immigration relief through removals proceedings before the immigration court and any appeals.

82.   Defendants' attempts to remove Plaintiffs before they have completed proceedings violates of 8 U.S.C. § 1232(a)(5)(D).

### SECOND CLAIM FOR RELIEF

**Violation of 8 U.S.C. § 1232(c)(5), et seq.**
**(All Defendants)**

83.   Plaintiffs reallege and incorporate the allegations of all the preceding paragraphs.

---

; [8] Insofar as cause of action seeks to enjoin Defendants, Plaintiffs do not seek such relief against the President.

84.   Plaintiff children are entitled to access to counsel under the TVPRA. By removing them prior to the completion of their removal proceedings, Defendants are violating their legal obligation to ensure children in removal proceedings have lawyers to assist them with the legal process.

### THIRD CLAIM FOR RELIEF

**Violation of Equal Protection under the Due Process Clause of the Fifth Amendment (All Defendants)**

85.   Plaintiffs reallege and incorporate the allegations of all the preceding paragraphs.

86.   Plaintiffs are all nationals of Guatemala.

87.   Defendants are attempting to remove children of Guatemalan origin.

88.   National origin is a protected class under the Constitution, and any policy or practice that targets a class of persons based on national origin is subject to strict scrutiny. Accordingly, the government must show its actions are narrowly tailored to further a compelling government interest. U.S. Const. amend. XIV, § 1; *Yick Wo v. Hopkins*, 118 US 356, 374 (1886); *Clark v. Jeter*, 486 U.S. 456, 461 (1988).

89.   Defendants' actions are not narrowly tailored and there is no compelling government interest that justifies their discrimination against this class of noncitizens based on their national origin.

### FOURTH CLAIM FOR RELIEF

**Violation of Due Process Under the Fifth Amendment (All Defendants)**

90.   Plaintiffs reallege and incorporate the allegations of all the preceding paragraphs.

91.   The Due Process Clause of the Fifth Amendment provides in relevant part that: "No person shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

92.   In denying Plaintiffs meaningful procedural protections to challenge their removal, their removal to Guatemala violates due process. *See Immigrant Defs. Law Ctr. v. U.S. Dep't of Homeland Sec.,* No. CV210395FMORAOX, 2021 WL 4295139, at *5 (C.D. Cal. July 27, 2021) (reaffirming TVPRA and due process protections for unaccompanied children).

## FIFTH CLAIM FOR RELIEF

### Violation of Due Process—*Accardi* Doctrine

93.   Defendants' plans to remove children to Guatemala and out of ORR custody is in direct contravention of the Foundational Rule, which sets for binding regulations and obligations that Defendants must follow. *See* 45 C.F.R. 410 *et seq.* By failing to follow its own regulations, Defendants are violating due process under the *Accardi* doctrine.

94.   The *Accardi* doctrine holds that "government agencies are bound to follow their own rules, even self-imposed procedural rules that limit otherwise discretionary decisions." *See U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). Failure to do so gives rise to a due process claim. *Jefferson v. Harris*, 285 F. Supp. 3d 173**,** 178 (Jan 4, 2018); *Wilkinson v. Legal Servs. Corp*, 27 F.Supp.2d 32, 34 n.3 (D.D.C. 1998).

## SIXTH CLAIM FOR RELIEF

### Violation of 8 U.S.C. § 1101, *et seq.*
### (All Defendants)

95.   Plaintiffs reallege and incorporate the allegations of all the preceding paragraphs.

19

96. The INA, 8 U.S.C. § 1101, *et seq.*, sets out the sole mechanisms established by Congress for the removal of noncitizens.

97. The INA provides that a removal proceeding before an immigration judge under 8 U.S.C. § 1229a is "the sole and exclusive procedure" by which the government may determine whether to remove an individual, "[u]nless otherwise specified" in the INA. 8 U.S.C. § 1229a(a)(3).

98. The INA's "exclusive procedure" and statutory protections apply to any removal of a noncitizen from the United States, including unaccompanied minors. The administration's plan to remove unaccompanied minors without allowing them to complete removal proceedings thus violates 8 U.S.C. § 1229a and the INA and is contrary to law.

## SEVENTH CLAIM FOR RELIEF

### Violation of 8 U.S.C. § 1158, Asylum
### (All Defendants)

99. Plaintiffs reallege and incorporate the allegations of all the preceding paragraphs.

100. The INA provides, with certain exceptions, that "[a]ny alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters), irrespective of such alien's status, may apply for asylum in accordance with this section or, where applicable, section 1225(b) of this title." 8 U.S.C. § 1158(a)(1).

## EIGHTH CLAIM FOR RELIEF

### Violation of the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"),
### codified at 8 U.S.C. § 1231 note
### (All Defendants)

101. Plaintiffs reallege and incorporate the allegations of all the preceding paragraphs.

102. FARRA prohibits the government from returning a noncitizen to a country where it is more likely than not that he would face torture.

103. Respondents' removal of Guatemalan children violates FARRA because it does not provide adequate safeguards to ensure that Petitioners are not returned to a country where it is more likely than not that they would face torture. As a result, Respondents' actions against Petitioners are contrary to law.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioners respectfully pray this Court to:

a. Assume jurisdiction over this matter;

b. Grant a temporary restraining order to preserve the status quo pending further proceedings;

c. Certify the class;

d. Enjoin Defendants from transferring unaccompanied Guatemalan children from ORR custody, except any child whose request for voluntary departure has been granted by an Immigration Judge;

e. Declare that Plaintiffs are entitled to 240 proceedings under the TVPRA, the INA, and the Fifth Amendment;

f. Award Petitioners' counsel reasonable attorneys' fees under the Equal Access to Justice Act, and any other applicable statute or regulation; and

g. Grant such further relief as the Court deems just, equitable, and appropriate.

Dated: August 31, 2025

Respectfully submitted,

/s/ Hilda Bonilla

Hilda Bonilla (D.C. Bar No. 90023968)
Efren Olivares*
Lynn Damiano Pearson*
Kevin Siegel*
NATIONAL IMMIGRATION LAW
CENTER
1101 14th Street, Suite 410
Washington, D.C. 20005
Tel: (213) 639-3900
Fax: (213) 639-3911
bonilla@nilc.org
olivares@nilc.org
damianopearson@nilc.org
siegel@nilc.org

*Counsel for Plaintiffs*
*Pro Hac Vice application forthcoming*

## CERTIFICATE OF SERVICE

I, <u>Hilda Bonilla</u>, certify that a true and correct copy of this Complaint will be served on all

Defendants in accordance with the Federal Rules of Civil Procedure.


    *<u>/s/ Hilda Bonilla</u>   *

Hilda Bonilla
Attorney for Plaintiffs