# EXHIBIT A

## SUPPLEMENTAL DECLARATION OF LAUREN FISHER FLORES

I, Lauren Fisher Flores, pursuant to 28 U.S.C. § 1746, declare:

1. I am the Legal Director of the South Texas Pro Bono Asylum Representation Project (ProBAR), a project of the American Bar Association. ProBAR was founded in 1989 as a pro bono project to provide access to justice and due process to detained migrants and asylum seekers in the Rio Grande Valley region of South Texas. Today, ProBAR provides pro bono legal services to immigrant adults, children, and families with a specialized focus on detained unaccompanied children in the Rio Grande Valley. ProBAR provides legal services at 22 shelters for unaccompanied children in the Rio Grande Valley and Corpus Christi regions.

2. I make this declaration to supplement my declaration filed on August 30, 2025, and based on personal knowledge and information made known to me in the course of my professional experience.

3. On the evening of Friday, August 29, I became aware that the shelters ProBAR serves in South Texas were preparing to repatriate Guatemalan children in their custody—a total of 69 children. The shelter facilities are the following: Upbring Bokenkamp, Compass Connections Harlingen, Compass Connections Cameron, Compass Connections Driscoll, Compass Connections Henderson, Chicanos Por La Causa Magnolia House, Grace House Children's Shelter, Hands of Healing Casa Sunshine, Hands of Healing Casa Harlingen, Upbring New Hope, Sunny Glen Children's Home New Life Resiliency Center, Upbring LSSS- Corpus Christi Long Term Foster Care, Urban Strategies Refugio Alamo, Urban Strategies San Benito, and Vision Quest Jake Devonshire Center.  ProBAR staff began contacting Guatemalan children in custody at these facilities and providing them information about their rights.

4. On Saturday, August 30 at approximately 2:30 pm Central Time ProBAR contacted the shelter program directors and the ORR Federal Field Specialists and advised them of the rights of Guatemalan unaccompanied children to the protections of the TVPRA and the ORR Foundational Rule (45 CFR§ 410.1601(a)(3)) which requires ORR to notify the child and the child's attorney, legal provider, or advocate, at least 48 hours before transfer or discharge of a child. SEE ATTACHMENT 1.

5. On Saturday evening around 11:30 pm Central Time, ProBAR began to receive calls and messages from shelter programs. The programs advised ProBAR that they had been told to prepare children to be repatriated and that transport would arrive to pick them up in two hours.

6. ProBAR is already operating with fewer staff due to layoffs in May of this year because of cuts to ProBAR's federal funding. Many of ProBAR's staff were traveling for the Labor Day holiday. Most were asleep. ProBAR's director mobilized several attorneys to

go to shelters in person and meet with others virtually. ProBAR's director and attorney staff were able to visit the following shelters in the middle of the night: Hands of Healing Los in Los Fresnos, New Hope in McAllen, and Urban Strategies in Alamo. ProBAR staff were able to virtually Zoom into Compass Connection Harlingen and Urban Strategies Refugio in San Benito, Texas.

7. At all of the shelters visited in the middle of the night, ProBAR staff witnessed children who had been pulled out of their beds. They were confused and scared. At Hands of Healing Los Fresnos, one young girl was extremely distraught, crying and repeatedly saying that she could not go back to Guatemala. At New Hope McAllen, one young girl was so scared that she vomited and asked to speak with a clinician. At Urban Strategies Alamo, one young teenager was scared that he might end up murdered like one of his family members. At Compass Connection in Harlingen, an attorney was able to meet with only one child. None of these children's parents in their home country had requested their return. ProBAR's client and named Plaintiff ARMD was at Compass Connection, but he was transported to a plane without notifying me as his attorney of record.

8. On Sunday, August 30 at approximately 2:57 a.m. Central Time, ProBAR staff contacted ORR, through the email address provided to ProBAR for the first time in the middle of the night orrguatemalareunification@acf.hhs.gov, and ICE OCC and reiterated to them the rights of Guatemalan unaccompanied children to the protections of the TVPRA and of the ORR Foundational Rule cited above of advising ProBAR 48 hours prior to any transfer or discharge of a child. In this email, ProBAR requested attorney consultation with Guatemalan clients and prospective clients in ORR Custody in the Rio Grande Valley and Corpus Christi regions. ProBAR also confirmed that, as the legal service provider, ProBAR was not provided notice of the imminent removal of certain Guatemalan children in ORR custody as required under the law. SEE ATTACHMENT 2.

9. My 10-year-old client, the lead Plaintiff LGML, was asleep at the Urban Strategies San Benito shelter. She told me she was taken out of bed around 4:30 in the morning for transport. Her Child Advocate from the Young Center was present at the facility and was able to get her removed from transport. LGML was tired and worried.

10. My 17-year-old client, Plaintiff AMRD, was taken to be put on a plane for Guatemala. He was scared and praying for God to protect him. No one would tell him where they were taking him. He was scared to return to Guatemala, where his single mother could not protect him from the violence in his community or keep him safe.

11. On Sunday August 31 between approximately 3:40 and 4:40 am Central Time, ProBAR sent an email to all shelter directors informing them of the issuance of the Temporary Restraining Order preventing the removal of the 10 named plaintiffs and the protected class of Guatemalan children. ProBAR included a copy of the Court's Minute Order of 4:22 am Eastern Time with that email. SEE ATTACHMENT 3.

12. On Sunday August 31 between approximately 1:45 and 3:45 pm Central Time, ProBAR sent an additional email to all shelter directors informing them of the issuance of an updated Temporary Restraining Order preventing the removal of the named plaintiffs and class members, and clarifying the class of children protected by the order. ProBAR included a copy of the Court's Minute Order of 12:37 pm Eastern Time with that email. SEE ATTACHMENT 4.

13. I woke up to a flurry of messages and emails on Sunday morning. I learned that children, including ProBAR's clients, had been removed from the shelter facilities and were believed to be already on an ICE-contracted transport plane at the Harlingen airport.

14. I arrived at the FBO Sun Valley Airport in Harlingen. I could see two of the ICE transport planes parked on the tarmac. The stairs had already been pulled away and the door to the plane, which I had been informed had the children on board, was already closed. I went to the building at the tarmac. I could see officers inside. I knocked on the door. I told the young man who answered the door that I was an attorney, that I had clients on the plane, and that I had a court order stopping the plane from leaving. I asked to speak to his supervisor. I gave the same message to every person who badged in the locked door. I told them they were all complicit in violating a federal court order if the plane left. The young man came back out and told me that he had advised his supervisor who was trying to contact ICE. I explained again the federal court order and the importance of stopping the plane. Another agent came out and physically pulled the young man back into the building. I could see the other staff members through the glass. They were jeering and laughing. I repeated that they were all complicit in the violation of the judge's order.

15. Around 10:30 am, while I was standing outside the FBO airport building, I saw one of the planes begin to move. I identified it as the plane that I believed ProBAR's clients to be on. I knocked on the door again. I watched the plane taxi away from the building. About 20 minutes later, the plane taxied back and parked again. I stayed watching the plane with the children on it. It was hot, sunny, in the upper 90s. I thought about the children on that plane and how hot and stuffy it must have been, how tired they must be, and how scared and confused.

16. The plane sat parked on the tarmac with the stairs up as the hearing on the Plaintiff's Motion for a Temporary Restraining Order (TRO) occurred on Sunday afternoon and continued on the tarmac after the hearing ended. About thirty minutes after the TRO hearing, buses approached the tarmac. At 1:00 pm, 5 buses lined up at the tarmac gate. Finally, at 1:30 pm, the children finally started to get off the plane. The children appeared to get on the buses, then the buses went and parked on the back side of the FBO airport building, still inside the gates to the tarmac. I left the airport around 2 pm. It is my understanding that finally, around 4:00 pm, the buses carrying the children left the airport.

17. ProBAR tried to find the Guatemalan clients for whom we had entered our appearance before Office of Refugee Resettlement and whom we believed to be on the plane including named Plaintiff AMRD, their status on the UC portal listed as discharged, and were unable to locate them until late Sunday evening, when ProBAR started to hear from the shelter programs.

/s/ *Lauren Flores*             9/2/2025

Signature            Date



August 30, 2025

Dear Program Director,

I write on behalf of the South Texas Pro Bono Asylum Representation Project (ProBAR) as a longstanding partner with your shelter to protect and safeguard the rights and wellbeing of immigrant children under the custody of the Office of Refugee and Resettlement ("ORR"). I am asserting certain children's rights to an immediate meeting with a ProBAR attorney or accredited D.O.J. representative. In accordance with the TVPRA (codified at 8 U.S.C. 1232(c)(5)), and as part of the Acacia Network, ProBAR is the Legal Service Provider charged with providing Know-Your-Rights presentations and legal screenings at 22 shelters for unaccompanied children in the Rio Grande Valley and Corpus Christi regions, including your shelter.

ProBAR recently received information concerning the imminent repatriation of unaccompanied children from Guatemala currently in your care. The identifying information of the children at risk will be emailed separately. These planned repatriations are a significant deviation from the established procedures to handle unaccompanied children's legal cases and therefore warrant a right to a prompt legal consultation.

The ORR Unaccompanied Children Program Foundational Rule (specifically codified at 45 C.F.R 410.1309) mandates access to legal information and consultation to protect children's right in the complex U.S. immigration system. According to 45 C.F.R 410.1309(d)(1), ORR should ensure access to counsel "to the greatest extent practicable." Facilitating meeting with ProBAR attorneys does not represent a significant burden on ORR and therefore is practicable.

ProBAR requests facilitation of legal consultations with all Guatemalan children because the abrupt change in the established legal framework to handle their immigration status puts their rights in jeopardy. Specifically, the TVPRA at § 235(a)(5)(D) mandates that unaccompanied children from non-contiguous countries, which includes Guatemala, must be placed in removal proceedings under INA § 240 and their immigration status handled by an immigration judge. The planned repatriations of Guatemalan children appear to be handled outside of immigration proceedings and outside of the jurisdiction of an immigration judge. Children targeted by the immediate repatriations are entitled to accurate and up to date legal information and advice in order to protect their rights under the TVPRA.

 

With such an alarming attempt to undermine the rights of children under your care, I further request that any attempt to transfer custody of children to Immigration and Customs Enforcement be delayed until all targeted children have had their right to confer with counsel. As a reminder, the ORR Foundational Rule (45 CFR§ 410.1601(a)(3)) requires ORR to notify the child and the child's attorney, legal provider, or advocate, at least 48 hours before transfer.

We stand ready to ensure the rights and safety of children under your care are protected. And we look forward to your continued commitment to the same.

Laura Peña
Director

| | |
|---|---|
| **From:** | Laura Pena |
| **To:** | ORRGuatemalaReunification@acf.hhs.gov |
| **Cc:** | ICE-OPLA-SNA-HLG-DUTY; [redacted] Laura Flores; [redacted]; Lauren Fisher Flores; [redacted] |
| **Subject:** | Urgent Request // Cease & Desist |
| **Date:** | Sunday, August 31, 2025 2:56:58 AM |
| **Attachments:** | image001.png<br>image002.png<br>image003.png<br>image004.png<br>image.png<br>Final - ProBAR Letter to Shelters - Assert Rights.pdf<br>Guatemalan clients - ProBAR.xlsx |

I am emailing to request attorney consultation with Guatemalan clients and prospective clients in ORR Custody in the Rio Grande Valley and Corpus Christi regions. ProBAR, as the legal service provider, was not provided notice as required under the law of the imminent removal of certain Guatemalan children in ORR custody. See attached letter requesting legal access yesterday to several shelters.

I am also attaching a list of detained Guatemalan children that we request immediate access to; we further request ICE cease and desist from removing any of the children in our legal service area until we have an opportunity to appropriately screen for potential risk of tracking, fear of return to home country, and ensure the children have full knowledge of their rights under the law.

Regards,

Laura Pena
Director
[redacted]



ProBAR | South Texas Pro Bono Asylum Representation Project

ProBAR is a project of the American Bar Association
Donate to ProBAR
Join Our Team
Become an ABA Member

**Laura Peña**



**American Bar Association ProBAR**

www.abaprobar.org
www.americanbar.org

CONFIDENTIALITY STATEMENT: The information contained in this e-mail and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify the sender and permanently delete the e-mail and any

attachments immediately. Thank you.

**From:** ███████████ <███████████████████████████>
**Sent:** Sunday, August 31, 2025 1:58 AM
**To:** ORRGuatemalaReunification@acf.hhs.gov <ORRGuatemalaReunification@acf.hhs.gov>
**Cc:** ICE-OPLA-SNA-HLG-DUTY <ice-opla-sna-hlg-duty@ice.dhs.gov>; Laura Pena ███████████████████████
**Subject:** Urgent: Credible Fear Claim for Guatemalan Child

Good morning,

I am writing to facilitate the expression of fear on behalf of the minor S███ S█████-V█████, A-██████████. We represent the minor and the L-3 is on file with the shelter. She does not meet the "criteria" for removal to Guatemala, is afraid of returning to her home country.

ICE should immediately cease and desist from attempting to repatriate her to home country until she has had an interview or hearing on her expressed fear.

Regards,



**American Bar Association ProBAR**




www.abaprobar.org
www.americanbar.org



CONFIDENTIALITY STATEMENT: The information contained in this e-mail and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify the sender and permanently delete the e-mail and any attachments immediately. Thank you.

| | |
|---|---|
| **From:** | |
| **To:** | |
| **Cc:** | Laura Flores; Laura Pena; Lauren Fisher Flores; |
| **Subject:** | URGENT: Temporary Restraining Order Preventing Removal of Guatemalan Children |
| **Date:** | Sunday, August 31, 2025 4:45:55 AM |
| **Attachments:** | image.png |
| | image.png |
| | image.png |
| | image.png |
| | Fw__Activity_in_Case_1_25-cv-02942_L.G...TRO_Order.pdf |

Good evening,

Please be advised that a Temporary Restraining Order has been granted in a federal court case challenging the imminent removal of Guatemalan unaccompanied children. Please see the attached order. No children may be removed while the order is in place. Please inform ICE should they still be seeking to remove children.

If you have any questions, please contact Laura Flores, ABA Commission on Immigration Deputy Director of Legal Programs and Operations, ▇▇▇▇▇▇▇▇.

Thanks,



**American Bar Association ProBAR**



  

www.abaprobar.org
www.americanbar.org



CONFIDENTIALITY STATEMENT: The information contained in this e-mail and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify the sender and permanently delete the e-mail and any attachments immediately. Thank you.

| | |
|---|---|
| **From:** | E▇ |
| **To:** | ▇ristopher.cantu@acf.hhs.gov; ▇ |
| **Cc:** | Laura Pena; Lauren Fisher Flores; |
| **Subject:** | Re: Sunny Glenn New Day - Urgent Request for Legal Access to Guatemalan Children |
| **Date:** | Sunday, August 31, 2025 3:20:21 PM |
| **Attachments:** | image.png<br>image.png<br>L.G.M.L v. KRISTI NOEM, 1_25-cv-02942 – CourtListener.pdf |

Good Afternoon,

I am following up on our emails below with an updated order of the court in this matter. An updated Temporary Restraining Order has been issued confirming:

1. Motion for Temporary Restraining Order is Granted
2. Motion to Certify Class is Granted
3. The Court further ORDERS that the government shall not transfer, repatriate, remove, or otherwise facilitate the transport of any Plaintiff or member of the putative class from the United States for 14 days absent further Order of the Court.
4. The Court ORDERS that the Defendants cease any ongoing efforts to transfer, repatriate, remove, or otherwise facilitate the transport of any Plaintiff or member of the putative class from the United States.
5. The protected class is defined by the court as follows:
   all Guatemalan unaccompanied minors in Department of Health and Human Services Office of Refugee Resettlement custody as of 1:02 AM ET on August 31, 2025, the time of the filing of the Complaint, who are not subject to an executable final order of removal.

I have attached the order here. It is our understanding that any children who were picked up will be returned to the shelter. Please refrain from presenting the children for repatriation for the duration of the judge's order.

Thank you for your assistance. If you have questions, please do not hesitate to reach out to ▇▇.

Thank you,

▇



ABA
AMERICAN**BAR**ASSOCIATION
ProBAR | South Texas Pro Bono
Asylum Representation Project

ProBAR is a project of the

| American Bar Association | American Bar Association ProBAR |
|---|---|
| Donate to ProBAR<br>Join Our Team<br>Become an ABA Member | www.abaprobar.org<br>www.americanbar.org |

CONFIDENTIALITY STATEMENT:  The information contained in this e-mail and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify the sender and permanently delete the e-mail and any attachments immediately. Thank you.

🖶 Please consider the environment before printing this email.

**From:** ▮

**Sent:** Saturday, August 30, 2025 3:07 PM

**To:** ▮ ; kristopher.cantu@acf.hhs.gov <kristopher.cantu@acf.hhs.gov>

**Cc:** Laura Pena ▮ Lauren Fisher Flores ▮

**Subject:** Sunny Glenn New Day - Urgent Request for Legal Access to Guatemalan Children

Dear Shelter Partners,

Please review the attached letter and send to your program leadership. We will follow up with the request to meet with Guatemalan children in your care.

Best,



ProBAR is a project of the American Bar Association

**American Bar Association ProBAR**

Donate to ProBAR
Join Our Team
Become an ABA Member



**www.abaprobar.org**
**www.americanbar.org**

CONFIDENTIALITY STATEMENT:  The information contained in this e-mail and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify the sender and permanently delete the e-mail and any attachments immediately. Thank you.