# EXHIBIT E

## Declaration of Hon. A. Ashley Tabaddor (Ret.)

I, A. Ashley Tabaddor, declare as follows:

**Professional Background**

1. I am over the age of 18 and capable of making this declaration.

2. I served in the United States federal government for nearly three decades, including over fifteen years as an Immigration Judge with the Los Angeles Immigration Court (10/2005 to 1/2021), and four years as Chief Counsel of U.S. Citizenship and Immigration Services (USCIS). I retired from federal service on January 20, 2025.

3. During my tenure as an Immigration Judge, I volunteered to serve on the first dedicated **Unaccompanied Alien Children (UAC) docket** in the Los Angeles Immigration Court. This docket was created in response to the growing number of unaccompanied minors entering removal proceedings, particularly during the 2013–2014 period, when there was a significant increase in children arriving at the southern border.

4. The establishment of this docket highlighted the systemic challenge that unaccompanied minors were "getting lost" in the immigration court system due to the lack of structures specifically designed for their cases. The dedicated docket allowed judges, counsel, and child advocates to focus attention on this especially vulnerable population.

5. As part of this process, Immigration Judges worked closely with stakeholders, including legal orientation programs, pro bono attorneys, and child advocacy organizations. For a period of time, the Department of Justice provided training for Immigration Judges assigned to UAC dockets. There was also discussion of creating a supervisory immigration judge for vulnerable populations and issuing best practices guidance for cases involving children, though the latter initiative was never finalized. Policy memoranda did, however, recognize the distinct needs of children in immigration proceedings.

## Legal Framework for UACs in Immigration Court

6. Beyond the protections in the Trafficking Victims Protection Reauthorization Act, such as adjudication of asylum applications before USCIS in the first instance and voluntary departure at no cost, the Immigration and Nationality Act (INA) does not comprehensively contemplate the unique circumstances of unaccompanied minors navigating proceedings without parents or guardians.

7. Unlike state courts, immigration courts lack statutory authority to appoint guardians ad litem or counsel for children. Judges must rely on external sources of representation, such as pro bono attorneys or child advocates.

8. Within 8 C.F.R. §§ 1240.1-1240.70, which govern the conduct of removal proceedings, the only regulation in that directly addresses minors is 8 C.F.R. § 1240.10(c). This regulation recognizes that children under the age of 18 cannot concede to their own removability. Beyond that provision, the INA and regulations provide little specific guidance on how unaccompanied minors should be treated in proceedings.

## Forms of Relief Available to UACs

9. Unaccompanied minors may pursue forms of relief available under the INA, including asylum, withholding of removal, and protection under the Convention Against Torture (CAT).

10. A particularly important form of relief for children is **Special Immigrant Juvenile Status (SIJ)**. To qualify, a state juvenile or family court must issue an order finding that:

    a. The child has been abused, abandoned, or neglected by one or both parents;
    b. Reunification with that parent (or parents) is not viable; and

    c. It is not in the child's best interest to return to their country of nationality.

11. Where such a state court order exists, it is generally recognized by the immigration court and the Department of Homeland Security (DHS) that repatriation or voluntary departure is inconsistent with the findings of the state court. In my experience, I do not recall any instance in which a child with an SIJ order pursued voluntary departure. By that stage, the child is typically in the custody of a safe adult in the

United States and a state court in the United States has determined that returning the child abroad would not be in their best interests.

12. Voluntary departure, while available under statute, is rare for unaccompanied minors and requires careful scrutiny. Immigration Judges generally ensured that any such request was made with the advice of independent counsel and, where possible, with input from a child advocate.

13. When an unaccompanied minor applied for asylum or petitioned for SIJS, immigration judges sometimes administratively closed, terminated, or dismissed their removal proceedings as a docket management tool where the respondents appeared likely to win immigration relief before USCIS. Doing so did not mean they could be removed from the United States. In my experience, an immigration court would never close a case for purposes of removal, and in fact when a TVPRA or SIJS case was closed it was for the sole purpose of pursuing relief before USCIS.

## Cases Involving Parental Requests for Return

14. On rare occasions, a situation arose where a parent or guardian in the child's home country expressed a desire to have the child returned.

15. The standard practice in such cases was to ensure that the child had independent legal representation. Counsel, often working with child advocates, would investigate the circumstances of the proposed return, including whether the child would face danger, coercion, or undue pressure to abandon claims for relief in the United States.

16. A parent's request for repatriation alone was not sufficient to establish eligibility for voluntary departure. Immigration courts recognized the need to safeguard the child's independent rights and ensure compliance with statutory protections.

17. In the very rare instances where voluntary departure was ultimately requested and granted, only after investigations into the home environment and parental circumstances had been completed, the process was carefully and deliberately coordinated. Counsel for the child, government counsel, and the parent worked together to ensure that the child's travel and hand-off were arranged safely and smoothly.

**Conclusion**

18. Based on my experience, unaccompanied minors face unique and heightened challenges in navigating the immigration court system. While immigration judges are constrained by the INA, over time practices developed to provide additional safeguards, including specialized dockets, enhanced access to counsel, and attention to child welfare considerations.

19. In my professional judgment, any decision to repatriate a child based solely on a parent's request, without ensuring independent counsel, full procedural safeguards, and consideration of the child's best interests, would be inconsistent with the standard practices and protections afforded to unaccompanied minors in immigration proceedings.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 2nd day of September 2025, at ___5:02 pm PT___

_____
Hon. A. Ashley Tabaddor (Ret.)