# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| L.G.M.L., *et al.*,<br>                    Plaintiffs,<br><br>                    v.<br><br>Kristi Noem, *in her official capacity as Secretary of the U.S. Department of Homeland Security*, *et al.*<br>                    Defendants. | Case No. 1:25-cv-02942-TJK |

# DEFENDANTS' OPPOSITION TO
# PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTS AND PROCEDURAL HISTORY ......................................................................... 4

STANDARD OF REVIEW .................................................................................................. 6

ARGUMENT ......................................................................................................................... 7

    I.      Plaintiffs Are Not Likely To Succeed on the Merits. ............................................... 7

          A.      Plaintiffs' Statutory Arguments Misapprehend ORR's Authority. ............ 7

          B.      Plaintiffs' Due Process Claim Falls With Their Statutory Arguments. ..... 13

          C.      Plaintiffs' *Accardi* Claim Is Meritless. ..................................................... 17

          D.      Plaintiffs Are Unlikely to Succeed on the Merits Because Plaintiffs Are Not Properly Before the Court. ................................................................. 19

    II.     Plaintiffs Fail to Demonstrate an Irreparable Injury. ........................................... 19

    III.    The Balance of Equities and Public Interest Favor the Government. .................... 22

CONCLUSION .................................................................................................................... 23

**INTRODUCTION**

This case is uncomplicated, both legally and morally: where possible, unaccompanied alien children should be reunited with their parents or guardians. Their continued separation is a tragedy to be cured, not prolonged as Plaintiffs request classwide, regardless of a specific child's best interests. That is the theme that runs throughout the William Wilberforce Trafficking Victims Protection Reauthorization Act (TVPRA) and the transfer of statutory authority over unaccompanied alien children to HHS over 20 years ago as part of the Homeland Security Act. Those HHS authorities are broad, focused on achieving a result that is in the best interest of the child, and they operate independently of the law enforcement statutes that govern removal efforts of the Department of Homeland Security.

Here, HHS reviewed each child's case in order to make individualized determinations whether, for certain children from Guatemala, reunification with their parents was in each child's best interests. It then acted, in cooperation with the government of Guatemala, to reunify qualifying children with their parents without through years of removal proceedings before returning them to their parents. For each child HHS seeks to reunify with his or her parents in Guatemala, HHS has determined that the child does not have a credible fear claim or pending asylum case; has received assurances that the child will not be trafficked upon return to Guatemala; has determined that the child does not have indications of being a victim of trafficking or of abuse or neglect by a parent or guardian; and has not received an affirmative protest of the child's reunification with a parent in Guatemala from the child's attorney of record. Ex. A, Declaration of Angie Salazar ("Salazar Decl.") at ¶ 10.

Plaintiffs ignore those individualized determinations, as well as the history of the TVPRA and Congress's overarching goal to "develop policies and procedures to ensure that

unaccompanied alien children in the United States are safely repatriated to their country of nationality." 8 U.S.C. § 1232(a)(1). One tool for achieving that statutory purpose is HHS's unambiguous statutory authority to "reunit[e] unaccompanied alien children with a parent abroad in appropriate cases." 6 U.S.C. § 279(b)(1)(H). Plaintiffs would eviscerate this scheme that looks to the best interests of the child, in favor of continued, protracted U.S. government custody of unaccompanied alien children, prescribed classwide with no opportunity to opt out even for children who can safely reunite with their parents. Their theory is wrong and inconsistent with the governing statutes and HHS's unique role with respect to unaccompanied alien children in their custody.

The Court should deny a preliminary injunction because Plaintiffs are unlikely to prevail on any of their three merits arguments. First, Plaintiffs' argument that HHS lacked statutory authority fails. Title 6 gives HHS authority to reunite unaccompanied alien children (UACs) with their parents—separate from removal under Title 8—and Title 8 confirms the continued viability of that authority and its nature as a distinct pathway for protecting UACs outside Title 8 removal proceedings. *See* 6 U.S.C. § 279(b)(1)(H). 8 U.S.C. § 1232 prescribes "[s]pecial rules" specifically for reunification of UACs from "contiguous" countries with their parents, but it also gives HHS broader authority to develop general policies and procedures and operate pilot programs for reunification for UACs with their parents in *any* "country of nationality or last habitual residence." 8 U.S.C. § 1232(a)(1)-(2), (5). It does not take away that authority by using different language, "removal," to specify in the same section that HHS can *remove* a UAC only through Section 240 removal proceedings (as opposed to expedited removal proceedings). *Id.* § 1232(a)(5)(D). But even if every instance of transporting a UAC to another country were a "removal" under Title 8,

as Plaintiffs contend, that too would doom Plaintiffs' claim, because it would trigger Title 8's bar on classwide relief from removal. 8 U.S.C. § 1252(f)(1).

Second, Plaintiffs' due process argument fails with their statutory argument. Plaintiffs primarily argue that due process entitles them to the Title 8 procedures they view as applicable. But in this context, aliens are entitled only to the procedures established by statute—and as just explained, Title 8's procedures do not apply here. Even if Plaintiffs were entitled to *Mathews* balancing on their due process claim, the balance would not favor them. They fail to identify a protected liberty or property interest. They ignore the powerful interests favoring prompt parental reunification—not a Section 240 removal proceeding, which takes more than three years on average for UACs—when it is in the child's best interests in the view of the child's custodian following the custodian's individualized review. And they identify no risk of inaccurate determinations in favor of reunification, given HHS's notice to caregivers and attorneys and HHS's treatment of an affirmative objection by a child's attorney of record as disqualifying the child for reunification. Salazar Decl. ¶ 10.

Plaintiffs' *Accardi* claim likewise fails. Plaintiffs do not identify any applicable regulation with which the agencies have failed to comply. Last, and more broadly, all of Plaintiffs' claims fail because Plaintiffs are not properly before the Court at all. Federal Rule of Civil Procedure 17(c) provides that minors can litigate only through a guardian or next friend, and Plaintiffs fail to establish that they are suing through a proper next friend.

As for the non-merits factors, they likewise do not favor Plaintiffs. Plaintiffs cannot come close to establishing irreparable harm, let alone classwide irreparable harm, when HHS seeks to reunify only UACs that meet its rigorous criteria—a subset of the putative class—and just one named Plaintiff was set to depart on August 31. Instead, just the opposite is true: A classwide, no-

opt-out preliminary injunction would inflict irreparable harm on the UACs whose bests interests would be served by prompt reunification. And the public interest favors family reunification in appropriate cases, including in collaboration with foreign governments.

## FACTS AND PROCEDURAL HISTORY

### A.    Factual Background

The Office of Refugee Resettlement (ORR) within the Department of Health and Human Services (HHS) has responsibility "the care of unaccompanied alien children" in the United States. 6 U.S.C. § 279(a). As part of ORR's functions, it has responsibility for "reuniting unaccompanied alien children with a parent abroad in appropriate cases." *Id.* § 279(b)(1)(H). ORR has exercised this authority in the past, including to reunite UACs with parents in Mexico, the United Kingdom, and other countries. Salazar Decl. ¶ 8.

In July 2025, the Government of Guatemala, through its ambassador, requested that the United States reunify Guatemalan UACs in ORR custody with their parents in Guatemala. Salazar Decl. ¶ 3. In August 2025, Guatemala sent a diplomatic note stating that UACs who, either voluntarily or by judicial action, are returned to Guatemala, would be received safely by relevant government agencies for reunification with suitable parents or legal guardians. Salazar Decl. ¶¶ 6-7. In light of these communications, and to discharge its responsibility for parental reunification in appropriate cases, ORR consulted with other agencies to identify the governing legal standards and characteristics of UACs in its custody such as known histories of trafficking, credible fear or asylum claims, and other characteristics that would make a UAC ineligible for parental reunification. Salazar Decl. ¶ 4.

Following consultation, ORR determined that, for UACs found after an individualized assessment to have the following characteristics, it would be in the child's best interests to reunify with parents or legal guardians in Guatemala:

- Child is a national of Guatemala;
- Child does not have a parent or legal guardian in the United States who is sponsoring the child;
- Child has a parent or legal guardian in Guatemala;
- Child does not have credible fear claim or a pending asylum case;
- ORR is assured the child will not be trafficked upon their return;
- Child is medically cleared for travel;
- Child does not have indications of being a victim of trafficking;
- The child's attorney of record has not affirmatively protested the child's reunification with their parent (or legal guardian) in Guatemala; and,
- Child does not have indications of child abuse/neglect perpetrated by a parent/legal guardian.

Salazar Decl. ¶ 10. Based on these criteria and an individualized review of each case, ORR identified 327 Guatemalan UACs in its custody as appropriate for Title 6 reunification. Salazar Decl. ¶ 12.

Efforts to prepare and transport UACs for reunification began shortly after reunification was authorized on August 30, 2025, with flights scheduled to depart on August 31, 2025, at 10:45 a.m., for 76 UACs, all age 14 or older with a parent or guardian in Guatemala. Salazar Decl. ¶¶ 14, 24. Only one of the named Plaintiffs was scheduled to depart on August 31. Salazar Decl. ¶ 25.

UACs' care providers were notified of children in their care who had been identified for parental reunification in Guatemala, and care providers were directed to immediately disseminate notice to the relevant attorneys of record and child advocates. Salazar Decl. ¶¶ 14-15. HHS also promptly notified Acacia, the ORR-funded legal service provider, that certain Guatemalan UACs had been identified for parental reunification abroad, including a list of the children in ORR

custody who were identified as meeting ORR's criteria for reunification and the list of criteria that ORR considered. Salazar Decl. ¶¶ 20-21.

### B.    Procedural History

This suit was filed on August 31, 2025, purportedly on behalf of a group of unaccompanied alien children and at the behest of the Young Center for Immigrant Children's Rights (Young Center), which claims to be acting as the next friend of each Plaintiff. They simultaneously sought injunctive relief, claiming that the Secretary of HHS lacks statutory authority to reunify children with parents or legal guardians abroad and that such reunification with parents violates the Due Process Clause and the *Accardi* doctrine.

The same day, the Court entered a Minute Order, temporarily restraining for 14 days Defendants' "ongoing efforts to transfer, repatriate, remove, or otherwise facilitate the transport of any Plaintiff or member of the putative class from the United States." The Court identified the putative class subject to its order as "all Guatemalan unaccompanied minors in Department of Health and Human Services Office of Refugee Resettlement custody as of 1:02 AM on August 31, 2025, the time of the filing of the Complaint, who are not subject to an executable final order of removal." *Id*.

### STANDARD OF REVIEW

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The D.C. Circuit has reserved the question of whether a strong showing on one of the *Winter* factors

compensate for a weaker showing on another, despite expressing some skepticism on that point. *Sherley v. Sebelius*, 644 F.3d 388, 392–93 (D.C. Cir. 2011). Regardless, if the Court concludes that a claim fails as a matter of law—on a point of jurisdiction or merits—then a preliminary injunction is inappropriate. *See United States Ass'n of Reptile Keepers, Inc. v. Zinke*, 852 F.3d 1131, 1135 (D.C. Cir. 2017). Moreover, if the moving party fails to make a sufficient showing of irreparable injury, the Court may deny the request for preliminary injunctive relief without considering the other factors. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995).

## ARGUMENT

### I.    Plaintiffs Are Not Likely To Succeed on the Merits.

#### A.    Plaintiffs' Statutory Arguments Misapprehend ORR's Authority.

Plaintiffs' statutory arguments fail because they misapprehend the governing statutory scheme. HHS has longstanding statutory authority to reunify unaccompanied alien children (UACs) with their parents abroad. 6 U.S.C. § 279(b)(1)(H) authorizes the Department of Health and Human Services' Office of Refugee Resettlement ("ORR") to "reunit[e] unaccompanied alien children with a parent abroad in appropriate cases." That authority fits together harmoniously with the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA") and the Immigration and Nationality Act ("INA").

The key provision, 8 U.S.C. § 1232(a), authorizes reunification in two different ways for different categories of UACs. First, UACs from countries that are "contiguous with the United States" can be repatriated provided the children meet criteria specified in the statute. 8 U.S.C. § 1232(a)(2) (titled "Special rules for children from contiguous countries").

Second, UACs from other, noncontiguous countries can be reunified with parents abroad pursuant to "policies and procedures" developed by the relevant agencies, "[i]n order to enhance

the efforts of the United States to prevent trafficking in persons." *Id.* § 1232(a)(1). At least three aspects of the statute show that UACs from noncontiguous countries can, like UACs from contiguous countries, be reunited with their parents via repatriation. First, § 1232(a)(1) provides the general rule permitting repatriation to a UAC's "country of nationality or of last habitual residence," subject to "policies and procedures" developed by the agency in consultation with other relevant agencies, and § 1232(a)(2) provides "[s]pecial rules" specifically for repatriation of UACs from "contiguous" countries. It would make little sense to give in one subsection general authority to develop policies and procedures for repatriation to a UAC's "country of nationality or last habitual residence" while taking away in the next subsection authority to repatriate UACs except when a UAC is "a national or habitual resident of a country that is contiguous with the United States." 8 U.S.C. §§ 1232(a)(1)-(2). Second, underscoring this, § 1232(a)(3) provides that UACs "not described in paragraph (2)(A)"—that is, UACs from noncontiguous countries—should be "treated in accordance with subsection (b)," which in turn expressly recognizes HHS's reunification authority under "section 279 of title 6." 8 U.S.C. § 1232(b)(1). Third, § 1232(a)(5) provides for pilot programs to ensure repatriation of unaccompanied alien children with families, legal guardians, or sponsoring agencies in the UAC's "country of nationality or of last habitual residence," again—unlike in § 1232(a)(2)—without limitation to UACs from "a country that is contiguous with the United States," § 1232(a)(2).  In a nutshell: § 1232 recognizes HHS's Title 6 reunification authority and directs the relevant agencies to develop policies and procedures to support safe reunification of UACs from both contiguous and non-contiguous countries.

ORR exercises its statutory authority to reunify UACs with their parents abroad "in appropriate cases." 6 U.S.C. § 279(b)(1)(H). What is "appropriate" is a discretionary judgment for the agency to make. *See Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (no jurisdiction to

second-guess the agency's discretionary detention decision under the "appropriate" language within § 1231(g)(1)); *Avramenkov v. INS*, 99 F. Supp. 2d 210, 211 (D. Conn. 2000) (similar); *cf.* 8 U.S.C. § 1231(g)(1) (stating that DHS is mandated to "arrange for appropriate places of detention for aliens detained pending removal"). In making that determination, ORR evaluates and makes a judgment based upon the best interest of the child. *See* 6 U.S.C. § 279(b)(1)(B) (ORR must "ensure that the interests of the child are considered in decisions and actions relating to the care and custody of unaccompanied alien children").

HHS's reunification and repatriation authorities are distinct from removal under the INA and via the immigration system. That is evidenced by the reunification authority's separate placement in Title 6, not Title 8, and by Congress's choice in nearby paragraphs of a single statute, § 1232, to refer separately to "repatriat[ion]," §§ 1232(a)(1), (2)(C), (5)(A)–(C) and "removal," a term of art in immigration statutes, § 1232(a)(5)(D). Indeed, the primary purpose of these laws was to shift from requiring an immigration *enforcement* framework to a framework whereby ORR would work to reunify children with caregivers with the ultimate goal, when possible, to "safely repatriate[] [children] to their country of nationality." 8 U.S.C. § 1232(a)(1); *see* 154 Cong. Rec. S10886-87 (Dec. 10, 2008) (Sen. Feinstein) (explaining that "our Nation's response" to issues relating to unaccompanied alien children "has been unacceptable" because they "have too often languished in an unregulated immigration system" and "[t]his legislation also requires, whenever possible, family reunification or other appropriate placement in the best interest of the unaccompanied alien children").

Here, HHS acted well within its statutory authority by working with the relevant agencies to develop reticulated criteria to identify UACs for whom parental reunification is "appropriate" as in the UAC's best interests, 8 U.S.C. § 1232(a)(1), (3), (5), and conducting individualized

reviews of each Guatemalan UAC's records to identify UACs meeting those qualifications. Salazar Decl. ¶¶ 4, 10-13. ORR conducted relevant assessments of children and coordinated with other agencies to verify that other legal requirements were met (e.g., verifying with the Department of Homeland Security or Department of Justice, as relevant, that there were not pending any legal requirements as to ongoing asylum claims and requirements relating to removal proceedings were satisfied). *See* Salazar Decl. ¶ 12. It then exercised its Title 6 authority to reunify those UACs with their parents in Guatemala, after receiving information from Guatemala regarding the Guatemalan agencies that would be involved in their reception and that Guatemala would be prepared to receive the UACs in a safe and orderly manner, would reunify the UACs with suitable parents or legal guardians, and that the UACs would not be trafficked upon return. Salazar Decl. ¶¶ 7, 10-12. That is precisely ORR's statutory responsibility under 6 U.S.C. § 279(b)(1)(H).

Plaintiffs reach the opposite conclusion—that HHS has *no* reunification or repatriation authority for UACs from non-contiguous countries—only by reading "reunification" and "repatriation" to mean the same thing as the distinct statutory term "removal" and reading the TVPRA and INA to override HHS's Title 6 reunification authority and § 1232's continued recognition of that distinct reunification authority, in contravention of well-established principles of statutory interpretation including the material-variation canon, the anti-surplusage canon, and the principle that courts must read statutes harmoniously. *See Garland v. Aleman Gonzalez*, 596 U.S. 543, 560 (2022) ("[W]here Congress includes particular language in one section of a statute but omits it in another section ... it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion"); *Pulsifer v. United States*, 601 U.S. 124, 143 (2024) ("When a statutory construction thus renders an entire subparagraph meaningless, this Court has noted, the canon against surplusage applies with special force." (internal quotations

omitted)); *Epic Systems Corp. v. Lewis*, 584 U.S. 497, 510 (2018) (when a court is "confronted with two Acts of Congress allegedly touching on the same topic," the court must "strive to give effect to both.").

Plaintiffs fail to give a coherent account of the statutory scheme. Plaintiffs' primary argument is that all UACs must be placed in section 240 removal proceedings. Pls.' Mot. at 22–23 (relying on 8 U.S.C. § 1232(a)(5)(D)(i)). But that fails to account for the text, which directs section 240 removal proceedings only for UACs "sought to be *removed* by the *Department of Homeland Security*." 8 U.S.C. § 1232(a)(5)(D) (emphases added). That requirement means that DHS cannot place UACs in expedited removal proceedings; it does nothing to abridge *HHS*'s separate *reunification* authority. The same response accounts for Plaintiffs' next argument, that § 1232(a)(5)(D)(ii) government must permit all UACs to seek voluntary departure under 8 U.S.C. § 1229c. Pls.' Mot. at 23–24. Again, the same chapeau, applying the listed requirements only to UACs "sought to be removed by the Department of Homeland Security," 8 U.S.C. § 1232(a)(5)(D), applies to this provision, too.

Plaintiffs' third and fourth arguments are that the ORR's Title 6 reunification violates UACs' right to apply for asylum in a non-adversarial setting or seek other protections from torture and persecution. Pls.' Mot. at 24–25 (citing 8 U.S.C. § 1158(b)(3)(C)). But there is no conflict: ORR will not seek parental reunification for Guatemalan UACs with pending asylum or fear-based claims, and ORR's criteria screen out UACs whose attorney of record has affirmatively protested the child's reunification with a parent in Guatemala. Salazar Decl. ¶ 10.

More broadly, Plaintiffs' view of the statutory scheme plainly fails because the reunification authority in Title 6 and the reticulated provisions of § 1232(a) regarding when children can be "repatriated" to a contiguous or non-contiguous territory meaningless if, as

Plaintiffs contend, Title 8 removal proceedings and voluntary departure supplied the *only* sources of authority to physically return a UAC to another country or if repatriation authority were limited to contiguous countries. *See* Pls.' Mot. at 21–22, 25–26. The far better reading is that HHS retains authority to safely *reunify* UACs with parents abroad, as a distinct mechanism separate from *removal* by DHS under the INA.

Recent legislation further confirms the statutory authority to reunite UACs with parents abroad as a mechanism separate from Title 8 removal proceedings. Section 100051 of the One Big Beautiful Bill Act, Pub. L. No. 119-21, 139 Stat. 72, 385–87 (2025) (hereinafter, "BBB"), funds and similarly allows DHS to return specified UACs to their "country of nationality or country of last habitual residence." Subsection 8 provides for repatriation of qualifying UACs under 6 U.S.C. § 279, without the grant of voluntary departure or an executable removal order that Plaintiffs view as the only permissible basis for exercise of that authority. *See* Pls.' Mot. at 22–26. It provides:

> (A)  In general. Funding removal operations for specified unaccompanied alien children.
>
> (B)  Use of funds.  Amounts made available under this paragraph shall only be used for permitting a specified unaccompanied alien child to withdraw the application for admission of the child pursuant to section 235(a)(4) of the Immigration and Nationality Act (8 U.S.C. 1225(a)(4)).
>
> (C)  Definitions. In this paragraph:
>
>> (i) Specified unaccompanied alien child. The term "specified unaccompanied alien child" means an unaccompanied alien child (as defined in section 462(g) of the Homeland Security Act of 2002 (6 U.S.C. 279(g))) who the Secretary of Homeland Security determines on a case-by-case basis
>>
>>> (I) has been found by an immigration officer at a land border or port of entry of the United States and is inadmissible under the Immigration and Nationality Act (8 U.S.C. 1101 et seq.);

(II) has not been a victim of severe forms of trafficking in persons, and there is no credible evidence that such child is at risk of being trafficked upon return of the child to the child's country of nationality or country of last habitual residence; and

(III) does not have a fear of returning to the child's country of nationality or country of last habitual residence owing to a credible fear of persecution.

(ii) Severe forms of trafficking in persons. The term "severe forms of trafficking in persons" has the meaning given such term in section 103 of the Trafficking Victims Protection Act of 2000 (22 U.S.C. 7102).

BBB § 100051(8). The provision plainly authorizes Title 6 reunification for qualifying UACs from *any* country (not just contiguous countries), upon withdrawal of the UAC's application for admission (not a grant of voluntary departure), further confirming that Plaintiffs misread the statutory scheme.

Last, if Plaintiffs *were* correct that the challenged action was really a removal under Title 8, classwide preliminary relief would be unlawful on Plaintiffs' own theory. That is because 8 U.S.C. § 1252(f)(1) strips lower federal courts of "jurisdiction or authority to enjoin or restrain the operation of" certain provisions in Title 8, *id.*, including the provisions "governing the inspection, apprehension, examination, and removal of aliens," *Garland v. Aleman Gonzalez*, 596 U.S. 543, 549-50 (2022) (citing 8 U.S.C. §§ 1221-1232), on a classwide basis. So even if Plaintiffs' statutory arguments had merit, they would simply compel the conclusion that the Court still cannot enter "injunctive relief on behalf of an entire class of aliens." *Aleman Gonzalez*, 596 U.S. at 550-51.

### B.    Plaintiffs' Due Process Claim Falls With Their Statutory Arguments.

Plaintiffs' due process arguments depend on their view that Title 8's provisions for removal proceedings govern despite HHS's distinct reunification authority, so their arguments that due process requires HHS to comply with Title 8's procedures fall with their arguments that Title 8

procedures govern here as a statutory matter. Congress provided ORR with the distinct authority to assess if reunification with a parent abroad is "appropriate." 6 U.S.C. § 279(b)(1)(H). ORR made those determinations, and that is all that Congress, or the Due Process Clause, requires. *See Reno v. Flores*, 507 U.S. 292, 305 (1993) (in case involving children in immigration custody, explaining that "the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government"). ORR's exercise of its statutory authority was particularly appropriate because it does not seek to return any UACs who have fear-based claims or pending asylum claims. Salazar Decl. ¶ 10.

Separately, Plaintiffs' due process argument ignores the established law providing that aliens who have not yet been admitted into this country, and have not developed sufficient ties here, are only entitled to the procedures provided to them by Congress. *See, e.g.*, *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020) ("[A]n alien in respondent's position has only those rights regarding admission that Congress has provided by statute."); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned."); *Khushnood v. USCIS*, No. 21-cv-2166, 2022 WL 407152, at *6 (D.D.C. 2022) (Pan, J.) (discussing this same issue). Plaintiffs, who bear the burden of proof at this stage, never explain whether they—let alone all putative class members—have been admitted into the country and developed sufficient ties to have due process rights extending beyond the process Congress has provided by statute, so they cannot prevail on this claim.

Plaintiffs' invocation of special immigrant juvenile ("SIJ") status, or an application for SIJ status, changes nothing. Pls.' Mot. at 28–29. Plaintiffs do not attempt to square their argument—that they have a liberty or property interest in SIJ status or pursuit of SIJ status—with the Supreme

Court's emphasis that "'the Due Process Clause specially protects' only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). Plaintiffs point to no history or tradition because the history runs decisively in the opposite direction. *See id.* at 911–12 ("[T]he through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens."); *Flores*, 507 U.S. at 305–08 (holding that UACs have no due process right to be released to someone other than a close relative, nor to automatic review by an immigration judge). Even the cases Plaintiffs invoke conclude only that SIJ status "may" be enough to require more procedure. *See Osorio-Martinez v. Attorney General*, 893 F.3d 153 (3d Cir. 2018) (never determining whether recognize a liberty or property interest in SIJ status); *Joshua M. v. Barr*, 439 F. Supp. 3d 632, 679 (E.D. Va. 2020) (denying a motion to dismiss because plaintiff "may" have such an interest); *J.L. v. Cissna*, 374 F. Supp. 3d 855, 869 (N.D. Cal. 2019) (same).

Even if there were a liberty or property interest, *Mathews v. Eldridge* balancing does not apply in this posture and would not favor Plaintiffs in any event. 424 U.S. 319 (1976); *see, e.g.*, *Muñoz*, 602 U.S. at 916–17; *Nelson's Cabinetry, Inc. v. Blinken*, No. 24-cv-1335, 2025 WL 83027, at *10–11 (D.D.C. Jan. 13, 2025) (not engaging in any balancing analysis). Class treatment—or a classwide order—is not a viable means of contesting the process due to individual UACs with varying statuses and connections to the United States. *See Thuraissigiam*, 591 U.S. at 138-40; *Jennings v. Rodriguez*, 583 U.S. 281, 313-14 (2018) (questioning permissibility of class treatment for due process claims because "due process is flexible" and it "calls for such procedural protections as the particular situation demands"); Dkt. 23-4 at ¶¶ 25-32 (describing varying statuses and connections to the United States among a subset of Guatemalan UACs). And any

15

balancing inquiry must take account of the interests of other stakeholders, including parents and the government of Guatemala, which shares responsibility for the wellbeing of its minor citizens.

As for striking any balance, the Supreme Court has already explained in *Flores* that, for "narrowly channeled judgments involving children, where their interests conflict in varying degrees with the interests of others," so long as "certain minimum requirements of child care are met, the interests of the child may be subordinated to the interests . . . of the parents or guardians themselves," with no requirement for "an individualized hearing" on a particular agency determination about the child's placement. *Flores*, 507 U.S. at 304. HHS is charged with making the balance under the congressional authority to decide if reunification with a parent abroad is "appropriate." 6 U.S.C. § 279(b)(1)(H). This is the same sort of judgment HHS makes with respect to the release of children, *Flores*, 507 U.S. at 304, and due process does not demand pre-unification litigation regarding that assessment. When HHS has determined that parental reunification is in the best interests of an individual UAC, as it has here, Salazar Decl. ¶¶ 4, 10-11, there is a strong interest in promptly placing the child in that environment without the full Title 8 removal process, which currently takes an average of more than three years. Exec. Off. For Imm. Review Adjud. Statistics, *Median Unaccompanied Alien Child (UAC) Case Completion and Case Pending Time* (July 31, 2025), https://www.justice.gov/eoir/media/1344951/dl?inline.

That accords with the exceptionally strong parental interest in the care, custody, and control of their own children as "perhaps the oldest of the fundamental liberty interests[.]" *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality op.); *see also, e.g.*, *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978) ("the Due Process Clause would be offended [i]f a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best

interest." (internal quotation marks omitted)); *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) ("It is cardinal with us that the custody, care and nurture of the child reside first in the parents[.]").

Last, ORR determined which UACs qualify for reunification following individualized review of their cases. Salazar Decl. ¶¶ 10-11. It then promptly notified caregivers and counsel when the decision to reunify qualifying UACs had been made, requesting that each immediately notify it if any identified UAC did not meet the enumerated criteria. Salazar Decl. ¶¶ 14-15, 20-21. An objection to reunification by a UAC's attorney of record is a disqualification from reunification, under HHS's criteria. Salazar Decl. ¶ 10. Tellingly, Plaintiffs do not argue that ORR has failed to accurately assess whether *any* named Plaintiff, or even any putative class members at all, do not in fact meet ORR's criteria. *See* Pls.' Mot. 29–30.

Plaintiffs' reliance on *Trump v. J.G.G.*, 145 S. Ct. 1003 (2025), and their assertion that they "have an indisputable interest in avoiding summary expulsion," lack merit. Pls.' Mot. at 27. *J.G.G.* involved an entirely different statutory scheme and turned on the petitioners' right to judicial review regarding whether each petitioner was "in fact an alien enemy fourteen years of age or older." 145 S. Ct. at 1006. Even assuming that Title 8 applied here as Plaintiffs wrongly contend, *J.G.G.* did not—and could not—address due process in the Title 8 context. And *J.G.G.* did not involve the distinctive issues that dominate in the determination of the appropriate custodian of a UAC. And unlike in *J.G.G.*, there is no factual dispute whether the relevant statutes apply to the Plaintiffs, who are undisputedly UACs in HHS's custody. *See* 145 S. Ct. at 1006 (explaining how, "in this context, AEA detainees must receive notice after the date of this order that they are subject to removal under the Act" so that they may contest whether it applies to them).

### C.    Plaintiffs' *Accardi* Claim Is Meritless.

Plaintiffs last argue that HHS has violated its own regulations, triggering the doctrine articulated in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). *See* Pls.' Mot. at

31–35. Plaintiffs principally argue that the government has violated HHS's "Foundational Rule" regulation, 45 C.F.R. § 410; *Unaccompanied Children Program Foundational Rule*, 89 Fed. Reg. 34,384 (Apr. 30, 2024), which requires that ORR's program for UACs "provide[ a] safe and appropriate environment for unaccompanied children in ORR custody," *id.* at 34,385. In Plaintiffs' view, "removal interferes with ORR's obligations to release [UACs] to suitable caregivers in the United States." *Id.* at 34. That argument fails for the same reason Plaintiffs' statutory argument is mistaken: It ignores the distinction between removal and reunification. The argument also fails because the Foundational Rule expressly acknowledges and preserves HHS's reunification authority. 89 Fed. Reg. at 34,442–43 ("where appropriate, ORR may unite children with a parent abroad."). And the argument likewise fails because there is no conflict between (on the one hand) the Foundational Rule's determination that "placement with a vetted and approved family member or other vetted and approved sponsor is generally in the best interest of the child," *id.*, and (on the other hand) a determination that parental reunification is "appropriate" for certain specific UACs.

Plaintiffs' argument with respect to the procedural requirements of the Foundational Rule fares no better. Regulations regarding provision of information regarding legal services and remedies in Title 8 proceedings do not govern or limit the manner in which HHS exercises its reunification authority. Pls.' Mot. at 33 (citing 45 C.F.R. § 410.1302(c)(12); *id.* §§ 410.1309(a)(2)(B)(iv)-(v)). Neither do regulations regarding vetting and release to custodians or sponsors in the United States, which again address different procedures. *Id.* at 33–34. And the regulation Plaintiffs cite (at 34) regarding "transfer" of UACs, including a requirement of 48 hours of notice, applies to "Transfer of an unaccompanied child within the ORR care provider facility network," 45 C.F.R. § 410.1601 (title), so it too is plainly inapplicable to parental reunification

outside the ORR network. Plaintiffs identify no applicable regulation ORR failed to follow, so they are unlikely to succeed on their *Accardi* claim.

### D. Plaintiffs Are Unlikely to Succeed on the Merits Because Plaintiffs Are Not Properly Before the Court.

Separately, Plaintiffs' claims suffer, across the board, from insurmountable problems under Federal Rule of Civil Procedure 17(c), which governs litigation by or on behalf of minors. It requires that suit be brought by certain specified "representatives" such as a "general guardian" or by "a next friend or . . . guardian ad litem." The D.C. Circuit has held that to "determine whether a person may proceed as next friend to a minor, we examine the relationship between the proposed next friend and minor." *Muthana v. Pompeo*, 985 F.3d 893, 901-02 (D.C. Cir. 2021). There "must ordinarily be a significant relationship between the proposed next friend and minor." *Id*. A "close relative is a natural fit." *Id*.

Plaintiffs' Complaint cites the Young Center as the "next friend" for all of the Plaintiffs. But Plaintiffs provide no evidence that the Young Center has *any* role or relationship with the minor Plaintiffs in this case. *See* ECF 20-4 (Young Center Declaration). And it is notable that the many of the children who are Plaintiffs appear to be in regular contact with their parents in Guatemala, yet they do not endeavor to serve as next friends for their children. *See* ECF 20 (parental declarations); *Muthana*, 985 F.3d at 901. The Young Center also has not provided evidence of appointment as a guardian ad litem or any other formal role in the care of the Plaintiffs. *See* Fed. R. Civ. P. 17(c)(1). As such, the Young Center cannot properly serve as next friend for the minor Plaintiffs in this matter.

## II. Plaintiffs Fail to Demonstrate an Irreparable Injury.

The Court should also deny a preliminary injunction because Plaintiffs fail to show irreparable harm—and at minimum fail to show irreparable classwide harm—absent a preliminary

injunction. Plaintiffs must show two things to establish irreparable harm. First, "the harm must be 'certain and great,' 'actual and not theoretical,' and so 'imminen[t]' that there is a clear and present need for equitable relief to prevent irreparable harm.'" *League of Women Voters of United States v. Newby*, 838 F.3d 1, 7–8 (D.C. Cir. 2016) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). Second, "the harm 'must be beyond remediation.'" *Id.* Here, Plaintiffs make neither showing.

First, Plaintiffs fail to show an imminent risk of irreparable harm because they fail to establish that they are in the group of UACs HHS has concluded are eligible for parental reunification. According to HHS, only one of the named Plaintiffs was actually scheduled to depart on August 31. Salazar Decl. ¶ 25. Any Plaintiffs or putative class members that do not meet HHS's screening requirements for Title 6 reunification (which, to repeat, exclude UACs with indications of child abuse or neglect perpetrated by a parent or guardian, as well as UACs with a credible fear claim or a pending asylum case) do not face a prospect of Title 6 reunification. Salazar Decl. ¶ 10. Plaintiffs' own evidence reflects, moreover, that some Guatemalan UACs have pending asylum claims, and others have sought or are interested in seeking voluntary departure to reunite with their parents. Dkt. 20-4 at ¶¶ 26, 28. Given the lack of risk to many UACs—because ORR will not seek reunification for them—and the affirmative benefits of reunification for many other UACs, the Court should, at absolute most, limit any injunction to any specific UACs that the Court finds have supplied evidence sufficient to establish a chance that HHS seeks to reunify them with their parents despite a risk they will face harm upon reunification.

More broadly, Plaintiffs fail to demonstrate irreparable injury across the board, and they certainly fail to establish *classwide* irreparable harm that could support an injunction from which no class member could opt out. Plaintiffs argue that, if repatriated to Guatemala, they would face

irreparable injury from uncertainty about their living arrangements, worse conditions with their parents and stepparents, the possibility of not being permitted to attend school, potential future harassment and poor treatment by Guatemalan social services, and possible threats of crime and violence. *See*, *e.g.*, ECF Nos. 20-5 at ¶ 6, 20-8 at ¶ 7, 20-9 at ¶ 5, 20-10 at ¶ 6, 20-11 at ¶¶ 3-4, 20-15 at ¶ 5, and 20-21 at ¶ 4. But "[a] finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004). Plaintiffs cannot rely on the assertion that Guatemala is more dangerous than the United States, such that Guatemalan UACs should not be reunited with their parents in Guatemala, to satisfy their burden on a classwide basis, and they have no evidence of likely, nonspeculative classwide irreparable injury.

Likewise, none of Plaintiffs' claims of harm are beyond remediation. To the extent Plaintiffs' injury is their inability to be in the United States on their own, Plaintiffs provide no evidence that if they are repatriated to Guatemala now, they would be precluded from pursuing lawful temporary or permanent immigration pathways into the United States in the future. *See*, *e.g.* 8 U.S.C. § 1182(a)(9)(A) (inadmissibility triggered by "removal"); *id.* § 1182(a)(9)(B)(iii)(I) ("No period of time in which an alien is under 18 years of age shall be taken into account in determining the period of unlawful presence in the United States" for purposes of inadmissibility). And even if Plaintiffs' return to Guatemala were a Title 8 removal, removal from the United States is not a *per se* irreparable harm. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Plaintiffs' citation to *Huisha-Huisha v. Mayorkas*, 560 F. Supp. 3d 146, 172 (D.D.C. 2021) to support their claim of irreparable injury relating to "apply[ing] for humanitarian protection or other immigration relief," is unavailing. *See* ECF No 20-1 at 36. *Huisha-Huisha* involved

application of 42 U.S.C. § 265 authorizes the Surgeon General, in a public health emergency and in accordance with regulations approved by the President, to "prohibit, in whole or in part, the introduction of persons and property from such countries or places [into the United States] as he shall designate." 27 F.4th 718, 721 (D.C. Cir. 2022). Critically, here, unlike in *Huisha-Huisha*, ORR—the UACs' custodian—has made individualized determinations that parental reunification is in the best interest of each UAC it seeks to repatriate to Guatemala. *Huisha-Huisha* does not support Plaintiffs' claims of any irreparable injury.

Additionally, Plaintiffs claim that they have been irreparably injured because "[t]he events of August 31, 2025 show the imminence and severity of the harm Plaintiffs face." ECF No. 20-1 at 36. But "stress," "anxiety," and "feelings of fear" do not constitute irreparable injuries as a matter of law. *See, e.g.*, *See Am. Fed'n of Grain Millers (AFL-CIO), Loc. 3 v. Kellogg Co.*, No. K89-64 CA, 1989 WL 230574, at *2 (W.D. Mich. Nov. 3, 1989); *Sparks v. Russell*, No. 7:21CV00037, 2021 WL 4394260, at *1 (W.D. Va. Sept. 24, 2021).

## III.    The Balance of Equities and Public Interest Favor the Government.

The balance of equities and public interest factors "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435 (2009). A court "'should pay particular regard for the public consequences'" of injunctive relief. *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). Here, this factor weighs heavily in the Government's favor because "[c]ontrol over immigration is a sovereign prerogative." *El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742, 750 (9th Cir. 1992). And the public interest in enforcement of United States immigration laws is significant. *See United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58 (1976); *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981).

Moreover, family reunification, in appropriate cases, is in the public interest. Congress has provided ORR and DHS with the express authority to determine the appropriate circumstances and develop policies to safely return UACs to their home countries and reunite them with their families. *See* 6 U.S.C. § 279(b)(1)(H), 8 U.S.C. §§ 1232(a)(1), (a)(5)(A). Emphasizing this, Congress recently appropriated funds specifically to return qualifying UACs to their "country of nationality or country of last habitual residence." BBB § 100051(8). Granting Plaintiffs the extraordinary relief they seek will undermine the will of Congress and the Executive Branch's enforcement of our nation's immigration laws.

Finally, it serves the public interest for the U.S. Government to work with foreign governments to take the steps necessary to reunite minor alien children with their parents. The public interest especially disfavors classwide relief that would prevent UACs who *want* to promptly be reunified with their parents from the opportunity to promptly do so. The balance of the equities and public interest strongly favor the Government.

In any event, even if any injunctive relief were warranted here, it should be strictly limited to named Plaintiffs (as is explained in greater detail in Defendants' opposition to class certification). As to other unnamed class members, injunctive relief could have the perverse effect of thwarting, for years, the safe and appropriate reunification of children with parents or legal guardians. That result is inequitable, indefensible, and squarely opposed to the public interest. To the extent that this Court believes a preliminary injunction might be warranted as to any named Plaintiffs, relief should be limited to them alone.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' preliminary injunction motion in its entirety.

DATE: September 6, 2025                    Respectfully submitted,

                                          BRETT A. SHUMATE
                                          Assistant Attorney General

                                          DREW ENSIGN
                                          Deputy Assistant Attorney General

                                          AUGUST FLENTJE
                                          Special Counsel

                                          By: *s/ Sarah Welch*
                                          SARAH WELCH
                                          Counsel to the Assistant Attorney General
                                          United States Department of Justice
                                          Civil Division
                                          950 Pennsylvania Avenue NW
                                          Washington, DC 20530
                                          (202) 514-3180
                                          sarah.e.welch@usdoj.gov

                                          GLENN GIRDHARRY
                                          Acting Deputy Director
                                          Office of Immigration Litigation
                                          General Litigation and Appeals Section