IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| L.G.M.L., *et al.*,<br><br>    Plaintiffs, v.<br><br>Kristi Noem, *in her official capacity as Secretary of the U.S. Department of Homeland Security*, et al.<br><br>    Defendants. | Case No. 1:25-cv-02942-TJK |

### DECLARATION OF DAWNISHA M. HELLAND

Pursuant to 28 U.S.C. § 1746, I, Dawnisha M. Helland, declare that, to the best of my knowledge, information, and belief, the following is true and correct:

1. I am the Deputy Assistant Director for Juvenile and Family Management (JFMD), Non-Detained Management Division, Enforcement and Removal Operations (ERO), U.S. Immigration and Customs Enforcement (ICE), U.S. Department of Homeland Security (DHS) in Washington, D.C.  I oversee all ICE national juvenile and family custody programs.

2. I have been employed by ICE ERO since 2013. Prior to working for ICE ERO, I served in the United States Army as a Human Intelligence Collector/French linguist, and U.S. Customs and Border Protection (CBP) as a Border Patrol Agent.

3. I am responsible for leading a dedicated, high-level operational division created to oversee immigration matters related to unaccompanied alien children (UAC), young

adults, and family units (FAMU), and developing and implementing goals, policies, procedures, and operational plans that are sensitive to this population's vulnerabilities and needs.

4. I am familiar with the allegations made by Plaintiffs in the instant lawsuit regarding repatriation efforts of certain Guatemalan UACs.

5. I provide this declaration based on my personal knowledge, reasonable inquiry, and information obtained from various records and other DHS and ICE employees in the regular course of business.

6. In May of 2025, the Office of Refugee Resettlement (ORR) within Department of Health and Human Services (HHS) consulted with ICE ERO concerning a request from the Guatemalan Government to reunify UACs in ORR custody with their parents or legal guardians in Guatemala.

7. ORR provided ICE ERO with a list of Guatemalan UACs in their care who were determined by ORR to be eligible for reunification with their parents or legal guardians in Guatemala under ORR's unique authorities.

8. To verify whether the children on the list were UACs, JFMD compared the list of Guatemalan UACs in ORR's care against available data in DHS systems. Specifically, JFMD reviewed detailed information concerning the child's initial entry or attempted entry into the United States. The initial encounter details demonstrate whether each UAC had been encountered by an immigration officer and thereafter determined to be inadmissible to the United States under the Immigration and Nationality Act (INA).

9. Although ICE ERO did not conduct any trafficking screenings on any of the children on the list, ICE ERO was advised that numerous trafficking screenings were conducted for

each of the UACs. The information inputted by CBP officers or agents at the time of the child's initial encounter includes trafficking screenings. In addition, ORR assured ICE ERO that it conducts a trafficking screening after children are placed in its care.

10. Once determined to be UACs as defined under 6 U.S.C. § 279(g)(2), JFMD reviewed all available systems and records to determine whether the UAC filed an application for asylum or withholding of removal under the INA or regulations implementing Article 3 of the Convention Against Torture (Form I-589) or had requested protective status, to include requesting protection as a victim of human trafficking (T-Visa) or as a victim of criminal activity in the United States (U-Visa). Importantly, any UAC who filed an immigration application or petition, whether protective in nature or not, to include the filing of an application for an employment authorization document (Form I-765), was excluded from the list of children eligible for reunification with their parents or legal guardians.

11. In addition to screening cases for any victim-based immigration benefit applications (U and T Visas), JFMD reviewed DHS systems to ensure that there were no expressions of fear of return to their home country in any encounters with DHS officers or agents. Additionally, JFMD coordinated closely with U.S. Citizenship and Immigration Services (USCIS) to determine whether any of the Guatemalan UACs in ORR's care had expressed fear. Further, ICE reviewed both DHS systems and the immigration court case management systems maintained by the Department of Justice's Executive Office for Immigration Review to verify whether any Guatemalan UAC on the list had expressed fear of return to their home country during any immigration court proceedings or had filed any applications for protection or relief from removal from the United States

with the immigration court, if applicable. Lastly, ICE provided USCIS with the list of reunification-eligible Guatemalan UACs to determine whether any of the UACs were class members of *J.O.P. v. DHS*. Any potential *J.O.P.* class members, as determined by USCIS, were removed from the final list of reunification-eligible UACs. This review by USCIS occurred twice, the last review taking place one day prior to ORR initiating reunification of the eligible Guatemalan UACs.

12. While ICE ERO supported ORR's repatriation efforts of certain Guatemalan UACs by conducting the reviews detailed above, this effort in no way involved the use of ICE ERO's authorities to effect a removal from the United States pursuant to an administratively final order of removal. ICE ERO further supported ORR on a reimbursable basis through an inter-agency agreement to provide transportation services for certain Guatemalan UACs eligible for reunification with their parents or legal guardians.

Executed on this 8th day of September, 2025.

_____
Dawnisha Helland
Juvenile Coordinator
Deputy Assistant Director for Custody Management
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security