# EXHIBIT C

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| L.G.M.L., *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　-against-<br><br>KRISTI NOEM, in her official capacity as Secretary of the U.S. Department of Homeland Security, *et al.*,<br><br>　　　　　Defendants. | Case No. 25-cv-2942-TJK<br><br>**DECLARATION OF JENNIFER NAGDA IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

　　　　I, JENNIFER NAGDA, hereby declare under penalty of perjury pursuant to 28 U.S.C. section 1746, as follows:

　　　　1.　　I serve as Chief Program Officer for the Young Center for Immigrant Children's Rights (the "Young Center") and submit this declaration in support of plaintiffs' motion for a preliminary injunction.

　　　　2.　　I graduated from law school in 2004 and am licensed to practice law in Illinois. I have been employed with the Young Center since 2008 in various roles including Child Advocate, staff attorney, and policy director. During that time, I have held appointments as a lecturer-in-law and adjunct faculty at the University of Chicago School of Law and the University of Pennsylvania Law School, respectively. I was appointed to Department of Homeland Security Secretary Jeh Johnson's Federal Advisory Committee on Family Residential Centers and recently completed a three-year term as a Commissioner on the American Bar Association's Commission on Youth at Risk. I staffed the Subcommittee on Best Interests of the

Interagency Working Group on Unaccompanied Children between 2012 and 2016, have coauthored articles including "Best Interests of the Child Standard: Bringing Common Sense to Immigration Decisions" published in 2015 by First Focus on Children, and testified before the United States House of Representatives Committee on Oversight and Reform.

3. I am familiar with the statutory framework governing the treatment of unaccompanied immigrant children, including the Trafficking Victims Protection Reauthorization Act (TVPRA), the Flores Settlement Agreement, and the Homeland Security Act of 2002. I am familiar with ORR's obligation to place children in the least restrictive setting that is in their best interest and with federal regulations that require consideration of a child's expressed wishes, consistent with their age and maturity, in best interests determinations. Finally, I am deeply familiar with the role of the Child Advocate as set forth in statute, regulation, and policy; the generally-accepted and regulatory criteria for evaluating a child's best interests; and the need for children separated from their parents, legal guardians or trusted adults to have an adult at their side to explain, advise, and support them in complex legal proceedings that impact their present and future.

4. The Young Center is a registered 501(c)(3) organization based in Chicago, Illinois with programs in nine additional locations: Phoenix, Arizona; Los Angeles, California; Grand Rapids, Michigan; New York, New York; New Jersey; Harlingen, Texas; Houston, Texas; San Antonio, Texas; and Washington, D.C. The Young Center was founded in 2004 as an ORR pilot project to create a model for providing independent Child Advocates, akin to best interests guardians *ad litem*, for child trafficking victims and other vulnerable unaccompanied immigrant children. The role of the Child Advocate was codified in the Trafficking Victims Protection Reauthorization Act of 2008, 8 U.S.C. § 1232(c)(6)(A).

2

5. Since its founding, the Young Center, through staff and volunteers, has served as the independent Child Advocate for more than 7,000 children in government custody. The Young Center is the only organization authorized by ORR to serve as Child Advocate for children in ORR's custody and care.

6. Young Center attorneys and social workers are appointed as Child Advocates alongside trained, bilingual volunteers to particularly vulnerable unaccompanied and separated children. The role of the Child Advocate is to determine and advocate for the best interests of children on matters related to a child's custody, placement, transfer, reunification with family or release to another sponsor, access to services, immigration case, and repatriation, where appropriate.

7. Consistent with well-established principles of child protection, as recognized by the Departments of Homeland Security, Health and Human Services, Justice, and State in the Subcommittee on Best Interests of the Interagency Working Group on Unaccompanied and Separated Children's 2016 report *Framework for Considering the Best Interests of Unaccompanied Children*, a child's best interests are evaluated by considering the child's safety and well-being, expressed wishes considering their age and maturity, health, family integrity, liberty, development, and identity.

8. In order to identify the best interests of an individual child, Child Advocates meet regularly—in most cases, weekly—with the children to whom they are appointed. Visits are often conducted by volunteers who speak the child's language or share aspects of the child's identity. Those staff and volunteers spend weeks learning the child's story and understanding their wishes, so that trained staff can develop recommendations about what course of action by government officials will be in that child's best interests.

9. Child Advocates also gather information about the child's history from adults who have relevant information about the child, including parents and other adult family members, whether in the United States or in the child's country of origin. It also includes speaking with the child's counsel (when the child gives consent) to understand whether the child may be eligible for relief from removal through protections including, but not limited to, asylum or Special Immigrant Juvenile Status. It also includes communication with federal agencies with insight into the child's needs, such as the Office on Trafficking in Persons (OTIP), which designates some unaccompanied children as eligible for benefits as survivors of trafficking.

10. The Young Center has also served as "next friend" to child plaintiffs in the class action litigation *J.O.P., et al. v. Department of Homeland Security, et al.*, No. 19-CV-01944-SAG (D. Md. Nov. 25, 2024) (order granting final approval of settlement agreement).

11. In my work as a Child Advocate and supervisor of Child Advocates, I have been appointed to and supported cases where children sought and won asylum and protection as trafficking survivors as well as cases where children fled familial violence and were granted Special immigrant Juvenile Status after a court determined it was not in the child's best interests to return to a parent in home country. I have witnessed children's ability to share histories of violence, persecution, injury, and deprivation—and to do so repeatedly for lawyers, child advocates, judges, and immigration officials. For this reason, in establishing the Young Center's paradigm for evaluating best interests, we made the child's wishes a primary consideration, on par with a child's right to safety, to ensure that a Child Advocate does not substitute their judgment for a child absent imminent danger to the child.

12. The Office of Refugee Resettlement (ORR) has appointed the Young Center as independent Child Advocate to each of the named plaintiffs. The Young Center is also appointed

to putative class member J.J.T.S. and many more putative class members. In these cases, the appointed Child Advocates meet regularly with the children in the facilities where they are in federal custody. This individualized time with children allows Child Advocates to understand each child's wishes—a bedrock principle of any best interests analysis—knowing that their wishes may change over time and as they learn new information. In each case, the Child Advocates will also engage in the activities set forth in paragraph 8, from fact-gathering to best interests advocacy specific to each case.

13. By definition, unaccompanied children in ORR are separated from their parents or legal guardians. They are also separated from other trusted adults who have cared for them and assisted them with important decisions. Until June 2023, children in ORR custody faced significant but arbitrary restrictions in their ability to speak with family members whether in home country or in the United States. Moreover, family members in the U.S. who seek to sponsor children's release from ORR custody often fear arrest, detention, and deportation by presenting themselves to ORR as sponsors, a fear that has become more acute in the current environment, further limiting the ability of children to communicate openly with family members as they seek both release from ORR and relief from removal before DOJ and USCIS.

14. The role of the TVPRA Independent Child Advocate was modeled in part on the concept of guardians *ad litem* or best interests advocates appointed to children in other situations where their parent or legal guardian is unavailable or unable to advocate for the child's best interests. For this reason, Young Center Child Advocates provide best interests determinations (BIDs) to a wide range of stakeholders on a variety of issues. For example, Child Advocates provide BIDs to ORR to contextualize a child's behavior and explain why transfer to a more restrictive facility is not in the best interests of a child with a disability or engaging in behavior

arising from an un-treated trauma history. Similarly, Child Advocates provide BIDs to immigration judges to secure a toddler's absence from a routine three-hour hearing or to help a judge understand why a continuance is in the best interests of a child with limited mental capacity who has yet to retain counsel.

15. ORR has the power to make decisions both favorable and adverse to a child's interest, from something as simple as a child's ability to participate in a field trip to critical issues like release to the child's preferred family member or transfer to a long-term foster care facility. In this way, ORR, like other federal agencies with the ability to make decisions about the child's conditions of custody, release from custody, and permanency (relief from removal in the US), requires the assistance of statutory Child Advocates to provide independent determinations about each child's best interests.

16. Since developing the Child Advocate model as a pilot project of ORR beginning in 2004, and then becoming the statutorily-appointed Child Advocate after passage of the 2008 TVPRA, the Young Center has become nationally recognized for its expertise on serving as independent Child Advocate for unaccompanied children in ORR custody. Our staff are frequently asked to speak about this unique role, have published articles about the need for best interests advocacy for unaccompanied children and even testified before Congress about our best interests advocacy on behalf of unaccompanied children.

17. In 2012-2013, the Young Center was appointed as Child Advocate to an infant placed in ORR custody. The infant was the subject of federal court litigation challenging the child's adoption. The Young Center's Executive Director, Maria Woltjen, provided a best interests recommendation to the federal judge who was considering the legality of the adoption

and appropriate placement of the child in the case of *Duquet v. Napolitano*, No. 12 C 9315 (N.D. Il.).

18. Similar to the role of Child Advocate, a "next friend" can assist a child in understanding complex legal proceedings and making recommendations as to whether certain decisions—such as proposed settlement agreements—are in the best interests of an individual child. To the extent that an individual removal proceeding specific to the facts and law applicable to a specific child necessitates the involvement of a Child Advocate, federal class actions are even more complex and have the ability to impact different children in different ways.

19. Whether or not appointed as Child Advocate, the Young Center's experience in serving as Child Advocate and next friend will allow us to help the child plaintiffs in the proposed class to understand the proceedings and also to identify relevant issues for class counsel as it represents the full class, including but not limited to whether class counsel needs to consult with a wider range of differently-situated plaintiffs in considering issues such as terms of any settlement.

20. In my experience, children in ORR custody are not reunified with parents or other family members who reside outside of the United States without significant advocacy by counsel and Child Advocates and the involvement of an immigration judge.

21. When we are appointed to children in ORR custody who wish to return to home country, we engage in fact gathering that often includes a safe repatriation assessment in the child's home country in partnership with organizations based in that country. We then engage in a best interests analysis before submitting a BID to agencies involved in the child's return. Prior to return, in almost all cases, children appear in immigration court, represented by an attorney, to request voluntary departure from an immigration judge who also considers the Child Advocate's

BID. In some cases, the attorney works with the Department of Homeland Security to effectuate a process in which the child is permitted to withdraw their application for admission in order to return. In each instance, for days and weeks before the child's return, there is a legal process involving agencies outside of ORR who approve the child's return and subsequent work by the Child Advocate to secure arrangements for the child's safe repatriation.

    I declare under penalty of perjury that the foregoing is true and correct. Executed on September 8, 2025.

                                                                                  Jennifer Nagda