# EXHIBIT F

## DECLARATION OF AIMEE KOROLEV

I, Aimee Korolev, pursuant to 28 U.S.C. § 1746, declare:

1. I am the Deputy Director of the South Texas Pro Bono Asylum Representation Project (ProBAR), a project of the American Bar Association. ProBAR was founded in 1989 as a pro bono project to provide access to justice and due process to detained migrants and asylum seekers in the Rio Grande Valley region of South Texas. Today, ProBAR provides pro bono legal services to immigrant adults, children, and families with a specialized focus on detained unaccompanied children in the Rio Grande Valley. ProBAR provides legal services at 22 shelters for unaccompanied children in the Rio Grande Valley and Corpus Christi regions.
2. I have worked in the field of humanitarian immigration for over 14 years, 13 as a practicing immigration attorney. My career has focused on indigent families, children, and adults feeling violence, abuse, and persecution in their home counties and in the United States. As part of my work at ProBAR over that past four years, I help to oversee our legal services to immigrant children detained in federal government custody.
3. I make this declaration based on personal knowledge and information made known to me in the course of my professional experience.
4. I am concerned about the legal protections and safety of ProBAR's clients and prospective clients who have been designated as unaccompanied children in the custody the Office of Refugee and Resettlement (ORR). In addition to targeting Guatemalan children in ORR care for expedited repatriation flights, I fear the Government will now target all children in care, including those from Honduras and El Salvador.
5. On September 5, 2025, the Acacia Center for Justice notified ProBAR that Honduran children in ORR custody may face imminent removal, potentially this weekend, and that Salvadoran children may also be targeted for removal.
6. To date, ProBAR has 110 Honduran clients in ORR custody in its service region and has screened all clients for relief from removal options. Of the 110 Honduran clients in ORR custody, 19 clients appear to have had their hearings removed from the Executive Office of Immigration Review (EOIR) docket. The automated system now states that there "are no future hearings" in those cases. For one client, on September 4, 2025, the EOIR system showed a court date in October, but when ProBAR staff checked the EOIR system the following day, September 5, 2025, it stated no future hearing dates.
7. ProBAR has approximately 22 Salvadoran clients and potential clients in ORR custody in its service region who have been screened for relief from removal options. Four of the 22 children appear to have had their hearings removed from the EOIR docket, similarly showing "no future hearing dates." I provided a legal consultation to one ProBAR client on September 5, 2025, whose hearing had been removed from the docket. She had no idea that she had a hearing that was subsequently removed from the docket until we met. She remains anxious to file asylum relief because she fears returning to El Salvador.

8. I am worried that the removal of the hearings from the court docket is a signal that these children could face imminent removal. This was what the ProBAR team observed one week ago when the Government attempted to expeditiously repatriate Guatemalan children overnight despite the fact that they had pending cases before EOIR. At that time, seven of ProBAR's 14 Guatemalan clients had their cases removed from the EOIR docket without notice.
9. September 2 through 4, I along with my ProBAR colleagues met with the Guatemalan children returned to ORR from the failed repatriation flights. On September 2, I participated in a Know Your Rights Session with approximately 51 children who were on the repatriation flight.
10. I personally provided legal consultations to two Guatemalan children that were stuck on the plane awaiting repatriation. They reported that they were confused, scared, and unaware of why they were being placed on flights back to Guatemala. Both of the children had traveled from San Antonio and had faced nearly 24 hours of uncertainty. One child reported that he was not aware he was being deported to Guatemala until another child told him on the plane, nearly 12 hours after he had been awakened in the dead of the night.
11. ProBAR staff spoke with each child at length, and the accounts of their traumatic experiences include being woken in the middle of the night, difficulty breathing, sadness, confusion, fear, nervousness, and lack of sleep. Other children said prayers for their safety, fearing what might happen to them if they were forced to return to Guatemala. One child reported having trouble sleeping after the experience, fearing he will be woken again and placed on another flight back to Guatemala. All of the children had questions about what might happen to them if the temporary order expires.
12. The Honduran and Salvadoran children we spoke to this week are also scared for their safety. I fear that the Honduran and Salvadoran children as well as all other nationalities in ORR custody could face the same traumatic circumstances. They could be returned to their countries of origin without resources or protection.
13. Based on my 13 years as an immigration attorney, I believe these facts are indicators of the imminent removal of ProBAR's Honduran and Salvadoran clients and prospective clients as well as all children in ORR custody.

*Aimee Korolev*
_____
Signature

September 6, 2025
_____
Date