IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

L.G.M.L, *et al.*

　Plaintiffs,

v.

Kristi NOEM, *et al.*

　Defendants.

Case No.: 25-cv-2942

**DECLARATION OF MARION DONOVAN-KALOUST IN SUPPORT OF PLAINTIFFS' REPLY BRIEF**

　　I, Marion Donovan-Kaloust, declare under penalty of perjury that the following is true and correct pursuant to 28 USC 1746.

1. My name is Marion ("Mickey") Donovan-Kaloust.  I make this declaration based on personal knowledge and a review of records related to my position at Immigrant Defenders Law Center ("ImmDef").

2. I am Director of Legal Services of the Children's Representation Project ("CRP") at ImmDef, where I have been employed as an attorney for nearly ten years.  ImmDef is a non-profit organization incorporated in California and based in Los Angeles, with additional offices in Riverside, Santa Ana, and San Diego, California, that serves immigrants and asylum seekers throughout Southern California and across the U.S.-Mexico border in Tijuana, Mexico. It is the largest removal defense nonprofit in Southern California. ImmDef's mission is to provide immigration services through a universal representation model to ensure that no person face an unjust immigration system alone.  ImmDef's CRP team provides direct representation and legal services to unaccompanied children facing removal proceedings throughout Southern California.  We provide Know Your Rights presentations, legal screenings and full-scope representation to children detained in Southern California Office of Refugee e provide Know Your Rights presentations, legal screenings and full-scope

representation to children detained in Southern California Office of Refugee Resettlement ("ORR") facilities, as well as provide *pro bono* representation to unaccompanied children who have been released from ORR facilities and are living with sponsors in Southern California as they go through their removal proceedings. We appear as *pro bono* attorney of record for children on Los Angeles Area detained juvenile dockets, as well as serving as Friend of Court accompanying unrepresented detained children. We have served these roles since our founding in 2015. ImmDef provides legal services to hundreds of unaccompanied children every year.

3. In recent weeks and months, ImmDef has become aware that there appears to be some initiative to pressure detained unaccompanied children to accept voluntary departure or to otherwise be repatriated. We have received no official or formal communication regarding a policy to this effect, but it appears that some coordination has been ongoing given the events that I outline below.

4. On or about August 11, 2025, at least two Guatemalan ImmDef clients reached out to their attorneys expressing concern that someone claiming to be from the Guatemalan government had reached out to their families in Guatemala and telling them to prepare for the children's return to Guatemala. The children expressed fear that they would be forced to return against their wishes.

5. On August 18, 2025, ImmDef attorneys representing six Guatemalan children received emails from an attorney with the Immigration and Customs Enforcement ("ICE") Office of the Principal Legal Advisor ("OPLA") Cinthia Rivera stating that she had been made aware the children wished to pursue voluntary departure, and in some cases, offering to file a stipulated joint motion for voluntary departure. Two of the children were children who had indicated that their families had been contacted regarding their return. ImmDef reached out to Ms. Rivera for clarification and she stated that she had received a list of children flagged as wanting voluntary departure from her superior, Norman Parkhurst, and that she had been instructed to reach out to

the children's attorneys to confirm their wishes and proceed with facilitating their voluntary departure as appropriate. ImmDef immediately reached out to each of the six clients to confirm their wishes. Each stated that they did not want voluntary departure, and further, they had not expressed a desire to pursue voluntary departure to anyone. We further reached out to the Office of Refugee Resettlement ("ORR") subcontracted facilities where the children were housed to ask whether they had notified anyone of the children's purported wish for voluntary departure and to remind them to reach out to a child's attorney if a child expresses interest in voluntary departure. It is key that children receive full consultation and advice before pursuing voluntary departure. Leadership at each subcontracted facility denied that they had provided any such information to ICE or to ORR and some expressed concern because they knew the children *not* to be interested in voluntary departure.

6. Also on August 18, 2025, ImmDef staff reached out to Mr. Parkhurst to inquire where he had received the purported information that these six Guatemalan children wanted voluntary departure and to affirm that they did not indeed want to pursue voluntary departure, but rather wished to pursue relief from removal as is their right under the Trafficking Victims Protection Reauthorization Act. Mr. Parkhurst advised that ORR had provided the list of children purportedly interested in voluntary departure, but that he did not know who at ORR had done so.

7. I declare under penalty of perjury that the foregoing is true and correct.

Riverside, CA

Dated: September 7, 2025

By: _____
Marion Donovan-Kaloust