**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| L.G.M.L., *et al.*, <br><br>      *Plaintiffs*, <br><br> v. <br><br> KRISTI NOEM, *et al.*, <br><br>      *Defendants*. | Case No.: 25-cv-2942-TJK |

## <u>REPLY BRIEF IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PROVISIONAL CLASS CERTIFICATION</u>

## TABLE OF CONTENTS

Page(s)

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 3

I.    The Court Should Certify the Class Now, But Need Not Do So to Grant Class-Wide Relief  3

II.    Plaintiffs Satisfy All of Rule 23(a)'s Prerequisites ............................................. 4

   A.    The Class Is Sufficiently Numerous ............................................................. 4

   B.    The Class Has At Least One Common Issue of Law or Fact ........................................ 7

   C.    The Claims of the Class Representatives are Typical of the Class ............................... 12

   D.    Plaintiffs Are Adequate Class Representatives ................................................ 14

III.    The Class Should be Certified as a Rule 23(b)(2) Class........................................ 19

IV.    The Court May Modify the Class Definition..................................................... 19

CONCLUSION ....................................................................................................... 24

## INTRODUCTION

Defendants' opposition to class certification raises numerous arguments, challenging both Rule 23(a)'s prerequisites and Rule 23(b)(2)'s standard.[1] These arguments are meritless, and largely rely on several mistaken premises repeated throughout the brief.

*First*, this litigation is about the process that Defendants must follow before they expel a child from the United States, not the ultimate outcome that must be reached for any particular child. It is not about denying children who want to be reunited with their parents the opportunity to do so. To the contrary, federal law is clear that any child who wishes can opt to request voluntary departure to their home country at no cost, and nothing about this lawsuit prevents a child from being able to do so in his or her pending immigration case. *See* 8 U.S.C. §§ 1229c, 1232(c)(5)(D)(ii). What federal law—both statutory and constitutional—*does* prohibit is Defendants making that choice for the child without providing the process required by the Constitution, by Congress, and by the agencies' own rules.  Determining what process Defendants must follow before expelling children from the country is a question that is readily addressed on a class-wide basis.

*Second*, Defendants' repeated protestations that they alone are acting in the best interests of the child is belied by the clandestine nature of their actions to date: waking children up in the middle of the night, without any advance warning, without notifying their attorneys, and attempting to spirit them out of the country before any court could intervene. The traumatic events of Labor Day weekend have terrorized not only the children taken from their beds, *see* Decl. of H.D.C.R. ¶ 7 (child hospitalized for three days after attempted expulsion, declaring they "suffered so much" that they "will never forget" the event) (Exhibit A), but also other

---

[1] Defendants do not challenge the adequacy of class counsel under Rule 23(g). Plaintiffs withdraw their request for class certification under Rule 23(b)(1).

similarly situated children who now must go to sleep every night in fear that something similar will happen to them. Class-wide protection is needed to reassure all members of the class that such events will not happen again.

*Third*, Defendants repeatedly ask the Court to inquire whether "individual issues predominate," rehashing similar arguments throughout their brief to claim that class-wide treatment is inappropriate because there *might* be differences among class members. *E.g.*, Defs.' Opp. to Class Cert. 9 ("Defs.' Opp."), ECF No. 36 (arguing class certification is inappropriate because "individual issues predominate"); *id.* at 5 ("individual issues dominate"). This is the wrong standard. Although Rule 23(b)(3) provides for a class when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members," this provision is not relied on by Plaintiffs here. Instead, Plaintiffs seek a class under Rule 23(b)(2), which does not attempt to compare the relevant weight of individual and class-wide issues, and instead applies where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Courts regularly certify classes of unaccompanied children under Rule 23(b)(2) to determine the type of protections to which these children are entitled. *E.g.*, *J.D. v. Azar*, 925 F.3d 1291, 1323 (D.C. Cir. 2019); *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1141 (9th Cir. 2018); *Angelica S. v. U.S. Dep't of Health & Hum. Servs.*, No. 25-cv-1405 (DLF), 2025 WL 1635369, at *9 (D.D.C. June 9, 2025); *P.J.E.S. v. Wolf*, 502 F. Supp. 3d 492, 531, 534 (D.D.C. 2020); *J.O.P. v. U.S. Dep't of Homeland Sec.*, 338 F.R.D. 33, 65 (D. Md. 2020); *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 615 (S.D.N.Y. 2018). Defendants offer no reason for this Court to follow a different path under the circumstances here, and Plaintiffs request that the Court grant their motion and certify a class.

## ARGUMENT

**I.    The Court Should Certify the Class Now, But Need Not Do So to Grant Class-Wide Relief**

Plaintiffs have satisfied all of the requirements for class certification at this stage and ask this Court to grant their motion. The Federal Rules provide that a class should be certified at an "early practicable time," Fed. R. Civ. P. 23(c)(1)(A), and Defendants have had the opportunity to submit a full brief opposing class certification, *see* Defs.' Opp. The Court retains discretion to reconsider class certification decisions until final judgment should circumstances change. Fed. R. Civ. P. 23(c)(1)(C). The highly accelerated timeframe under which this litigation has taken place so far is the natural consequence of *Defendants'* choices to engage in an abrupt, overnight attempted expulsion of several dozen children, and their refusal to provide assurances that they will not try the same thing again, *see* ECF No. 27. Certifying the class at this stage will allow this litigation to proceed in the efficient and expeditious matter that these exigent circumstances demand.

Nevertheless, should the Court want more time to consider the motion to certify, including making a modification to the Plaintiffs' proposed class definition, *see infra* Section IV, the Court "need not decide whether a class should be certified" before granting class-wide injunctive relief because "courts may issue temporary relief to a putative class." *A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1369 (2025); *accord, e.g.*, *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2569 (2025) (Kavanaugh, J., concurring) (emphasizing that district courts may "grant or deny the functional equivalent of a universal injunction—for example, by granting or denying a preliminary injunction to a putative nationwide class under Rule 23(b)(2)"). "[T]he [*A.A.R.P.*] Court's holding means that the filing of a class suit ('a putative class'), coupled with a showing

3

that the standard for interim relief has been met, is sufficient to enable such relief to the entire putative class. Nothing more, in terms of class certification, is necessary." 2 Newberg and Rubenstein on Class Actions § 4:30.[2]

## II.    Plaintiffs Satisfy All of Rule 23(a)'s Prerequisites

### A.  The Class Is Sufficiently Numerous

First, Plaintiffs have easily established that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Although there is no specific minimum number of class members required to establish numerosity, a class is presumptively numerous enough to satisfy the requirement if it includes forty or more members." *N.S. v. Hughes*, 335 F.R.D. 337, 352 (D.D.C. 2020). There are hundreds of unaccompanied minors who Defendants consider to be subject to summary expulsion to Guatemala. *See, e.g.*, ECF No. 1, Compl. ¶¶ 59, 73; ECF No. 20-4, Decl. of Vander Hoek ¶ 25 (identifying more than 100 Guatemalan children in ORR custody for whom the Young Center was appointed as a child advocate), ECF No. 35-1, Decl. of Salazar ¶ 12 (ORR determined that 327 Guatemalan children are currently eligible for reunification with parents or family in Guatemala).[3]  And Defendants have acknowledged in this litigation that there are *at least* 76 class members who were on the plane set to depart last weekend. ECF No. 9, Second Status Report (identifying the status of 76 individuals described as "putative class members").

---

[2] Courts routinely rely on the Newberg treatise. *E.g.*, *A.A.R.P.*, 145 S. Ct. at 1369; *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833 n.13, 834, 836 n.16 (1999).

[3] Hundreds more similarly situated unaccompanied minors may face summary expulsion to other countries under Defendants' policy. *See* Section IV, *infra*.

4

Beyond sheer numbers, "the vulnerability of many members of the class renders their claims uniquely unsuited for individual prosecution." *Coleman v. District of Columbia*, 306 F.R.D. 68, 80 (D.D.C. 2015). The putative class consists entirely of minors spread throughout the country with precarious immigration statuses, a class that the D.C. Circuit has recognized "presents non-numerical considerations that might make joinder impracticable." *J.D.*, 925 F.3d at 1323.

Defendants' primary response is to question the numerosity of those children who, according to Defendants, "object to reunification with their parents under the [sic] 6 U.S.C. § 279 and related authorities." Defs.' Opp. 4. As an initial matter, Defendants offer no evidentiary support for its assertion that *any* of the children it awoke and terrorized in the middle of the night wanted to be repatriated to Guatemala, much less summarily expelled. *See, e.g.*, ECF No. 40-8, Decl. of F.O.Y.P. ¶ 18 (noting that children on the plane "were all very happy" when they learned "they were going back to the shelter"); ECF No. 40-12, Decl. of Z.I.M.T.T. ¶ 7 ("Last Friday, I told the [immigration] judge I was scared of going back to Guatemala. My attorney told the judge that too. And my attorney told the judge she was going help me apply for asylum. So, the judge gave me more time on my case so I could do that. But it did not matter. . . . The very next day, immigration officials tried to deport me without a chance to present my case."); *see also, e.g.*, ECF 2-2 at 1, Decl. of L.G.M.L. ¶ 8 ("I want to … continue to fight my case in the Immigration Court and have a fair opportunity to be heard"); ECF 2-2 at 3, Decl. of L.M.R.S. ¶ 9 ("I respectfully ask the Court to allow us to remain in the United States while our cases are pending and to protect us from being removed before we have our full day in court."); ECF No. 2-2 at 5, Decl. of M.O.C.G. ¶ 7 ("I want the chance to present my claims for asylum, withholding of removal, and protection under the Convention Against Torture, and to have a fair

opportunity to be heard."); ECF 2-2 at 29, Decl. of M.Y.A.T.C. ¶ 10 ("I respectfully ask the Court to protect me from deportation and allow me to remain in the United States … as I am seeking humanitarian relief"); ECF No. 40-9, Decl. of A.Y.S.T. ¶¶ 17-18 ("I want to remain in the United States and continue to fight my case in Immigration Court. Being here in the U.S. gives me security that I do not have in Guatemala. I respectfully ask the Court to allow me to remain in the United States while my case is pending and to protect me from being removed before I have had a full day in court."); ECF No. 40-13, Decl. of C.M.L. ¶ 15 ("I want my case worker to keep working on my case … I want to continue to fight my case in Immigration Court and have a fair chance.  Please help me."). Indeed, federal law provides that a child who wishes to return to their home country may seek to do so free of charge through a process that ensures that voluntary departure is in the best interest of the child, a process that Defendants are attempting to sidestep. 8 U.S.C. §§ 1229c, 1232(a)(5)(D)(ii); *see also* ECF No. 20-7, Decl. of Tabbador ¶¶ 12, 14-17 (former immigration judge explaining process for approving voluntary departure); ECF No. 40-3, Decl. of Smyers ¶ 8; ECF No. 40-17, Decl. of Donovan-Kaloust ¶ 5. Moreover, Defendants cannot unilaterally redefine the class, and the definition proposed by Defendants misses the point. The purpose of the class is not to determine *who* wants reunification, but to ensure that Defendants' procedures for making those determinations and carrying out such reunifications are consistent with their constitutional and statutory obligations—something that applies equally to every member of the putative class.

In any event, Defendants' argument here is flatly inconsistent with the D.C. Circuit's opinion in *J.D. v. Azar*, which rejected the Government's contention that a class of pregnant unaccompanied minors seeking access to health care must be narrowed to only those who affirmatively sought abortions. 925 F.3d at 1315 ("[T]he class represented by Doe and Roe can

encompass anyone whose right to terminate her pregnancy is allegedly infringed by the government's policy, regardless of whether she ultimately intends to exercise her right."). Thus, including pregnant minors who might not opt for an abortion in the class did not prevent the class from meeting the numerosity requirement. *Id.* at 1322-23. The same logic applies here. Even if Defendants offered any basis to assume that some putative class members wanted to be abruptly repatriated without the protections of the law, there is no basis to carve them out of the class, nor does their presence undermine the numerosity of the class. Rule 23(a)(1) is satisfied.

### B. The Class Has At Least One Common Issue of Law or Fact

Rule 23(a)'s "commonality" requirement ensures that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This "commonality test is easily met in most cases." 1 Newberg and Rubenstein on Class Actions § 3:24; *accord, e.g., Jones v. Chopra*, No. 18-cv-2132 (BAH), 2023 WL 6037295, at *4, (D.D.C. Sept. 15, 2023) (noting that "[t]he standard is not demanding"). Not all questions of law or fact at issue need to be common; "even a single common question will do," so long as its resolution may "generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011) (internal quotation marks, emphasis, and alterations omitted); *accord, e.g., In re District of Columbia*, 792 F.3d 96, 100 (D.C. Cir. 2015) (upholding class certification with two common questions).

Although a single common question will suffice, here there are several, including:

- May Defendants avoid the statutory protections of the TVPRA by asserting that it is acting to "reunite unaccompanied alien children (UACs) with their parents."? Defs.' Opp. to Pls. Mot. for Prelim. Inj. 2, ECF No. 35.

- Do Defendants have the authority to move an unaccompanied child in ORR custody out of the jurisdiction of the United States without an executable order of removal or a voluntary departure order issued by an immigration judge?

- Is ORR authorized to make executable decisions regarding repatriating unaccompanied children in its custody to their country of origin?

- Does ORR have authority to transfer custody of unaccompanied children to DHS before the child reaches the age of 18?

- Do the TVPRA and Immigration and Nationality Act prohibit the government from expelling unaccompanied children in ORR custody before they have completed proceedings in immigration court, including any appeals?

- Does the TVPRA provide unaccompanied children in ORR custody the right of access to counsel before being expelled from the United States?

- Does Defendants' attempted repatriation of unaccompanied children, absent an executable final order of removal or a voluntary departure order, violate ORR's Foundational Rule?

- Does providing only a few hours' notice that an unaccompanied child will be expelled from the United States satisfy the Due Process Clause of the Fifth Amendment?

Defendants' objections to commonality primarily rely on the wrong legal standard.

Defendants complain that "[c]ommonality is also lacking because individual issues dominate," Defs.' Opp. 5, an argument that relies on the irrelevant predominance standard of Rule 23(b)(3). Fed. R. Civ. P. 23(b)(3) (asking whether "questions of law or fact common to class members predominate over any questions affecting only individual members"). But this is a Rule 23(b)(2) class, which need only meet the commonality test of Rule 23(a)(2). And Rule 23(a)(2) asks only *if* a common question *exists*, not how that common question compares to whatever individual issues may be at stake in the litigation. *See* 1 Newberg and Rubenstein on Class Actions § 3:27 ("While Rule 23(b)(2) demands only that there be common questions, certification under Rule

23(b)(3) requires that these common questions outweigh the noncommon questions in the litigation."). Thus, Defendants' assertion that the "commonality requirement is especially rigorous when applied to a class that seeks certification under Rule 23(b)(2)," Defs.' Opp. 6, gets the law exactly backwards. *See, e.g.*, 1 Newberg and Rubenstein on Class Actions § 3:27 (noting that if Rule 23(b)(2) is met, Rule 23(a)(1) is "necessarily" satisfied).

Defendants' argument that there are "factual differences among the proposed class members" that may "affect the individual's entitlement to relief," Defs.' Opp. 6, is wrong on the facts and the law. To start, this case does not assert the right to any particular *outcome* of lawful process—it challenges the government's attempt to summarily expel class members by denying them that process entirely.[4] On the law, "factual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members." *Stephens v. Farmers Rest. Grp.*, 329 F.R.D. 476, 483 (D.D.C. 2019) (internal quotation marks omitted); *accord, e.g., J.D.*, 925 F.3d at 1321 (rejecting argument that "existence of certain factual variations among the class members" undercut commonality). Indeed, variations in the type of relief to which a person may ultimately be entitled does not defeat commonality even for a Rule 23(b)(3) class. *Harris v. Med. Transp. Mgmt., Inc.*, 77 F.4th 746, 761 (D.C. Cir. 2023). And even under the more demanding predominance inquiry, a Rule 23(b)(3) class can be certified "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453

---

[4] Notably, Defendants do not set out plainly what the asserted individual issues are, or how their resolution would affect any class member's entitlement to relief. Defendants certainly do not identify any individual issues that are *material* to class members' claims.

(2016). Here, the process guaranteed by the TVPRA and the Fifth Amendment applies equally to all members of the class, which is all that Rule 23(a)(2) requires.

Defendants' unsupported speculation that "some" class members would "greatly benefit from prompt reunification with parents or legal guardians," Defs.' Opp. 7, misses the point. Plaintiffs do not challenge that some unaccompanied children *might* want or benefit from reunification with their parents.[5] Rather, Plaintiffs challenge Defendants' claimed power to expel class members through a summary process that denies them the benefits of federal law, including the actual protections set forth in the TVPRA. Similarly, Plaintiffs do not dispute that what constitutes the best interest of a child is a "factbound (and fact-intensive)" individual inquiry. Defs.' Opp. 8. Whether Defendants' unilateral determination about the benefit of parental reunification (rendered for an entire group of children based on a checklist of generic factors, Decl. of Salazar ¶ 10), is sufficient grounds for expulsion of an unaccompanied child without the protections of the TVPRA is a common question for the entire class.

Defendants also appear to claim that common questions do not exist among the putative class members because the attempted expulsions were lawful. *See* Defs.' Opp. 8 (arguing that the suit "seeks to extinguish an important authority designed to facilitate prompt reunification of parents and children"). But the predicate question of whether legal authorities allow the Defendants' actions is itself the merits dispute common to the class. Its resolution through class certification would require the Court to engage in a "free-ranging merits inquir[y]" that is inappropriate at the class-certification stage. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568

---

[5] Plaintiffs do not agree with Defendants' characterization of the "prompt reunification of children with parents" as the "theme" of the TVPRA. Defs.' Opp. 6. The "theme" of the TVPRA is the protection of children. *See* ECF No. 20-1, Br. in Supp. of Pls.' Mot. for PI at 12-13.

U.S. 455, 466 (2013). "Merits questions may be considered . . . only to the extent[] that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

Defendants' argument relying on *Jennings v. Rodriguez*, 583 U.S. 281, 314 (2018), that "due process is flexible," and thus cannot give rise to legal questions common to the class, Defs.' Opp. 9 (alteration omitted), fares no better. *Jennings* made no holding on commonality, and certainly made no determination that due process can never give rise to common questions justifying certification of a class. It merely remanded to the district court to make a fresh assessment about Rule 23(b)(2)'s applicability in light of *Dukes* (which, due to other case developments, never occurred). The denial of liberty is a prototypical injury that has given rise to countless Rule 23(b)(2) class actions seeking injunctive relief. *See, e.g.*, *Gerstein v. Pugh*, 420 U.S. 103 (1975); *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). Since *Dukes*, courts have not hesitated to find common issues sufficient to certify Rule 23(b)(2) classes asserting procedural due process claims, so long as the underlying factual circumstances and injuries are sufficiently similar to generate common answers. *See, e.g.*, *A.A.R.P.*, 145 S. Ct at 1368 (finding due process was not satisfied as to entire class); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 181-82 (D.D.C. 2015) (finding commonality among class of immigration detainees with due process claims because, although individual hearings might result in different outcomes, suit challenged procedural element common to all class members).

Finally, Defendants argue that "many putative class members face no prospect of Title 6 reunification," which, it contends, means they do not face irreparable harm. Defs.' Opp. 9. But Defendants fail to identify any category of class members who are assuredly safe from the summary expulsion procedures Defendants deployed on Labor Day weekend and the sweeping

11

authority Defendants assert. *See J.D.*, 925 F.3d at 1338 (rejecting argument that courts were required to protect unaccompanied children on a "rolling, emergency basis as [issues] arise in the course of the litigation" instead of providing class-wide preliminary injunctive relief). And Defendants' mere suggestion that they might forebear summary expulsion of some class members is not an appropriate consideration for class certification. *See Pappas v. District of Columbia*, Case No. 19-cv-2800 (RC), 2024 WL 1111298, at *15, 2024 U.S. Dist. LEXIS 44770, at *48 (D.D.C. Mar. 14, 2024) ("[F]or a class to be certified under Rule 23(b)(2), it is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole, even if some class members have not been injured by the challenged practice." (internal quotation marks omitted)); *see also* Fed. R. Civ. P. 23, Advisory Comm. Notes to 1966 Amendments ("Action or inaction is directed to a class within the meaning of [Rule 23(b)(2)] even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class.").

Every member of the proposed class is subject to Defendants' claimed reunification authority and at risk of summary expulsion under Defendants' policy, the legality of which this litigation seeks to test. That more than satisfies the requirements of Rule 23(a)(2).

### C.  The Claims of the Class Representatives are Typical of the Class

Defendants' protestations regarding typicality largely recycle their commonality arguments and fail for the same reasons. *See J.D.*, 925 F.3d at 1322 (noting inquiries "tend to merge" (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982))).

Defendants insist that "the injuries alleged by named Plaintiffs likely differ from unnamed class members—many of whom either are not eligible for Title 6 reunification . . . or, on the other hand, may benefit from prompt reunification with parents and be injured by delays in

reunification." Defs.' Opp. 10. But once again, Defendants' claim to be acting in the best interests, and in accordance with the wishes, of children in their care is devoid of any evidentiary support and belied by the clandestine nature of their midnight attempt to remove children from shelters and foster homes without any meaningful notice,[6] and by the declarations of unaccompanied children. *See* ECF No. 40-14, Decl. of M.A.L.R. ¶¶ 4-8, 11-12 (child learned at Aug. 29 immigration hearing that she was on voluntary departure list, despite no desire to return to Guatemala; recounting "terrible" weekend when government tried to deport her; confirming "I do not want to go back [to] Guatemala"); ECF No. 40-9, Decl. of A.Y.S.T. ¶¶ 8-15 (describing fear and anxiety from being awoken in middle of the night, placed on bus and then plane, despite wanting to stay in the United States); *see also* ECF No. 40-16, Decl. of D.Y.D.C.R. ¶¶ 3, 8 (Honduran child recounting fleeing abuse from family members; immigration judge recently informed her that she was on voluntary departure list; pleading for "help … so that I can continue to work with my case manager on my release to my family in the United States, while I work on my immigration case").

More importantly, however, Defendants are wrong that the need for "individualized assessments" to adjudicate class members' claims destroys typicality. Defs.' Opp. 10 (quoting *Romberio v. UnumProvident Corp.*, 385 F. App'x 423, 432 (6th Cir. 2009)). On the contrary,

---

[6] Defendants claim that "[j]ust one named Plaintiff was set to depart" on August 31, *see* Defs.' Opp. 11. Even if true, that happenstance is immaterial. By Defendants' own admission, their intent is to "reunif[y]" as many unaccompanied Guatemalan minors as possible, Salazar Decl. ¶¶ 11-12 (describing 327 Guatemalan children as "eligible" for summary expulsion), and all class members, including named Plaintiffs, are vulnerable to the government's attempt to remove them without following the process required by law. Stated differently, there is no reason that a determination by ORR that an individual child is currently eligible for purported "reunification" has any bearing on the claims pressed here—that Defendants seek to remove unaccompanied children without observance of statutory protections. *Contra* Defs.' Opp. 11.

resolution of class members' claims requires *no* individualized adjudications, either of class members' purported eligibility for "reunification," of their eligibility for immigration relief in the United States, or of any other fact-bound determination. The question is the legality of the process by which these decisions are made, something that can be resolved across the board. *See J.D.*, 925 F.3d at 1322 ("Though absent class members may elect to exercise their choice in a different manner than [class representatives], the claims and defenses of the representatives are substantially—arguably entirely—identical to those of the class" as they were all subject to the "same policy"). "The test for typicality is not demanding." 1 Newberg and Rubenstein on Class Actions § 3:29. It "is satisfied so long as 'each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments'"—it "does not mean that the facts and claims" must be "'identical.'" *Bratya SPRL v. Bed Bath & Beyond Corp.*, 752 F. Supp.3d 34, 48 (D.D.C. 2024) (quoting *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 192 (D.D.C. 2011), and *In re APA Assessment Fee Litig.*, 311 F.R.D. 8, 15 (D.D.C. 2015)). Here, Defendants identify no distinctions between the class representatives and other class members that bear materially on the litigation, and the claims presented apply equally to each class member. Typicality is satisfied.

### D. Plaintiffs Are Adequate Class Representatives

Defendants' objections regarding the adequacy of class representatives are similarly specious. "Adequacy embraces two components: the class representative (i) 'must not have antagonistic or conflicting interests with the unnamed members of the class' and (ii) 'must appear able to vigorously prosecute the interests of the class through qualified counsel.'" *J.D.*, 925 F.3d

at 1312 (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)).[7]
Both components are readily met.

First, Defendants argue that class representatives might have conflicting interests with
some of the class because Defendants speculate (without evidence) that "some class members"
must want to be "reunifi[ed] with parents" through summary expulsion and thus "will actually be
harmed" if they receive procedural protections. *See* Defs.' Opp. 12-13 (citation omitted). This is
baseless. To start, class members are *children*, a vulnerable population for whom Congress
established special safeguards to ensure a child's decisions regarding voluntary departure are
reviewed: voluntary departure requires a grant by an immigration judge, which is premised on a
finding that they will be safe upon return to their home country. *E.g.*, ECF No. 20-7, Tabbador
Decl. ¶¶ 12, 14-17 ("Voluntary departure, while available under statute, is rare for unaccompanied
minors and requires careful scrutiny. Immigration Judges generally ensured that any such request
was made with the advice of independent counsel and, where possible, with input from a child
advocate."); ECF No. 20-4, Vander Hoek Decl. ¶ 22-23; *see also* Compl. ¶¶ 38-42. It is those
rigorous procedural protections that Defendants are attempting to evade. Regardless, "the
presence of uninterested individuals in a class does not compel a finding of inadequacy," *J.D.*,
925 F.3d at 1314, and the possibility that "some of the members of the class will wish to assert
their rights while others will not wish to do so" is no barrier to adequacy, *id.* at 1317-19 (quoting
Charles Alan Wright, *Class Actions*, 47 F.R.D. 169, 174 (1969)). And, as explained above, nothing
in the relief sought by Plaintiffs will prevent any child from seeking and—after statutorily
mandated protections are assured—receiving voluntary departure to reunite with their families.

---

[7] Defendants raise no objections to the ability of Plaintiffs' counsel to adequately represent the
interests of the class. *See* Fed. R. Civ. P. 23(g).

Plaintiffs here are not, as the government posits, separating children from their families. Defendants' speculation that some unaccompanied minors would prefer to be loaded onto planes in the dead of night and expelled without notice cannot support a finding of conflict between class members.

Second, Defendants seem to challenge the ability of class representatives to vigorously prosecute the class by arguing that "at the time the Court granted universal interim relief, none of the named plaintiffs had alleged or stated that they would serve as class representative[s]" and complaining that declarations attesting to that fact were submitted later. Defs.' Opp. 11. They offer no reason to believe delay of a few days jeopardizes the class representatives' ability to represent the class, particularly when any delay was the result of the government's furtive attempt to remove class members in the middle of the night on the Sunday of a federal holiday weekend with no meaningful notice.

Defendants next impugn the children's declarations as "insufficient" because they purportedly are "boilerplate" and fail to demonstrate even a "rudimentary knowledge of their role" as representatives capable of vigorously representing the class. Defs.' Opp. 11-12 (quoting *Garnett v. Zeilinger*, 301 F. Supp.3d 199, 210 (D.D.C. 2018)). But Defendants selectively quote the authority on which they rely; in truth, "courts typically decline certification only in 'flagrant cases, where the putative class representatives display an alarming unfamiliarity with the suit, display an unwillingness to learn about the facts underlying the claims, or are so lacking in credibility that they are likely to harm their case.'" *Garnett*, 301 F. Supp.3d at 210-11 (citation omitted). There is no requirement that class representatives use varying language to confirm their understanding of their role in the litigation, *contra* Defs.' Opp. 11-12 (criticizing "identical form language"), *particularly* where class representatives are children in government custody who

have experienced hardship and trauma and are communicating with counsel through professional interpreters. There is nothing insufficient about Named Plaintiffs' declarations. *See, e.g.*, ECF 29-3, G.A.B.B. Supp. Decl. ¶ 2(explaining "I volunteered to represent the class … I plan to seek justice in the name of the proposed class of minors by bringing the claims … with persistence and determination. I will participate in the lawsuit according to the way in which my lawyers and I decide I should. . . . I intend to . . . represent the proposed class to the best of my ability. I want to make sure these children do not have their rights denied.").

Defendants' next argument is premised on an obvious misreading of the federal rules. They contend that Plaintiffs cannot proceed because Federal Rule of Civil Procedure 17(c) purportedly "*requires* that suit be brought by certain 'representatives' such as a 'general guardian' or by 'a next friend or . . . guardian ad litem.'" Defs.' Opp. 12 (emphasis added). But Rule 17(c) actually provides for suit by a minor "without a representative" and indicates that, in the case of an unrepresented minor, "[t]he court must appoint a guardian ad litem." The Rule provides no support for Defendants' assertion that "the minor plaintiffs are not properly before the court" because suit was not brought by their general guardians. Defs.' Opp. 12.

More importantly, no guardian ad litem is necessary because Plaintiffs in this suit *do* have an appropriate next friend to protect their interests: the Young Center for Immigrant Rights. *See* Vander Hoek Decl. ¶ 5; *contra* Defs.' Opp. 12. "The Office of Refugee Resettlement (ORR) has appointed the Young Center as independent Child Advocate to each of the named plaintiffs." ECF No. 40-4, Decl. of Jennifer Nagda ¶ 12. Defendants claim that the Young Center cannot properly serve in this role because there "must ordinarily be a significant relationship between the proposed next friend and minor," Defs.' Opp. 12 (quoting *Muthana v. Pompeo*, 985 F.3d 893, 902 (D.C. Cir. 2021)). But Defendants omit the end of the sentence on which they rely for this argument,

17

which confirms "that requirement may not rigidly apply when a minor has no significant relationships" with individuals qualified to serve. *Id.* In fact, the circuits are in agreement that a properly designated next friend need *not* have a significant relationship with a minor whose interests they seek to protect. *See, e.g.*, *Doe v. Hochul*, 139 F.4th 165, 178-79 (2d Cir. 2025) ("Although a significant relationship with the real party in interest is *relevant* to the appointment of a next friend, it is neither required nor dispositive" because Rule 17(c) "does not demand any sort of 'relationship,' let alone a significant one," and collecting court of appeals decisions in accord). Here, the Young Center is more than qualified to protect the minors' interests. It "has served as the independent Child Advocate for more than 7,000 children in federal custody" as "the only organization authorized by ORR to serve in that capacity." *See* Decl. of Vander Hoek ¶ 4. Young Center staff, like Ms. Vander Hoek, work closely with unaccompanied minors in ORR custody to advocate for their best interests, including in the reunification process. *Id.* ¶ 10. The Young Center has also been appointed as Child Advocate for many other putative class members, *id.* at ¶ 25; Decl. of Nadga ¶ 12, and has served in this same capacity in other analogous class actions, Decl. of Nagda ¶ 10; *see also J.O.P. v. U.S. Dep't of Homeland Sec.*, 338 F.R.D. 33, 65 (D. Md. 2020). There is no reason to doubt that the Young Center will fully protect class members' best interests.[8]

---

[8] Defendants cast aspersions on the fact that "many of the children who are Plaintiffs appear to be in regular contact with their parents in Guatemala, yet they do not endeavor to serve as next friends for their children." Defs.' Opp. at 12. Once again, Defendants seek to impose a requirement ungrounded in precedent. Their objection is also tone deaf as it ignores some Plaintiffs' attestations that they came to the U.S. fleeing abuse or neglect at the hands of their parents. *E.g.*, ECF No. 20-10, Decl. of E.M.V.M ¶ 6; ECF No. 20-11, Decl. of S.C. ¶¶ 3-4; ECF No. 20-12, Decl. of J.A.I.T. ¶ 7.

### III.    The Class Should be Certified as a Rule 23(b)(2) Class

Largely for reasons also offered elsewhere, Defendants contend that class certification under Rule 23(b)(2) is not appropriate. The requirements of Rule 23(b)(2) are "almost automatically satisfied" in actions seeking injunctive relief for common legal claims. *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). Class actions challenging civil rights violations are particularly appropriate for certification under Rule 23(b)(2), given that the rule arose out of experiences "in the civil rights field" in which the government violated the rights of an entire class of citizens through a single law or policy.[9] *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (citation omitted).

Defendants argue that "nothing about this case suggests that an injunction or declaration will necessarily apply to all putative class members or none of them." Defs.' Opp. 15. But determining what constitutional and statutory protections apply to children in the class, and what procedures defendants must follow, is something readily susceptible to class-wide treatment, and is precisely the sort of relief contemplated by Rule 23(b)(2).

### IV.    The Court May Modify the Class Definition

As noted in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Injunction, ECF 20-1, at 2 n.1, Plaintiffs respectfully request that their proposed class definition be modified to make clear that it does not include children granted voluntary departure by an immigration judge.  Moreover, under the extenuating circumstances of this

---

[9] "Rule 23(b)(2) was promulgated in 1966 essentially as a tool for facilitating civil rights actions." Moore's Federal Practice § 23.43; *see also* 2 Newberg and Rubenstein on Class Actions § 4:40 ("Historically, Rule 23(b)(2) class actions have been used as a vehicle to vindicate civil rights violations. . . . many (b)(2) class actions challenge government actions on *constitutional* grounds").

litigation, Plaintiffs ask that the Court depart from the definition offered in the Complaint and instead certify a class of all unaccompanied minors, except those who are from a country contiguous to the United States, who are or will be in ORR custody and who are not subject to an executable final order of removal or a voluntary departure approved by an immigration judge.

As long as the certified class complies with the requirements of Rule 23, it is well established that the Court is not bound to the class definition offered by the Plaintiffs, but may "simply define the class itself." *In re White*, 64 F.4th 302, 315 (D.C. Cir. 2023). The modified class definition Plaintiffs propose meets all of Rule 23's requirements and is consistent with other certified classes of unaccompanied children that draw no distinction based on nationality. *E.g.*, *J.D.*, 925 F.3d at 1305, 1323 (upholding class of "all pregnant, unaccompanied immigrant minor children (UCs) who are or will be in the legal custody of the federal government"); *P.J.E.S.*, 502 F. Supp. 3d at 509-10 (certifying class of "[a]ll unaccompanied noncitizen children who (1) are or will be detained in U.S. government custody in the United States, and (2) are or will be subjected to the Title 42 Process.").

At the time Plaintiffs filed their motions for temporary restraining order and for class certification to halt their dead-of-night, unlawful deportations, it appeared that Defendants were targeting only *Guatemalan* unaccompanied minors. As such, Plaintiffs' papers focused on securing emergency overnight relief for a putative class of Guatemalan children only. But nothing about the material facts and legal issues presented in this lawsuit or the Government's claimed authority are unique to Guatemala. For the reasons set forth below, a broader class is appropriate.

Since the complaint was filed, developments have come to Plaintiffs' counsel's attention that indicate Defendants are taking steps toward summarily removing children from countries

other than Guatemala under the guise of reunification without complying with the protections of the TVPRA and the due process required by the Constitution. *See* Temporary Restraining Order, *Kettlewell v. Noem*, Case No. 4:25-cv-491, ECF No. 14 (D. Ariz. Sept. 8, 2025) (noting "the evidence creates serious questions as to whether Defendants are attempting to remove" children to Honduras, and issuing temporary restraining order) (Exhibit B). For example, on September 1, 2025, the Honduran government posted that it has started working to "ensure a safe return of the minors deported from the United States." Cancillería Honduras (@CancilleriaHN), X (Sept. 1, 2025, at 17:32 ET), https://x.com/CancilleriaHN/status/1962629787299516830 [https://perma.cc/S66D-R9JZ] (Exhibit C) (translated from Spanish by X's Grok Service)); Secretaría de Relaciones Exteriores y Cooperación Internacional, https://sreci.gob.hn/node/2263 [https://perma.cc/SUD9-JEAJ] (Exhibit D) (translated from Spanish by Google Translate). On Thursday, September 4, a local legal services provider in Illinois was notified by its ORR Project Officer (*i.e.*, the staff responsible for overseeing care providers) that "ICE may soon be taking into custody minors from the country of Honduras with the intent to repatriate them to their home country." *See* ECF No. 40-21, Decl. of Laura Smith ¶¶ 2-3. The following morning, Friday, September 5, 2025, a legal services provider in Texas serving unaccompanied children in ORR custody reported having received an anonymous phone call, which she believes came from one of the shelters housing her clients, to "alert" legal services providers "that the government was planning to repatriate all children under the ORR custody without making any announcement," including children from countries other than Guatemala. ECF No. 40-20, Decl. of Natasha H. Rosario ¶ 6. Moreover, Plaintiffs' counsel has recently learned that at least one child from Honduras attended an immigration hearing at the end of August at which the judge asked the child if they wanted voluntary departure to Honduras, explaining that the child's name was on a list

that the judge had been provided. ECF No. 40-16, Decl. of D.Y.D.C.R. ¶ 6. The child had not requested to return to Honduras and, despite having recently been interviewed by an HSI official, had never told the official that the child wished to return to Honduras. *Id.* at ¶¶ 5-6. The experience of D.Y.D.C.R. in immigration court is the same as what some unaccompanied Guatemalan children in ORR custody experienced when they attended immigration court hearings in late August. Like D.Y.D.C.R., they were told by their immigration judge that they were on a list of children who wanted to return to Guatemala, which had been provided to the judge, but they did not in fact want to return to Guatemala and were afraid to do so. ECF No. 40-14, Decl. of M.A.L.R. ¶ 4; ECF No. 40-13, Decl. of C.M.L. ¶ 4. These children were nevertheless woken in the middle of the night on August 30, told to pack a bag, and put on a bus. Decl. of M.A.L.R. ¶¶ 6-10; Decl. of C.M.L. ¶¶ 8-13.

Additionally, a legal services provider for unaccompanied children noticed, when checking the Executive Office for Immigration Review (EOIR) dockets for some of its Honduran and El Salvadoran clients and potential clients in ORR custody, that more than 20 have had their previously scheduled hearings removed from the dockets, ECF No. 40-6, Decl. of Aimee Korolev, ¶¶ 6-8; *see also* ECF No. 40-19, Decl. of A.V.R.R. ¶ 4 (child from El Salvador noting that his November hearing before an immigration judge was canceled without explanation), something that the legal services provider observed happening to a number of its Guatemalan clients shortly before the attempt to remove unaccompanied Guatemalan children from the country, Korolev Decl. ¶ 8. Similarly, agents from Homeland Security Investigations (HSI) have begun interviewing children from countries other than Guatemala, ECF No. 40-16, Decl. of D.Y.D.C.R. ¶¶ 5-6; ECF No. 40-6, Decl. of Avila-Cimpeanu ¶¶ 21-22, consistent with a pattern of HSI interviewing Guatemalan children shortly before their late-night attempted removals, ECF No. 1,

Compl. ¶¶ 9, 62; ECF No. 2-2 at 3, Decl. of L.M.R.S., ¶ 5; ECF No. 2-2 at 5, Decl. of M.O.C.G., ¶ 5; ECF No. 2-2 at 7, Decl. of H.L.E.C., ¶ 5; ECF No. 2-2 at 19, Decl. of L.F.M.M., ¶ 5; ECF No. 2-2 at 26, Decl. of A.R.M.D., ¶ 2; ECF No. 2-2, at 31, Decl. of Lauren Fisher Flores, ¶ 6; ECF 20-16, Decl. of W.M.R.P., ¶ 5; ECF No. 20-19, Decl. of G.Y.V.S. ¶ 7.

Given concerns about these developments, Plaintiffs' counsel reached out to counsel for Defendants on September 5, who refused to disavow any imminent attempt to remove other similarly situated children. *See* ECF Nos. 27, 27-1. These facts underscore the need to adjudicate the process to which *all* unaccompanied children in ORR custody are entitled before Defendants attempt to put them on planes out of the country. Plaintiffs therefore ask this Court to exercise its discretion to modify the Plaintiffs' proposed class definition to exclude minors from a country contiguous to the United States or who have a voluntary departure order approved by an immigration judge, and to delete the word "Guatemalan" so that the class definition includes similarly situated minors from other non-contiguous countries. Thus, Plaintiffs request that this Court certify a class of all unaccompanied minors, except those who are from a country contiguous to the United States, who are or will be in ORR custody and who are not subject to an executable final order of removal or a voluntary departure approved by an immigration judge.  At a minimum, Plaintiffs request certification of a class of all Guatemalan unaccompanied minors who are or will be in ORR custody and who are not subject to an executable final order of removal or a voluntary departure approved by an immigration judge.

**CONCLUSION**

For these reasons, Plaintiffs' respectfully request that the Court grant Plaintiffs'

Emergency Motion for Provisional Class Certification; appoint the National Immigration Law

Center and the Institute for Constitutional Advocacy and Protection as Class Counsel; and

certify a class as described above.

Dated: September 9, 2025                    Respectfully submitted,

                                            */s/Joseph W. Mead*

Efren Olivares*                             Joseph W. Mead (D.C. Bar No. 1740771)
Hilda Bonilla (D.C. Bar No. 90023968)       Rupa Bhattacharyya (D.C. Bar No. 1631262)
Lynn Damiano Pearson*                       Kate Talmor (DC Bar No. 90036191)
Kevin Siegel*                               Mary B. McCord (D.C. Bar. No. 427563)
NATIONAL IMMIGRATION LAW                    Seth Wayne (D.C. Bar No. 888273445)
CENTER                                      INSTITUTE FOR CONSTITUTIONAL
1101 14th Street, Suite 410                 ADVOCACY AND PROTECTION
Washington, D.C. 20005                      Georgetown Law
Tel: (213) 639-3900                         600 New Jersey Ave., N.W.
Fax: (213) 639-3911                         Washington, D.C. 20001
bonilla@nilc.org                            Phone: (202) 662-9765
olivares@nilc.org                           Fax: (202) 661-6730
damianopearson@nilc.org                     jm3468@georgetown.edu
siegel@nilc.org                             rb1796@georgetown.edu
                                            kt894@georgetown.edu
                                            sw1098@georgetown.edu
*Admitted Pro Hac Vice*                     mbm7@georgetown.edu

                                            *Counsel for Plaintiffs*