# EXHIBIT A



1612 K Street NW Suite #808
Washington, DC, 20006
(202) 457-0034
whistleblower.org

September 16, 2025

*Sent via electronic mail*

| | |
|---|---|
| Honorable John Cornyn, Chair<br>Subcommittee on Border Security and<br>Immigration<br>U.S. Senate Committee on the Judiciary<br>224 Dirksen Senate Office Building<br>Washington, DC 20510 | Honorable Alex Padilla, Ranking Member<br>Subcommittee on Border Security and<br>Immigration<br>U.S. Senate Committee on the Judiciary<br>224 Dirksen Senate Office Building<br>Washington, DC 20510 |

**RE:   Protected Whistleblower Disclosure Regarding Violations of Laws, Rules and Regulations and Safety Risks to Children Facing Repatriation to Guatemala**

Dear Chairman Cornyn and Ranking Member Padilla,

Government Accountability Project represents whistleblowers who reasonably believe representations made by Acting Director of the Office of Refugee Resettlement, Angie Salazar, to U.S. District Judge Timothy J. Kelly on September 6, 2025 in *L.G.M.L v. Noem*, a lawsuit filed to halt planned flights to return hundreds of children to Guatemala, were inaccurate.

Specifically, Salazar stated that 327 children identified for return to Guatemala had been screened according to a list of criteria that ensured, among other things, the children would not be subject to child abuse and neglect, including human trafficking, torture and other forms of violence, upon return to Guatemala.[1] These whistleblowers reasonably believe, based on information available in ORR's database for tracking unaccompanied children, that at least 30 and possibly more children who were deemed eligible for imminent return to Guatemala, have indicators of being a victim of child abuse, including death threats, gang violence, human trafficking and/or have expressed fear of return to Guatemala, including in some cases concern for harm and threats from their parents. Additionally, because the information upon which whistleblowers base their reasonable belief is from ORR's database, the whistleblowers reasonably believe Acting Director Salazar knew or should have known of the inaccuracies in her declaration.

In her declaration, Acting Director Salazar stated that ORR employed a "best interests framework in determining what constitutes an 'appropriate case' for repatriation within the meaning of 6 U.S.C. § 279(b)(1)(H),"[2] which gives authority to ORR to "reunite unaccompanied alien children with a parent abroad in appropriate cases."[3] Ms. Salazar outlined the criteria

---

[1] L.G.M.L v. NOEM, 1:25-cv-02942, (D.D.C. Sep 06, 2025) ECF No. 35, pp. 4-5.
[2] L.G.M.L v. NOEM, 1:25-cv-02942, (D.D.C. Sep 06, 2025) ECF No. 35, Declaration of Angie Salazar in Support of Defendants' Memorandum in Opposition to Motion for Preliminary Injunction, https://www.courtlistener.com/docket/71240524/35/1/lgml-v-noem/.
[3] 6 U.S.C. § 279(b)(1)(H).

considered in the framework to determine whether it is indeed in the best interest of the child to be repatriated, which include, in pertinent part: the child does not have a credible fear claim or a pending asylum case; that ORR is assured the child will not be trafficked upon their return; that the child does not have indications of being a victim of trafficking; and that the child does not have indications of child abuse/neglect perpetrated by a parent/legal guardian.[4]

The whistleblowers obtained information they reasonably believe demonstrates that many children identified for repatriation do not in fact meet the eligibility criteria based on ORR's data; if confirmed, this would render this evidence provided to the court inaccurate. By September 5, 2025, the day before Ms. Salazar's declaration, at least thirty total, including 20% of a sample size of approximately fifty cases reviewed, had indicators of being ineligible for repatriation based on the excluding criteria. This data was noted and present in ORR's database at the time of Ms. Salazar's declaration.

These whistleblowers' disclosures evidence violations of law, rules and regulations, abuse of authority and substantial and specific danger to public health and safety on a matter of urgent, and potentially life and death, importance. While the whistleblowers choose to remain anonymous for fear of retaliation, they urge Congress to engage in immediate oversight to ensure that children are not repatriated to situations where they face trafficking, abuse, neglect, persecution, or torture.

_____
Dana L. Gold
Government Accountability Project
1612 K Street, NW, Suite 808
Washington, D.C. 20006

_____
Andrea Meza
Government Accountability Project
1612 K Street, NW, Suite 808
Washington, D.C. 20006

Attorneys for Whistleblowers

---

[4] L.G.M.L v. NOEM, 1:25-cv-02942, (D.D.C. Sep 06, 2025) ECF No. 35, pp. 4-5.