<pre>
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
    *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
 L.G.M.L., et al.,                   )  Civil Action
               Plaintiffs,           )  No. 25-CV-2942
                                     )
 vs.                                 )
                                     )
 KRISTI NOEM, et al.,                )  August 31, 2025
               Defendants.           )  12:47 p.m.
                                     )  Washington, D.C.
    *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
</pre>

**TRANSCRIPT OF MOTION HEARING**
**BEFORE THE HONORABLE SPARKLE L. SOOKNANAN**
**UNITED STATES DISTRICT COURT JUDGE**

**APPEARANCES** (appearing remotely):

FOR THE PLAINTIFFS:
        EFREN OLIVARES
        HILDA BONILLA
        National Immigration Law Center
        PO Box 34573
        Washington, DC  20043
        (213) 674-2907
        bonilla@nilc.org

FOR THE DEFENDANTS:
        DREW C. ENSIGN
        Assistant United States Attorney
        U.S. Department of Justice, Civil Division
        950 Pennsylvania Avenue, NW
        Washington, DC 20004
        (202) 514-2331
        drew.c.ensign@usdoj.gov

*This transcript is <u>work product</u>.  This transcript shall be considered null and void if the transcript is edited, printed, disassembled, screenshot, and/or distributed in any manner by any party without authorization of the signatory.*

Court Reporter:     Elizabeth Davila, RPR, FCRR
                    Official Court Reporter

This hearing was held via videoconference and/or telephonically and is, therefore, subject to the limitations associated with audio difficulties while using technology.

Proceedings reported by machine shorthand.
Transcript produced by computer-aided transcription.

2

**P R O C E E D I N G S**

1
2          THE COURT:  Good afternoon, Counsel.

3          This Court is now in session.  The Honorable

4    Sparkle L. Sooknanan now presiding.

5          Your Honor, we are on the record for civil case

6    25-2942, L.G.M.L., et al. versus the U.S. Department of

7    State, et al.

8          Starting with the plaintiffs, please identify

9    yourselves for the record.

10          MR. OLIVARES:  Good afternoon, Your Honor.

11    Efren Olivares with the National Immigration Law Center,

12    counsel for the plaintiffs.

13          MS. BONILLA:  Good afternoon, Your Honor.

14    Hilda Bonilla with the National Immigration Law Center,

15    counsel for plaintiffs.

16          MR. ENSIGN:  Good afternoon, Your Honor.

17    Drew Ensign with DOJ for the federal defendants.

18          THE COURT:  Okay.  Good afternoon, everyone.

19          Give me a couple of minutes, please.  I can't seem

20    to get into my computer here.

21          THE COURTROOM DEPUTY:  Counsel, before we get

22    started, I want to let you know, please identify yourselves

23    before you speak for the court reporter's benefit.  Also,

24    because we are working remotely, there is a lag time; so

25    please wait a couple of seconds before you respond to the

1    Court's questions or before you speak on your behalf.

2    Thank you.

3            Okay.  Counsel, thanks again.  We're back on the

4    record.

5            THE COURT:  Okay.  Before we begin, Counsel,

6    Mr. Ensign, can I ask you, are you aware that I just issued

7    an order on the docket with respect to the putative class?

8            MR. ENSIGN:  I am not, Your Honor.  I am not

9    getting docket orders, so I apologize; I have not seen that.

10           THE COURT:  Okay.  Will you please go check the

11   docket.  And can I ask you to make sure that that order gets

12   transmitted to everyone who needs to see it for the

13   government?

14           I emailed it to Mr. Hudak and asked that he

15   circulate it to everyone at main as well.  But because the

16   government has not entered an appearance in the case, I want

17   to make sure that you take five minutes right now and

18   circulate that order to everyone who needs to see it so

19   there is no confusion about whether the defendants or any

20   other party in the government is aware of my order.

21           MR. ENSIGN:  Yes, Your Honor.

22           I am happy to do so.  Should we take a five- to

23   ten-minute recess in order to do that?

24           THE COURT:  Yes.  Yes.  We'll take a five-minute

25   recess, and I am going to ask that you circulate that.

```
 1              MR. ENSIGN:  Absolutely, Your Honor.

 2              THE COURT:  Thank you.

 3              MR. OLIVARES:  Mr. Ensign, if it's helpful, this

 4    is Efren Oliveras.  It's in your inbox.  I just forwarded it

 5    to you.

 6              MR. ENSIGN:  Thank you.  I appreciate that.

 7              THE COURT:  Okay.  So we'll recess for five

 8    minutes.  Thank you, Mr. Ensign.

 9              MR. ENSIGN:  Thank you.

10              (Whereupon, a recess was taken.)

11              THE COURTROOM DEPUTY:  Good afternoon, Counsel.

12              THE COURT:  All right.  Mr. Ensign, did you

13    succeed?

14              MR. ENSIGN:  Your Honor, I have transmitted it to

15    them, to both DHS and to DHS contacts there.  I have heard

16    confirmation from at least one of the two agencies.

17              My understanding is that no planes were going to

18    depart pending resolution of this hearing as well, so I

19    don't believe there would be any issue there.  I will

20    certainly relay any additional information I get, but that's

21    what I know right now.

22              THE COURT:  Okay.  Great.  So let's start there.

23    Have any flights departed?

24              MR. ENSIGN:  My understanding is the planes are on

25    the ground right now, and so that is all I know about that.
```

1    But that -- it's possible that one might have departed and

2    turned around, I am not sure.  But in any case, all of them

3    are on the ground; they are not in the air.

4            THE COURT:  So you are not sure if planes have

5    left.  It's possible that one might have left, and the rest

6    of them are on the ground?  And I have your assurance that

7    no more planes will take off in light of my order?

8            MR. ENSIGN:  Actually, Your Honor, I believe all

9    of them are on the ground.  None of them are in the air

10    presently.

11            THE COURT:  Got it.  Okay.  So they're all on the

12    ground.  And it's your representation that none of them will

13    take off in light of my order; is that right?

14            MR. ENSIGN:  That is correct, Your Honor.

15            THE COURT:  Okay.  Great.

16            Do you know if any planes have already departed?

17            MR. ENSIGN:  Your Honor, it's possible that one

18    had taken off and has returned, or -- I am not perfectly

19    sure about that.  But my understanding is, if that were the

20    case, it has returned.  All planes are on the ground.

21            THE COURT:  Got it.  Okay.  So if one plane had

22    taken off, it was returned.  So all of the children in

23    question are currently in the United States?

24            MR. ENSIGN:  That is correct, Your Honor.

25            THE COURT:  Okay.  Great.  That is great news.

1    So just to recap where we are on the Sunday of a

2    holiday weekend, thank you all for being here.  A complaint

3    was filed in this court about 1:02 a.m. this morning.

4    I received a call at 2:35 a.m. this morning from

5    our emergency line notifying me that a complaint and TRO had

6    been filed in this case, and that this group of

7    unaccompanied minors were set to be picked up from ORR

8    custody, and put on vehicles to be transported by plane to

9    Guatemala.

10    I attempted to reach the government.  At 3:18 a.m.

11    I called Mr. Brian Hudak, the civil chief at the U.S.

12    Attorney's Office; I left him a voicemail.

13    At 3:33 a.m. I called Jonathan Hornok, the

14    criminal chief at the U.S. Attorney's Office; I did reach

15    him.  And I let him know that this case had been filed and I

16    wanted to make sure that the government could get someone

17    assigned to the case.  I let him know that I would like to

18    hear from the government if possible, but explained the

19    emergency nature of the complaint.  I did not hear back from

20    either Mr. Hudak or Mr. Hornok, or anyone else from the

21    government.

22    The plaintiffs filed a notice regarding their

23    attempts to serve the government.

24    I went ahead and entered a TRO at 4:22 a.m. as to

25    the named plaintiffs in this case, recognizing the imminent

1    nature of what was happening.  I did receive a call from

2    Mr. Hudak later this morning, and he let me know that he

3    would be in touch with his colleagues at main justice and

4    figure out who would be handling the case.

5            I then got another call on the emergency line

6    around 10:28 a.m. from counsel for the plaintiffs letting me

7    know that children were being loaded onto vehicles and

8    potentially being transferred to planes, which is why I

9    moved up this hearing.

10           I then got a motion for class certification from

11   the plaintiffs.  In light of that motion, I entered a

12   modified TRO shortly before this hearing that applies to all

13   putative class members.

14           Based on our last exchange, Mr. Ensign, all of the

15   children are still in the United States and the government

16   does not intend to take steps to remove them in light of my

17   order while we sort this out.

18           Is that all right, or does anyone want to add

19   anything to that recap?

20           MR. ENSIGN:  Nothing from --

21           MR. OLIVARES:  This is counsel for the plaintiffs.

22           THE COURT:  Let me ask the plaintiffs first.

23           MR. OLIVARES:  This is counsel for the plaintiffs,

24   Your Honor.

25           Thank you, Your Honor.

 1          The only detail I would add is that we understand

 2     that the planes are on the ground in Harlingen [sic], Texas,

 3     and El Paso, Texas, but the children have not deplaned.

 4          THE COURT:  Mr. Ensign, do you know the plan, and

 5     why the children are still on the planes?

 6          MR. ENSIGN:  Your Honor, I don't know that

 7     information.  I suspect they were awaiting the results of

 8     this hearing, but that -- I do not know specifically why

 9     that is.

10          THE COURT:  Okay.  Well, we are here on a holiday

11     weekend where I have the government attempting to remove

12     unaccompanied minors from the country in the wee hours of

13     the morning on a holiday weekend, which is surprising.  But

14     here we are.  So let's figure out where we are in light of

15     this TRO.

16          Mr. Ensign, tell me:  What's your position, what

17     the government is doing here, in light of the protections in

18     the TVPRA?  Is the government attempting to remove these

19     children?

20          Because my review of the statutory protections has

21     me a little bit alarmed at the idea that the government

22     would be moving 600 children very early in the morning on a

23     Sunday, in light of what I am seeing in the statute that

24     they're entitled to.

25          MR. ENSIGN:  Your Honor, these are not removals

1    under the statute.  These are repatriations and

2    reunifications of children with their parents or guardians.

3    Title 6 -- I believe 6 U.S.C. 279(b)(1)(H) --

4              THE COURT:  Sorry.  Can you repeat that for me?

5              MR. ENSIGN:  Absolutely.  Yes, Your Honor.

6              6 U.S.C. Section 279(b)(1)(H) authorizes the

7    Secretary of Homeland Security to reunite children with

8    their parents from whom they have been separated.

9              This has been done previously.  This is not a new

10   use of this authority; prior secretaries have done precisely

11   this.

12             The government of Guatemala has requested the

13   return of these children.  And all of these children have

14   their parents or guardians in Guatemala who are requesting

15   their return.  And the United States government is trying to

16   facilitate the return of these children to their parents or

17   guardians from whom they have been separated.

18             So we certainly dispute that these are removals

19   under Title 8.  This is reuniting children with their

20   parents and guardians as specifically permitted by Title 6.

21             THE COURT:  Okay.

22             Can I hear from the plaintiffs and their position

23   on that?

24             MR. OLIVARES:  Yes, Your Honor.  Efren Olivares

25   for the plaintiffs.

1          So the TVPRA has provisions and procedures for an

2     immigration judge when children are in proceedings; that an

3     immigration judge must approve a request of voluntary

4     departure.  As we have put forth evidence in the record,

5     there are many children who do not meet the criteria that

6     Mr. Ensign described.  Some of the children do not have

7     either parents; some of the children have fear of returning

8     to Guatemala, so have not requested to return, do not want

9     to return, including some of the named plaintiffs.

10          So while it's possible that some of the children

11    might fit that criteria, the dozens that were picked up at

12    4:00 a.m. with two hours' notice in South Texas and other

13    parts of the country, not all of them meet those criteria.

14          THE COURT:  Mr. Ensign, are you representing that

15    all of these children are being moved because their parents

16    have requested that they return to Guatemala?

17          MR. ENSIGN:  Your Honor, that's my understanding.

18    It would be -- the requests come from the government of

19    Guatemala.

20          My understanding is that, for these children, a

21    request has been made by either their parent or legal

22    guardian to reunite them in Guatemala; this is pursuant to

23    that.  These are reunifications rather than removals.  And

24    we think it's fairly outrageous that plaintiffs are trying

25    to interfere with these reunifications, particularly it --

1    you know, that raises severe issues where this TRO may

2    prevent reunification where both parent and child would like

3    to be reunited.

4              THE COURT:  Mr. Ensign, just to be clear, I

5    entered a TRO because what was about to happen -- these

6    children being put on planes and being sent back to

7    Guatemala was imminent -- and it sounds like it was because

8    they are currently still loaded onto airplanes, again, in

9    the wee hours of the morning on a holiday weekend.

10             I entered a TRO to preserve the status quo so we

11   can figure out if, in fact, what we have here are children

12   and attempts to reunite those children with their parents at

13   the request of their parents or, as the plaintiffs are

14   telling me, children who do not want to go back to

15   Guatemala, where no requests have been made, where they fear

16   returning to Guatemala, and they may be subject to harm.

17             In the absence of hearing from the government in

18   the middle of the night, when I was certainly up trying to

19   figure out what was going on and I made good-faith attempts

20   to reach the government, I entered a TRO to preserve the

21   status quo.

22             So we're here to try to figure out, as quickly as

23   we can, what is happening so I can either modify my TRO, if

24   I find that that's warranted, or dissolve the TRO if I find

25   that that is warranted, or move forward to the PI stage.

1          I just want to be clear, you are representing to

2     me that all of the children who have been put on airplanes,

3     who were picked up from ORR, transferred to ICE custody, and

4     put on airplanes earlier this morning, are children whose

5     parents requested that they be returned to Guatemala, and

6     you know that to be true?

7          MR. ENSIGN:  Your Honor, that's my understanding

8     as of this hour.

9          This case is quite new to me as well, but that is

10    what I have been told, and that these requests have been

11    relayed through the government of Guatemala.  This has been

12    a process.  This has been a monthlong process to identify

13    children that meet those criteria and for which

14    reunification would be appropriate under Title 6.  That's my

15    understanding; that all of them -- that that criteria under

16    Title 6, and that those requests have been coordinated with

17    the government of Guatemala.

18         THE COURT:  Okay.  And from the plaintiffs'

19    perspective, you do not think that that is true?

20         MR. OLIVARES:  Your Honor, we know that is not

21    true for all of the children covered in the class.

22         At least one of our named plaintiffs, in her

23    declaration, she explained that her parents received a

24    strange phone call in Guatemala telling them that the U.S.

25    government was going to send her back to Guatemala; at least

1    those parents did not request that she be returned.  Even

2    when parents do request that a child be returned to a home

3    country for purposes of reunification, if immigration

4    proceedings are pending, they still need to be concluded in

5    front of the IJ, in front of the immigration judge, an

6    appropriate voluntary departure order issued, and then

7    reunification.

8              THE COURT:  So this provision that the government

9    is relying on for reunification does not override the other

10   procedures laid out in the statute for removing these

11   children; is that right?

12             MR. OLIVARES:  That is correct, Your Honor.

13             THE COURT:  Okay.  Mr. Ensign, from the

14   government's perspective, are you saying that this

15   reunification provision overrides the statutory protections

16   that the plaintiffs are relying on?

17             MR. ENSIGN:  Not necessarily overrides, Your

18   Honor, but is separate from them and is a separate source of

19   authority that authorizes what the secretaries are doing

20   here.

21             THE COURT:  It either overrides it or not.

22             Do you think they don't apply?  Do you think the

23   statutory protections that are pretty carefully laid out for

24   unaccompanied minors, given the vulnerability of that

25   group -- do you think that they're inapplicable here because

1    of the provision you are relying on?

2    MR. ENSIGN:  That they would be inapplicable, yes,

3    Your Honor.  And the Title 6 provision is its own form of

4    protection which protects children by permitting the

5    reunification with their parents and their guardians.

6    THE COURT:  And the whole point of procedural

7    protections like the ones laid out in the statutes that I

8    have reviewed is to make sure that process is given.

9    If, for example, I have got plaintiffs before me

10   who are saying that their parents did not request that they

11   be returned to Guatemala -- in other words, I have

12   declarations, representations that are contrary to what you

13   are telling me here today -- how does that get resolved?

14   MR. ENSIGN:  Your Honor, it sounds like we

15   obviously have factual and legal disputes with plaintiffs

16   that would be resolved through briefing.  And so we would

17   propose to submit our position on that through legal briefs

18   and declarations.

19   THE COURT:  Okay.  When does the government plan

20   to file a response brief?

21   MR. ENSIGN:  Your Honor, given that your order

22   extends for 14 days, we would ask until Friday to file a

23   response to the TRO.

24   THE COURT:  Okay.  If that is how long the

25   government needs, I am going to give you that time in light

1    of my order.  I will note that -- because I issued my TRO

2    without notice -- we're supposed to be moving here with some

3    speed and you, obviously, don't think I should have entered

4    a TRO.  And so if that's the case, I would like to see your

5    arguments as to why I am wrong and, if needed, modify my

6    TRO.

7            So I was thinking earlier than Friday.  But if

8    that's what you are telling me that you need to get all of

9    your ducks in a row and make sure you can figure out what is

10   going on with all of these children and file documents

11   before me that are accurate, then I will give you until

12   Friday to do that; and then my order will stay in place.

13           You are not going to be able to remove any of

14   these children until you file a brief, I hear from the

15   plaintiffs, we have a hearing, and I can rule.

16           MR. ENSIGN:  We understand that, Your Honor.  We

17   certainly object to the issuance of the TRO, but we

18   understand that that would be the process that would play

19   out.

20           THE COURT:  Okay.

21           Mr. Olivares, how long do you want to file a reply

22   to the government's response?

23           MR. OLIVARES:  The government files its brief on

24   Friday, we can file a response by Monday --

25           THE COURT:  Okay.  Do you want to respond to this

1    TRO motion that I have granted, or should we proceed with an

2    expedited PI briefing schedule at this point?

3              MR. OLIVARES:  If the question is for me, Your

4    Honor, we would propose to have expedited PI briefing.

5              THE COURT:  For both of you, but yes.

6              MR. OLIVARES:  The plaintiffs would be in favor of

7    expedited PI briefing.

8              THE COURT:  Okay.  And when would you be able to

9    file an expedited PI motion?

10             MR. OLIVARES:  Before the expiration of the TRO.

11             THE COURT:  Well, we're going to move forward with

12    briefing sooner than that.

13             If the government is going to file a response and

14    you want to move for an expedited PI, it makes sense for you

15    to file that in the next day or two, have the government

16    respond on Friday, and then have you reply.

17             Can you do that?

18             MR. OLIVARES:  Two days?  We can get it filed by

19    Tuesday.

20             THE COURT:  Great.  Okay.  So you will file a PI

21    motion on Tuesday, September 2nd.  The government will

22    respond on September 5th.  You will reply by September 8th

23    and, then, I will notice a hearing from there.

24             Mr. Olivares, do you believe you have what you

25    need, in terms of an order from this Court, to prevent these

1    children from being removed until we sort out which

2    narrative here is correct?

3            I do not want there to be any ambiguity about what

4    I am ordering or what the government is to do down the road.

5    I just want to make sure everyone here in this virtual

6    courtroom is on the same page about where we are.

7            MR. OLIVARES:  I appreciate that, Your Honor.

8    This is counsel for the plaintiffs.

9            Because there have been multiple instances where,

10   you know, exposed allegations of confusion and

11   misunderstanding have resulted in irreparable harm, frankly,

12   part of me would like to stay on this hearing until the kids

13   deplane, if that were possible.

14           I understand Mr. Ensign's representations that,

15   from his perspective, no removals will take place of any

16   putative class members.  If that's all we have, that's all

17   we have.

18           I would appreciate another representation to that

19   effect from the government that those planes will not leave

20   the country.  But other than that, plaintiffs' position is

21   that the TRO issued right before this hearing provides the

22   protection necessary for the next 14 days.

23           THE COURT:  Okay.  We're going to recess for ten

24   minutes.  I am going to ask Mr. Ensign to go speak with DHS

25   and HSS, and whichever other agencies are involved, and come

1    back to let us know whether they're going to deplane those

2    kids and return them to ORR custody, and when they expect

3    that to happen.

4         Mr. Ensign, are you able to do that?

5         MR. ENSIGN:  Your Honor, I am certainly happy to

6    try, and I will certainly start making those calls now.

7         THE COURT:  Great.  And if you don't know that

8    that has happened, a time estimate on when the agencies can

9    confirm would be helpful because then I can ask you to file

10   a status report within that time period.

11        So one, find out whether they have deplaned or the

12   kids are still on the plane.  If they're still on the plane,

13   whether they plan to deplane and return them to ORR custody

14   and, if so, when.  And if they don't know, how long they

15   need in order to figure that out.

16        MR. ENSIGN:  I will attempt to ascertain that.

17        Some of those answers may take some time.  But,

18   certainly, these planes were being held pending the results

19   of this hearing.  Now that the TRO is issued, my

20   understanding is those planes are not going to leave.  As to

21   the details of when they deplane or when they return to ORR

22   custody, I will try to ascertain those.

23        But in terms of the immediate question of whether

24   flights are leaving, they will not be leaving.

25        THE COURT:  Okay.  Great.  That would be helpful.

```
1            If they are not sure when, I think the main thing
2     is a representation that the plan is to deplane and then
3     return those kids to ORR care, where they were prior to when
4     they were picked up in the wee hours of the morning.  If you
5     can't tell me when, at least being able to make that
6     representation that these kids are going to be returned to
7     ORR when they get off those planes would be helpful.
8            MR. ENSIGN:  Certainly, Your Honor.  I will see
9     what I can find out.
10            THE COURT:  Okay.  Thank you.  So we'll come back
11     in ten minutes.  Thank you.
12            (Whereupon, a recess was taken.)
13            THE COURTROOM DEPUTY:  Your Honor, we're back on
14     the record for Civil Case 25-2942.
15            THE COURT:  Thank you.
16            All right.  Mr. Ensign, do you have an update for
17     me?
18            MR. ENSIGN:  Yes, Your Honor.
19            I have spoken with HSS and confirmed that the plan
20     is to deplane the children (indiscernible) --
21            THE COURT:  Sorry.  Mr. Ensign, hang on.
22            Can you start over.  The line was breaking up.
23     And if you could, just speak slowly so we can hear and make
24     sure what you are saying.
25            MR. ENSIGN:  Yes, Your Honor.
```

1          I have spoken with HHS and confirmed that the plan

2     is to deplane the children and to return them to ORR's

3     custody during the pendency of the TRO.

4          THE COURT:  Okay.  And do you know when that's

5     going to happen?

6          MR. ENSIGN:  I don't, Your Honor.  I don't have

7     specifics as to when that will occur, but I will confirm

8     that that is the plan.

9          THE COURT:  Okay.  Will you file a status report

10     on the docket to confirm that that has happened when it

11     happens?

12          MR. ENSIGN:  We can do that, Your Honor.

13          THE COURT:  Great.  Okay.

14          In the recess, I just took the time to look at the

15     provision you had cited to me, which I had not seen before,

16     and went back and looked at the declarations.

17          I just want to read from some of the declarations

18     because I have conflicting narratives from both sides here

19     on whether what is happening here is an attempt to reunite

20     these children with their parents or just return these

21     children to Guatemala where they face harm.

22          One declarant says:  I believe the government may

23     be -- maybe me [sic] -- trying to deport me back to

24     Guatemala.  A few weeks ago, in August 2025, my parents who

25     live in Guatemala told me that they received a strange phone

call.  The person told them that the U.S. government is
planning to deport me with a larger group of Guatemalan
minors.  Since my parents told me this news, I feel
terrible.

Every one of these ten declarants who are named
plaintiffs speak about being afraid of going back to
Guatemala.

One says:  I came to the United States after
experiencing abuse, neglect, and family violence.  If I am
sent back, I will not be able to live safely; I won't have
anyone to protect me.

Another says:  We came to the United States after
experiencing neglect from my parents.  And after one
plaintiff was abandoned by her father:  If we are sent back,
we will not be able to live safely.

Another:  I fear returning to Guatemala because of
the threats against my life I experienced there.  Because of
the abuse and neglect I experienced growing up, if I am sent
back I believe I will be in danger.

Another:  I came to the United States after
experiencing abuse and neglect from my father, and abuse
from the father of my child.  If I am sent back, I will not
be able to live safely.

So this doesn't quite line up with what I am
hearing from the government.  I have, among these named

1      plaintiffs, someone preparing an asylum application.

2              Another person says, again:  I fear returning to

3      Guatemala and being harmed.  If I am sent back, I believe I

4      will be in danger; I was already assaulted once with a

5      knife.

6              This is why we have processes.  This is why we

7      have courts.

8              I also took the opportunity, as I mentioned, to

9      look at the provision that you cited for me, Mr. Ensign.  I

10     am pretty skeptical that it gives the government the

11     authority to do what you are claiming it does.

12             My understanding is that there are two paths to

13     removing these children:  One is removal, which you are

14     telling me is not happening; and one is voluntary departure.

15     And for unaccompanied minors in particular, there are

16     special procedural protections put in place under the

17     Trafficking Victims Protection Reauthorization Act.  Those

18     protections are a recognition of the fact that this

19     population is incredibly vulnerable.  I don't see anything

20     in what you are citing to me that would override those

21     protections.

22             So if, in fact, what we have are children who

23     should be returned home because their parents want them to

24     come home, as you are representing to me, there are still

25     procedural protections in place that the government needs to

1    go through in order to repatriate those children.

2    I will wait to see your brief, obviously. But I

3    am not seeing anything in the very short time that I have

4    had to look at this that would displace those protections.

5    So I will wait to see your brief on Friday.

6    I will also note that I recognize that it is

7    extraordinary to enter a temporary restraining order; I do

8    so sparingly. It is particularly extraordinary to do it on

9    an *ex parte* basis. But I felt that the situation was

10   imminent.

11   As I said at the start of this hearing, I got a

12   call at 2:36 a.m. because the government chose the wee hours

13   of the morning on the Sunday of Labor Day weekend to execute

14   a plan to move these children; that's why we're here. I

15   tried to reach the government at that time. I have been up

16   since then, and didn't reach anyone from the government

17   until close to 9 a.m. this morning.

18   The imminence that the plaintiffs claimed proved

19   to be true because, in fact, those planes were loaded; one

20   actually took off and was returned. And so absent action

21   and intervention by the Court, all of those children would

22   have been returned to Guatemala, potentially to extremely

23   dangerous situations.

24   And even now that the government has appeared, you

25   are telling me that even though you think you have the

1    authority to do this, and what you are trying to do here is

2    reunify families, not violate the law, you need five days to

3    respond.

4            Again, I am not going to force you to respond

5    sooner.  But if you need five days to respond, my order is

6    going to stay in place so that we do not remove these

7    children from the country potentially unlawfully.

8            I have done all I can to try to make a decision

9    based on what is in front of me, and the government hasn't

10    put anything in front of me to counter the narrative from

11    the plaintiffs.  And I will continue to be here and be

12    available to act as expeditiously as possible to modify my

13    order if I think that's warranted, after seeing your brief,

14    or move forward and enter a PI if I am not convinced.

15            But the Court will continue to be available.  If

16    the government chooses to respond sooner or any party wants

17    to file anything in addition, I will be here to consider it.

18            I am trying to do the best I can to fulfill my

19    obligations as an Article III judge based on what is in

20    front of me; that's all I am trying to do.

21            I appreciate you all showing up today.  I

22    particularly appreciate the government's representation, and

23    I am going to put it on the record again just so there is

24    absolutely no ambiguity about where we are.

25            These children are going to be deplaned; they're

1    going to be returned to ORR custody, and no attempts will be

2    made to remove them from ORR custody and remove them to

3    Guatemala in light of my order and while these preliminary

4    emergency proceedings are pending.  That's what I have heard

5    from the government, and I am going to accept those

6    representations.

7         My order, Mr. Ensign, which you had, orders the

8    government to facilitate the transportation which, to me,

9    means deplaning, and to cease ongoing efforts including

10   those to facilitate the transfer of putative class members.

11        Based on all of that, I think we are on the same

12   page.  And I will look for the government's status report,

13   hopefully today, letting me know that the planes have been

14   deplaned and the children have all been returned to ORR

15   custody.

16        Mr. Olivares, if at any point you are aware of

17   facts that suggest that is not happening or that there are

18   additional attempts to remove these children, please file

19   something on the docket or reach out to my chambers.

20        Any questions, or anything else from either side?

21        MR. OLIVARES:  Nothing else from the plaintiffs,

22   Your Honor.  Thank you very much.

23        I hope you can enjoy the rest of your weekend.

24        THE COURT:  Thank you.

25        Mr. Ensign, anything from the government?

1          MR. ENSIGN:  Your Honor, we, obviously, believe

2     these reunifications are lawful and look forward to setting

3     forth why that is the case in our brief.

4          THE COURT:  Okay.

5          I am going to take a minute to thank my court

6     staff who I called at 2:30 a.m. this morning, and who all

7     interrupted their Labor Day weekend.  My courtroom deputy

8     and court reporter are both here in the building on the

9     Sunday of Labor Day; my law clerks have been up since 2:30.

10          Again, everyone is trying to do their best to deal

11     with what is in front of us at this point and do our jobs,

12     but I just want to give them a special thanks because they

13     have all been extraordinary.

14          Thank you, all.

15          Okay.  I will wait for the papers from here.

16     Thank you.

17          THE COURTROOM DEPUTY:  Thank you, Counsel.  This

18     court is adjourned.

19          MR. OLIVARES:  Thank you, Your Honor.

20          MR. ENSIGN:  Thank you, Your Honor.

21          (Whereupon, the proceeding concludes, 1:58 p.m.)

22

23

24

25

## **CERTIFICATE**


     I, ELIZABETH DAVILA, RPR, FCRR, do hereby certify

that the foregoing constitutes a true and accurate

transcript of my stenographic notes, and is a full, true,

and complete transcript of the proceedings to the best of my

ability.

     This certificate shall be considered null and void

if the transcript is disassembled and/or photocopied in any

manner by any party without authorization of the signatory

below.


     Dated this 31st day of August, 2025.

     /s/ Elizabeth Davila, RPR, FCRR
     Official Court Reporter