# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| L.G.M.L., address omitted per LCvR 5.1; | |
| L.M.R.S., address omitted per LCvR 5.1; | |
| M.O.C.G., address omitted per LCvR 5.1; | Case No. 1:25-cv-02942-TJK |
| H.L.E.C, address omitted per LCvR 5.1; | |
| T.A.C.P., address omitted per LCvR 5.1; | **FIRST AMENDED CLASS** |
| M.F.A.P.V., address omitted per LCvR 5.1; | **ACTION COMPLAINT FOR** |
| | **INJUNCTIVE AND** |
| L.F.M.M., address omitted per LCvR 5.1; | **DECLARATORY RELIEF** |
| G.A.B.B., address omitted per LCvR 5.1; | |
| A.R.M.D., address omitted per LCvR 5.1; | |
| M.Y.A.T.C., address omitted per LCvR 5.1; | |
| L.G.M.S., address omitted per LCvR 5.1; | |
| H.E.B., address omitted per LCvR 5.1; and | |
| YOUNG CENTER FOR IMMIGRANT CHILDREN'S RIGHTS, 228 S Wabash Ave, Chicago, IL 60604, as next friend, | |
| *Plaintiffs*, | |
| *v.* | |
| KRISTI NOEM, in her official capacity as Secretary of the U.S. Department of Homeland Security, 245 Murray Lane SW, Washington, DC 20528; | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, 245 Murray Lane SW, Washington, DC 20528; | |

TODD LYONS, in his official capacity as Acting
Director, U.S. Immigration and Customs
Enforcement, 500 12th Street SW, Washington,
DC 20536;

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, 500 12th Street SW,
Washington, DC 20536;

ROBERT F. KENNEDY, JR. in his official
capacity as Secretary of Health and Human
Services, 200 Independence Avenue SW,
Washington, DC 20201;

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES, 200 Independence Avenue
SW, Washington, DC 20201;

ANGIE SALAZAR, in her official capacity as
Acting Director of the Office for Refugee
Resettlement, 330 C Street SW, Room 5123
Washington, DC 20201;

OFFICE OF REFUGEE RESETTLEMENT, 300
C Street SW, Washington, DC 20201;

PAMELA BONDI, in her official capacity as
Attorney General, 950 Pennsylvania Avenue NW,
Washington, DC 20530;

U.S. DEPARTMENT OF JUSTICE, 950
Pennsylvania Avenue NW, Washington, DC
20530

MARCO RUBIO, in his official capacity as
Secretary of State, 1600 Pennsylvania Avenue
NW, Washington, DC 20500; and

U.S. STATE DEPARTMENT, 2201 C Street
NW, Washington, DC 20520,

*Defendants*.

## INTRODUCTION

1.    This is a complaint on behalf of hundreds of children at risk of unlawful removal from the United States.

2.    Plaintiffs are unaccompanied minors in Office of Refugee Resettlement ("ORR") custody whom Defendants have sought or are seeking to remove from the United States in clear violation of the unambiguous protections that Congress has provided them as vulnerable children. Defendants have unlawfully claimed the power to expel these children, in violation of the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), the Immigration and Nationality Act ("INA"), and the Constitution. Plaintiffs seek to represent a class of unaccompanied children who are or will be placed in ORR custody and who do not have a final order of removal or grant of voluntary departure by an immigration judge.

3.    Recognizing their unique vulnerability, Congress has created a special statutory scheme to ensure that unaccompanied minors receive enhanced protection and care, including whenever the government seeks to remove them from the United States. Summary expulsion plainly violates this statutory scheme. Under U.S. law, an unaccompanied minor is defined as a child who "(A) has no lawful immigration status in the United States; (B) has not attained 18 years of age; and (C) with respect to whom— (i) there is no parent or legal guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2). Once a child is designated as an unaccompanied minor, numerous legal protections guarantee that they are not removed without due process and are able to pursue forms of relief from deportation for which they may be eligible.

4.    Despite these clear statutory protections, over the 2025 Labor Day weekend, Defendants caused dozens of children to be awakened in the middle of the night, bussed to the

airport, and then attempted to expel them from the country. Defendants provided no meaningful notice to the children or their lawyers or advocates. These children are entitled to statutory and constitutional protections against summary expulsion—protections that Defendants ignored.

5.    Only an emergency restraining order entered in the middle of the night prevented Defendants from accomplishing their attempt to summarily expel these children from the United States. Upon information and belief, Defendants plan to summarily expel these and other unaccompanied children in ORR custody unless this Court intervenes.

6.    Plaintiffs' initial complaint sought relief for unaccompanied children from noncontiguous countries. That is because, under the TVPRA, children from *contiguous* countries who are determined to meet certain criteria, 8 U.S.C. § 1232(a)(2)(A), are generally not transferred to ORR custody and therefore would not be part of the proposed class. Instead, they may be promptly repatriated to their country of origin (Mexico or Canada) following certain special procedures. 8 U.S.C. § 1232(a)(2)(B)-(C). But unaccompanied children from *contiguous* countries who are screened and determined *not* to meet these criteria, i.e., they are determined to be victims of trafficking or at risk of trafficking, to have a credible fear of persecution in their country of origin, and/or to lack the capacity to make an independent decision to withdraw their applications for admission, 8 U.S.C. § 1232(a)(2)(A), are transferred to ORR custody. Once in ORR custody, these children enjoy the same rights and protections contained in the TVPRA as all other unaccompanied children in ORR custody. *See* 8 U.S.C. § 1232(a)(3) ("The custody of unaccompanied alien children not [who are not determined to be subject to the rules for certain children from contiguous countries] . . . shall be treated in accordance with subsection (b) [i.e., the rules applying to children from non-contiguous countries]."). Because the TVPRA protections apply equally to *all* children in ORR custody, references to "unaccompanied

children" in this first amended complaint, unless otherwise specified, *include* those from either contiguous or non-contiguous countries once they are transferred to ORR custody, and excludes only the subset of Mexican or Canadian children who are never transferred to ORR custody.

7.      Plaintiffs and class members seek relief from this Court in order to prevent grave and irreparable harms to thousands of unaccompanied children resulting from Defendants' unlawful and reckless attempts to summarily expel them from the United States.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the claims in this case arise under the laws of the United States, including but not limited to the William Wilberforce Trafficking Victims Protection Reauthorization Act, Pub. L. No. 110-457, 122 Stat. 5044 (2008); the Immigration and Nationality Act, 8 U.S.C. § 1101, *et seq.* and its implementing regulations; the Convention Against Torture ("CAT");  the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"); the Administrative Procedure Act ("APA"); and the U.S. Constitution.

9.      Venue is proper under 28 U.S.C. § 1391(e) because Defendants are agencies and officers of the United States sued in their official capacity, the action does not involve real property, and/or the majority of Defendants reside in this district, and/or a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

**A.      Plaintiffs**

10.      Plaintiff L.G.M.L. is a 10-year-old Guatemalan child currently in ORR custody. L.G.M.L. is, and at all relevant times was, an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2). L.G.M.L. is indigenous and speaks a rare language. L.G.M.L.'s mother is

deceased and she suffered abuse and neglect from other caregivers. She does not want to be removed to Guatemala.

11.    Plaintiff L.M.R.S. is a 16-year-old Guatemalan girl with a 10-month-old daughter, both in ORR Custody. L.M.R.S. is, and at all relevant times was, an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2). L.M.R.S. is in ongoing removal proceedings and wishes to remain in the United States. She was recently interviewed by Homeland Security Investigations (HSI) and the Guatemalan Consulate. Plaintiff L.M.R.S. sues on behalf of herself and all others similarly situated.

12.    Plaintiff M.O.C.G. is a 16-year-old Guatemalan boy in the custody of Defendant ORR. M.O.C.G. is, and at all relevant times was, an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2). He is in removal proceedings before the immigration court, and even though his proceedings were administratively closed, the immigration court has not decided his case. He has expressed fear of returning to Guatemala. Plaintiff M.O.C.G. sues on behalf of himself and all others similarly situated.

13.    Plaintiff H.L.E.C. is a 16-year-old Guatemalan girl in the custody of Defendant ORR. H.L.E.C. is, and at all relevant times was, an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2). She is in removal proceedings before the immigration court and has expressed fear of being returned to Guatemala.

14.    Plaintiff T.A.C.P. is a Guatemalan boy currently in the custody of Defendant ORR. T.A.C.P. is, and at all relevant times was, an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2). He is in removal proceedings before the immigration court, and he has expressed fear of returning to Guatemala. Plaintiff T.A.C.P. sues on behalf of himself and all others similarly situated.

15.      Plaintiff M.F.A.P.V. is a 17-year-old Guatemalan girl currently in the custody of Defendant ORR. M.F.A.P.V. is, and at all relevant times was, an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2). She is currently in removal proceedings before the immigration court and has expressed a fear of returning to Guatemala.

16.      Plaintiff L.F.M.M. is a 16-year-old Guatemalan boy in the custody of Defendant ORR. L.F.M.M. is, and at all relevant times was, an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2). He is in removal proceedings before the immigration court and has expressed fear of being returned to Guatemala.

17.      When the original Complaint was filed, Plaintiff G.A.B.B. was a 17-year-old Guatemalan boy in ORR custody. G.A.B.B. was, at all relevant times, an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2). He is in removal proceedings before the immigration judge and has expressed fear of returning to Guatemala.

18.      When the original Complaint was filed, Plaintiff A.R.M.D. was a 17-year-old Guatemalan boy. A.R.M.D. was, at all relevant times, an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2). He is indigenous and speaks a rare language.  He was currently in the custody of Defendant ORR. He is in removal proceedings before the immigration court and has expressed fear of returning to Guatemala.

19.      Plaintiff M.Y.A.T.C. is a 16-year-old Guatemalan girl in the custody of ORR. M.Y.A.T.C. is, and at all relevant times was, an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2). M.Y.A.T.C. is in 11th grade and is pursuing her removal case before the immigration court. She does not want to return to Guatemala.  Plaintiff M.Y.A.T.C. sues on behalf of herself and all others similarly situated.

20.      Plaintiff L.G.M.S. is a 16-year-old girl from Mexico in the custody of ORR. L.G.M.S. is, and at all relevant times was, an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2). L.G.M.S. is in removal proceedings before the immigration court and has expressed fear of returning to Mexico.  Plaintiff L.G.M.S. sues on behalf of herself and all others similarly situated.

21.      Plaintiff H.E.B. is a 13-year-old girl from Honduras currently in ORR custody. H.E.B. is, and at all relevant times was, an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2).  H.E.B. has no parents or caregivers who could care for her in Honduras. She has expressed fear of returning to Honduras and a desire to live with her mother in the United States and her remaining family.  Plaintiff H.E.B. sues on behalf of herself and all others similarly situated.

22.      The Young Center for Immigrant Children's Rights ("The Young Center") is a nonprofit organization that provides statutorily authorized independent child advocates to serve unaccompanied children in government custody. Each Plaintiff appears by and through the Young Center, which serves as each Plaintiff's Next Friend in this action.

**B.      Defendants**

23.      Defendant Pamela J. Bondi is the U.S. Attorney General at the U.S. Department of Justice, which is a cabinet-level department of the United States government. She is sued in her official capacity.

24.      Defendant Kristi Noem is the Secretary of the U.S. Department of Homeland Security, which is a cabinet-level department of the United States government. She is sued in her official capacity. In that capacity, Defendant Noem is responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103.

25.     Defendant U.S. Department of Homeland Security ("DHS") is a cabinet-level department of the United States government. Its components include Immigration and Customs Enforcement ("ICE").

26.     Defendant Todd Lyons is the Acting Director of ICE. Defendant Lyons is responsible for ICE's policies, practices, and procedures, including those relating to the detention of immigrants during their removal procedures. Defendant Lyons is sued in his official capacity.

27.     Defendant ICE is the subagency of DHS that is responsible for carrying out removal orders and overseeing immigration detention.

28.     Defendant Marco Rubio is the Secretary of State at the U.S. Department of State, which is a cabinet-level department of the United States government. He is sued in his official capacity.

29.     Defendant U.S. Department of State is a cabinet-level department of the United States government.

30.     Defendant Robert F. Kennedy, Jr. is the Secretary of Health and Health and Human Services ("HHS"), which is a cabinet-level department of the United States Government. Defendant Kennedy is sued in his official capacity.

31.     Defendant U.S. Department of Health and Human Services is a cabinet-level department of the United States government. Its components include the Office of Refugee Resettlement ("ORR") that is responsible for overseeing the care and custody of unaccompanied minors.

32.     Defendant ORR is the subagency of HHS that is responsible for overseeing the care and custody of unaccompanied minors.

33.     Defendant Angie Salazar is the Acting Director of ORR. Defendant Salazar oversees the care and custody of unaccompanied minors. Defendant Salazar is sued in her official capacity.

## BACKGROUND

### I.  Protections for Children under the Trafficking Victims Protection Reauthorization Act of 2008

#### A.      *Right to Removal Proceedings under 8 U.S.C. § 1229a*

34.     The Trafficking Victims Protection Reauthorization Act ("TVPRA") of 2008, Pub. L. No. 110-457, 122 Stat. 5044 (2008), embodies Congress's intent to provide unique substantive and procedural protections to unaccompanied minors seeking refuge in the United States and represents the bipartisan interest in protecting this uniquely vulnerable population.[1]

35.     The TVPRA and related statutes create a comprehensive scheme that mandates special procedures for adjudicating removal proceedings against an unaccompanied minor and for caring for unaccompanied minors and releasing them to vetted sponsors during the pendency of their removal proceedings.

36.     Pursuant to the TVPRA, any unaccompanied child sought to be removed from the United States by the Department of Homeland Security ("DHS"), shall be (i) placed in removal proceedings under 8 U.S.C. § 1229a; (ii) eligible for relief under 8 U.S.C. § 1229c at no cost to the child; ***and*** (iii) provided access to counsel in accordance with subsection (c)(5). 8 U.S.C. § 1232(a)(5)(D).

37.     By requiring that DHS place unaccompanied children in § 1229a removal proceedings, the TVPRA exempts unaccompanied children from placement in expedited removal

---

[1] *See, e.g.*, Cong. Rsch. Serv., R43599, Unaccompanied Alien Children: An Overview 5-6 (2024), https://perma.cc/JQ8L-NZJR.

proceedings pursuant to 8 U.S.C. § 1225(b). 8 U.S.C. § 1232(a)(2)(B), (a)(3), (a)(5)(D). Under

the expedited removal statute, certain noncitizens with limited ties to the United States may be

removed without a hearing. 8 U.S.C. § 1225(b)(1)(A)(i), (iii)(II). But by law, all unaccompanied

children who have been placed in ORR custody—regardless of the circumstances of their arrival

to the United States—receive the benefit of full immigration proceedings, including a hearing on

claims for relief before an immigration judge.

38.    Congress provided even further procedural protection to unaccompanied minors

in removal proceedings by mandating that their claims for asylum be heard in the first instance

before an asylum officer in a non-adversarial setting rather than in an adversarial courtroom

setting. 8 U.S.C. § 1158(b)(3)(C).

39.    The TVPRA's protections are broadly applied, confirming Congress's clear

directive regarding the removal protections afforded to unaccompanied children. It does not

distinguish between unaccompanied children who have or do not have prior immigration

histories. More specifically, it does not exclude those who have prior removal orders.

40.    The TVPRA does not allow DHS to bypass § 1229a proceedings and expel

unaccompanied children without observance of the procedures of the INA and without their day

in court.

**B.**    ***Access to Counsel***

41.    In addition, 8 U.S.C. § 1232(c)(5) requires, in its use of "shall," that the Secretary

of Health and Human Services ensure, to the greatest extent practicable, that all unaccompanied

children who are or have been in the custody of the Secretary or the Secretary of Homeland

Security have counsel to represent them in legal proceedings or matters and protect them from

mistreatment, exploitation, and trafficking.

### C.    *Safe Repatriation*

42.    The TVPRA also provides special procedures to ensure the safe repatriation of unaccompanied minors who seek to depart the United States voluntarily or who are ordered removed at the termination of removal proceedings.

43.    Once placed in § 1229a proceedings, an unaccompanied child may seek permission from an immigration judge for voluntary departure pursuant to § 1229c. Voluntary departure is a form of immigration relief granted by an immigration judge following a noncitizen's request to depart the United States without the issuance of a removal order and generally occurs at the noncitizen's expense. 8 U.S.C. § 1229c.

44.    The TVPRA further mandates that unaccompanied minors granted voluntary departure not bear the cost of their repatriation. 8 U.S.C. § 1232(a)(5)(D)(ii).

45.    To further protect children from traffickers and other persons seeking to victimize this vulnerable population, DHS, in conjunction with the Department of State, DOJ, and HHS, bears an affirmative responsibility to ensure the safety of any unaccompanied child who is repatriated following a grant of voluntary departure or an order of removal from the United States. 8 U.S.C. § 1232(a)(1).

46.    The TVPRA similarly requires DHS and HHS to work together to ensure "safe and sustainable repatriation and reintegration" of unaccompanied minors into their countries of nationality or last habitual residence, "including placement with their families, legal guardians, or other sponsoring agencies." 8 U.S.C. § 1232(a)(5)(A).

### D.    *Exclusive ORR Custody*

47.    The TVPRA, along with the Homeland Security Act ("HSA"), Pub. L. No. 107-296, § 462, 116 Stat. 2135, 2202-05 (2002), creates a unique system for housing and caring for

unaccompanied children in government custody and for ensuring their safety when released from government custody. This system is wholly separate from the detention system for adult noncitizens and families with accompanied children operated by the Defendants within the Department of Homeland Security ("DHS").

48.    Congress devised this structure so that unaccompanied children would be in the care and custody of ORR, an agency focused on child welfare, rather than DHS, which is focused on immigration enforcement.[2] In 2024, ORR promulgated regulations ("The Foundational Rule") codifying the "policies, standards, and protections for [unaccompanied children], consistent with the HSA, []TVPRA," and applicable injunctive orders and settlement agreements entered in other litigation. 89 Fed. Reg. 34384, 34385 (Apr. 30, 2024) (promulgating 45 C.F.R. §§ 410.1000 *et seq.*). As ORR itself noted when promulgating the Foundation Rule, it is not a law enforcement agency. *See id.* at 34399, 34423 ("[I]t is not a law enforcement agency, unlike the former INS . . . ."); *see also id.* at 34591.

49.    The TVPRA provides that "the care and custody of all unaccompanied alien children, including responsibility for their detention, where appropriate, shall be the responsibility of the Secretary of Health and Human Services." 8 U.S.C. § 1232(b)(1); *accord* 6 U.S.C. § 279(b). The Secretary, in turn, has placed that responsibility within ORR. 45 C.F.R. §§ 410.1002-1004. Any federal department or agency that has an unaccompanied minor in its

---

[2] *See, e.g.*, 148 Cong. Rec. S11295 (daily ed. Nov. 18, 2002) (statement of Sen. Feinstein); 148 Cong. Rec. S8178-80 (daily ed. Sept. 4, 2002) (reprinting letter from Sens. Kennedy and Brownback); 148 Cong. Rec. S9670 (daily ed. Oct. 1, 2002) (statement of Sen. Feinstein) ("As we transfer and reshape the INS in this legislation, it is imperative to relieve the agency of its responsibility of the care and custody of unaccompanied children. Doing so would accomplish two ends: one, it would permit the INS to focus its energies, efforts, and attention on its core missions; and two, it would transfer the care and custody of these children to the Office of Refugee Resettlement, ORR, an office that is better suited and much more experienced in handling the complexities of the children's situations.").

custody must transfer the minor to ORR custody "not later than 72 hours after determining" that the minor is unaccompanied. 8 U.S.C. § 1232(b)(3); 8 C.F.R. § 236.3(f)(1). Unaccompanied minors in ORR custody "shall be promptly placed in the least restrictive setting that is in the best interest of the child," usually with a "suitable family member" via ORR's sponsor vetting and release procedures. 8 U.S.C. § 1232(c)(2)(A); *see also* 89 Fed. Reg. at 34439 (promulgating 45 C.F.R. §§ 410.1000 *et seq.*) (The Foundational Rule codified "policies and procedures regarding release, without unnecessary delay, of an unaccompanied child from ORR custody to a vetted and approved sponsor.").

50. The HSA further charges ORR with "ensuring that the interests of the child are considered in decisions and actions relating to the care and custody of an unaccompanied alien child." 6 U.S.C. § 279(b)(1)(B).

51. The Foundational Rule details how ORR makes placement determinations for unaccompanied minors (*i.e.*, determining where to house them while in custody), 45 C.F.R. §§ 410.1100-1109, and for determining when and to whom to release an unaccompanied minor in ORR custody. *Id.* §§ 410.1200-1210. The regulations require that "unaccompanied children shall be treated with dignity, respect, and special concern for their particular vulnerability," *id.* § 410.1003(a), and that "ORR shall place each unaccompanied child in the least restrictive setting that is in the best interests of the child, giving consideration to the child's danger to self, danger to others, and runaway risk." *Id.* § 410.1003(f).

52. Upon information and belief, until August of this year, Defendants' longstanding policy and practice for "reunifying" an unaccompanied child in ORR custody with a caregiver in their country of origin was to follow the TVPRA. Upon information and belief, until August of this year, Defendants' longstanding policy did not contemplate reunification or removal of an

unaccompanied child over the objection of the child without a final executable removal order.
Defendants' actions demonstrate that they no longer intend to follow this longstanding policy.

## II.  Other Legal Safeguards for Unaccompanied Minors

### A.    *Flores Settlement Agreement*

53.      Prior to the enactment of the HSA and the TVPRA, federal courts intervened on
several occasions to protect unaccompanied minors from abuses in the immigration system.
These protections, some of which have been codified in the Foundational Rule, remain binding
on Defendants.

54.      In 1997, a federal court in the Central District of California approved a consent
decree covering "[a]ll minors who are detained in the legal custody of the INS [Immigration and
Naturalization Service]." Stipulated Settlement Agreement, *Flores v. Reno*, No. CV 85-4544-
RJK(Px), ¶ 10 (C.D. Cal. Jan. 17, 1997) [hereinafter *Flores* Settlement Agreement].[3] Among
other requirements, the *Flores* Settlement Agreement directed the INS to "treat[] all minors in its
custody with dignity, respect and special concern for their particular vulnerability as minors" and
to "place each detained minor in the least restrictive setting appropriate to the minor's age and
special needs." *Id.* ¶ 11. The *Flores* Settlement Agreement remains under the supervision of U.S.
District Judge Dolly M. Gee in the Central District of California. *Flores v. Bondi*, No. CV 85-
4544-DMG (AGRx).[4]

55.      Section 462 of the HSA incorporated many of the key protections of the *Flores*
Settlement Agreement, including its "least restrictive setting" requirement. Pub. L. No. 107-296,

---

[3] *See* https://perma.cc/R5Z2-CHMR. After *Flores*, the INS was dissolved and subsumed into
DHS, whereupon DHS and HHS inherited the INS' obligations under the *Flores* Settlement
Agreement.
[4] Following the promulgation of the Foundational Rule, the *Flores* Settlement Agreement was
partially terminated as to children in most HHS custodial placements.

§ 462, 116 Stat. 2135, 2202-05 (2002) (codified at 6 U.S.C. § 279). When responsibility for the care of unaccompanied children was transferred to ORR, ORR assumed the obligations set forth in the *Flores* Settlement Agreement and the HSA. *See* 45 C.F.R. § 410.1000(a).

**B.**    ***Perez-Funez Permanent Injunction***

56.    In 1985, another court in the Central District of California issued a permanent injunction granting certain special protections to unaccompanied children before a child's request for voluntary departure can be adjudicated. *Perez-Funez v. Dist. Dir.*, 619 F. Supp. 656 (C.D. Cal. 1985). This lawsuit arose out of then-INS coercive practices, and its protections are now implemented by regulation. 8 C.F.R. §§ 236.3(g)-(h), 1236.3(g)-(h) (protections include (1) a written notice of rights; (2) a list of free legal service providers; and (3) access to telephones and notice that they may call a parent, close relative, friend, or attorney). Additionally, for unaccompanied children from noncontiguous countries who are granted voluntary departure, DHS must ensure that the child in fact communicates with a parent, adult relative, friend, or attorney. *Id.* §§ 236.3(g), 1236.3(g). ORR regulations similarly require that unaccompanied children receive a confidential consultation with a qualified attorney to determine their eligibility for various forms of relief, including voluntary departure. 45 C.F.R. § 410.1309(a)(2)(v).

**III.  Protections for all Noncitizens under Immigration and Nationality Act**

57.    The special protections afforded to unaccompanied minors in removal proceedings in light of their vulnerability complement the more general statutory procedures that guarantee fairness in all removal proceedings and the rights of all people seeking refuge in the United States. These general procedures are also binding on Defendants when they seek to remove an unaccompanied minor.

58.     For many decades, the INA, as amended, has provided for a comprehensive system of procedures that the government must follow before removing a noncitizen from the United States. The INA provides the exclusive procedure by which the government may determine whether to remove an individual, including children. 8 U.S.C. § 1229a(a)(3).

59.     Once immigration proceedings have been initiated, neither DHS nor HHS can unilaterally dismiss or cancel them as jurisdiction is vested with the immigration judge. 8 C.F.R. § 239.2.[5]

60.     All noncitizens ordered removed at the conclusion of § 1229a proceedings have the right to appeal that decision to the Board of Immigration Appeals ("BIA") and to petition a Court of Appeals for judicial review. 8 U.S.C. §§ 1229a(c)(5), 1252(b). A removal order cannot be executed during the pendency of the appeal period or of the appeal itself. 8 U.S.C. § 1231(a)(1)(B); 8 C.F.R. § 1241.1.

61.     In addition to laying out the process by which the government determines whether to remove an individual, the INA also enshrines certain forms of humanitarian protection.

62.     First, the INA provides that "[a]ny alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival . . .), irrespective of such alien's status," may apply for asylum. 8 U.S.C. § 1158(a)(1). To qualify for asylum, a noncitizen must show a "well-founded fear of persecution" on account of a protected ground, such as race, nationality, political opinion, religion, or membership in a particular social group. 8 U.S.C. § 1101(a)(42).

---

[5]  Immigration judges are authorized to dismiss or terminate removal proceedings in certain circumstances. 8 C.F.R. §§ 1003.10(b), 1003.18(d), 1239.2(c). Dismissal and termination are dispositions that do not result in an order of removal.

63.    Second, Congress has barred the removal of an individual to a country where it is more likely than not that he would face persecution on one of these protected grounds. 8 U.S.C. § 1231(b)(3). That protection implements the United States' non-refoulement obligations under the 1951 Refugee Convention and the 1967 Protocol relating to the Status of Refugees. The relevant form of relief, known as "withholding of removal," requires the applicant to satisfy a higher standard with respect to the likelihood of harm than asylum; granting that relief is mandatory if the standard is met absent limited exceptions.

64.    Third, the Convention Against Torture prohibits the government from returning a noncitizen to a country where it is more likely than not that he would face torture. That protection is implemented by the Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, div. G, tit. XXII, § 2242, 112 Stat. 2681, 2822 (1998). As with withholding of removal, CAT relief also requires the applicant to satisfy a higher standard with respect to the likelihood of harm than asylum and relief is mandatory if that standard is met. There is no exception to CAT relief.

**IV.  Defendants' Attempt to Expel Unaccompanied Children Over Labor Day Weekend**

65.    On August 29, 2025, reports surfaced that the Defendants were imminently planning to expel hundreds of unaccompanied Guatemalan children in ORR custody.[6] Many of these children in ORR custody are waiting to be released to a relative or guardian "sponsor" in the United States who can care for them while they make their case for protection before the immigration courts. Many of these children have a credible fear of persecution should they be

---

[6] Priscilla Alvarez, *Exclusive: Trump Administration Plans to Send Hundreds of Guatemalan Children in Government Custody Back to Home Country*, CNN (Aug. 29, 2025), https://www.cnn.com/2025/08/29/politics/migrant-kids-guatemala-immigration; Jody García et al., *U.S. is Working With Guatemala to Return Hundreds of Children*, N.Y. Times (Aug. 29, 2025), https://www.nytimes.com/2025/08/29/us/immigration-guatemala-children.html.

returned to Guatemala, and many of these children have pending cases before an immigration judge. Many of these children have no parent or legal guardian in their country of origin who is able to provide them sufficient care.

66.     Upon information and belief, Defendants identified several hundred children from Guatemala to potentially deport as a part of a first-of-its-kind "pilot" program through an agreement negotiated with the Guatemalan government.

67.     In the weeks leading up to Labor Day weekend, Defendants laid the groundwork for this plan. Defendants sent agents from ICE's HSI division to interview children about their families, which falls outside of HSI's typical mandate, business activity, and training.

68.     Without explanation or notice, many children's scheduled immigration court hearings were removed from the court's calendar. Upon information and belief, this was in preparation for the children's summary expulsion.

69.     Defendants did not provide advance notice of the planned expulsion to the children, to their lawyers, or to the shelters and long-term foster care providers that were housing and caring for the children. Upon information and belief, Defendants designed this plan to take place in the middle of the night, on the weekend preceding a federal holiday, and without advance warning to minimize the opportunity for judicial review of their actions.

70.     Starting late in the night of Saturday, August 30, and into the early morning hours of Sunday, August 31, 2025, Defendants executed a plan to try to expel 76 unaccompanied minors to Guatemala without providing them with advance notice or an opportunity to challenge their expulsion, and without complying with the procedural protections of federal law.

71.     Shortly before midnight, Defendants sent a notice to ORR shelters that they had two hours (four hours for long-term foster care placements) to prepare the children in their care

for immediate departure. Shelter staff woke up children in the middle of the night and told them to pack their bags.  The notice Defendants provided to shelters indicated that the children were being transferred to DHS custody.

72.    Upon information and belief, Defendants failed to notify attorneys for the children that they were being expelled.

73.    Children were understandably confused and terrified. One child vomited out of fear. Another had to be hospitalized.

74.    At 1:02 a.m., on Sunday, August 31, Plaintiffs filed this action and sought an emergency restraining order. At 4:22 a.m., this Court issued a temporary restraining order prohibiting the removal of any of the named Plaintiffs, and issued an amended temporary restraining order shortly after noon directing that Defendants "shall not transfer, repatriate, remove, or otherwise facilitate the transport of any Plaintiff or member of the putative class from the United States."[7]

75.    Meanwhile, children were loaded onto buses and moved to the airport. At the airport, children were asked their names and their identities were compared to a list. Children whose names were on the list were loaded onto an airplane and readied for their immediate expulsion from the United States. The airplane would have departed imminently but for the Court's temporary restraining order.

76.    Some shelters objected to the treatment of the children under their care during the night. In response, in the morning of Sunday, August 31, 2025, ORR sent a notice to ORR shelters entitled "DEMAND FOR COMPLIANCE WITH TERMS OF CUSTODY & CARE,"

---

[7] The original temporary restraining order sought relief for children who were then in the process of being expelled to Guatemala, so the original class was limited to unaccompanied children from Guatemala. This amended complaint seeks relief for a broader class that includes all unaccompanied children in ORR custody who also face risk of summary expulsion.

threatening criminal charges, civil action, or other penalties against anyone who failed to comply with ORR's mandates.

77.    Following issuance of the temporary restraining order, the airplane full of frightened children sat on the tarmac for several hours before the children finally were unloaded and sent to ORR shelters. Over the course of several days, custody of the children was returned to ORR.  Despite the uncertainty and hours-long turmoil of the day, the children were relieved not to be expelled from the country.

78.    The events of Labor Day Weekend terrified not only the children woken up and placed on a bus in the middle of the night, but also other unaccompanied children at the shelters who saw this happen to their peers, other similarly situated children who learned about the events, as well as family members in Guatemala who fear for their children's safety.  In addition, the events impeded unaccompanied children's access to legal counsel as legal service providers mobilized to protect their clients without adequate notice of Defendants' plans.

79.    At the hearing on Plaintiffs' motion for a temporary restraining order, Defendants assured this Court that the attempted expulsion of scores of children in the middle of the night was effectuated in order to reunify the children with parents who asked for their children to be returned. After evidence was presented in the course of the preliminary injunction proceedings from both the Guatemalan government and parents disputing Defendants' claims, Defendants withdrew their representation that any parent had asked for children to be returned.

80.    Upon information and belief, Defendants' identification of children they planned to summarily expel over Labor Day Weekend was done on an ad hoc basis with incomplete and faulty information that failed to consider the children's best interests.

81.     For example, in a letter to Congress, ORR whistleblowers reported that, according to ORR's database, at least 30 children whom the government sought to expel were potential victims of child abuse or human trafficking and/or could face harm if sent to their home country.

## V.  Subsequent Developments

82.     Upon information and belief, Defendants are taking steps to prepare to expel unaccompanied children in ORR custody from countries other than Guatemala, without providing advance notice or complying with the legal framework set forth above.

83.     For example, the Honduran government recently indicated that it is undertaking preparations to receive children expelled from the United States.

84.     Children from other countries have seen their upcoming hearings disappear from the immigration court's online case information system, just as occurred for many of the Guatemalan children before the attempted Labor Day Weekend expulsion.

85.     Upon information and belief, legal services providers have received information from ORR or from ORR-funded shelters alerting them to plans to expel children from other countries.

86.     Immigration judges and government counsel in immigration proceedings have made references, when speaking to children's legal representatives, to lists of children who requested voluntary departure. The children's legal representatives are not aware of the children making these requests or understood that some of those requests had been withdrawn. This is something which also happened in relation to some of the Guatemalan children who were transported from their ORR placements over Labor Day weekend.

87.     Children from many other countries have been interviewed by HSI agents for reasons unrelated to a trafficking investigation, which is atypical and happened to Guatemalan children before their attempted expulsion.

88.     Meanwhile, Defendants have repeatedly refused to confirm that they will not expel members of the class from the United States without following the procedures required by the INA and the TVPRA and have disclaimed any obligation to provide advance notice to either the children or their attorneys before attempting another mass summary expulsion.

**VI. Harm to Plaintiffs**

89.     If expelled from the United States, Plaintiffs and other class members will suffer grievous and irreparable injury.

90.     Plaintiffs and other class members will effectively lose the opportunity to seek permanent status in the United States in immigration court. Many Plaintiffs and other class members fear persecution in their country of origin. By expelling them before they have had the opportunity to present their fear-based claims, they are at risk of persecution, torture, or death.

91.     Plaintiffs who may wish to seek voluntary departure, but for whom it has not yet been granted, will likewise lose the valuable protections in place to ensure their best interests are considered when they seek this relief. They may also lose the careful planning for safe repatriation that must occur when a child is returned to their country of origin.

92.     Defendants have failed to comply with legal obligations to ensure safe repatriation. As a result, Plaintiffs are at risk of not receiving care and access to basic needs such as shelter, food, and education upon return to their countries of origin that would otherwise be provided to them by law in ORR custody.

93.     Defendants' actions are thus exposing children to multiple harms in returning them to a country where they fear persecution and/or they do not have suitable caregivers to receive them, and by flouting their legal obligations to care for them in the United States.

## CLASS ALLEGATIONS

94.     Class Representative Plaintiffs bring this action under Federal Rule of Civil Procedure 23(b)(2) on behalf of themselves and a class of all other persons similarly situated.

95.     In this action, Class Representative Plaintiffs seek to represent the following Proposed Class: All unaccompanied minors who are or will be in ORR custody and who are not subject to an executable final order of removal or grant of voluntary departure by an immigration judge.[8]

96.     The proposed class satisfies the requirements of Rule 23(a)(1) because the class is so numerous that joinder of all members is impracticable. Thousands of unaccompanied minors in government custody across the country are or will potentially be subjected to summary expulsion under Defendants' plans.

97.     The class satisfies the commonality requirements of Rule 23(a)(2). The members of the class are subject to a common practice: summary removal without adequate notice and without complying with the procedural requirements of federal law. This suit also raises questions of law common to members of the proposed class, including whether the

---

[8] A removal order can only be effectuated upon the commencement of a 90-day removal period, which "begins on the latest of three dates: (1) the date the order of removal becomes 'administratively final,' (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the alien is released from non-immigration detention or confinement." *Johnson v. Guzman-Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(1)(B)). In general, a removal order becomes administratively final upon dismissal of an appeal by the BIA, upon waiver of appeal by a noncitizen, or at the expiration of the appeal period. 8 C.F.R. § 1241.1.

administration's plans violate the TVPRA, the INA, the APA, and the Fifth Amendment.

Common questions include:

- May Defendants avoid the statutory protections of the TVPRA simply by asserting that they are acting to "reunite unaccompanied alien children (UACs) with their parents."? Defs.' Opp. to Pls. Mot. for Prelim. Inj. 2, ECF No. 35.

- Do Defendants have the authority to move an unaccompanied child in ORR custody out of the jurisdiction of the United States without an executable order of removal or a grant of voluntary departure by an immigration judge?

- Is ORR authorized to make executable decisions regarding the return of unaccompanied children in its custody to their country of origin?

- Does ORR have authority to transfer custody of unaccompanied children to DHS before the child reaches the age of 18 or without an order of removal or grant of voluntary departure by an immigration judge?

- Do the TVPRA and INA prohibit the government from expelling unaccompanied children in ORR custody before they have completed proceedings in immigration court, including any appeals?

- Does the TVPRA provide unaccompanied children in ORR custody the right of access to counsel before being expelled from the United States?

- Does Defendants' attempted expulsion of unaccompanied children, absent an executable final order of removal or grant of voluntary departure, violate ORR's Foundational Rule or other applicable regulations?

- Does providing only a few hours' notice that an unaccompanied child will be expelled from the United States satisfy the Due Process Clause of the Fifth Amendment?

98.     The proposed class satisfies the typicality requirements of Rule 23(a)(3), because the claims of the Class Representative Plaintiffs are typical of the claims of the class. Each proposed class member, including Class Representative Plaintiffs, faces the same principal injury (summary removal without adequate notice and without complying with the procedural requirements of federal law), based on the same government practice (Defendants' attempts to

summarily expel class members to their countries of origin, circumventing pending or future immigration proceedings), which is unlawful as to the entire class because it violates statutory and constitutional protections.

99.     The proposed class satisfies the adequacy requirements of Rule 23(a)(4). The Class Representative Plaintiffs seek the same relief as the other members of the class—among other things, an order declaring that Defendants' attempts to expel class members without proceedings before an immigration judge violates the TVPRA, the INA, the APA, and the Fifth Amendment, and permanently enjoining Defendants from expelling unaccompanied minors who have not been ordered removed or who have not been granted voluntary departure by an immigration judge. In defending their rights, Class Representative Plaintiffs will defend the rights of all proposed class members fairly and adequately. The Class Representative Plaintiffs are members of the class, and their interests do not conflict with those of the other class members.

100.     The proposed class is represented by experienced attorneys from the National Immigration Law Center, the Institute for Constitutional Advocacy and Protection, and the National Center for Youth Law. Proposed Class Counsel have extensive experience litigating class action lawsuits and other complex systemic cases in federal court on behalf of noncitizens and detained immigrant children.

101.     The proposed class also satisfies Rule 23(b)(2). Defendants have acted (or will act) on grounds generally applicable to the class by subjecting them to summary expulsion rather than affording them the protection of immigration laws. Injunctive and declaratory relief is therefore appropriate with respect to the class as a whole.

24

## CAUSES OF ACTION
## FIRST CLAIM FOR RELIEF
### Violation of the Trafficking Victims Protection Reauthorization Act of 2008,
### 8 U.S.C. § 1232(a)(5)(D)

102.     Plaintiffs reallege and incorporate the allegations of all the preceding paragraphs.

103.     Plaintiffs and other class members are unaccompanied children as defined in

6 U.S.C. § 279(g)(2).

104.     Under the TVPRA, Plaintiffs and other class members are legally entitled to

pursue claims of asylum and other immigration relief through removal proceedings before the

immigration court and the Board of Immigration Appeals. They may not be expelled or

repatriated during the pendency of those proceedings.

105.     Defendants' attempts to expel Plaintiffs and other class members before they have

completed proceedings violates 8 U.S.C. § 1232(a)(5)(D).

## SECOND CLAIM FOR RELIEF
### Violation of 8 U.S.C. § 1232(c)(5), et seq.

106.     Plaintiffs reallege and incorporate the allegations of all the preceding paragraphs.

107.     Plaintiff children and other class members are entitled to access to counsel under

the TVPRA. Expelling children without giving meaningful notice to their legal representative of

the plan or basis for expulsion or any valid mechanism by which to challenge such an expulsion

impedes rather than encourages access to legal counsel as the TVPRA requires.

108.     In addition, by expelling children prior to the completion of their removal

proceedings, Defendants are violating their legal obligation to ensure that children in removal

proceedings have lawyers to assist them with the legal process.

## THIRD CLAIM FOR RELIEF
### Violation of Due Process Under the Fifth Amendment

109.     Plaintiffs reallege and incorporate the allegations of all the preceding paragraphs.

25

110.    The Due Process Clause of the Fifth Amendment provides in relevant part that: "No person shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

111.    In denying Plaintiffs and other class members meaningful notice, opportunity to be heard, or other basic procedural protections before expulsion, Defendants violate their right to due process. *See Matthews v. Eldridge*, 424 U.S. 319, 333 (1976). This denial of due process creates an unacceptably high risk that Plaintiffs and other class members will be erroneously expelled, particularly because Defendants have no authority to expel unaccompanied children without a final order of removal or grant of voluntary departure.

### FOURTH CLAIM FOR RELIEF
### Violation of Due Process—*Accardi* Doctrine

112.    Plaintiffs reallege and incorporate the allegations of all the preceding paragraphs.

113.    Defendants' plans to expel children from the United States and out of ORR custody is in direct contravention of the Foundational Rule, which sets forth binding regulations and obligations that Defendants must follow. *See, e.g.*, 45 C.F.R. pt. 410; 8 C.F.R. pts. 208 (asylum), 240 (voluntary departure), 241 (removal); 8 C.F.R. §§ 236.2-.3 (treatment of minors), 1236.2-.3 (treatment of minors); 8 U.S.C. § 1101(a)(47) (removal). By failing to follow its own regulations, Defendants are violating due process under the *Accardi* doctrine.

114.    The *Accardi* doctrine holds that "government agencies are bound to follow their own rules, even self-imposed procedural rules that limit otherwise discretionary decisions." *Wilkinson v. Legal Servs. Corp*, 27 F. Supp. 2d 32, 34 n.3 (D.D.C. 1998) (citing *U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267-68 (1954)). Failure to do so can give rise to a due-process claim. *Jefferson v. Harris*, 285 F. Supp. 3d 173, 184 (D.D.C. 2018).

## FIFTH CLAIM FOR RELIEF
### Violation of 8 U.S.C. § 1101, *et seq.*

115.    Plaintiffs reallege and incorporate the allegations of all the preceding paragraphs.

116.    The INA, 8 U.S.C. § 1101, *et seq.*, sets out the sole mechanisms established by Congress for the removal of noncitizens.

117.    The INA provides that a removal proceeding before an immigration judge under 8 U.S.C. § 1229a is "the sole and exclusive procedure" by which the government may determine whether to remove an individual, "[u]nless otherwise specified" in the INA. 8 U.S.C. § 1229a(a)(3).

118.    The INA's "exclusive procedure" and statutory protections apply to any removal of a noncitizen from the United States, including unaccompanied minors. The administration's plan to expel unaccompanied minors without allowing them to complete removal proceedings thus violates 8 U.S.C. § 1229a and the INA and is contrary to law.

## SIXTH CLAIM FOR RELIEF
### Violation of 8 U.S.C. § 1158, Asylum

119.    Plaintiffs reallege and incorporate the allegations of all the preceding paragraphs.

120.    The INA provides, with certain exceptions that do not apply to the Plaintiffs or other class members, that "[a]ny alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters), irrespective of such alien's status, may apply for asylum in accordance with this section or, where applicable, section 1225(b) of this title." 8 U.S.C. § 1158(a)(1).

121.    Defendants' actions and threatened actions towards the Plaintiffs and other class members violates their statutory right to seek asylum.

## SEVENTH CLAIM FOR RELIEF
## Violation of the Foreign Affairs Reform and Restructuring Act of 1998, codified at 8 U.S.C. § 1231 note

122.    Plaintiffs reallege and incorporate the allegations of all the preceding paragraphs.

123.    FARRA prohibits the government from returning a noncitizen to a country where it is more likely than not that he would face torture.  FARRA incorporates the United States's obligations under the International Convention Against Torture, to which the United States is a party.

124.    Defendants' expulsion of children violates FARRA and CAT because it does not provide adequate safeguards to ensure that Petitioners are not returned to a country where it is more likely than not that they would face torture. As a result, Defendants' actions or planned actions against Plaintiffs and other class members are contrary to law.

## EIGHTH CLAIM FOR RELIEF
## Violation of the Administrative Procedure Act

125.    Plaintiffs reallege and incorporate the allegations of all the preceding paragraphs.

126.    The APA provides that a court "shall" "hold unlawful and set aside agency action" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "contrary to constitutional right." 5 U.S.C. § 706(2)(A), (B).

127.    The APA further authorizes this Court to postpone the effective date of any agency action pending the Court's review. 5 U.S.C. § 705.

128.    Defendants' decision to summarily expel from the United States unaccompanied children without an executable final order of removal or a grant of voluntary departure by an immigration judge is final agency action. 5 U.S.C. § 704.

129.    Defendants' summary expulsion decision violated the APA in several respects, including: Defendants' decision was unlawful and unconstitutional for the reasons in the

preceding claims; Defendants abused their discretion when assuming authority they did not have under the TVPRA; and Defendants' decision was arbitrary and capricious because Defendants failed to consider the legal rights of the children in their custody before seeking to round the children up for deportation flights; they provided no rationale for their sudden about-face in apparently determining that unaccompanied children can be expelled, absent any final order of removal or grant of voluntary departure by an immigration judge, and without any notice to counsel or opportunity to contest their expulsion; they made no effort to ensure that the affected children would not be subject to torture, human trafficking, or other forms of abuse upon return to their countries of origin; and they failed to follow the procedures required by law.

130.    This Court should continue to postpone Defendants' unlawful attempts to expel Plaintiffs and other class members pending final resolution of this matter, and should hold unlawful and set aside Defendants' decision to summarily expel members of the class.

## PRAYER FOR RELIEF

WHEREFORE, Petitioners respectfully pray this Court to:

a.  Assume jurisdiction over this matter;

b.  Maintain the preliminary injunction issued by this Court to preserve the status quo pending further proceedings;

c.  Certify a class of all unaccompanied minors who are or will be in ORR custody and who are not subject to an executable final order of removal or grant of voluntary departure by an immigration judge;

d.  Enjoin Defendants from transferring Plaintiffs or any other class member from the United States;

e.  Award additional interim and permanent equitable relief as the Court deems appropriate to remedy Defendants' violations of the law and to protect Plaintiffs and members of the class;

f.  Postpone the effective date of agency action under 5 U.S.C. § 705, and set aside and declare unlawful Defendants' actions under 5 U.S.C. § 706.

g.  Declare that Plaintiffs and other class members are entitled to Section 240 removal proceedings under the TVPRA, the INA, and the Fifth Amendment;

h.  Declare that Plaintiffs and other class members are entitled to adequate notice and an opportunity to respond before being expelled from the United States;

i.  Award Plaintiffs' counsel reasonable attorneys' fees under the Equal Access to Justice Act, and any other applicable statute or regulation; and

j.  Grant such further relief as the Court deems just, equitable, and appropriate.

Dated: October 14, 2025

/s/ *Kate Talmor*
Joseph W. Mead (D.C. Bar No. 1740771)
Rupa Bhattacharyya (D.C. Bar No. 1631262)
Mary B. McCord (D.C. Bar. No. 427563)
Kate Talmor (DC Bar No. 90036191)
Seth Wayne (D.C. Bar No. 888273445)
INSTITUTE FOR CONSTITUTIONAL
ADVOCACY AND PROTECTION
Georgetown Law
600 New Jersey Ave., N.W.
Washington, D.C. 20001
Phone: (202) 662-9765
Fax: (202) 661-6730
jm3468@georgetown.edu
rb1796@georgetown.edu
mbm7@georgetown.edu
kt894@georgetown.edu
sw1098@georgetown.edu

Respectfully submitted,

Efrén C. Olivares*
Lynn Damiano Pearson*
Kevin Siegel*
Hilda Bonilla (D.C. Bar No. 90023968)
NATIONAL IMMIGRATION LAW
CENTER
1121 14th Street NW, Suite 200
Washington, D.C. 20005
Tel: (213) 639-3900
Fax: (213) 639-3911
olivares@nilc.org
damianopearson@nilc.org
siegel@nilc.org
bonilla@nilc.org

Rebecca Wolozin (D.C. Bar No. 144369)
NATIONAL CENTER FOR YOUTH LAW
818 Connecticut Avenue NW, Suite 425
Washington, DC 20006
(202) 868-4792
bwolozin@youthlaw.org

Mishan Wroe*
NATIONAL CENTER FOR YOUTH LAW
1212 Broadway, Suite 600
Oakland, California 94612
(510) 835-8098
mwroe@youthlaw.org

*Counsel for Plaintiffs*

**Admitted Pro Hac Vice*