IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

L.G.M.L., *et al.*,

    *Plaintiffs*,

v.

KRISTI NOEM, *et al.*,

    *Defendants*.

Case No.: 25-cv-2942-TJK

# PLAINTIFFS' MOTION TO MODIFY CLASS DEFINITION FOR FURTHER PROCEEDINGS

On September 18, 2025, this Court provisionally certified, for purposes of preliminary injunctive relief, a class of unaccompanied children from Guatemala who are or will be in the custody of the Office of Refugee Resettlement ("ORR"). Plaintiffs do not at this time request any modification to the scope of the preliminary injunction. For purposes of further merits litigation, however, Plaintiffs respectfully contend that it is necessary to adjudicate the process to which *all* unaccompanied children in ORR custody are entitled before the government may remove them from the country. Plaintiffs thus request that this Court modify the class definition for purposes of further proceedings in this case and certify a class of all unaccompanied minors who are or will be in ORR custody and who are not subject to an executable final order of removal and have not been granted voluntary departure under 8 U.S.C. § 1229c and applicable regulations.[1]

---

[1] Plaintiffs sought Defendants' position on this motion, *see* D.D.C. L.CvR 7(m), and Defendants indicated that they oppose Plaintiffs' request.

## FACTUAL BACKGROUND[2]

Congress recognized that unaccompanied migrant children[3] are uniquely vulnerable and created a comprehensive statutory scheme to ensure that unaccompanied minors receive enhanced protection and care, including particular procedural protections before the government may remove them from the United States. Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), Pub. L. No. 110-457, 122 Stat. 5044 (2008). These include mandated special procedures for adjudicating removal proceedings against an unaccompanied minor, for caring for such children, and for releasing them to vetted sponsors during the pendency of their removal proceedings. Under these protections, any unaccompanied child in ORR custody sought to be removed from the United States shall (i) be placed in removal proceedings under 8 U.S.C. § 1229a; (ii) upon approval by an immigration judge, be eligible for voluntary departure relief under 8 U.S.C. § 1229c at no cost to the child; and (iii) be provided access to counsel in accordance with subsection (c)(5). 8 U.S.C. § 1232(a)(5)(D).

TVPRA protections apply to every unaccompanied child in the custody of the federal government, regardless of their country of origin. Absent "exceptional circumstances," unaccompanied children taken into custody by U.S. agents or departments must be transferred to

---

[2] Plaintiffs hereby incorporate by reference the factual and legal background set forth in this Court's Opinion Granting Plaintiffs' Motion for a Preliminary Injunction, ECF No. 49, and Plaintiffs' Memorandum in Support of their Motion for a Preliminary Injunction, ECF No. 20-1 at 3-20, and include here only materials of particular relevance to resolution of this motion.

[3] Under U.S. law, an unaccompanied minor is defined as a child who "(A) has no lawful immigration status in the United States; (B) has not attained 18 years of age; and (C) with respect to whom— (i) there is no parent or legal guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2).

ORR custody "not later than 72 hours" after determining that the minor is unaccompanied. 8 U.S.C. § 1232(b)(3); 8 C.F.R. § 236.3(f)(1). There is one exception: Certain unaccompanied children from contiguous countries who are determined to be at low risk of trafficking and who lack a credible fear of persecution may be promptly repatriated to their country of origin (Mexico or Canada) following certain special procedures, rather than placed in ORR custody. 8 U.S.C. § 1232(a)(2)(A)-(C). But if an unaccompanied child from a contiguous country does not meet those conditions and is not promptly repatriated, they must promptly be placed in ORR custody, where they enjoy the same rights and protections contained in the TVPRA as do all other unaccompanied children in ORR custody. *See* 8 U.S.C. § 1232(a)(3) ("The custody of unaccompanied alien children [who are not determined to be subject to the special rules for certain children from contiguous countries] … shall be treated in accordance with" the rules applicable to children from non-contiguous countries.).

Plaintiffs originally filed their complaint to obtain emergency relief halting the then-imminent expulsion of unaccompanied children from Guatemala. *See* ECF No. 49, Memo. Op. Granting Prelim. Inj. 1-2 ("PI Opinion"). Defendants opposed preliminary injunctive relief by arguing that they have the authority to "reunify" children with their parents or guardians in their country of origin, and so long as they are acting pursuant to this "reunification" authority, they need not follow the statutory protections that apply to unaccompanied children seeking immigration relief. ECF No. 35, Defs.' Opp. to PI 7-11; *see also* PI Opinion 26-27 (describing Defendants' argument). Defendants further argued they were not required by the Due Process Clause to provide reasonable advance notice to the unaccompanied children or their advocates before removal because ORR was their legal custodian, and the notice therefore was to the government itself. Sept. 10, 2025, Transcript of Preliminary Injunction Oral Argument 46

3

(argument by Defendants' counsel) ("So you would normally think of notice as going to a child's legal custodian, not to the child itself. So ORR, of course, had notice of ORR's action."). None of Defendants' arguments were unique to unaccompanied children from *Guatemala*. Indeed, Defendants have declined to disavow any intent to remove unaccompanied children from countries other than Guatemala through procedures like those attempted on Labor Day weekend. *See id.* 29 (in response to Court's question about "plans in the works to basically do a similar procedure," government counsel representing only "no immediate action, no definite plans that currently exist"); ECF No. 27 (recounting government's refusal to "agree that it will not seek to effectuate removals of such children" during the weekend of PI briefing).

As this Court stated in issuing a preliminary injunction, "Congress enacted into law a specific process for removing unaccompanied alien children like Plaintiffs, and Defendants' 'reunification' plan likely contravenes those statutory requirements." PI Opinion at 2; *see also id.* at 26 ("Defendants' 'reunification' plan, which is predicated on first expelling—that is, removing—these unaccompanied alien children from the United States, would circumvent the process that Congress established for doing so."). Although the Court limited the scope of the provisionally certified class and preliminary injunction to unaccompanied children from Guatemala, the Court emphasized that "any [similar] attempt to expel [unaccompanied children from other countries] is likely to be unlawful" for the same reasons it was likely unlawful to expel children from Guatemala. *Id.* at 24.

Recognizing that Defendants' claimed authority places all unaccompanied children in ORR custody at risk for summary expulsion—regardless of their country of origin—Plaintiffs filed an amended complaint that seeks relief on behalf of unaccompanied children in ORR custody, regardless of country of origin. Am. Compl. ¶ 20 (L.G.M.S. is an unaccompanied child from

4

Mexico in ORR custody); *id.* at ¶ 21 (H.E.B. is an unaccompanied child from Honduras in ORR custody). Plaintiffs do not at this time seek emergency relief on behalf of a broader class of children and do not ask the Court to modify the existing PI to cover non-Guatemalan children. But Plaintiffs seek to litigate to final judgment the rights of a broader class than those covered by the Court's preliminary injunction and the provisionally certified class because the constitutional and statutory rights of unaccompanied children in ORR custody do not depend on country of origin and because Defendants' asserted "reunification" authority applies equally to all such children. Specifically, Plaintiffs ask the Court to certify, for purposes of further merits litigation, a class of all unaccompanied children who are or will be in ORR custody and who are not subject to an executable final order of removal or a valid grant of voluntary departure, *see* 8 U.S.C. § 1229c and implementing regulations. Am. Compl. ¶ 95.

## ARGUMENT

### I. Plaintiffs Satisfy All of Rule 23(a)'s Requirements

As this Court found in provisionally certifying the class for preliminary relief, in this case, "[n]umerosity is straightforward." PI Opp. 15. Because the existing class comprised of certain Guatemalan children in ORR custody "far exceeds th[e] threshold" for Rule 23(a), *id.*, a broader class containing children from other countries of origin necessarily must as well. And the Court already has rejected Defendants' sole argument on numerosity. *See id.* 15-16 (finding that the class, properly defined, "does not turn on whether class members object to being returned to Guatemala," but instead on whether a child has received the legal process due before any such return). Numerosity is satisfied.

Similarly, the Court's finding that the provisional class of Guatemalan children satisfies Rule 23(a)'s commonality requirement applies with full force to the broader class proposed here.

The "commonality test is easily met in most cases," 1 Newberg and Rubenstein on Class Actions § 3:24, because just "a single common question will do" if resolution of that issue will "generate common answers apt to" resolve the litigation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011) (internal quotation marks, emphasis, and alterations omitted). Here, the Court found that the existing class of Guatemalan unaccompanied children raised several common questions about the *process* due before the government may remove them, including: "Do the TVPRA provisions governing the removal of unaccompanied children like Plaintiffs apply to what Defendants describe as reunifications and repatriations? Would Defendants' 'reunification' plan violate binding regulations …? What notice and opportunity to be heard must unaccompanied alien children receive in this situation?" PI Opp. 16. Each of these questions may drive the resolution of this litigation by determining Plaintiffs' entitlement to relief, *id.* 17, and these questions are just as applicable to the rights of non-Guatemalan children who are or will be in ORR custody.

And just as the Court found that "potential factual differences" among the Guatemalan children, such as whether an individual child or her parents might prefer summary deportation without required process, "are not the kind that destroy commonality," *id.* 17-18, it is equally true that factual differences related to *country of origin* do not impact this inquiry.[4] In other words,

---

[4] As explained above and in Plaintiffs' Amended Complaint, ¶ 6, Plaintiffs' initial complaint and emergency motions sought relief for certain unaccompanied children from noncontiguous countries because children from *contiguous* countries who meet certain criteria may be swiftly repatriated without ever entering ORR custody. 8 U.S.C. § 1232(a)(2)(A)-(C). But unaccompanied children from Canada and Mexico who are screened and determined not to meet the statutory criteria— either because they are determined to be victims of (or at risk of) trafficking, to have a credible fear of persecution in their home country, and/or to lack the capacity to independently decide to withdraw their applications for admission, 8 U.S.C. § 1232(a)(2)(A)—are transferred to ORR custody. Once there, all children, regardless of country of origin, enjoy the same rights and protections contained in the TVPRA, implementing regulations, and the U.S. Constitution. *See* 8 U.S.C. § 1232(a)(3). There thus is no basis on which to carve out any unaccompanied minor in ORR custody who meets the class definition based simply on country of origin.

6

nothing about the material facts and legal issues presented in this lawsuit or the Government's claimed authority are unique to Guatemala. For purposes of further proceedings, including final judgment, a broader class is appropriate because the same common questions will determine the broader class's entitlement to the constitutional and statutory protections claimed by the provisional class.

The proposed class likewise satisfies Rule 23(a)'s typicality requirement for the same reasons as the existing class. As the Court noted in certifying the provisional class, typicality is not a demanding test and is satisfied where named Plaintiffs and putative class members "press claims deriving from the same conduct" and "rest[ing] on a common legal theory." PI Opp. 18. And just as members of the existing class press claims alleging that "the TVPRA prohibits Defendants' conduct, 6 U.S.C. § 279 does not authorize it, and due process demands more," *id.*, so too do members of the proposed class. An individual class member's country of origin makes no material difference to the resolution of the claims presented in this case—and, just as importantly, any final decision on the merits of the existing class claims should apply equally to members of the proposed class, because all unaccompanied children in ORR custody are entitled to coextensive procedural rights. Resolution of the class claims requires no individualized adjudications, whether of members' purported eligibility for Defendants' "reunification" plan, of their eligibility for immigration relief generally, or any other fact-bound determination. Rather, the question presented by Plaintiffs' amended complaint—of the *legality* of the process through which the government makes these decisions— should be resolved across the board for all children in ORR custody. Typicality is easily satisfied for the broader proposed class.

Rule 23(a)'s adequacy requirement also is easily satisfied. The broader proposed class is well represented by named Plaintiff class members for the same reasons that the Court credited

when granting provisional certification. The proposed class representatives are L.M.R.S., M.O.C.G., T.A.C.P., L.F.M.M., M.Y.A.T.C., L.G.M.S., and H.E.B. The proposed class representatives include a number of children in ORR custody from a variety of countries of origin. *E.g.*, L.G.M.S. Decl. (Mexico) (attached as Ex. A); H.E.B. Decl. (Honduras) (attached as Ex. B); L.M.R.S. Decl. (Guatemala) (ECF 2-2 at 3). Each proposed class representative has confirmed their willingness to serve in this role. L.M.R.S. Supp. Decl. (ECF 9-4); M.O.C.G. Supp. Decl. (ECF 29-5); T.A.C.P. Supp. Decl. (ECF 29-7); L.F.M.M. Supp. Decl. (attached as Ex. C); M.Y.A.T.C. Supp. Decl. (ECF 29-6); L.G.M.S. Decl. (Ex. A); H.E.B. Decl. (Ex. B).

This Court rightly rejected Defendants' adequacy objection when certifying the provisional class—specifically, that some putative class members could have conflicts of interest with named class members because, Defendants speculate, some children may wish to be "reunified" with their parents without receiving adequate process. As the Court found, the record does not support the existence of any such children and, even if they do exist, any such children are adequately protected because the class definition carves out unaccompanied children who seek and obtain voluntary departure in removal proceedings. PI Opp. 19. Even if some hypothetical child has yet to receive a grant of voluntary departure and would prefer to depart the United States as promptly as possible, a win in this case does not harm the interest of that child because, at most, it would cause only a small delay in that child's return. *Id.* 19-20. In sum, there is "no other reason to think that these named Plaintiffs will not 'vigorously prosecute the interests of the class through qualified counsel,'" *id.* 22 (quoting *J.D.*, 925 F.3d at 1312), so the final requirement of Rule 23(a) is satisfied.

The Court already has found the National Immigration Law Center and the Institute for Constitutional Advocacy and Protection to be adequate class counsel. PI Opp. 18. That is no less

8

true for the broader class. Plaintiffs request that the Court also designate the National Center for Youth Law as class counsel, as NCYL attorneys have extensive expertise in litigating class actions on behalf of immigrant children and issues relevant to this case. *See* Ex. D, Wroe Decl.

## II. The Class Should be Certified Under Rule 23(b)(2)

For reasons similar to those supporting commonality, the broader proposed class meets Rule 23(b)(2)'s requirements to seek final injunctive relief on the merits. Indeed, those requirements are "almost automatically satisfied in actions seeking injunctive relief for common legal claims," *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994), and class actions challenging civil rights violations are particularly well-suited for class treatment under Rule 23(b)(2), as that provision arose out of civil rights litigation challenging government actions that violated the rights of a class of citizens through a single law or policy. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (citation omitted).

Here, the Court already found that Defendants have "acted or refused to act on grounds that apply generally to" a provisional class of certain unaccompanied Guatemalan children. PI Opp. 23 (citing Fed. R. Civ. P. 23(b)(2)). For purposes of final judgment, there is no logical or factual reason to limit the class to Guatemalan children. As the Court explained, the rule does not require that the unlawful "conduct must have damaged every member of the class." *Id.* (citing 2 Rubenstein § 4:28) (internal alterations and quotation marks omitted). Instead, it is enough that the challenged conduct be generally applicable to all members of the class—a requirement that is satisfied here. Defendants' claimed authority to "reunify" children in ORR custody while bypassing the procedural protections contained in the TVPRA and implementing regulations does not depend on a child's country of origin. Guatemalan children were merely the first targets of Defendants' unlawful "reunification" plan.

9

Similarly, because *all* unaccompanied children who are in or will be in ORR custody, regardless of nationality, potentially may fall victim to Defendants' "reunification" plan, "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Court recognized in granting provisional certification that the relief sought in this case will determine "what the TVPRA and Due Process Clause require before Defendants may send [unaccompanied minors] out of the country," and the answer to that query "is appropriately the subject of 'a single injunction or declaratory judgment.'" PI Opp. 23-24 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011)). That determination, and any relief flowing therefrom, will apply equally to non-Guatemalan minors who are in or will be in ORR custody who have not received an executable final order of removal or a valid grant of voluntary departure. The broader proposed class of unaccompanied children satisfies Rule 23(b)(2). *See* PI Opp. 24 (declining to expand the class, for provisional certification and emergency relief, to include non-Guatemalan children but noting "Defendants should not construe this decision as an invitation to take similar action with respect to" other children because "any such attempt to expel them is likely to be unlawful").

## CONCLUSION

For these reasons, Plaintiffs respectfully request that this Court appoint the National Center for Youth Law as additional class counsel, modify the class definition, and certify for purposes of further proceedings a class of all unaccompanied minors who are or will be in the custody of ORR and who are not subject to an executable final order of removal and have not been granted voluntary departure from the United States under 8 U.S.C. § 1229c and applicable regulations.

Dated: November 25, 2025

Respectfully submitted,

/s/  *Kate Talmor*

Efrén Olivares (D.D.C. Bar No. TX0107)
Lynn Damiano Pearson (D.D.C. Bar No. GA0057)
Kevin Siegel*
Hilda Bonilla (D.C. Bar No. 90023968)
NATIONAL IMMIGRATION LAW CENTER
1101 14th Street, Suite 410
Washington, D.C. 20005
Tel: (213) 639-3900
Fax: (213) 639-3911
olivares@nilc.org
damianopearson@nilc.org
siegel@nilc.org
bonilla@nilc.org

Kate Talmor (D.C. Bar No. 90036191)
Rupa Bhattacharyya (D.C. Bar No. 1631262)
Mary B. McCord (D.C. Bar. No. 427563)
Joseph W. Mead (D.C. Bar No. 1740771)
Tinesha Zandamela (D.C. Bar No. 90035492)
INSTITUTE FOR CONSTITUTIONAL
ADVOCACY AND PROTECTION
Georgetown Law
600 New Jersey Ave., N.W.
Washington, D.C. 20001
Tel: (202) 662-9765
Fax: (202) 661-6730
jm3468@georgetown.edu
rb1796@georgetown.edu
mbm7@georgetown.edu
kt894@georgetown.edu
tcz7@georgetown.edu

Rebecca Wolozin (D.C. Bar No. 144369)
NATIONAL CENTER FOR YOUTH LAW
818 Connecticut Avenue NW, Suite 425
Washington, DC 20006
Tel: (202) 868-4792
bwolozin@youthlaw.org

11

Mishan Wroe*
NATIONAL CENTER FOR YOUTH LAW
1212 Broadway, Suite 600
Oakland, California 94612
Tel: (510) 835-8098
mwroe@youthlaw.org

*Counsel for Plaintiffs*
**Admitted Pro Hac Vice*

12