IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| L.G.M.L., *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>KRISTI NOEM, *et al.*,<br><br>    *Defendants*. | Case No.: 25-cv-2942-TJK |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO MODIFY CLASS DEFINITION**

Defendants' opposition to Plaintiffs' motion to certify a non-country-specific class for final judgment misses the mark at each step. Far from a "notabl[e] … conce[ssion]," as Defendants insist, the fact that Plaintiffs "do not seek immediate 'emergency relief' for their proposed" class simply reflects that the government has not (to Plaintiffs' knowledge) attempted further "reunifications" since the Court's preliminary injunction. *See* Defs.' Opp. to Mot. to Modify Class ("Opp."), ECF 69, at 1. Yet imminent irreparable harm to class members, the necessary showing for emergency relief, has no bearing whatsoever on the propriety of adjudicating for purposes of final judgment the process to which children in ORR custody are entitled before the government may expel them from the country. That determination turns on the requirements imposed by federal statutes and regulations, not on the country of origin of any particular child (or any other fact-bound determination). Defendants nonetheless oppose Plaintiffs' proposed class by attempting to shoehorn a halfhearted standing argument into each of the Rule 23 factors: Because the

government has not yet attempted to "reunify" children from countries other than Guatemala, Defendants contend that the broader class of children has not suffered an Article III injury and, on that basis, cannot satisfy the requirements for class certification. Defendants' arguments conflate the distinct jurisdictional requirements of Article III standing with the showing required for class certification and fail on the merits.

## I.     The Broader Proposed Class Satisfies Rule 23(a)

### A. *Numerosity*

Defendants first contend that numerosity of the putative expanded class is lacking because, in their view, non-Guatemalan children "entirely lack an injury in fact that would make their claim justiciable" as the government has not yet attempted to expel non-Guatemalan children under its "reunification" theory. *See* Opp. at 6. This argument starts from the incorrect premise that every member of a class seeking injunctive relief must have Article III standing. But longstanding Supreme Court precedent has recognized that a lawsuit seeking injunctive relief "may proceed" "[i]f at least one plaintiff has standing," *e.g.*, *Biden v. Nebraska*, 600 U.S. 477, 489 (2023), and the D.C. Circuit has squarely rejected the argument that every class member must establish their own standing to seek an injunction. *See, e.g.*, *J.D. v. Azar*, 925 F.3d 1291, 1323-24 (D.C. Cir. 2019); *accord, e.g.*, *Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 779 (4th Cir. 2023) (collecting cases).

Even if all class members were required to show standing, Article III standing is easily met for members of the expanded class, who do not need to wait to be loaded onto a plane or expelled from the country to challenge Defendants' policy of expelling unaccompanied children in violation of their constitutional and statutory rights. After all, plaintiffs "exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long

2

as the risk of harm is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021). And in the class context, certification may be proper even where "[a]ction or inaction … has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class." Fed. R. Civ. P. 23(b)(2) advisory committee's note to 1966 amendment; 5 Moore's Federal Practice - Civil § 23.22 ("Class-action plaintiffs seeking injunctive or declaratory relief frequently seek to define a class to include people who might be injured in the future.").[1]

Continuing to ignore the applicable standard for numerosity, *see* Fed. R. Civ. P. 23(a)(1), Defendants claim that "this Court found insufficient evidence … to establish Defendants' intent to expand the acts at issue here" beyond Guatemalan children. Opp. at 6 (citing PI Op., ECF No. 49, at 24). That depiction is misleading; the Court relied on Defendants' "represent[ation] that they have no 'immediate' or 'definite' plans to send out of the United States other unaccompanied children" as a basis to deny *emergency relief* to a broader class, PI Op. at 24, but that is a far cry from a judicial finding that the government lacks any *intent* to apply its "reunification" theory to additional children. On the contrary, it is reasonable to infer that the Court's statement that "any such attempt to expel [non-Guatemalan children] is likely to be unlawful," *id.*, has forestalled additional "reunification" attempts during the pendency of this case.

---

[1] Defendants repeatedly refer to Plaintiffs' proposed class as a "universal class." *E.g.*, Opp. at 11. It is unclear what Defendants mean by "universal class"; that description does not seem to appear in any published opinion of this Court, the D.C. Circuit, or the Supreme Court. To the extent that Defendants mean to invoke the Supreme Court's recent guidance regarding the availability of "universal injunctions," *see Trump v. CASA, Inc.*, 606 U.S. 831, 837 (2025), such reliance is misplaced because the *CASA* Court explicitly noted that "the modern class action" provides a vehicle for granting broad relief in appropriate cases, *id.* at 849-50.

3

Moreover, in light of Defendants' refusal to disavow additional expulsions, *see* Mot. to Modify Class, ECF 65, at 4, and their argument grounding their purported authority to conduct such expulsions in 6 U.S.C. § 279(b)(H), Plaintiffs' request to adjudicate the statutory and constitutional rights of all unaccompanied children in ORR custody is not based on "mere speculation," *contra* Opp. 6. Defendants rely on declarations describing criteria purportedly used by the government to determine which children would be subjected to clandestine, middle-of-the-night expulsion, and imply that, because those actions targeted only Guatemalan children, other children in ORR custody have not been injured. *See id.* (citing Helland Decl., ECF No. 39-1; Salazar Decl., ECF No. 35-1). Defendants' continued reliance on these declarations is remarkable given that the declarants' credibility was impugned in a letter to Congress by government "whistleblowers report[ing] that 'many children identified for repatriation' have 'indicators of becoming a victim of child abuse, including death threats, gang violence, [and] human trafficking,'" and thus should have been excluded under Defendants' own alleged criteria. *See* PI Op. at 40 (citing Protected Whistleblower Disclosure Letter, ECF 47-1). Defendants make no attempt to address this Court's concerns regarding the veracity of the declarants' testimony, instead arguing only that "the facts giving rise to this litigation centered on certain Guatemalan" children. Opp. at 6. But tellingly, Defendants stop short of asserting that they *will not* attempt to unlawfully expel other children in ORR custody. Nor have they provided any evidence, or even asserted, that the "reunification" plan forestalled by this Court's injunction would not have been applied to other children in the absence of judicial action.

In short, the broader proposed class here is not asserting "a bare procedural violation, divorced from any concrete harm," *contra* Opp. at 7 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340-41 (2016)). It is challenging a course of government action grounded in an incorrect

4

interpretation of federal law with the potential to subject the members of the expanded class to grievous harms, including abuse and trafficking, in direct contravention of protections Congress codified in the Trafficking Victims Protection Reauthorization Act. The law does not require a court to wait until a defendant has *in fact* harmed each plaintiff before certifying a class or granting relief. *See J.D,* 925 F.3d at 1312, 1323-25 (approving certification of a "class of plaintiffs consisting of pregnant UACs who are (or will be) in ORR custody"); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 180-82 (D.D.C. 2015) (certifying provisional class of Central American mothers and children who "have been or will be denied … release after being subject to an ICE custody determination that took deterrence of mass migration into account" because "the suit challenges a policy 'generally applicable' to all class members"). The broader proposed class has standing for the same reasons as the provisional class, and the class is sufficiently numerous.[2]

B. Commonality

Defendants' commonality response continues to confuse legal doctrines. They repeatedly assert that, because "[t]he facts here do not establish that Defendants have either 'acted or refused to act on grounds that apply generally to' the broader class," "[t]his lack of commonality is fatal to Plaintiffs'" motion. Opp. at 9; *see also id.* 9-11. But the standard on which Defendants rely determines whether certification is appropriate under Rule 23(b)(2)—not whether commonality is satisfied for purposes of Rule 23(a)(2). *See infra* § II (applying Rule 23(b)(2)).

Defendants largely ignore that this Court already found that the provisionally certified class raises several common questions about the *process* to which class members are entitled before the

---

[2] Defendants' argument that the class expansion would consist of "zero" new members (Opp. at 7) is illogical and irrelevant because the Court already found that the putative class of Guatemalan children is itself sufficiently numerous to support certification. PI Op. at 15.

government may expel them. *See* PI Op. 16-18. As explained in Plaintiffs' motion (5-6), these questions do not turn on country of origin and are equally applicable to the broader class, and that is all commonality requires. Defendants' response is incoherent; they acknowledge that "[t]he new members' claims may rest on a common legal *theory*" but then assert "there is no prospect of common *answers* about the lawfulness of the government's proposed reunification efforts" because Defendants' attempt to spirit away children in the dead of night targeted only Guatemalan youth (thus far). *See* Opp. at 9-10. But the question whether Defendants have yet harmed each class member is not part of the commonality inquiry. Defendants' concession that class members' claims rely on "common legal *theor[ies]*," Opp. at 9, settles the matter, because those "common questions [are] 'susceptible to generalized, class-wide proof' that are likely to resolve important issues." PI Op. at 16 (*quoting Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

    C.  *Typicality*

Defendants insist that typicality is lacking because "Plaintiffs identify no agency action, decision, or policy common to all" unaccompanied children in ORR custody. Opp. at 11. Not true: Plaintiffs' amended complaint alleges that, "until August of this year, Defendants' longstanding policy did not contemplate reunification or removal of an unaccompanied child over the objection of the child without a final executable removal order," but that Defendants "no longer intend to follow this longstanding policy." Am. Compl., ECF 64, ¶ 52. And the amended complaint further alleges that the attempted expulsion of Guatemalan children was part of a "'pilot' program" and that "Defendants are taking steps to prepare to expel unaccompanied children in ORR custody from countries other than Guatemala," as evidenced by: a statement from the Honduran government "indicat[ing] that it is undertaking preparations to receive children expelled from the United States"; the fact that non-Guatemalan children recently have had upcoming hearings

6

disappear from the immigration court's docket; communications to children's attorneys "from ORR-funded shelters alerting them to plans to expel children from other countries"; unusual interviews of non-Guatemalan children by Homeland Security "agents for reasons unrelated to a trafficking investigation"; and statements by "government counsel in immigration proceedings" referring to "lists of children who requested voluntary departure," including children whose legal representatives know have expressed fear of returning to their home country. *Id.* ¶¶ 66, 82-88.

It bears repeating that Defendants have refused to confirm that they will not expel additional children from the United States without following the procedures required by the Immigration and Nationality Act and the TVPRA, and have disclaimed any obligation to provide advance notice before attempting another mass summary expulsion. Defendants effectively ask this Court to just trust them—absent *any* evidence to support their assertions—that they have no intent to target additional children (while simultaneously arguing they are legally authorized to do so). Worse still, they argue that the Court would be powerless to consider a class of non-Guatemalan children unless and until the government harms them. Opp. at 11-12 (conflating the question whether class members press typical *claims* with whether class members have suffered the same *past injury*). This is not a basis on which to reject typicality for the broader class because all putative class members' claims "are based on the same legal or remedial theory" as that pressed by the existing class. *See J.D.*, 925 F.3d at 1322 (internal citation omitted).[3]

---

[3] Defendants claim that this Court's recognition that "Plaintiffs seek relief based on what the TVPRA and Due Process Clause require before Defendants may send them out of the country," PI Op. at 23, "was clearly limited to … Guatemalan [unaccompanied minors] in ORR custody." Opp. at 12. Defendants' portrayal lacks support in the passage it invokes. The Court's finding confirmed that Plaintiffs here seek an indivisible remedy appropriate under Rule 23(b)(2) because the same declaration or injunction would apply to all class members. PI Op. at 23. That is no less true for non-Guatemalan class members than for the provisionally certified class, and the Court's opinion does not suggest otherwise.

7

*D. Adequacy*

Defendants contest adequacy of representation by continuing to ignore the requirements of Rule 23 and instead relying on the unavailing theory that putative class members lack standing because the government has yet to effectuate a "reunification" plan for non-Guatemalan children. Opp. at 13-14. That reliance fails for the reasons stated above. Otherwise, Defendants' only argument on this prong is that the two children identified as proposed additional, non-Guatemalan class representatives are inadequate. They claim that H.E.B. does not have a parent abroad and thus cannot be "reunit[ed]," rendering her "a uniquely poor representative for children who do have parents abroad." Opp. at 14. Defendants once again ask this Court to assume facts not in the record; there is no credible evidence that a child without parents abroad able to care for them is immunized from Defendants' unlawful repatriation attempts, as evidenced by the whistleblower disclosure to Congress. *See* ECF 47-1 (discussed PI Op. at 40). On the contrary, this Court noted that the children woken and prepared for expulsion included those who did "not have anyone to care" for them in Guatemala. *See* PI Op. at 8; *see also* Defs.' Opp. to PI at 8 (arguing 8 U.S.C. § 1232(a)(5) authorizes pilot programs for repatriating unaccompanied children with "families, legal guardians, *or sponsoring agencies*" in country of origin) (emphasis added). Besides, there is no cogent reason why a child needs to have a suitable parent in their home country in order to serve as an appropriate class representative challenging the process to which unaccompanied children are entitled. H.E.B. has demonstrated her intent to vigorously pursue the interests of the class. Decl. of H.E.B., Ex. B ¶¶ 6-7, Supp. Decl. at 9 ("I don't want this to happen to me or any of the other kids who are in ORR shelters. That is why I am involved in this lawsuit.").

Defendants are on equally weak footing arguing that "Plaintiff L.G.M.S. cannot singlehandedly represent all other children from all other countries." Opp. at 14. As an initial

8

matter, all of the class representatives (including the existing representatives from Guatemala) can represent the entirety of the class; there is no reason why individual children must be represented by compatriots in a class action that does not turn on nationality. Even putting that aside, a class representative can "singlehandedly" represent an entire class in appropriate cases. *See* Manual for Complex Litigation § 21.26 (4th ed.) ("The judge must appoint one or more representatives of the class and any subclass."). Finally, the fact that L.G.M.S. hails from a contiguous country (Mexico) likewise is irrelevant because she presently is in ORR custody, meaning that she was found *ineligible* for swift repatriation and now enjoys the same rights and protections as all other unaccompanied children in ORR custody. *See* Mot. to Modify Class at 2-3; § I.A. *supra.*

H.E.B. and L.M.R.S. stand in the same position as members of the provisional class because they "are unaccompanied children in the custody of ORR who are not subject to an executable final order of removal or a valid grant of voluntary departure." *See* ECF No. 65. As previously explained, all unaccompanied minors in the custody of ORR enjoy the same protections, regardless of country of origin. 8 U.S.C. § 1232(a)(5)(D). Defendants have not pointed to any "antagonistic or conflicting interests with unnamed members of the [putative] class" or an inability of any of the named Plaintiffs to "vigorously prosecute the interests of the class through qualified counsel." *Nat'l Veterans Legal Servs. Program v. United States*, 235 F.Supp. 3d 32, 41 (D.D.C. 2017) (citations omitted). Rather, the class representatives seek "identical relief for all class members" and thus do not have conflicting interests. *P.J.E.S. by and through Francisco v. Wolf*, 502 F. Supp. 3d 492, 532 (2020).  The broader class is adequately represented.

II.     **Rule 23(b)(2) is satisfied.**

Defendants nod to the standard applicable under Rule 23(b)(2) but then claim that Plaintiffs "cannot point to any indivisible remedy or conduct that can be enjoined or declared unlawful *only*

9

as to all or none of the members of the universal class." Opp. at 15. Putting aside that the fashioning of an appropriate remedy is a matter for final judgment, not class certification, Plaintiffs anticipate seeking a permanent injunction as to the broader class that will mirror the terms of the Court's existing injunction. This Court enjoined Defendants "from transferring, repatriating, removing, or otherwise facilitating the transport of any Plaintiff—including both named Plaintiffs and all member of the provisionally certified class—from the United States." *See* Order, ECF 48. Although the provisionally certified class was limited to Guatemalan children (because they had demonstrated irreparable harm), the injunction language does not, and need not, turn on country of origin. Plaintiffs anticipate demonstrating at summary judgment their entitlement to a permanent injunction prohibiting the same conduct and covering all unaccompanied children in ORR custody who are not subject to an executable final order of removal and have not been permitted to voluntarily depart under 8 U.S.C. § 1229c and applicable regulations. The indivisible nature of that relief demonstrates that certification under Rule 23(b)(2) is appropriate. Defendants' assertion that the Court's ultimate determination of whether the government's purported reunification plan "is lawful will not necessarily determine the rights of all [unaccompanied children] from all other countries for all time," Opp. at 15, is nonsensical. The rights of a child in ORR custody simply do not turn on whether she was born in Guatemala, Honduras, Mexico, or any other country.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that this Court modify the class definition and certify for purposes of further proceedings a class of all unaccompanied minors who are or will be in the custody of ORR and who are not subject to an executable final order of removal and have not been granted voluntary departure from the United States under 8 U.S.C. § 1229c and applicable regulations.

Dated: December 16, 2025                              Respectfully submitted,

/s/  *Kate Talmor*

Efrén Olivares (D.D.C. Bar No. TX0107)
Lynn Damiano Pearson (D.D.C. Bar No. GA0057)
Kevin Siegel*
Hilda Bonilla (D.C. Bar No. 90023968)
NATIONAL IMMIGRATION LAW CENTER
1101 14th Street, Suite 410
Washington, D.C. 20005
Tel: (213) 639-3900
Fax: (213) 639-3911
olivares@nilc.org
damianopearson@nilc.org
siegel@nilc.org
bonilla@nilc.org

Kate Talmor (D.C. Bar No. 90036191)
Rupa Bhattacharyya (D.C. Bar No. 1631262)
Mary B. McCord (D.C. Bar. No. 427563)
Joseph W. Mead (D.C. Bar No. 1740771)
Tinesha Zandamela (D.C. Bar No. 90035492)
INSTITUTE FOR CONSTITUTIONAL
ADVOCACY AND PROTECTION
Georgetown Law
600 New Jersey Ave., N.W.
Washington, D.C. 20001
Tel: (202) 662-9765
Fax: (202) 661-6730
jm3468@georgetown.edu
rb1796@georgetown.edu
mbm7@georgetown.edu
kt894@georgetown.edu
tcz7@georgetown.edu

Rebecca Wolozin (D.C. Bar No. 144369)
NATIONAL CENTER FOR YOUTH LAW
818 Connecticut Avenue NW, Suite 425
Washington, DC 20006
Tel: (202) 868-4792
bwolozin@youthlaw.org

Mishan Wroe*
NATIONAL CENTER FOR YOUTH LAW
1212 Broadway, Suite 600
Oakland, California 94612
Tel: (510) 835-8098
mwroe@youthlaw.org

*Counsel for Plaintiffs*
*\*Admitted Pro Hac Vice*