# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| L.G.M.L., *et al.*, | Case No. 25-cv-2942-TJK |
| *Plaintiffs*, | |
| v. | |
| KRISTI NOEM, *et al.*, | |
| *Defendants*. | |

## **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ................................................................................... 2

STANDARD OF REVIEW ..................................................................................... 4

ARGUMENT ........................................................................................................ 5

   I.   THIS COURT HAS SUBJECT MATTER JURISDICTION ........................... 5

     A.   Plaintiffs May Proceed with the Litigation because at Least One Plaintiff Has Standing .............................................................................................................. 6

     B.   L.G.M.S. and H.E.B. Have Standing and Their Claims Are Ripe ................. 7

     C.   No Statute Precludes This Court's Jurisdiction .......................................... 13

   II.   PLAINTIFFS' COMPLAINT STATES CLAIMS FOR WHICH RELIEF MAY BE GRANTED .................................................................................................... 15

     A.   Defendants' Request for Dismissal under Rule 12(b)(6) Fails under the Proper Pleading Standard ...................................................................................... 16

     B.   Plaintiffs Have Stated a Cause of Action ................................................. 19

       1.   Plaintiffs May Proceed under the APA ................................................ 19

       2.   In the Alternative, Plaintiffs May Proceed via *Ultra Vires* Review ......... 24

       3.   Plaintiffs Have Sufficiently Alleged Defendants are Acting, or Intend to Act, in Violation of Statutory Provisions .............................................................. 27

       4.   Plaintiffs Have Sufficiently Alleged an *Accardi* Claim ........................... 30

       5.   Plaintiffs Have Sufficiently Alleged Violations of the Due Process Clause ............. 33

   CONCLUSION ................................................................................................... 35

# TABLE OF AUTHORITIES

**Cases**

*A.A.R.P. v. Trump*,
    605 U.S. 91 (2025) ................................................................................. 33

*Abbot Laboratories v. Gardner*,
    387 U.S. 136 (1967) ......................................................................... 12, 19

*AFL-CIO v. Dep't of Lab.*,
    778 F. Supp. 3d 56 (D.D.C. 2025) ......................................................... 29

*Am. Sch. of Magnetic Healing v. McAnnulty*,
    187 U.S. 94 (1902) ................................................................................. 25

*Armstrong v. Exceptional Child Ctr., Inc.*,
    575 U.S. 320 (2015) .............................................................................. 25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................... passim

*Barr v. Clinton*,
    370 F.3d 1196 (D.C. Cir. 2004) .............................................................. 4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................. 4, 16, 17

*Bennett v. Spear*,
    520 U.S. 154 (1997) ........................................................................ 20, 21

*Biden v. Nebraska*,
    600 U.S. 477 (2023) ................................................................................ 6

*Bost v. Ill. State Bd. of Elections*,
    No. 24-568, 607 U.S. ___, 2026 WL 96707 (U.S. Jan. 14, 2026) ............ 6

*Brock v. Cathedral Bluffs Shale Oil Co.*,
    796 F.2d 533 (D.C. Cir. 1986) .............................................................. 31

*Carey v. Piphus*,
    435 U.S. 247 (1978) .............................................................................. 34

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971) ................................................................ 23

*Citizens United v. Fed. Election Comm'n*,
   558 U.S. 310 (2010) ................................................................ 17

*City of Arlington v. FCC*,
   569 U.S. 290 (2013) ................................................................ 29

*City of Providence v. Barr*,
   954 F.3d 23 (1st Cir. 2020) ...................................................... 29

*Cleveland Bd. of Educ. v. Loudermill*,
   470 U.S. 532 (1985) ............................................................ 34, 35

*Cole v. Boeing Co.*,
   845 F. Supp. 2d 277 (D.D.C. 2012) .......................................... 4

*Columbia Gulf Transmission, LLC v. Fed. Energy Regul. Comm'n*,
   106 F.4th 1220 (D.C. Cir. 2024) .............................................. 10

*Corner Post, Inc. v. Bd. of Governors of Fed. Reserve. Sys.*,
   603 U.S. 799 (2024) ................................................................ 20

*Covad Commc'ns. Co. v. Bell Atl. Corp.*,
   398 F.3d 666, (D.C. Cir. 2005) ................................................. 4

*Cruz Medina v. Noem*,
   No. 25-cv-1768-ABA, 2025 WL 2841488 (D. Md. Oct. 7, 2025) ........... 15

*Damus v. Nielsen*,
   313 F. Supp. 3d 317 (D.D.C. 2018) .......................................... 31

*Dep't of Com. v. New York*,
   588 U.S. 752 (2019) ................................................................ 24

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
   591 U.S. 1 (2020) ................................................................... 24

*E.E.O.C. v. St. Francis Xavier Parochial Sch.*,
   117 F.3d 621 (D.C. Cir. 1997) ................................................... 5

*E.O.H.C. v. Sec'y of the Dep't of Homeland Sec.*,
   950 F.3d 177 (3d Cir. 2020) ................................................................. 15

*Elk Run Coal Co. v. U.S. Dep't of Lab.*,
   804 F. Supp. 2d 8 (D.D.C. 2011) ......................................................... 35

*Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009) ............................................................................. 24

*Fed. Trade Comm'n v. Facebook, Inc.*,
   581 F. Supp. 3d 34 (D.D.C. 2022) ....................................................... 20

*Friends of Animals v. Bernhardt*,
   961 F.3d 1197 (D.C. Cir. 2020) ........................................................... 23

*Garcia Ramirez v. U.S. Immigr. & Customs Enf't*,
   310 F.Supp.3d 7 (D.D.C. 2018) ........................................................... 11

*Grace v. Barr*,
   965 F.3d 883 (D.C. Cir. 2020) ............................................................. 14

*Gulf Coast Mar. Supply, Inc. v. United States*,
   867 F.3d 123 (D.C. Cir. 2017) ............................................................. 27

*Hall v. D.C. Bd. of Elections*,
   141 F.4th 200 (D.C. Cir. 2025) ............................................................... 4

*Hous. Fin. Auth. v. Fed. Emergency Mgmt. Agency*,
   151 F.4th 409 (D.C. Cir. 2025) ............................................................. 19

*Info. Ctr. v. U.S. Dep't of Homeland Sec.*,
   653 F.3d 1 (D.C. Cir. 2011) ................................................................. 23

*J.D. v. Azar*,
   925 F.3d 1291 (D.C. Cir. 2019) ............................................................... 7

*Jefferson v. Harris*,
   285 F. Supp. 3d 173 (D.D.C. 2018) ..................................................... 30

*Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*,
   402 F.3d 1249 (D.C. Cir. 2005) ............................................................... 4

*Johnson v. City of Shelby*,
    574 U.S. 10 (2014) ............................................................................. 5, 17, 18, 26

*Kaufman v. Nielsen*,
    896 F.3d 475 (D.C. Cir. 2018) ......................................................................... 12

*Leedom v. Kyne*,
    358 U.S. 184 (1958) .................................................................................. 25, 27

*Louis Vuitton Malletier S.A.S. v. WNF, Inc.*,
    No. 18 Civ. 2810 (TJK), 2019 WL 2410948 (D.D.C. June 7, 2019) ...................... 30

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ........................................................................................ 35

*McNary v. Haitian Refugee Ctr., Inc.*,
    498 U.S. 479 (1991) .................................................................................. 14, 15

*Mendoza v. Perez*,
    754 F.3d 1002 (D.C. Cir. 2014) ......................................................................... 7

*Morrow v. United States*,
    723 F. Supp. 2d 71 (D.D.C. 2010) ................................................................. 4, 5

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ........................................................................................ 34

*Nuclear Regul. Comm'n v. Texas*,
    605 U.S. 665 (2025) ............................................................................. 25, 26, 27

*Nyunt v. Chairman, Broad. Bd. of Governors*,
    589 F.3d 445 (D.C. Cir. 2009) ......................................................................... 27

*O.A. v. Trump*,
    404 F. Supp. 3d 109 (D.D.C. 2019) .................................................................. 14

*Propert v. District of Columbia*,
    948 F.2d 1327 (D.C. Cir. 1991) ........................................................................ 33

*Ry. Clerks v. Ass'n for Benefit of Noncontract Emps.*,
    380 U.S. 650 (1965) ........................................................................................ 27

*Safari Club Int'l v. Jewell*,
  842 F.3d 1280 (D.C. Cir. 2016) ............................................................. 20

*Soundboard Ass'n v. Fed. Trade Comm'n*,
  888 F.3d 1261 (D.C. Cir. 2018) ............................................................. 22

*Sparrow v. United Air Lines, Inc.*,
  216 F.3d 1111 (D.C. Cir. 2000) ............................................................. 17

*Stanton v. Elliott*,
  25 F.4th 227 (4th Cir. 2022) ................................................................. 26

*Sw. Airlines Co. v. U.S. Dep't of Transp.*,
  832 F.3d 270 (D.C. Cir. 2016) ............................................................... 21

*Texas v. United States*,
  523 U.S. 296 (1998) ............................................................................. 12

*Town of Chester v. Laroe Ests., Inc.*,
  581 U.S. 433 (2017) ............................................................................... 7

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ............................................................................... 9

*Trump v. J.G.G.*,
  604 U.S. 670 (2025) ............................................................................. 33

*United States ex rel. Accardi v. Shaughnessy*,
  347 U.S. 260 (1954) ............................................................................. 30

*Venetian Casino Resort, L.L.C. v. E.E.O.C.*,
  409 F.3d 359 (D.C. Cir. 2005) ............................................................... 12

*Walter O. Boswell Mem'l Hosp. v. Heckler*,
  749 F.2d 788 (D.C. Cir. 1984) ............................................................... 23

*Zakzouk v. Becerra*,
  *No. 25-cv-6254-KAW, 2025 WL 2899220* (N.D. Cal. Oct. 10, 2025) ....................................... 15

**Statutes**

5 U.S.C. § 702 ............................................................................................. 19

v

5 U.S.C. § 706 .................................................................................................. passim
6 U.S.C. § 279 .................................................................................................. passim
8 U.S.C. § 1158 ....................................................................................................... 26
8 U.S.C. § 1229 .............................................................................................. 3, 26, 30
8 U.S.C. § 1231 ................................................................................................ 13, 15
8 U.S.C. § 1232 .............................................................................................. 3, 9, 10
8 U.S.C. § 1252 .......................................................................................... 13, 14, 15
42 U.S.C. § 1983 ..................................................................................................... 17

## Rules

Fed. R. Civ. P. 8 ............................................................................................... passim
Fed. R. Civ. P. 12(b)(1) ............................................................................................ 4
Fed. R. Civ. P. 12(b)(6) ................................................................................... passim
Fed. R. Civ. P. 54 ..................................................................................................... 17

## Regulations

8 C.F.R. 208.1 .......................................................................................................... 33
8 C.F.R. § 240.25 ..................................................................................................... 33
8 C.F.R. § 236.3 ....................................................................................................... 32
8 C.F.R. § 241.1 ....................................................................................................... 33
45 C.F.R. § 410.1003 ......................................................................................... 31, 32
45 C.F.R. § 410.1103 ............................................................................................... 32
45 C.F.R. § 410.1309 ............................................................................................... 31
45 C.F.R. § 410.1000 ............................................................................................... 31
45 C.F.R. § 410.1100 ............................................................................................... 31
45 C.F.R. § 410.1201 ............................................................................................... 32
45 C.F.R. § 410.1308 ............................................................................................... 32

## Other Authorities

2 James Wm. Moore et al., *Moore's Federal Practice* (2026) .............................. 7, 17
5 C. Wright & A. Miller, *Fed. Prac. & Proc. Civ.* (4th ed.2021).......................... 17, 20
Note of Advisory Committee on Rules—1966 Amendment, 28 U.S.C. App. .............................. 7
TVPRA, Pub. L. No. 110-457........................................................................................ 2

## PRELIMINARY STATEMENT

Over Labor Day weekend 2025, Defendants attempted to summarily expel dozens of unaccompanied children in the middle of the night. Plaintiffs rushed to court to prevent their summary expulsion without the procedures guaranteed to them by law, and this Court intervened by issuing a temporary restraining order, and subsequently a preliminary injunction, rejecting Defendants' contention that they sought to reunify the children with their parents and finding that Defendants had likely violated Plaintiff children's rights under the Trafficking Victims Reauthorization Act ("TVPRA"). Defendants now move to dismiss Plaintiffs' amended complaint based on a fundamental misunderstanding of the legal standards applicable at this stage of the litigation and a profound misreading of Plaintiffs' well-pled allegations.

Defendants offer no legal justification for their effort to expel dozens of children under cover of darkness over a holiday weekend. Instead, they focus on threshold issues, first asserting that this Court lacks jurisdiction over the matter. But Defendants disregard the basic tenet that only one plaintiff must prove standing and incorrectly argue that statutory bars apply to Plaintiffs' claim alleging violations of the Foreign Affairs Restructuring Act of 1998 ("FARRA") and the Convention Against Torture ("CAT"). Defendants also contend that Plaintiffs have failed to state a claim under the Administrative Procedure Act ("APA"), the *Accardi* doctrine, or the Constitution's Due Process Clause, wholly ignoring extensive factual allegations in the amended complaint that set forth in detail claims upon which relief can be granted. *See* First Amended Complaint ("Am. Compl."), ECF No. 64.[1] Defendants' glaring mischaracterizations of Plaintiffs' claims in the amended complaint should not distract the Court

---

[1] All record citation pincites refer to the original pagination of the cited document.

from the unlawful conduct that gave rise to this action, which was prevented only by this Court's emergency intervention.

## FACTUAL BACKGROUND[2]

On August 29, 2025, reports emerged that Defendants planned to expel several hundred unaccompanied Guatemalan children to their country of origin, despite many of those children having pending immigration cases and a credible fear of returning to their home countries. Am. Compl., ECF No. 64 ¶ 65. Shortly before midnight on Saturday, August 30, 2025, Defendants informed the Department of Health and Human Services' Office of Refugee Resettlement ("ORR") shelters and long-term foster care providers that they had two to four hours to prepare children for immediate departure. *Id.* ¶ 71. Defendants did not provide the children with an opportunity to challenge their expulsion or provide advance notice to the children, the children's attorneys, the child advocates, the ORR shelters, or the long-term foster care providers. *Id.* ¶¶ 69-70, 72. Seventy-six children were transferred to the Department of Homeland Security ("DHS") custody and placed on a plane that would have departed imminently for Guatemala but for this Court's temporary restraining order. *Id.* ¶¶ 70, 74, 75, 77.

As this Court found when it granted Plaintiffs' Motion for a Preliminary Injunction on September 18, 2025, Defendants' actions likely violated the TVPRA, Pub. L. No. 110-457, 122 Stat. 5044 (2008), 8 U.S.C. § 1232, which requires unaccompanied children to have the opportunity to pursue their immigration cases. PI Mem. Op., ECF No. 49 at 25-34; *id.* at 3-5

---

[2] Plaintiffs hereby incorporate by reference the factual and legal background set forth in this Court's Memorandum Opinion Granting Plaintiffs' Motion for a Preliminary Injunction ("PI Mem. Op."), ECF No. 49 at 2-11, and Plaintiffs' Memorandum in Support of their Motion for a Preliminary Injunction ("PI Br."), ECF No. 20-1 at 3-20, and include here only materials particularly relevant to the resolution of this motion.

(describing the requirements of the TVPRA). This Court concluded that "Congress enacted into law a specific process for removing unaccompanied alien children like Plaintiffs, and Defendants' 'reunification' plan likely contravenes those statutory requirements." *Id.* at 2; *see also id.* at 26 ("Defendants' 'reunification' plan, which is predicated on first expelling—that is, removing—these unaccompanied alien children from the United States, would circumvent the process that Congress established for doing so."). Defendants did not appeal this Court's decision granting a preliminary injunction.

Plaintiffs filed the First Amended Class Action Complaint on October 14, 2025. Am. Compl., ECF No. 64. The amended complaint includes named plaintiffs from Guatemala, Mexico, and Honduras, *id.* ¶¶ 10-21, consistent with Plaintiffs' position that the class should be modified to include unaccompanied children of all nationalities in ORR custody. On November 25, 2025, Plaintiffs moved to modify the class definition to include "all unaccompanied minors who are or will be in ORR custody and who are not subject to an executable final order of removal and have not been granted voluntary departure under 8 U.S.C. § 1229c and applicable regulations." Plaintiffs' Motion to Modify Class Definition for Further Proceedings ("Mot. to Modify"), ECF. No. 65 at 1. The motion argues that a modified class definition is appropriate because all children in ORR custody "enjoy the same rights and protections contained in the TVPRA" regardless of national origin. *Id.* at 3. Without the Court's protection, Defendants could exercise their claimed "reunification authority" as to unaccompanied children from any country, as nothing in their justifications supporting this purported "reunification authority" is unique to Guatemala. *Id.* at 4. Plaintiffs' motion to modify the class definition remains pending before the Court.

3

## STANDARD OF REVIEW

Defendants move to dismiss Plaintiffs' amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6) ("MTD"), ECF No. 71.

When considering a motion to dismiss challenging the court's subject matter jurisdiction under Rule 12(b)(1), a court "assume[s] the truth of all material factual allegations in the complaint and construe[s] the complaint liberally, granting plaintiffs the benefit of all reasonable inferences that can be derived from the facts alleged." *Hall v. D.C. Bd. of Elections*, 141 F.4th 200, 205 (D.C. Cir. 2025) (citations omitted); *see also Cole v. Boeing Co.*, 845 F. Supp. 2d 277, 282-83 (D.D.C. 2012) (citing *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004)). Under Rule 12(b)(1), the court "is not limited to the allegations set forth in the complaint" and "may consider materials outside the pleadings." *Morrow v. United States*, 723 F. Supp. 2d 71, 76 (D.D.C. 2010) (quoting *Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Covad Commc'ns. Co. v. Bell Atl. Corp.*, 398 F.3d 666, 671 (D.C. Cir. 2005) (quoting Fed. R. Civ. P. 8(a)), and need not contain any legal theories, *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014), or "detailed factual allegations," *Iqbal*, 556 U.S. at 678. Once a plaintiff "inform[s] the [defendant] of the factual basis for their complaint, they

[a]re required to do no more to stave off threshold dismissal for want of an adequate statement of their claim." *Johnson*, 574 U.S. at 12. In evaluating a Rule 12(b)(6) motion, "the Court 'may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] . . . and matters of which [the Court] may take judicial notice.'" *Morrow*, 723 F. Supp. 2d at 76 (citing *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) (alterations in original; footnote omitted)).

## **ARGUMENT**

### I.    **THIS COURT HAS SUBJECT MATTER JURISDICTION**

Defendants' contention that the Court lacks subject matter jurisdiction over some of Plaintiffs' claims is nothing more than a misplaced argument against certifying a class that extends beyond unaccompanied Guatemalan children and a challenge to Plaintiffs' allegation that Defendants' final agency extends beyond children from Guatemala. The former is improperly presented on this motion to dismiss and, instead, has been fully briefed in the context of Plaintiffs' Motion to Modify the Class Definition, ECF No. 65; the latter is addressed below in response to Defendants' arguments concerning Plaintiffs' Administrative Procedure Act claims. Neither goes to the question of this Court's jurisdiction. Defendants do not challenge Plaintiffs' standing to seek relief on behalf of the existing certified class. The newly named Plaintiffs may proceed with their claims representing the putative expanded class (sought in Plaintiffs' pending motion to modify the class definition) because at least one of the members of the requested modified class has standing, and even if each Plaintiff was required to demonstrate their standing in order to proceed, the newly named Plaintiffs have done so. Moreover, the newly named Plaintiffs claims are ripe. Finally, no statute precludes this Court's

jurisdiction. Defendants' motion to dismiss for lack of subject matter jurisdiction should be denied.

### A. Plaintiffs May Proceed with the Litigation Because at Least One Plaintiff Has Standing

Defendants do not—and could not—claim that the ten original named Plaintiffs lack standing to challenge the government's policy of summary expulsion of unaccompanied children. MTD, ECF No. 71 at 6-7. Indeed, several of these Plaintiffs were directly affected by Defendants' Labor Day expulsion attempt, awakened in the middle of the night and transported to the airport. *See, e.g.*, Pl. Br., ECF No. 20-1 at 6-7 (describing the experience of Plaintiff A.R.M.D.). Thus, it is undisputed that there is at least one plaintiff with standing to bring well-pled claims on behalf of themselves, and this Court has provisionally certified the ten original plaintiffs as representatives for purposes of bringing claims on behalf of a class. PI Mem. Op., ECF No. 49 at 13-24.

No more is needed to survive Defendants' standing challenge, which is squarely foreclosed by both Supreme Court and D.C. Circuit precedent. As the Supreme Court recently reaffirmed, where an action seeking injunctive and declaratory relief is brought on behalf of multiple plaintiffs, "only one plaintiff needs standing for a suit to proceed." *Bost v. Ill. State Bd. of Elections*, No. 24-568, 607 U.S. ___, 2026 WL 96707, at *3 n.3 (U.S. Jan. 14, 2026) (citing *Biden v. Nebraska*, 600 U.S. 477, 489 (2023)). The Court of Appeals is also conclusive on this point: "a class representative's individual standing is immaterial as long as one representative has standing." *J.D. v. Azar*, 925 F.3d 1291, 1324 (D.C. Cir. 2019); *see also id.* at 1323 ("[I]n a case involving joined, individual plaintiffs bringing a shared claim seeking a single remedy, Article III's case-or-controversy requirement is satisfied if one plaintiff can establish injury and

standing."); *id.* at 1324 ("[A]t least one plaintiff" must have "standing to seek each form of relief requested in the complaint." (quoting *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017))); *Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014) ("To establish jurisdiction, the court need only find one plaintiff who has standing."). The same rule applies "with equal force to a Rule 23(b)(2) class action advancing a uniform claim and seeking uniform injunctive and declaratory relief." *J.D.*, 925 F.3d at 1324; *see also id.* at 1315 ("[A] challenged action 'is directed to a class . . . even if it has taken effect or is threatened only as to one or a few members of the class.'" (quoting Note of Advisory Committee on Rules—1966 Amendment, 28 U.S.C. App. at 812 (2012))); 5 Moore's Federal Practice - Civil § 23.22 ("Class-action plaintiffs seeking injunctive or declaratory relief frequently seek to define a class to include people who might be injured in the future.").

### B.  L.G.M.S. and H.E.B. Have Standing and Their Claims Are Ripe

Even if it were necessary to demonstrate that every single named plaintiff has standing to pursue relief here, the newly named Plaintiff class members have standing to challenge the government's policy of summary expulsion regardless of their country of origin.

In arguing that L.G.M.S. and H.E.B. lack standing, Defendants fundamentally misconstrue the challenged government action in this case as limited to the attempted expulsion of children to Guatemala over Labor Day weekend.[3] MTD, ECF No. 71 at 1. Contrary to Defendants' assertions, Plaintiffs' amended complaint challenges the government's *broader*

---

[3] The Court should also disregard Defendants nonsensical argument that L.G.M.S. and H.E.B. do not have standing because they do not have parents *in Guatemala*, which is neither child's country of origin and therefore irrelevant. MTD, ECF No. 71 at 1. *Cf., e.g.,* Am. Compl., ECF No. 64 ¶¶ 20, 21, 90 (referencing facts supporting Plaintiffs' claims with respect to their specific countries of origin).

policy—grounded in their interpretation of the text of 6 U.S.C. § 279(b)(1)(H)—of summary expulsion of unaccompanied children from the United States to their respective countries of origin before the conclusion of their immigration proceedings and in violation of various statutory and constitutional protections. *See, e.g.*, Am. Compl., ECF No. 64 ¶¶ 105, 107-08, 111, 113, 118, 121, 124, 128-29. Plaintiffs have sufficiently pled facts to support their allegation that this policy, first executed over Labor Day weekend as to children of Guatemalan origin, is applicable to *all* unaccompanied children, not just Guatemalan children.

While the government first piloted its policy of summary expulsion on Guatemalan children, its reasoning and subsequent arguments authorize such expulsions regardless of a child's country of origin. *Id.* ¶¶ 66, 79-87 (alleging facts leading to a reasonable inference that Defendants' summary expulsion policy would not be limited to Guatemalan children); *id.* ¶ 88 ("Defendants have repeatedly refused to confirm that they will not expel members of the class [from countries other than Guatemala] from the United States without following the procedures required by the [Immigration and Nationality Act ("INA")] and the TVPRA and have disclaimed any obligation to provide advance notice to either children or their attorneys before attempting another mass summary expulsion."), *id.* ¶ 97 (defining the common practice and questions of law as applying to all unaccompanied children, regardless of country of origin).

As this Court has already found, the legal questions presented by Plaintiffs do not depend on whether any given child "was 'removed in a certain way' or 'to a certain place,'" PI Mem. Op., ECF No. 49 at 28 (citations omitted) (rejecting Defendants' theory that 6 U.S.C. § 279(b)(1)(H) grants them authority to summarily expel children from the United States in the name of reunification with a parent or legal guardian). And "for the same reasons," any attempt

to expel children from countries other than Guatemala "is likely to be unlawful." *Id.* at 24. Because the government has already acted on its challenged policy of summary expulsion of unaccompanied children as to a subset of children to which it claims the policy applies, L.G.M.S. and H.E.B., like their fellow Plaintiffs, face substantial risk of future summary expulsion efforts and have standing to seek injunctive relief here. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435-36 (2021).

Both L.G.M.S. and H.E.B. are unaccompanied children in the custody of ORR who are not subject to an executable final order of removal or a valid grant of voluntary departure. Am. Compl., ECF No. 64 ¶¶ 20, 21. There is no legal difference between them and any of the other class members because they, like all unaccompanied children, are protected by the same provisions of the TVPRA, regardless of their country of origin. 8 U.S.C. § 1232(a)(5)(D). Once in ORR custody, unaccompanied children from contiguous countries, including L.G.M.S., enjoy the same protections as children from non-contiguous countries, like H.E.B. and the original named plaintiffs. *Id.* And whether a child has a parent—available or otherwise—in their home country has no impact on the rights of an unaccompanied child in ORR custody in the United States under the TVPRA. *Id.*; *see also* 6 U.S.C. § 279(g)(2) (defining unaccompanied minor by availability of a parent or legal guardian "in the United States").

The Court should also reject Defendants' argument that H.E.B. lacks standing because she does not have a parent physically present in Honduras. Where H.E.B.'s parents reside or whether they are available to care for her is irrelevant to the standing analysis. As Defendants acknowledge, MTD, ECF No. 71 at 7, Plaintiffs' amended complaint contains factual allegations demonstrating that Defendants took steps to execute their policy of unlawfully

expelling children without regard for the physical presence of a parent in a child's country of origin, or whether that parent was available to care for the child. Am. Compl., ECF No. 64 ¶ 10 ("L.G.M.L.'s mother is deceased and she suffered abuse and neglect from other caregivers"); *id.* ¶ 79 (explaining how Defendants presented and then withdrew false information before the court that children's parents had requested their return); *id.* ¶¶ 80-81 (alleging that Plaintiffs' inclusion in the list of children to be expelled "was done on an ad hoc basis with incomplete and faulty information").

The Court also has found that the government's challenged policy applies to children regardless of whether any particular adult is prepared to receive them in their home country after their expulsion. PI Mem. Op., ECF No. 49 at 34 (noting the Guatemalan Attorney General's report "explaining that for the '609 adolescents listed,' the Attorney General's office had 'phone numbers' for 'only 204' and confirmed 'information' for 115," and finding that "Defendants seem to lack a reasonable basis for finding that [any particular] child will be [reunified with a parent]"). Assessing standing "based on the facts as they existed at the time the action commenced," *Columbia Gulf Transmission, LLC v. Fed. Energy Regul. Comm'n*, 106 F.4th 1220, 1228 (D.C. Cir. 2024), requires this Court to reject Defendants' post-hoc, unsupported arguments that children who do not have parents or legal guardians in their countries' of origin would not be subject to summary expulsion.[4] *See also Garcia Ramirez v. U.S. Immigr. & Customs Enf't*, 310 F.Supp.3d 7, 19 (D.D.C. 2018) ("Defendants' mere assertion

---

[4] Indeed, Defendants justified their legal theory at the preliminary injunction stage by referencing a set of siblings reunified with their *grandmother* in Mexico and a child reunified with his *grandmother* in the United Kingdom, Declaration of Angie Salazar ("Salazar Decl."), ECF No. 35-1 ¶ 8; PI Mem. Op., ECF No. 49 at 32, thus conceding that the existence of a *parent* in the home country was irrelevant to their argument.

that the agency has complied with a statutory mandate cannot suffice to divest this [c]ourt of jurisdiction to determine whether it did so.").

Finally, L.G.M.S.'s and H.E.B.'s claims are ripe. Both L.G.M.S. and H.E.B. alleged fear that they will be expelled to their home countries without the process and protections guaranteed by the TVPRA. Am. Compl., ECF No. 64 ¶¶ 20-21, 80-88; *see also* Declaration of L.G.M.S. ("L.G.M.S. Decl."), ECF No. 65-1, Ex. A ¶¶ 4-5; Declaration of H.E.B. ("H.E.B. Decl."), ECF 65-1,Ex. B ¶¶ 2, 5-6. That fear arises directly from the government's position that the "reunification" authority they purportedly derive from 6 U.S.C. § 279(b)(1)(H) overrides other protections that these children are guaranteed by law, including those set out by the TVPRA. Defendants' ominous refusal to disclaim applying their expulsion policy to children from countries other than Guatemala also underscores the ripeness of Plaintiffs' claims. Am. Compl. ECF No. 64 ¶¶ 87-88; *see also* PI Mem. Op., ECF No. 49 at 35.

As articulated by the Court of Appeals, determining whether a claim is ripe involves weighing "whether the disputed claims raise purely legal questions and would, therefore be presumptively suited for judicial review," whether the agency policy has assumed its final form, and whether Plaintiffs have shown that they would suffer hardship absent judicial review. *Kaufman v. Nielsen*, 896 F.3d 475, 483 (D.C. Cir. 2018) (quoting *Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 409 F.3d 359, 364 (D.C. Cir. 2005) (citing *Abbot Laboratories v. Gardner*, 387 U.S. 136, 149 (1967)).

Here, whether Defendants' interpretation of their authorities is correct is a purely legal question, and it has assumed its final form, as clearly demonstrated by the fact that Defendants, including actors from multiple federal agencies, acted on that interpretation when they moved to

summarily expel dozens of children over Labor Day weekend. And the "hardship" to Plaintiffs—all children who have alleged fear of returning to their countries of origin—from delaying adjudication of their claims just because they hail from a country different from those affected by the Labor Day weekend action, where the same legal interpretation applies to them, is hardly in doubt. Indeed, "the 'hardship' prong is largely irrelevant" in cases such as this, "in which 'neither the agency nor the court has a significant interest in postponing review.'" *Kaufman*, 896 F.3d at 484. Here, Defendants provide no reason at all for postponing review.

Defendants rely on *Texas v. United States*, 523 U.S. 296 (1998) to argue that L.G.M.S.'s and H.E.B.'s claims are not ripe, but that case does not support their argument. There, the injury Texas alleged had never previously occurred and was not "currently foreseen or even likely." *Id.* at 300. Here, Plaintiffs alleged the government fully intends to and has taken steps toward their summary expulsion. Am. Compl., ECF No. 64 ¶¶ 80-88. In *Texas*, the plaintiff "hope[d] that there will be no need" to undertake the activity that would ultimately engender the government action they challenged, 523 U.S. at 300; *see also id.* at 302 ("we find it too speculative whether the problem Texas presents will ever need solving"). Here, Plaintiffs have alleged facts that show *both* past injury to other similarly situated children *and* government actions that apply specifically to L.G.M.S. and H.E.B., *see* L.G.M.S. Decl., ECF No. 65-1, Ex. A ¶¶ 4-5; H.E.B. Decl., ECF 65-1, Ex. B ¶¶ 2, 5-6, leading to a reasonable inference that these children may be summarily expelled. Am. Compl., ECF No. 64 ¶¶ 20-21, 80-88. Where a legal question is presumptively reviewable, as it is here, children need not wait to be loaded onto planes in the middle of the night for their claims to be ripe.

In sum, taken as true, Plaintiffs' allegations establish sufficiently imminent and substantial risk that children like the original ten named plaintiffs; children—like H.E.B.—who do not have a parent or legal guardian available in their country of origin; and children in ORR custody from countries other than Guatemala—like both L.G.M.S. and H.E.B.—will be subjected to the governments' unlawful summary expulsion policy. The Court has jurisdiction to review their claims.

### C.  No Statute Precludes This Court's Jurisdiction

Defendants argue that the Court lacks subject matter jurisdiction as to Count VI, which challenges Defendants' violations of the Convention Against Torture ("CAT") and the Foreign Affairs Restructuring Act of 1998 ("FARRA"). *Cf.* MTD, ECF No. 71 at 12. But the jurisdictional bars in FARRA § 2242(d), 112 Stat. 2681-822, codified at 8 U.S.C. § 1231 note, and 8 U.S.C. § 1252(a)(4) do not apply to Plaintiffs' claim. FARRA's jurisdictional bar provides that "no court shall have jurisdiction to review the regulations adopted to implement [FARRA], and that nothing [in FARRA] shall be construed as providing any court jurisdiction to consider or review claims raised under the Convention or this section . . . except as part of the review of a final order of removal pursuant to [8 U.S.C. § 1252]." FARRA § 2242(d), 112 Stat. 2681-822. In turn, 8 U.S.C. § 1252(a)(4), enacted several years *after* FARRA, provides for judicial review of denials of claims for relief under CAT but requires such review be done on a petition for review of an order of removal in the federal courts of appeal.

Defendants' jurisdictional arguments fail because Count VI is well beyond the bounds of both bars. Defendants take a vastly overbroad view—for which they provide no support or explanation—of what constitutes a cause or claim under CAT and FARRA. Plaintiffs challenge

*neither* the regulations adopted to implement CAT nor do they bring a "cause or claim" for relief reviewable in a petition for review of an administrative determination in a removal proceeding. Plaintiffs do not seek review of any claim relating to whether they have met the criteria for relief under CAT and they do not challenge an administrative removal determination.

Instead, Plaintiffs challenge a policy adopted by Defendants that denies Plaintiffs the opportunity to *seek* any such determination of removal or adjudication of their CAT claims because it would operate to expel them from the country before the conclusion of their immigration proceedings. Plaintiffs seek only to avail themselves of the process guaranteed to them by law to raise their CAT claims in an appropriate forum. Their claim that Defendants have denied them this opportunity is not jurisdictionally barred. *See, e.g.*, *Grace v. Barr*, 965 F.3d 883, 892-93 (D.C. Cir. 2020) (holding that provision barring jurisdiction to review individual expedited removal determinations, 8 U.S.C. § 1252(a)(2)(A)(iii), did not bar suit challenging "policies on their face") (citing *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 491 (1991)); *O.A. v. Trump*, 404 F. Supp. 3d 109, 134-35 (D.D.C. 2019) ("The Supreme Court has recognized . . . that district courts have jurisdiction over 'general collateral challenges to [unlawful] practices and policies used by [immigration authorities].'" (alteration in original) (quoting *McNary*, 498 U.S. at 492)); *Zakzouk v. Becerra, No. 25-cv-6254-KAW, 2025 WL 2899220,* at *4 (N.D. Cal. Oct. 10, 2025) (finding that FARRA did not strip jurisdiction where what petitioner sought was "*notice and opportunity* to apply for CAT relief if removal becomes reasonably foreseeable." (emphasis in original)); *see also Cruz Medina v. Noem*, No. 25-cv-1768-ABA, 2025 WL 2841488, at *3 (D. Md. Oct. 7, 2025) ("Section 1252(a)(4) does not speak to this [c]ourt's jurisdiction in connection with [p]etitioner's claim that he is entitled to review

by an immigration judge of his claim for withholding from removal under § 1231(b)(3)").

Because Defendants' unlawful summary expulsion policy would operate to deny Plaintiffs the

opportunity to conclude their immigration proceedings, Plaintiffs' claim could not be brought in

a petition for review after the conclusion of removal proceedings. The claim is therefore not

barred by Section 1254(a)(4). *See E.O.H.C. v. Sec'y of the Dep't of Homeland Sec.*, 950 F.3d

177, 188-90 (3d Cir. 2020) ("Subsection (a)(4) does not bar now-or-never claims: claims that

could not be meaningfully redressed by petition for review after a final order of removal.").

Defendants' argument that Plaintiffs' Count VI is subject to these jurisdictional bars should be

rejected.

## II.    PLAINTIFFS' COMPLAINT STATES CLAIMS FOR WHICH RELIEF MAY BE GRANTED

Defendants' arguments for dismissal under Rule 12(b)(6) are largely premised on a

fundamental misunderstanding of the governing pleading standards in federal court today. The

extensive and detailed allegations of Defendants' violations of law set out in Plaintiffs'

Amended Complaint meet the requirements of the pleading standards articulated by the

Supreme Court in *Iqbal*, 556 at 678, and *Twombly*, 550 U.S. at 570, and Plaintiffs need do no

more. Moreover, those allegations are also more than sufficient to state claims under the

Administrative Procedures Act; under the doctrine of nonstatutory review to challenge actions

taken by government officials *ultra vires*, or without proper legal authority; under the statutes

Plaintiffs cite, including the TVRPA, FARRA, and the CAT; under the *Accardi* doctrine; and

under the Constitution's Due Process Clause. Defendants' motion to dismiss for failure to state a

claim should be denied as to all of these.

A.  **Defendants' Request for Dismissal under Rule 12(b)(6) Fails under the Proper Pleading Standard**

Defendants' repeated contention that Plaintiffs' complaint does not detail, to Defendants' satisfaction, the legal theories on which Plaintiffs seek relief is meritless. The Federal Rules do not require a plaintiff to include *any* law in their complaint, much less a detailed articulation of their legal theory. Even so, Plaintiffs' complaint explains at length the laws that Defendants' "reunification" plans violate. Plaintiffs' complaint is not defective and there is no basis for dismissal under Rule 12(b)(6).

Under the Federal Rules of Civil Procedure, a complaint need only provide grounds for the court's jurisdiction, contain a demand for relief, and set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). This requires a plaintiff to include sufficient *factual* allegations "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "No technical form is required." Fed. R. Civ. P. 8(d)(1). "Rule 8(a)(2) does not require a claimant to set forth any legal theory justifying the relief sought on the facts alleged, or to set out any legal arguments in the pleadings." 2 Moore's Federal Practice - Civil § 8.04 (2026); *accord, e.g.*, 5 C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 1219 (4th ed. 2021) ("The federal rules effectively abolished the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief."). Even at final judgment, the rules instruct the Court to "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c); *accord, e.g.*, *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 330 (2010) (court

could grant facial relief to a plaintiff, even where plaintiff had dismissed the count of complaint that asserted a facial theory).

The Supreme Court has made it clear: once a plaintiff "inform[s] the [defendant] of the factual basis for their complaint, they [are] required to do no more to stave off threshold dismissal for want of an adequate statement of their claim." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (summarily reversing dismissal of a civil rights complaint that did not cite 42 U.S.C. § 1983) (citations omitted). Tellingly, Defendants identify no authority supporting their contrary position. Indeed, the sole authority Defendants cite in support of their incorrect pleading standard confirms that "complaints need not plead law or match facts to every element of a legal theory." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000) (internal quotation marks and alterations omitted).[5] Defendants' arguments that Plaintiffs' complaint fails to "sufficiently plead the elements" of a cause of action, MTD, ECF No. 71 at 13; *id.* at 11, or makes what Defendants describe as a "conclusory" invocation of the APA, *id.* at 9, relies on a pleading standard that simply does not apply in federal court.

Any suggestion that Defendants are unsure as to the basis for Plaintiffs' claim, *see id.* at 9-10, is frivolous. Although Plaintiffs need not have provided *any* legal authority in their complaint, Plaintiffs nonetheless identify not only the statutes that Defendants' "reunification" plans violate, but explain at length, across more than 100 paragraphs and 8 counts, how those statutes operate, apply to the relevant facts, and have been or will be violated by Defendants. For example, Plaintiffs' amended complaint spends more than 30 paragraphs detailing the

---

[5] *Sparrow* applies the "no set of facts" pleading standard that the Supreme Court abrogated in *Twombly*, 550 U.S. at 555-56.

statutory scheme governing unaccompanied children and various protections those children have under the law. Am. Compl., ECF No. 64 ¶¶ 34-64. Plaintiffs' counts identify, with specific citations, the various constitutional, statutory, and regulatory provisions that Defendants have violated or intend to violate. *Id.* ¶¶ 102-30. Each cause of action sets out directly how Defendants' conduct constitutes a violation of these statutory provisions. *Id.* ¶ 104 (Count I); *id.* ¶¶ 107-08 (Count II); *id.* ¶ 118 (Count V); *id.* ¶ 121 (Count VI); *id.* ¶ 124 (Count VII). Plaintiffs challenge these violations through the APA, *id.* ¶ 129 ("Defendants' decision was unlawful and unconstitutional for the reasons in the preceding claims"), and by seeking injunctive and declaratory relief, *id.* at 29-30 (Prayer for Relief). Similarly, although Defendants baselessly contend that "the APA claim fails because it impermissibly collapses multiple, distinct theories of relief under 5 U.S.C. § 706 in a single conclusory paragraph," they recognize that Plaintiffs "invoke arbitrary and capricious review, constitutional violations, action in excess of statutory authority, and procedural defects." MTD, ECF No. 71 at 9. They cannot feign ignorance about Plaintiffs' theories. *Cf.* Am. Compl., ECF No. 64 ¶ 129 (contending that Defendants "assum[ed] authority they did not have under the TVPRA," "failed to consider the legal rights of the children in their custody," "provided no rationale for their sudden about-face" in deciding to expel children without process, and failed "to ensure that the affected children would not be subject to torture, human trafficking, or other forms of abuse upon return to their countries of origin"). Defendants' motion to dismiss under Rule 12(b)(6) fails at the outset.

### B. Plaintiffs Have Stated a Cause of Action

#### 1. Plaintiffs May Proceed under the APA

"'A person suffering legal wrong because of agency action,' the APA says, 'is entitled to judicial review thereof.'" *V.I. Hous. Fin. Auth. v. Fed. Emergency Mgmt. Agency*, 151 F.4th 409, 417 (D.C. Cir. 2025) (quoting 5 U.S.C. § 702). The APA "'embodies the basic presumption of judicial review' across 'a broad spectrum of administrative actions.'" *Id.* (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 140 (1967)). The APA allows a court to "hold unlawful and set aside agency action, findings, and conclusions" that are, among other things, arbitrary and capricious, "not in accordance with law," "contrary to constitutional right," "in excess of statutory jurisdiction, authority, or limitations," and "without observance of procedure required by law." 5 U.S.C. § 706(2). Defendants' actions can be reviewed under the APA for compliance with these standards.

As an initial matter, it is worth noting the limits of Defendants' attack on the APA theory. Defendants do not dispute that Plaintiffs have identified a reviewable final agency action with respect to unaccompanied children from Guatemala. *See* MTD, ECF No. 71 at 9. And Defendants do not dispute the viability of the APA claim based on the argument that Defendants' actions were contrary to law, or in violation of constitutional and statutory right. *See id.* at 7-10; *cf.* 5 U.S.C. §§ 706(2)(A), (B). The sole basis on which Defendants urge dismissal of the entirety of the APA claim is their meritless contention that it "impermissibly collapses multiple, distinct theories of relief under 5 U.S.C. § 706 in a single conclusory paragraph," MTD, ECF No. 71 at 9, but this is not a basis for dismissal. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or

hypothetically . . . in a single count . . . or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."). Defendants concede that Plaintiffs' challenge under the APA survives in at least some form, and "a Rule 12(b)(6) motion may not be used to dismiss only part of a claim." 5B Fed. Prac. & Proc. Civ. § 1358 (4th ed.). "[O]nce a court determines that a claim states a viable basis for relief, it cannot further parse out whether other portions of the claim would suffice on their own." *Fed. Trade Comm'n v. Facebook, Inc.*, 581 F. Supp. 3d 34, 60 (D.D.C. 2022) (collecting cases).

Defendants' attacks on specific aspects of the APA claim are also without merit. Defendants first contend Plaintiffs' APA claim must be dismissed "with regard to any country other than Guatemala" because there is no final agency action as to other countries. MTD, ECF No. 71 at 9. The APA allows a plaintiff to "challenge an action that 'mark[s] the consummation of the agency's decisionmaking process' and is 'one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Corner Post, Inc. v. Bd. of Governors of Fed. Reserve. Sys.*, 603 U.S. 799, 808 (2024) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)) (alteration in original). There is no requirement that the agency go further and take steps to affirmatively *apply* that consummated decision to a particular plaintiff, such as bringing an enforcement action under a promulgated regulation. *E.g.*, *Safari Club Int'l v. Jewell*, 842 F.3d 1280, 1289 (D.C. Cir. 2016) (rejecting argument that agency action was not final because plaintiff did not apply for a permit).

Here, Defendants have adopted the summary expulsion policy as final agency action: specifically, the "decision to summarily expel from the United States unaccompanied children without an executable final order of removal or grant of voluntary departure by an immigration

judge." Am. Compl., ECF No. 64 ¶ 128; *see also id.* ¶ 52. Stated differently, Plaintiffs challenge

Defendants' decision to adopt the summary expulsion policy grounded in their view that Title

VI, specifically 6 U.S.C. § 279(b)(1)(H), purportedly provides statutory authorization to pursue

a "reunification" policy without complying with the TVPRA, INA, and other protections

guaranteed to unaccompanied children. Defendants previously attempted to *apply* this policy to

a subset of the putative class—including waking Guatemalan children in the middle of the night

and bussing them to airports for hasty expulsion—but the policy is neither specific to

Guatemala nor does it turn on the country of origin of any particular class member.[6]

Defendants' summary expulsion policy readily satisfies both conditions of finality. First,

the policy represents the consummation of Defendants' decisionmaking about the process they

will follow when dealing with unaccompanied children. This decision was not an "informal"

one or "only the ruling of a subordinate official," *see Soundboard Ass'n v. Fed. Trade Comm'n*,

888 F.3d 1261, 1267 (D.C. Cir. 2018) (internal quotation marks omitted), but was approved

personally by the Acting Director of the Office of Refugee Resettlement, Salazar Decl., ECF

No. 35-1 ¶ 14, and was followed by agencies across multiple Executive Branch departments.

Second, by determining that unaccompanied children subject to this decision do not have the

same rights under the TVPRA and other protections that children facing removal have,

---

[6] Defendants also urge dismissal on the ground that Plaintiffs "do not identify the decisionmaker [or] the form of the action." MTD, ECF No. 71 at 9 (citing *Bennett*, 520 U.S. at 177-78; *Sw. Airlines Co. v. U.S. Dep't of Transp.*, 832 F.3d 270, 275 (D.C. Cir. 2016)). This argument largely restates the incorrect pleading standard rebutted above. And Defendants' novel approach to pleading is particularly ill-suited to APA challenges, because identifying "the decisionmaker" or "form of the action," are things that typically would be revealed through Defendants' production of the administrative record, which has not yet occurred and which Defendants deemed unnecessary at the motion to dismiss stage. MTD, ECF No. 71 at 5 n.2.

Defendants determined what "rights and obligations" those children have. *See, e.g.*, Am. Compl., ECF No. 64 ¶ 97 (class members "are subject to a common practice: summary removal without adequate notice and without complying with the procedural requirements of federal law"); *id.* ¶ 93 ("Defendants' actions are thus exposing children to multiple harms in returning them to a country where they fear persecution … and by flouting their legal obligations to care for them in the United States."); *id.* ¶ 92 ("Defendants have failed to comply with legal obligations to ensure safe repatriation" with the "result" that "Plaintiffs are at risk of not receiving care and access to basic needs"). Defendants' summary expulsion policy is final and subject to review under the APA, without regard to the national origin of the children to which Defendants might apply this policy in the future.

Defendants also argue that Plaintiffs failed to adequately plead a procedural APA violation. MTD, ECF No. 71 at 10. This argument largely restates Defendants' incorrect view of Plaintiffs' pleading obligation, and should be rejected for the reasons stated above. In any event, Defendants failed to follow appropriate procedures when they adopted their unlawful policy. *See* 5 U.S.C. § 706(2)(D). In fact, they provided no notice or process at all, simply adopting the new summary expulsion policy in secret and without warning. That is not what the APA requires. Defendants' summary expulsion policy conflicts with existing regulations, Am. Compl., ECF No. 64 ¶ 113, and an agency may not ignore existing regulations adopted after notice-and-comment rulemaking without repealing them through the same process, *Friends of Animals v. Bernhardt*, 961 F.3d 1197, 1205 (D.C. Cir. 2020). Even if there were no regulations on the books, absent exceptions not relevant here, an agency may not adopt a "policy [that] substantially changes the experience" of people dealing with the agency, or otherwise effects "a

substantive regulatory change to the statutory or regulatory regime," without going through notice-and-comment rulemaking or providing some explanation for the change. *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 653 F.3d 1, 6-7 (D.C. Cir. 2011) (internal quotation marks omitted). These process failures provide yet another basis for Plaintiffs' APA claim.

Defendants' final argument is that Plaintiffs have "failed to state an APA claim under the arbitrary and capricious standard" by not "describing the agency's decision-making process under 6 U.S.C. § 279(b)(1)(H), the factors it considered or was required to consider, or the explanation it provided." MTD, ECF No. 71 at 10. None of these things need to be spelled out in a complaint, *see supra*, but instead can be assessed "based on the full administrative record that was before the [agency] at the time [it] made [its] decision." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *see also Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984) ("If a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision."). While faulting Plaintiffs for failing to spell out things that should be part of the administrative record, Defendants also claim, contradictorily, that no record is needed to assess Plaintiffs' claims at this stage of litigation. MTD, ECF No. 71 at 5 n.2. Defendants cannot have it both ways.

In any event, Plaintiffs have identified several different features of Defendants' actions that violate the arbitrary and capricious standard: "Defendants abused their discretion when assuming authority they did not have under the TVPRA … provided no rationale for their sudden about-face in apparently determining that unaccompanied children can be expelled, absent any final order of removal or grant of voluntary departure by an immigration judge, and

without any notice to counsel or opportunity to contest their expulsion," and "failed to consider the legal rights of children in their custody before seeking to round the children up for deportation flights." Am. Compl., ECF No. 64 ¶ 129; *id.* ¶ 52 (describing reversal of longstanding agency policy and practice). The absence of a reasoned decision, *e.g.*, *Dep't of Com. v. New York*, 588 U.S. 752, 756 (2019), an unexplained departure from past practice, *e.g.*, *Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009), and failure to consider all aspects of a problem, *e.g.*, *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 29 (2020), are all features that can render an agency decision arbitrary and capricious. Defendants' challenge to Plaintiffs' APA claim fails.

### 2.    In the Alternative, Plaintiffs May Proceed via *Ultra Vires* Review

Although Plaintiffs may challenge Defendants' actions under the APA, even if the APA were not available, Plaintiffs could still proceed with their challenge under *ultra vires* (also known as nonstatutory) review. The Supreme Court has "long held that federal courts may in some circumstances grant injunctive relief against state officers who are violating, or planning to violate, federal law," and "that has been true . . . also with respect to violations of federal law by federal officials." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-27 (2015); *accord, e.g.*, *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902) (holding that an injunction would issue against the Postmaster General for failing to deliver mail in violation of "the general acts of Congress"). This ancient principle of equity was reaffirmed by the Supreme Court just last year, where the Court reiterated "a right to equitable relief where an agency's action was *ultra vires*—that is, 'unauthorized by any law and . . . in violation of the rights of the individual.'" *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 680 (2025) (quoting

*McAnnulty*, 187 U.S. at 110). To the extent that APA review is unavailable, *ultra vires* review allows the Plaintiffs to obtain injunctive relief against Defendants' violations of federal law.

Defendants challenge the availability of *ultra vires* review for two reasons. First, they argue that "*ultra vires* review is available only when a plaintiff cannot bring a traditional challenge through the APA or another statutory cause of action." MTD, ECF No. 71 at 12. Plaintiffs agree with Defendants that this Court can and should address Defendants' violations through APA. *See* Am. Compl., ECF No. 64 ¶ 129 (arguing, in APA count, that "Defendants' decision was unlawful and unconstitutional for the reasons in the preceding claims"). But to the extent that Plaintiffs "cannot bring a traditional challenge through the APA or another statutory cause of action," MTD, ECF No. 71 at 12, *ultra vires* review allows Plaintiffs to seek an injunction to prevent Defendants from exceeding their statutory authority, violating federal law, and harming Plaintiffs' rights.[7] *See, e.g.*, *Leedom v. Kyne*, 358 U.S. 184, 189 (1958) (allowing plaintiffs to bring an *ultra vires* lawsuit to challenge an agency's "attempted exercise of power that had been specifically withheld" by Congress even though the agency's decision was not a "final order" subject to an APA petition for review). Thus, even if the Court were to conclude that Defendants' agency action was not final and therefore "not subject to review under the judicial-review provisions of the APA[,]" *ultra vires* review would allow for an injunction to prevent Defendants from violating the law and harming Plaintiffs' rights. *Nuclear Regul. Comm'n*, 605 U.S. at 681. Defendants' attempt to obtain dismissal of Plaintiffs' alternative theory for relief must fail.

---

[7] There is nothing improper about proceeding under alternative—even inconsistent—theories. *See* Fed. R. Civ. P. 8(d).

Second, Defendants complain that "Plaintiffs fail to sufficiently plead the elements of a non-statutory *ultra vires* claim." MTD, ECF No. 71 at 13. This objection seems to rely on Defendants' incorrect premise that Plaintiffs must make legal arguments in a complaint, and fails under the proper standard explained above. For example, Defendants acknowledge that Plaintiffs "alleged violations of 8 U.S.C. §§ 1229a and 1158," and "cite these provisions and assert that Defendants' actions deprived them of removal proceedings under § 1229a and the opportunity to seek asylum under § 1158." *Id.* at 14. Nevertheless, Defendants seem to contend that "bare statutory citations and allegations of statutory violations" are not enough unless the complaint *also* includes a specific statement "that Defendants acted outside the scope of authority delegated by Congress." *Id.* As explained *supra*, nothing in the Rules requires the use of particular language in a complaint. *See, e.g.*, Fed. R. Civ. P. 8(d)(1) ("No technical form is required."); *Johnson*, 574 U.S. at 11 (noting that the Federal Rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted"); *see also Stanton v. Elliott*, 25 F.4th 227, 238 (4th Cir. 2022) ("Plaintiffs need not put a claim under a special heading, quote the statute, or use magic words to make out a claim. Courts should focus on the substance of the allegations to avoid making pleading a formalistic headache.") (citations omitted). Indeed, far from giving them controlling weight when determining the sufficiency of a complaint, a court applying the *Iqbal* standard must "disregard any legal conclusions" when resolving a motion to dismiss. *Gulf Coast Mar. Supply, Inc. v. United States*, 867 F.3d 123, 128 (D.C. Cir. 2017); *see also Iqbal*, 556 U.S. at 678.

When stripped of their baseless pleading objections, Defendants' challenge to Plaintiffs' *ultra vires* claims quickly fails. Courts assume that Congress "intend[s] judicial protection of

rights it confers against agency action taken in excess of delegated powers." *Leedom*, 358 U.S. at 190. As set forth below, Defendants' actions and anticipated actions exceed "[their] delegated powers and [are] contrary to . . . specific prohibition[s]" in the statutes specified in the Amended Complaint. *Nuclear Regul. Comm'n*, 605 U.S. at 681 (quoting *Ry. Clerks v. Ass'n for Benefit of Noncontract Emps.*, 380 U.S. 650, 660 (1965)). It is axiomatic that if Defendants violated the statutes Plaintiffs have identified, then Defendants have exceeded the authorities granted to them by Congress, which are set out in those very statutes. No pleading rule requires more detail than that.

### 3. Plaintiffs Have Sufficiently Alleged Defendants are Acting, or Intend to Act, in Violation of Statutory Provisions

In addition to arguing that both APA and *ultra vires* review are unavailable, Defendants complain that Plaintiffs fail to show that agency action is "in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." MTD, ECF No. 71 at 13 (quoting *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009) (internal quotation marks omitted). Although there is no obligation to include legal arguments in the complaint, Plaintiffs have alleged that Defendants have acted or intend to act in violation of the TVPRA, the INA, and FARRA. Defendants' motion makes no argument that their actions are consistent with their obligations under these statutes. That alone is enough to warrant rejection of their motion to dismiss. But if more were needed, Plaintiffs' well-pled claims of agency action in defiance of and exceeding statutory mandates state grounds on which this Court may grant relief.

Plaintiffs clearly state, for example, that "Defendants have unlawfully claimed the power to expel [Plaintiff] children, in violation of the [TVPRA and the INA]," Am. Compl.,

ECF No. 64 ¶ 2, and that "Defendants have repeatedly refused to confirm that they will not expel members of the class from the United States without following the procedures required by the INA and the TVPRA," *id*. ¶ 88. Plaintiffs further state that both the TVPRA and INA impose clear and mandatory duties on Defendants, which Defendants have violated. *See, e.g.*, *id*. ¶ 35 (stating that the TVPRA "mandates special procedures" for unaccompanied children); *id*. ¶ 38 (stating that the TVPRA "mandate[s] that [unaccompanied children's] claims for asylum be heard in the first instance before an asylum officer"); *id*. ¶¶ 63-64 (describing "mandatory" relief under the Convention Against Torture). Indeed, the Court has already stated that the Government's plan "would render the TVPRA inapplicable any time ORR invoked [its] purported authority to expel an unaccompanied alien child for reunification purposes," PI Mem. Op., ECF No. 49 at 29, "nullifying the TVPRA's protections." *Id*. The Court has further recognized that, through the TVPRA, "Congress mandated a specific set of procedures and safeguards" and "spoke in mandatory and sweeping terms." *Id*. Plaintiffs have sufficiently alleged that Defendants are violating the requirements of the TVPRA and the INA.

Moreover, Plaintiffs repeatedly allege that Defendants' actions are unlawful because no statute authorizes them. *See* Am. Compl., ECF No. 64 ¶¶ 111, 129. Although Defendants do not directly address those allegations, they appear to allude to them in stating, without support, that Plaintiffs must do more than allege that "Defendants' parental reunification plan violates statutory requirements governing the exercise of that authority." MTD, ECF No. 71 at 14. But agency action outside the bounds of statutory authority *is* contrary to law, and "[D]efendants' motion to dismiss points to no legal source that grants [Defendants] the authority to [execute their plan]." *AFL-CIO v. Dep't of Lab.*, 778 F. Supp. 3d 56, 89 (D.D.C. 2025); *id*. (denying

motion to dismiss *ultra vires* cause of action where plaintiffs argued that no statute authorized defendants' actions); *see also City of Providence v. Barr*, 954 F.3d 23, 31 (1st Cir. 2020) ("Any action that an agency takes outside the bounds of its statutory authority is *ultra vires* and violates the Administrative Procedure Act." (citing *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013) and 5 U.S.C. § 706(2)(C)). Even more fundamentally, Defendants appear to misunderstand Plaintiffs' claims by suggesting incorrectly that Plaintiffs acknowledge the existence of independent statutory authority for "parental reunification." In reality, Plaintiffs state that "Defendants have no authority to expel unaccompanied children without a final order of removal or a grant of voluntary departure." Am. Compl., ECF No. 64 ¶ 111. Plaintiffs sufficiently pled that Defendants' actions and planned actions lack statutory authority and are therefore unlawful.

There is little doubt that Defendants' lawless summary expulsion plan is the cause of the statutory violations pled in the amended complaint. Defendants' plan to summarily expel Plaintiffs would deny them their statutory rights to full removal proceedings and to apply for asylum and CAT relief. *See* Am. Compl., ECF No. 64 ¶ 118 ("The INA's 'exclusive procedure' and statutory protections apply to any removal of a noncitizen from the United States, including unaccompanied minors. The administration's plan to expel unaccompanied minors without allowing them to complete removal proceedings thus violates 8 U.S.C. § 1229a and the INA and is contrary to law."). In describing a statutory scheme and a course of conduct that violates its mandates, Plaintiffs do exactly what they must in the amended complaint: set forth "factual content that allows the court to draw the *reasonable inference* that [Defendants are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citation omitted) (emphasis added).

Defendants' claim that Plaintiffs are asking the Court to make inappropriate inferences is meritless. The amended complaint adequately alleges facts supporting each theory of statutory violation such that the Court may "draw the reasonable inference that [Defendants are] liable" under them. *Id.*; *see also Louis Vuitton Malletier S.A.S. v. WNF, Inc.*, No. 18 Civ. 2810 (TJK), 2019 WL 2410948, at *3 (D.D.C. June 7, 2019).

### 4.  Plaintiffs Have Sufficiently Alleged an *Accardi* Claim

Plaintiffs have sufficiently alleged a violation of the *Accardi* doctrine. In their motion to dismiss, Defendants mischaracterize the level of specificity with which Plaintiffs' amended complaint outlines the mandatory regulations underlying the *Accardi* claim, Plaintiffs' Count IV. *See generally United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). "[I]nterference with regulations that seek to safeguard a plaintiff's individual rights implicates the *Accardi* doctrine and its requirement that agencies abide by their own procedures." *Jefferson v. Harris*, 285 F. Supp. 3d 173, 185 (D.D.C. 2018). Contrary to Defendants' assertion that Plaintiffs "fail[ed] to plead violation[s] of any specific, binding agency regulation," MTD, ECF No. 71 at 16. Plaintiffs have sufficiently alleged an *Accardi* claim by making factual allegations which describe multiple acts and omissions committed by the Defendants that violate mandatory regulations.[8]

For example, Plaintiffs have sufficiently alleged that Defendants violated the Foundational Rule. As Plaintiffs explained in their amended complaint, the Foundational Rule is

---

[8] *See Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 539 (D.C. Cir. 1986) (regulations published in the Code of Federal Regulations are binding); *see Damus v. Nielsen*, 313 F. Supp. 3d 317, 337-38 (D.D.C. 2018) (explaining that regulations setting "minimum protections for those seeking asylum… fall[] squarely within the ambit of those agency actions to which the [*Accardi*] doctrine may attach").

a set of regulations promulgated at 45 C.F.R. §§ 410.1000 *et seq.*, that codify "practices, standards, and protections" for unaccompanied children. Am. Compl., ECF No. 64 ¶ 48. The Foundational Rule requires the placement of unaccompanied children in ORR custody and specifies that "unaccompanied children shall be treated with dignity, respect, and special concern for their particular vulnerability[,]" 45 C.F.R. § 410.1003(a). Am. Compl., ECF No. 64¶¶ 49, 51. Additionally, the Foundational Rule requires that unaccompanied children receive a confidential consultation with a qualified attorney to determine their eligibility for various forms of immigration relief. 45 C.F.R. § 410.1309(a)(2)(v); Am. Compl., ECF No. 64 ¶ 56. Regulations contained in the Foundational Rule govern both placement decisions (i.e., determining where to house unaccompanied children while they are in ORR custody) and determinations about when ORR is obligated to release an unaccompanied child to a caregiver in the United States. Am. Compl., ECF No. 64 ¶¶ 49, 51; 45 C.F.R. §§ 410.1100-1109 (placement decisions); *id.* §§ 410.1200-1210 (release to United States caregiver).

Contrary to Defendants unfounded assertion, MTD, ECF No. 71 at 16, Plaintiffs alleged that Defendants violated specific regulations in the Foundational Rule, including: ensuring the unaccompanied child is placed in the least restrictive setting in the best interests of the child while ensuring the child's timely appearance in immigration court (45 C.F.R. § 410.1103(a)), where Defendants removed Plaintiffs from less restrictive settings in ORR custody and transferred them to DHS custody in the process of expelling them, thereby *preventing* children from attending their immigration court proceedings, Am. Compl., ECF No. 64 ¶¶ 71, 75-77, 82; the requirement to treat Plaintiffs with "special concern for their particular vulnerability[,]" 45 C.F.R. § 410.1003(a), when Defendants identified children for expulsion without considering

their individual best interests or particular needs, Am. Compl., ECF No. 64 ¶¶ 80-81; the requirement to provide advance notice to the children's attorneys,45 C.F.R. §§ 410.1308(b); 410.1309 *et seq.*; 410.1601(a)(3); where Defendants prevented the children from accessing confidential consultations or legal services before being placed on a plane for imminent departure, *id.* ¶¶ 69-70, 72; and ORR's obligations to release children to suitable caregivers in the United States, 45 C.F.R. §§ 410.1201-1205, where summary expulsion would have prevented release to U.S. caregivers, *id.* ¶¶ 65, 70.

Further, Plaintiffs allege violations of other regulations governing the treatment of unaccompanied children, such as 8 C.F.R. §§ 236.3 *et seq.* and 8 C.F.R. §§ 236.3 *et seq.* Am. Compl., ECF No. 64 ¶¶ 49, 56. These regulations require that Defendants transfer unaccompanied children into ORR custody and provide them with a written notice of rights, a list of free legal service providers, and the use of a telephone to contact a parent, close relative, friend or attorney. Plaintiffs specifically allege that Defendants violated these regulations when they suddenly removed children from ORR custody in the middle of the night without any advisal of their rights or opportunity to communicate with their attorneys. *Id.* ¶¶ 69-72, 75.

Finally, Plaintiffs alleged that Defendants violated binding immigration regulations in seeking to expel unaccompanied children without the opportunity to pursue their removal proceedings, including pursuing withholding of removal, asylum, CAT, or voluntary departure. Am. Compl., ECF No. 64 ¶ 113; *see* 8 C.F.R. §§ 241.1-.2 (removal); 8 C.F.R. 208.1-4 (asylum, withholding of removal, and CAT); 8 C.F.R. § 240.25 (voluntary departure). As the amended complaint sets forth in detail, Defendants woke Plaintiffs in the middle of the night mere hours before their planned expulsion, despite many Plaintiffs having pending immigration cases. Am.

Compl., ECF No. 64 ¶¶ 65, 68, 70. This Court should deny Defendants' Motion to Dismiss the *Accardi* claim.

### 5. Plaintiffs Have Sufficiently Alleged Violations of the Due Process Clause

Defendants' contention that Plaintiffs' Fifth Amendment Due Process claim, Count III, fails to state a claim upon which relief can be granted is based on a misreading of Plaintiffs' allegations and a misunderstanding of basic procedural due process principles. Plaintiffs sufficiently allege a deprivation of life, liberty, or property without due process of law. *See, e.g.*, *Propert v. District of Columbia*, 948 F.2d 1327, 1331 (D.C. Cir. 1991) (stating elements of procedural due process claim). It is well-established that noncitizens are entitled to due process of law and have a protected liberty interest in avoiding removal. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (quoting *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025))); *J.G.G.*, 604 U.S. at 670 ("The detainees' rights against summary removal [] are not currently in dispute."). It is also well-established that "[a]n essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)); *see also Carey v. Piphus*, 435 U.S. 247, 259 (1978) ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property.").

Plaintiffs have plausibly alleged that Defendants violated due process by seeking to subject Plaintiffs to summary expulsion with no notice or opportunity to be heard and in a manner that resulted in the unjustified deprivation of Plaintiffs' rights. *See* Am. Compl., ECF

No. 64 ¶ 68 (stating that children's immigration hearings were removed from the court's calendar without explanation or notice); *id.* ¶ 69 ("Defendants did not provide advance notice of the planned expulsion to the children, to their lawyers, or to the shelters and long-term foster care providers that were housing and caring for children"); *id.* ¶ 70 (stating that "Defendants executed a plan to try to expel 76 unaccompanied minors to Guatemala without providing them with advance notice or an opportunity to challenge their expulsion, and without complying with the procedural protections of federal law"); *id.* ¶¶ 71-72 (alleging that Defendants gave ORR shelters and long-term foster care providers only two or four hours, respectively, to prepare children for immediate departure and transfer them to DHS custody and that Defendants did not provide notice to the children's attorneys that they were being expelled).

In their motion, Defendants assert that Plaintiffs merely allege facts that Defendants violated due process by failing to comply with statutory and regulatory procedures. MTD, ECF No. 71 at 15. Not so. Plaintiffs clearly allege violations of due process separate from their statutory claims. *See* Am. Compl., ECF No. 64 ¶¶ 109-11. The due process claim does not "rest entirely" on statutory and regulatory violations; rather, it arises from the government's failure to offer Plaintiffs *any* procedure or adequate notice to challenge their summary expulsion as required by the Due Process Clause.[9] *See Iqbal*, 556 U.S. at 678; *Cleveland Bd. of Educ.*, 470 U.S. at 542. Therefore, Plaintiffs have sufficiently pled that Defendants' attempts to remove

---

[9] Defendants suggest that "[p]laintiffs cite but fail to plead facts addressing the balancing test" in *Mathews v. Eldridge*, 424 U.S. 319 (1976), MTD, ECF No. 71 at 15, but the *Mathews* fact-heavy inquiry is not appropriate at this stage of the litigation. *See Elk Run Coal Co. v. U.S. Dep't of Lab.*, 804 F. Supp. 2d 8, 28-30 (D.D.C. 2011). Plaintiffs appropriately briefed the *Mathews* test at the preliminary injunction stage to show a likelihood of success on the merits and will be prepared to do so again at the merits stage of the case. PI Br., ECF No. 20-1 at 33-37; Plaintiffs' Reply in Support of Plaintiffs' Motion for a Preliminary Injunction, ECF No. 40 at 12-15.

children from the United States contravene the protections guaranteed by the Due Process

Clause.

## **<u>CONCLUSION</u>**

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss.


Dated: January 20, 2026                  Respectfully submitted,

/s/ *Lynn Damiano Pearson*

Efrén Olivares (D.D.C. Bar No. TX0107)
Lynn Damiano Pearson (D.D.C. Bar No.
GA0057)
Kevin Siegel*
Hilda Bonilla (D.C. Bar No. 90023968)
Elizabeth Choo†
NATIONAL IMMIGRATION LAW CENTER
1101 14th Street, Suite 410
Washington, D.C. 20005
Tel: (213) 639-3900
Fax: (213) 639-3911
olivares@nilc.org
damianopearson@nilc.org
siegel@nilc.org
bonilla@nilc.org
choo@nilc.org

Joseph W. Mead (D.C. Bar No. 1740771)
Rupa Bhattacharyya (D.C. Bar No. 1631262)
Mary B. McCord (D.C. Bar. No. 427563)
Kate Talmor (D.C. Bar No. 90036191)
Seth Wayne (D.C. Bar No. 888273445)
Tinesha Zandamela (D.C. Bar No.
90035492)
INSTITUTE FOR CONSTITUTIONAL
ADVOCACY AND PROTECTION
Georgetown Law
600 New Jersey Ave., N.W.
Washington, D.C. 20001
Tel: (202) 662-9765

Fax: (202) 661-6730
jm3468@georgetown.edu
rb1796@georgetown.edu
mbm7@georgetown.edu
kt894@georgetown.edu
sw1098@georgetown.edu
tcz7@georgetown.edu

Rebecca Wolozin (D.C. Bar No. 144369)
NATIONAL CENTER FOR YOUTH LAW
818 Connecticut Avenue NW, Suite 425
Washington, DC 20006
Tel: (202) 868-4792
bwolozin@youthlaw.org

Mishan Wroe*
NATIONAL CENTER FOR YOUTH LAW
1212 Broadway, Suite 600
Oakland, California 94612
Tel: (510) 835-8098
mwroe@youthlaw.org

*Counsel for Plaintiffs*

*Admitted Pro Hac Vice*
†*Pending Admission*