# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| L.G.M.L., *et al*., <br><br> Plaintiffs, <br><br> vs. <br><br> KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*, *et al*., <br><br> Defendants. | Case No. 1:25-cv-02942 (TJK) |

## <u>DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS</u>

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW ENSIGN
Deputy Assistant Attorney General

SARAH WELCH
Counsel to the Assistant Attorney General

GLENN M. GIRDHARRY
Acting Deputy Director
Office of Immigration Litigation

JOSHUA A. CLEM
Trial Attorney

*/s/ McKenna Rackleff*
McKENNA RACKLEFF
(ID Bar No. 12028)
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box. 868, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 532-4525
Email: McKenna.Rackleff@usdoj.gov

*Attorneys for Defendants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 1

    I.     The Court Lacks Article III Jurisdiction Over the Non-Guatemalan Plaintiffs. .............. 1

    II.    Plaintiffs Fail to State a Cognizable Claim Under the APA. ........................................ 6

    III.   Plaintiffs Fail to State Non-Statutory *Ultra Vires* Claims. ........................................... 11

    IV.   Plaintiffs' Due Process and *Accardi* Doctrine Claims Fail as a Matter of Law. ........... 13

CONCLUSION .................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Fed'n of Labor and Cong. of Indus. Orgs. v. Dep't of Labor*,
  778 F. Supp. 3d 56 (D.D.C. 2025) ............................................................. 13

*Am. Sch. of Magnetic Healing v. McAnnulty*,
  187 U.S. 94 (1902) .................................................................... 11, 12

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................ 8

*Bennett v. Spears*,
  520 U.S. 154 (1997) ........................................................................ 7

*Carcamo v. Miami Dade County*,
  375 F.3d 1104 (11th Cir. 2004) ........................................................... 14

*Changji Esquel Textile Co. v. Raimondo*,
  40 F.4th 716 (D.C. Cir. 2022) ............................................................ 11

*Citizens for Constitutional Integrity v. Census Bureau*,
  115 F.4th 618 (D.C. Cir. 2024) ........................................................... 10

*Cleveland Bd. of Educ. v. Loudermill*,
  470 U.S. 532 (1985) ....................................................................... 15

*Connecticut v. U.S. Dep't of Interior*,
  344 F. Supp. 3d 279 (D.D.C. 2018) ........................................................ 9

*Cordoba v. DIRECTV, LLC*,
  942 F.3d 1259 (11th Cir. 2019) ............................................................ 3

*Elk Run Coal Co. v. U.S. Dep't of Lab.*,
  804 F. Supp. 2d 8 (D.D.C. 2011) .......................................................... 8

*Fay v. Humane Soc. of the United States*,
  No. 20-cv-1893, 2021 WL 184396 (D.D.C. Jan. 19, 2021) .................................... 9

*Fed. Express Corp. v. U.S. Dep't of Commerce*,
  39 F.4th 756 (D.C. Cir. 2022) ........................................................... 12

*Flue-Cured Tobacco Cooperative Stabilization Corp. v. U.S. E.P.A.*,
  313 F.3d 852 (4th Cir. 2002) ............................................................. 4

*Griffin v. Dugger*,
  823 F.2d 1476 (11th Cir. 1987) ........................................................... 2

*Hemp Indus. Ass'n v. DEA*,
  36 F.4th 278 (D.C. Cir. 2022) ............................................................ 8

*Historical Eastern Pequot Tribe v. Office of Federal Acknowledgement*,
  No. 23-54 (JEB), 2023 WL 7182058 (D.D.C. Nov. 1, 2023) ................................... 8

*In re Navy Chaplaincy*,
  534 F.3d 756 (D.C. Cir. 2008) ............................................................ 5

*Jiggetts v. District of Columbia*,
  319 F.R.D. 408 (D.D.C. Jan. 13, 2017) .................................................... 9

*Kluge v. U.S. Gov.*,
  No.19-cv-2618, 2021 WL 11747711 (D.D.C. Feb. 8, 2021) .................................... 9

*Leedom v. Kyne*,
   358 U.S. 184 (1958).................................................................. 12

*Lewis v. Casey*,
   518 U.S. 343 (1996).................................................................... 2

*Markadonatos v. Village of Woodridge*,
   No. 11–C–7006, 2012 WL 74857 (N.D. Ill. 2012)................................ 15

*Mathews v. Eldridge*,
   424 U.S. 319 (1976).................................................................. 15

*Mayo v. Reynolds*,
   875 F.3d 11 (D.C. Cir. 2017)......................................................... 9

*Mittleman v. Postal Regul. Comm'n*,
   757 F.3d 300 (D.C. Cir. 2014)...................................................... 11

*Nat'l Mining Ass'n v. McCarthy*,
   758 F.3d 243 (D.C. Cir. 2014)........................................................ 4

*Norton v. S. Utah Wilderness Alliance*,
   542 U.S. 55 (2004)..................................................................... 7

*Nuclear Regul. Comm'n v. Texas*,
   605 U.S. 665 (2025).................................................................. 11

*Nyunt v. Chairman, Broadcasting Bd. of Governors*,
   589 F.3d 445 (D.C. Cir. 2009)...................................................... 11

*O'Shea v. Littleton*,
   414 U.S. 488 (1974).................................................................... 2

*Olim v. Wakinekona*,
   461 U.S. 238 (1983).................................................................. 14

*Propert v. District of Columbia*,
   948 F.2d 1327 (D.C. Cir. 1991)..................................................... 14

*Reliable Automatic Sprinkler Co. v. CPSC*,
   324 F.3d 726 (D.C. Cir. 2003)........................................................ 7

*Role Models America, Inc. v. Brownlee*,
   353 F.3d 962 (D.C. Cir. 2004)........................................................ 4

*Sissel v. U.S. Dep't of Health and Hum. Servs.*,
   760 F.3d 1 (D.C. Cir. 2014)........................................................... 9

*Southwest Airlines Co. v. Dep't of Transportation*,
   832 F.3d 270 (D.C. Cir. 2016)........................................................ 7

*Texas v. United States*,
   523 U.S. 296 (1998)............................................................. 4, 5, 6

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021).................................................................... 3

*U.S. ex rel. Accardi v. Shaughnessy*,
   347 U.S. 260 (1954).................................................................. 15

*Warth v. Seldin*,
   422 U.S. 490 (1975).................................................................... 2

*Wilkinson v. Legal Servs. Corp.*,
   27 F. Supp. 2d 32 (D.D.C. 1998).................................................... 16

**Statutes**

5 U.S.C. § 704................................................................................................................7

5 U.S.C. § 706................................................................................................................6

6 U.S.C. § 279(b)(1)(H)..............................................................................................4, 7

8 U.S.C. § 1252(a)(4)....................................................................................................13

## INTRODUCTION

This Court should grant Defendants' Motion to Dismiss. Plaintiffs' First Amended Complaint ("FAC") fails to establish Article III jurisdiction, fails to identify a final, reviewable agency action with respect to any country other than Guatemala, and fails to adequately plead APA, *ultra vires*, due process, or *Accardi* claims. Plaintiffs' arguments in opposition do not overcome these defects.

As set forth below, Plaintiffs cannot establish standing or ripeness based on speculative future injury or a class definition that does not yet exist. The APA claim fails because the FAC does not allege a final agency action with respect to any country other than Guatemala and collapses multiple § 706 theories without adequately pleading any one of them. Plaintiffs' non-statutory *ultra vires* claims likewise fail because the FAC alleges, at most, an unlawful exercise of conceded authority, not action taken without authority. Plaintiffs' due process and *Accardi* claims also fail because the FAC does not identify a protected liberty interest, constitutionally required process, or a binding agency rule that Defendants allegedly violated.

For these reasons, more fully explained below and set forth in Defendants' Motion to Dismiss, the Court should dismiss Plaintiffs' complaint in its entirety.

## ARGUMENT

### I.    The Court Lacks Article III Jurisdiction Over the Non-Guatemalan Plaintiffs.

Plaintiffs' opposition improperly asks the Court to assume jurisdiction based on a class that has not been certified and on speculative future agency conduct that may never occur. Article III does not permit such an approach. Standing must be established by the named Plaintiffs based on the claims presently before the Court, not on the possibility that the Court may later modify the class definition or that the agency may later adopt similar policies affecting other countries.

1

As an initial matter, the two named Plaintiffs—H.E.B. and L.G.M.S.—are not members of the currently certified class and were not subject to the Guatemala-specific action that forms the basis for this lawsuit. Plaintiffs attempt to avoid this defect by arguing that at least one member of the requested expanded class would have standing. However, standing "is not dispensed in gross," and a named plaintiff may not rely on injuries to others, actual or hypothetical, to establish jurisdiction. *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). Unless the Court modifies the class, the only relevant question is whether the named Plaintiffs presently before the Court have suffered an injury traceable to the challenged parental reunification plan. These Plaintiffs have not done so.

Further, Plaintiffs cannot cure this defect by invoking class action principles. Although courts need not determine whether every class member has standing at the class certification stage, Article III standing requires the named Plaintiffs before the court have standing before Rule 23 issues are even reached. Standing is a threshold jurisdictional requirement that must be satisfied before the Court may consider class certification or modification. *See, e.g., Lewis*, 518 U.S. at 357 ("That a suit may be a class action…adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (quotations/citations omitted); *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) ("A named plaintiff in a class action who cannot establish the requisite case or controversy between himself and the defendants simply cannot seek relief for anyone—not for himself, and not for any other member of the class.") (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (Individual injury is not shown by alleging "that injury has been suffered by other, unidentified members of the class to which [the plaintiff] belong[s] and which [he] purport[s] to represent."). Plaintiffs cannot invert that sequence by

relying on a proposed class modification that remains pending or by invoking doctrines such as fail-safe class concerns to establish jurisdiction where none presently exists. The fail-safe doctrine governs how a class may be defined under Rule 23. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1277 (11th Cir. 2019). It does not relieve named Plaintiffs of their independent obligation to demonstrate Article III standing. The Supreme Court has made clear that this requirement applies even in the class action context. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Plaintiffs' reliance on the standing of other class members or on a proposed future class impermissibly collapses the distinction between class certification and constitutional jurisdiction.

Plaintiffs' ripeness arguments fare no better. On the contrary, Plaintiffs' opposition confirms rather than cures the ripeness defect identified in Defendants' motion. As alleged in the FAC, Plaintiffs do not identify any existing policy, directive, or agency decision that presently applies to non-Guatemalan plaintiffs. Instead, the FAC alleges and Plaintiffs rely on the possibility that Defendants may impose similar actions on other countries in the future, asserting that Guatemala represents only one manifestation of a broader ongoing practice. *See, e.g.,* FAC ¶ 84 ("Children from other countries have seen their upcoming hearings disappear from the immigration court's online case information system, just as occurred for many of the Guatemalan children before the attempted Labor Day Weekend expulsion"); ¶ 85 ("Upon information and belief, legal services providers have received information from ORR or from ORR-funded shelters alerting them to plans to expel children from other countries"); ¶ 87 ("Children from many other countries have been interviewed by HSI agents for reasons unrelated to a trafficking investigation, which is atypical and happened to Guatemalan children before their attempted expulsion."). Plaintiffs do not invoke pre-enforcement review nor identify a credible threat of enforcement; instead, they ask the Court to assume future applications of the challenged conduct based on

speculation about how Defendants might act. However, this theory is insufficient to establish ripeness.

A claim is not ripe where it rests on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). The FAC alleges no operative agency action applicable to any country other than Guatemala. Nor does it allege when such action might occur, what criteria might be used, or whether it would apply to either of the challenged named Plaintiffs. *See* FAC ¶¶ 84–85, 87. Absent such allegations, there is no concrete dispute fit for judicial resolution.

Plaintiffs' opposition confirms that the FAC lacks these allegations, as Plaintiffs attempt to supply ripeness not through pleaded facts, but by pointing to Defendants' litigation positions and statutory authority. Plaintiffs argue that Defendants' interpretation of 6 U.S.C. § 279(b)(1)(H), articulated in opposition to Plaintiffs' motion for preliminary injunction, is indicative of a broader, ongoing policy applicable beyond Guatemala. However, Plaintiffs bear the burden of establishing Article III jurisdiction, including the ripeness of their claims. They cannot satisfy that burden by relying on Defendants' legal argument or by inviting the Court to infer the existence of an operative policy from statutory authority alone. A litigation position is not an agency action, and statutory authorization alone does not constitute policy implementation. *See Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 251–52 (D.C. Cir. 2014) (holding that agency statements of position that do not impose legal consequence are not final agency actions); *see also Flue-Cured Tobacco Cooperative Stabilization Corp. v. U.S. E.P.A.*, 313 F.3d 852, 858 (4th Cir. 2002) (holding that an agency's statement of its legal interpretation, without concrete action imposing obligations or legal consequences, is not final agency action); *see also Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 967 (D.C. Cir. 2004) (When determining whether to award costs and fees to the

prevailing party, courts must look to whether "[t]he government…demonstrate[d] the reasonableness *not only of its litigating position, but also of the agency's actions*.") (emphasis added). The FAC identifies no policy pursuant to § 279(b)(1)(H) that Defendants have adopted, announced, or applied with respect to non-Guatemalan nationals. *See generally* FAC.

Plaintiffs' allegations give the Court "no idea whether or when" their hypothesized action may occur. *Texas*, 523 U.S. at 300 ("[W]here we have no idea whether or when such [a sanction] will be ordered, the issue is not fit for adjudication.") (internal citations/quotations omitted). Plaintiffs' theory would improperly require Defendants to disprove the existence of hypothetical future policies or require the Court to speculate how Defendants might exercise their authority in the future. Article III imposes no such obligation on Defendants or the Court. Further, the D.C. Circuit's decision in *In re Navy Chaplaincy* reinforces this conclusion. The court rejected standing and ripeness arguments premised on conjectural future harm, emphasizing that jurisdiction must be grounded in a concrete injury that is present or imminent. 534 F.3d 756, 760–61 (D.C. Cir. 2008). The allegations set forth in the FAC regarding non-Guatemalan nationals suffer from the same defect. The mere fact that Defendants took action with respect to Guatemalan nationals does not render claims ripe as to other countries absent an operative decision affecting the two named Plaintiffs challenged here.

Plaintiffs argue that Defendants' reliance on *Texas v. United States* is misplaced. Plaintiffs are correct that *Texas v. United States* did not involve an injury that had already occurred or one that was certain to occur. However, this is exactly why *Texas* is instructive here. In *Texas*, the Supreme Court rejected review because the asserted injury depended on contingent future events and speculative assumptions about how the agency might act. *See Texas*, 523 U.S. at 300. The Court emphasized that a claim is not ripe where it rests on predictions about future agency action

that "may not occur as anticipated, or indeed may not occur at all." *Id.* Plaintiffs' theory in this case suffers from the same defect. Although the FAC alleges completed conduct with respect to Guatemala, Plaintiffs seek to extrapolate that country-specific action into an imminent and inevitable threat applicable to all countries. They do so without identifying any operative agency action, policy, or directive that presently applies to non-Guatemalan Plaintiffs H.E.B. and L.G.M.S., and without alleging when, how, or under what criteria any such action would occur. As in *Texas*, Plaintiffs ask the Court to assume future applications of agency authority based on speculation rather than pleaded facts. Ripeness doctrine does not permit jurisdiction to rest on that assumption.

Because the FAC contains only speculative allegations of future agency actions untethered to any operative policy applicable to non-Guatemalan nationals, the two non-Guatemalan named Plaintiffs lack Article III jurisdiction to proceed in this action. Having neither been subject to the Guatemala-specific parental reunification plan nor having plausibly alleged an imminent or inevitable application of any comparable policy, they lack standing and their purported injuries are not ripe for review. The Court should therefore dismiss H.E.B. and L.G.M.S. under Rule 12(b)(1).

## II.    Plaintiffs Fail to State a Cognizable Claim Under the APA.

Plaintiffs' opposition does not remedy the independent pleading failures identified in Defendants' motion to dismiss. Rather, Plaintiffs either respond to arguments Defendants did not make or rely on conclusory assertions that cannot substitute for the factual allegations required to state a claim under the APA. As explained below, Plaintiffs have not plausibly alleged a reviewable final agency action with respect to any country other than Guatemala nor have they pleaded facts sufficient to support any substantive or procedural theory under 5 U.S.C. § 706. The APA claim, therefore, fails as a matter of law.

*First*, Plaintiffs' opposition does not address Defendants' threshold argument that the FAC fails to identify any final, reviewable agency action with respect to countries other than Guatemala, as required by 5 U.S.C. § 704. Defendants do not dispute, for purposes of this motion, that Plaintiffs challenge concrete enforcement actions taken with respect to Guatemala. Defendants' argument is instead that Plaintiffs have pleaded no discrete, final agency action applicable to any other country. *See Reliable Automatic Sprinkler Co. v. CPSC*, 324 F.3d 726, 731 (D.C. Cir. 2003) (no final agency action where a plaintiff challenged the agency's statutory authority to regulate, rather than the substance of a final determination). Rather, Plaintiffs respond almost exclusively by pointing to the Guatemala-specific action and its alleged consequences. That is non-responsive. The FAC identifies no agency decision, policy, or rule marking the consummation of decision-making or giving rise to legal consequences with respect to any country other than Guatemala. Allegations of generalized practices, authority, or preparatory conduct do not satisfy § 704, which permits review only of circumscribed, discrete agency actions. *See Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62–63 (2004). Further, Plaintiffs cannot rely on Defendants' statutory authority under 6 U.S.C. § 279(b)(1)(H) or Defendants' ligation positions to supply finality. To constitute final agency action, the challenged conduct must both mark the consummation of decision-making and determine rights or obligations, and Plaintiffs plausibly allege neither with respect to any country other than Guatemala. *See Southwest Airlines Co. v. Dep't of Transportation*, 832 F.3d 270, 275–76 (D.C. Cir. 2016). Unlike *Bennett,* which involved a definitive agency document with binding legal effect, Plaintiffs identify no comparable agency decision applicable outside Guatemala. *See Bennett v. Spears*, 520 U.S. 154, 177–78 (1997).

*Second*, even with respect to Guatemala, Plaintiffs' APA claim fails because the FAC impermissibly collapses multiple, distinct theories of relief under § 706 into a single conclusory

count. Plaintiffs invoke arbitrary and capricious review, constitutional violations, actions in excess of statutory authority, and procedural defects, without separating those theories or pleading facts sufficient to satisfy the elements of any one provision. FAC ¶¶ 125–30. Conclusory assertions that agency action was arbitrary, capricious, or contrary to the law, without factual allegations addressing the elements of § 706, do not plausibly state an APA claim. *See Hemp Indus. Ass'n v. DEA*, 36 F.4th 278, 289 (D.C. Cir. 2022).

Defendants do not argue that Plaintiffs failed to plead any factual allegations in the FAC, nor do Defendants contend that Rule 8 requires facts to be repeated verbatim when stating claims for relief. Rather, Defendants' argument is that, even crediting factual allegations pleaded elsewhere in the FAC, Plaintiffs have not alleged facts that, taken as true, satisfy the elements of any discrete § 706 theory. Plaintiffs narrate events and then append a list of statutory labels, but they do not allege which facts render the challenged action arbitrary and capricious, which facts establish a procedural violation, or which constitutional standard was violated. *See* FAC ¶¶ 125–30.

This is not a hyper-technical pleading objection. Rather, Rule 8 does not permit a plaintiff to proceed on an APA claim where the Court is left to guess which factual allegations correspond to which legal standard or to construct a viable § 706 theory on a plaintiff's behalf. *See Historical Eastern Pequot Tribe v. Office of Federal Acknowledgement*, No. 23-54 (JEB), 2023 WL 7182058, at *6 (D.D.C. Nov. 1, 2023) (citing *Elk Run Coal Co. v. U.S. Dep't of Lab.*, 804 F. Supp. 2d 8, 30 (D.D.C. 2011)) ("[T]he Court is left to guess what action it thinks was arbitrary, capricious, or contrary to law. That alone is ground for dismissal."); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level, … [T]he pleading must contain something more … than … a statement of facts

that merely creates a suspicion [of] a legally cognizable right of action") (internal quotation/citation omitted); *see also Jiggetts v. District of Columbia*, 319 F.R.D. 408, 418 (D.D.C. Jan. 13, 2017) ("[T]he fact that Defendants have done yeoman's work in trying to make sense of Plaintiffs' impenetrable pleading does not mean their chart is any less of an exercise in guesswork"). Each subsection of § 706 imposes distinct requirements, and Plaintiffs' undifferentiated invocation of multiple theories, without factual allegations tied to the elements of any one provision, fails to state a plausible claim for relief. Rule 8 does not relieve Plaintiffs of their obligation to plead facts sufficient to state a claim under the APA, even where multiple theories of relief are asserted. *See Sissel v. U.S. Dep't of Health and Hum. Servs.*, 760 F.3d 1, 6–7 (D.C. Cir. 2014); *see also Kluge v. U.S. Gov.*, No. 19-cv-2618, 2021 WL 11747711, at *2 (D.D.C. Feb. 8, 2021) (quoting *Fay v. Humane Soc. of the United States*, No. 20-cv-1893, 2021 WL 184396, at *6–7 (D.D.C. Jan. 19, 2021) ("The complaint only makes one passing reference to these statutes and provides no guidance as to which factual allegations align with which claims…Indeed, the plaintiffs cite to the APA without identifying the specific provisions on which they rely. As a result, the complaint does not 'give the defendant[s] fair notice of what the…claim is and the grounds upon which it rests.'")).

To the extent Plaintiffs purport to assert a procedural APA claim under § 706(2)(D), that claim also fails. A procedural APA claim requires identification of a specific statutory or regulatory procedure that the agency was required to follow and factual allegations showing how the agency failed to do so. Plaintiffs' opposition does not identify any such procedural requirement, and the FAC itself points to none. A procedural APA claim fails where Plaintiffs do not identify any statute or regulation imposing the procedures they claim were violated. *See Mayo v. Reynolds*, 875 F.3d 11, 20 (D.C. Cir. 2017); *see also Connecticut v. U.S. Dep't of Interior*, 344 F. Supp. 3d

279, 319 (D.D.C. 2018). Rather, Plaintiffs conflate alleged violations of substantive statutory provisions with procedural defects, pointing generally to the TVPRA and the Immigration and Nationality Act (INA) without identifying any procedural obligation imposed by those statutes. Plaintiffs' theory is that because Defendants did not employ the procedures Plaintiffs believe the statutes require, a procedural violation necessarily follows. However, disagreement with the statutory framework an agency applied, or with the procedures Plaintiffs assert should have governed, is not a procedural defect in the meaning of § 706(2)(D). Procedural APA claims concern the manner in which an agency acts, not whether the agency selected the correct statutory scheme or reached the correct substantive outcome. Section 706(2)(D) is concerned with whether an agency followed required procedures, not whether the agency correctly applied substantive statutory requirements. *See Citizens for Constitutional Integrity v. Census Bureau*, 115 F.4th 618, 625–26 (D.C. Cir. 2024) ("Adopting here the qualifications used to determine whether a rule is procedural, we cannot categorize… [the] challenge as concerning a procedural right…The heart of that challenge is substantive…[Plaintiffs] do not challenge the [agency action] from an operation[al] standpoint."). Plaintiffs point generally to the TVPRA and the INA, but they do not identify any statute or regulation imposing APA-governed procedural steps that Defendants were required to follow before acting.

Allowing Plaintiffs to recharacterize an alleged substantive statutory violation as a procedural defect would collapse § 706's distinct categories of review and permit any "contrary to law" claim to be repackaged as a procedural challenge, a result the APA does not countenance. Plaintiffs' allegations, therefore, do not state a procedural APA claim.

Because Plaintiffs fail to allege final agency action with respect to countries other than Guatemala and fail to plead facts sufficient to support any substantive or procedural theory under § 706 even as to Guatemala, the APA claim should be dismissed under Rule 12(b)(6).

### III.    Plaintiffs Fail to State Non-Statutory *Ultra Vires* Claims.

Plaintiffs' attempt to proceed via non-statutory *ultra vires* review fails for the same fundamental reason identified in Defendants' motion to dismiss: Plaintiffs do not allege that Defendants acted without delegated authority or exercised power that Congress "specifically withheld." Rather, Plaintiffs allege only that Defendants exercised conceded authority in a manner Plaintiffs believe violates statutory constraints. That is not *ultra vires*.

As Plaintiffs acknowledge, *ultra vires* review is available only where an agency's action is "unauthorized by law." *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 680 (2025) (quoting *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902)). Consistent with that principle, the D.C. Circuit has repeatedly emphasized that non-statutory review is "quite narrow," "a doctrine of last resort," and limited to cases in which an agency has "plainly act[ed] in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Nyunt v. Chairman, Broadcasting Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009); *Mittleman v. Postal Regul. Comm'n*, 757 F.3d 300, 307 (D.C. Cir. 2014); *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022).

Plaintiffs' own opposition confirms that they do not meet that standard. Rather, Plaintiffs expressly concede that Defendants acted pursuant to statutory authority, but argue that Defendants exceeded statutory limits in doing so. *See* Pls.' Resp. at 32–33 (asserting that Defendants' actions "violate[] the INA" and are therefore "*ultra vires*"). This argument, however, collapses the distinction between an action that is allegedly "contrary to law" and one that is taken without

authority at all. The Court should not permit this collapse. An agency does not act *ultra vires* simply because a plaintiff alleges that the agency misapplied a statute or failed to comply with statutory requirements governing the exercise of delegated authority. *See Fed. Express Corp. v. U.S. Dep't of Commerce*, 39 F.4th 756, 763 (D.C. Cir. 2022) (non-statutory review addresses only whether the agency "acted patently in excess of statutory authority," not whether it acted unlawfully within authority).

Plaintiffs' reliance on *Leedom v. Kyne*, 358 U.S. 184 (1958), underscores the deficiency of their theory rather than salvaging it. As Plaintiffs themselves quote, *Leedom* applies where an agency attempts to exercise power that Congress "specifically withheld." Pls.' Resp. at 33. Plaintiffs make no such allegation here. Specifically, they do not contend that Congress withdrew Defendants' authority to take the challenged actions or barred Defendants from acting altogether. To the contrary, Plaintiffs allege that Defendants violated statutory provisions governing how that authority should be exercised. That is precisely the type of claim *Leedom* does not cover. *See, e.g.*, *Leedom* at 190 ("This Court cannot lightly infer that Congress does not intend judicial protection of rights it confers against agency action *taken in excess of delegated powers*.") (emphasis added). As noted, the FAC contains no allegation that Defendants acted in excess of powers explicitly withheld by Congress.

Plaintiffs' reliance on *McAnnulty* also does not advance their position. There, the agency official acted in direct contravention of statutory limits that left no discretion whatsoever. *See McAnnulty*, 187 U.S. at 110. Plaintiffs do not allege comparable circumstances here. Their claims rest on asserted statutory violations, not on the absence of any lawful authority to act. Indeed, Plaintiffs' own framing confirms this point: they assert these claims only "[t]o the extent that APA review is unavailable," Pls.' Resp. at 32, conceding that their claims are fundamentally APA

challenges repackaged as non-statutory review. This concession is fatal. *Ultra vires* review is not a mechanism to evade the APA's requirements or to relitigate alleged statutory violations under a different label. Where, as here, Plaintiffs challenge the lawfulness of agency action taken pursuant to delegated authority, their claims rise or fall under the APA. *See Am. Fed'n of Labor and Cong. of Indus. Orgs. v. Dep't of Labor*, 778 F. Supp. 3d 56, 87 (D.D.C. 2025) (*ultra vires* review "reestablish[es] limits on executive authority" but does not provide an alternative vehicle for APA claims).

Because Plaintiffs do not allege Defendants acted without statutory authority or transgressed a clear and mandatory prohibition that withdrew authority altogether, they fail to state a non-statutory *ultra vires* claim. The Court, therefore, should dismiss Counts I, II, V, VI, and VII.[1]

## IV.    Plaintiffs' Due Process and *Accardi* Doctrine Claims Fail as a Matter of Law.

Plaintiffs' opposition confirms, rather than remedies, the defects identified in Defendants' motion to dismiss. Plaintiffs do not identify a constitutionally protected liberty interest independent of the statutory scheme they invoke, nor do they identify any binding agency regulation that Defendants allegedly failed to follow. Rather, Plaintiffs attempt to bootstrap alleged statutory violations into constitutional and *Accardi* claims, an approach courts have repeatedly rejected.

---

[1]    The Court should additionally dismiss Count VII because it is barred by the interlocking jurisdictional bars in FARRA and 8 U.S.C. § 1252(a)(4). Mot. at 12–13. Plaintiffs respond to defend "Count VI[I]" on the ground that they are not raising CAT claims but instead "challenge a policy … that denies Plaintiffs the opportunity to *seek* … adjudication of their CAT claims." Pls.' Resp. at 13–14. Even on Plaintiffs' description, FARRA covers this claim. FARRA § 2242(d) bars review of "claims raised under [CAT]" as well as "any other determination made with respect to" CAT. FARRA § 2242(d). Count VII is a claim raised under CAT because it alleges that the policy "violates FARRA and CAT." FAC ¶ 124. CAT is the legal basis of that claim, so it is a claim under CAT. And a claim that the government "does not provide adequate safeguards to ensure" that Plaintiffs are not return in violation of CAT is unmistakably a claim about how CAT has been "implement[ed]" or at least "a determination with respect to the application of" CAT. FARRA § 2242(d).

To state a procedural due process claim, Plaintiffs must plausibly allege both the deprivation of a protected liberty or property interest and constitutionally inadequate process. *See Propert v. District of Columbia*, 948 F.2d 1327, 1331 (D.C. Cir. 1991). Plaintiffs' opposition fails at both steps. Plaintiffs assert that they possess "a protected liberty interest in avoiding removal" and argue that Defendants violated due process by seeking to expel them "with no notice or opportunity to be heard." Pls.' Resp. at 33–34. However, Plaintiffs' own pleadings confirm that their due process claim rests entirely on alleged violations of statutory authority and regulatory procedures, not on an independent constitutional entitlement. *See* FAC ¶ 111 (alleging that Defendants violated due process by denying "meaningful notice, opportunity to be heard, or other basic procedural protections before expulsion"). However, this is not enough. As the Supreme Court has made clear, "[p]rocess is not an end in itself," and the Due Process Clause protects only substantive interests to which a person has a legitimate constitutional entitlement. *Olim v. Wakinekona*, 461 U.S. 238, 250–51 (1983). Where, as here, Plaintiffs point only to procedures established by statute, they must plausibly allege that the Constitution itself requires additional or different process. However, Plaintiffs do not do so. Rather, they argue that because Defendants did not employ the procedures Plaintiffs believe should have governed, a due process violation necessarily follows. Pls.' Resp. at 33–34. Due process, however, does not constitutionalize every statutory or regulatory requirement, and as noted above, "[p]rocess is not an end in itself." *Olim*, 461 U.S. at 250.

Plaintiffs attempt to avoid this defect by asserting that they need not engage with the *Mathews v. Eldridge* framework at the pleading stage. Pls.' Resp. at 34. Plaintiffs are incorrect: Courts must engage with the governing legal standard in determining whether a plaintiff has plausibly stated a claim for relief, and *Mathews* is no exception. *See Carcamo v. Miami Dade*

*County*, 375 F.3d 1104, 1105 (11th Cir. 2004) (affirming grant of motion to dismiss based on failure to allege facts establishing violation of *Mathews*); *Markadonatos v. Village of Woodridge*, No. 11–C–7006, 2012 WL 74857, at *1 (N.D. Ill. 2012). To the extent Plaintiffs mean only that a final *Mathews* balancing sometimes must await factual development, that presupposes that the plaintiffs have pleaded facts that, taken as true, plausibly state a claim under the governing legal standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because *Mathews* supplies the framework for evaluating whether the process provided is constitutionally sufficient, Plaintiffs must allege facts that, if proven, would satisfy the framework. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Plaintiffs do not allege facts addressing the balance of private interests, the risk of erroneous deprivation under the procedures used, or the government's interests. Their conclusory assertions of inadequate notice and opportunity to be heard therefore fail to state a due process claim even at the pleading stage.

Plaintiffs' opposition thus confirms that their due process claim is derivative of their statutory arguments and rises or falls with them. Because Plaintiffs have not plausibly alleged the deprivation of a protected liberty interest or constitutionally inadequate process, their due process claim should be dismissed. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).

Plaintiffs' *Accardi* claim fares no better. Under *Accardi*, an agency violates due process only when it fails to follow its own binding regulations or rules. *U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954). A plausibly alleged *Accardi* claim therefore requires identification of a specific, mandatory agency rule that governs the challenged action and factual allegations showing that the agency failed to comply with that rule. Plaintiffs do not meet this standard. Plaintiffs point generally to statutory provisions and argue that Defendants failed to act in accordance with them. Pls.' Resp. at 30–31. *Accardi* does not apply to alleged statutory

violations; rather, it applies only where an agency disregards its own duly promulgated rules. *See Wilkinson v. Legal Servs. Corp.*, 27 F. Supp. 2d 32, 34 n.3 (D.D.C. 1998).

Plaintiffs' opposition does not cure this defect. Plaintiffs continue to conflate statutory requirements with agency regulations, treating any alleged failure to comply with a statute as an *Accardi* violation. However, this is erroneous. Absent allegations that Defendants violated a binding agency regulation governing the challenged conduct, Plaintiffs cannot state an *Accardi* claim as a matter of law.

Stepping back, Plaintiffs' due process and *Accardi* claims suffer from the same flaw identified herein: Plaintiffs attempt to repackage alleged statutory violations as independent constitutional and procedural claims. Neither the Due Process Clause nor *Accardi* provides a free-standing vehicle to enforce statutory compliance. Where, as here, Plaintiffs' claims depend entirely on alleged statutory violations, those claims must be evaluated—if at all—under the statutory frameworks Plaintiffs invoke, not transformed into constitutional or *Accardi* claims. Because Plaintiffs fail to identify a protected liberty interest, constitutionally required procedures, or a binding agency regulation that Defendants allegedly violated, Counts III and IV should be dismissed.

## CONCLUSION

For all these reasons, the Court should dismiss Plaintiffs' First Amended Complaint.

DATED: January 27, 2026                     Respectfully submitted,

                                            BRETT A. SHUMATE
                                            Assistant Attorney General
                                            Civil Division

                                            DREW ENSIGN
                                            Deputy Assistant Attorney General

SARAH WELCH
Counsel to the Assistant Attorney General

GLENN M. GIRDHARRY
Acting Deputy Director
Office of Immigration Litigation

JOSHUA A. CLEM
Trial Attorney

*/s/ McKenna Rackleff*
McKENNA RACKLEFF
(ID Bar No. 12028)
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4525
Email: McKenna.Rackleff@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2026, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. Participants in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system to all counsel of record.

DATED: January 27, 2026                              Respectfully submitted,

                                                     */s/ McKenna Rackleff*
                                                     Trial Attorney
                                                     U.S. Department of Justice