# EXHIBIT F

**Information on Federal Litigation**

The U.S. government has several different new initiatives to discourage youth from remaining in the United States. These include the middle of the night flights to Guatemala, fines, payments for taking voluntary departure, and offering voluntary repatriation when youth first arrive in CBP custody. When initiatives like these go against the laws like the TVPRA that protect youth, federal litigators like our colleagues at National Immigration Law Center can help fight to ensure the protections of the law in federal court. You can choose if you want to provide a declaration to support federal litigation. Do you want to participate in federal litigation to protect immigrant youth?

- ☑ I understand that the ProBAR attorney ▮▮▮▮▮ represents me in ▮▮▮▮▮ limited L3 for TVPRA protections, court, other).
- ☑ I understand that National Immigration Law Center represents the class of unaccompanied Guatemalan children in the litigation *LGML v. Noem*, and may seek to expand that class to children from other countries.
- ☑ I want to provide a declaration that supports the LGML litigation.
- ☑ I want to participate in future federal litigation that protects me and others in my situation
- ☑ I give permission to share my declaration for these purposes.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  11/17/2025

**Name**                              **Date**

**DECLARATION OF** ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

I, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, based on my personal knowledge, hereby submit this declaration under 28 U.S.C. § 1746 and state the following:

1. My name is ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. I just turned 16 years old and I am originally from Quiche, Chichicastenango, Guatemala. I speak Quiche as my first language; it is in my blood.

2. I live at the Compass Connections Harlingen children's shelter in Harlingen, Texas.

3. I crossed the river with an inflatable tube from a tire and my bag of personal things on my head. It was at sunset. I don't know how to swim, I slipped many times, and I was scared. I think I was in shock when Border Patrol agents started shouting at us, like all my dreams and plans had been taken and I wasn't really there at all. Border Patrol said they had a dog, they said don't move or they would sick the dog on us. They had taser guns and they threatened to use them. They pulled us out of the river and onto the grass. They went through our bags. They shouted at us asking about other bags, they said "ya les chingo la madre" (we already fucked your mother), but we had nothing else to give them. They handcuffed everyone but me. I was still wet and muddy from the river.

4. The Border Patrol officers took us to "la hielera" and took my fingerprints. Later that night, they took me to an immigration station. I was there for about a day and a half. During that time, officers called my aunt. They tried to get information about my family's addresses and their immigration status. My aunt was too scared to give them information. They called my uncle and he didn't answer the phone, so they said I had no one to receive me. The officers told me that no one was going to sponsor me and that I would stay detained. One of the officers told me that I owed $5000 for crossing into the United States because of a new law from the President. They told me I had to go back to Guatemala.

5. The officer that was interviewing me was in a green uniform, she spoke to me in Spanish, and she seemed angry. I asked her if I could go with a sponsor who didn't have documents, and she said no because they were illegal like me. She said I had to decide if I was going to voluntarily return to Guatemala or if I was going to stay detained. She did not explain anything about court or my right to fight a legal case for asylum or a visa. When she said I would stay detained, I believed that she meant detained there in immigration detention. I did not want to go to Guatemala. I did not want to be in immigration detention.

6. I asked her for a phone call so that I could talk to my family about it. The officer said no that I had to make a decision right now. I said I would sign the papers. I do not know how many documents I signed. The officers explained that the papers I signed were to return to my home country. I do not know if it was deportation or voluntary departure. I was not given the option to not sign. I do not remember if they explained to me the consequences of signing the document.

7. After a little while, the Officer told me I was not going to be sent to Guatemala. I am a Christian, and I believe in God. I believe that even when the strongest men make plans, God's plans are stronger. I remember thinking that even though I signed the papers, I was

going to a shelter. I remember thinking this was part of God's plan for me. I remember feeling hope.

8. My father is disabled—he is paralyzed and cannot move his legs. My mother does other people's laundry and takes care of children, but she does not earn enough to support us. I left school when I was 12 to work and support my younger siblings. I worked in manual labor hauling sand from the river. My parents cannot protect me, keep me safe, or give me a future.

9. I do not want to go back to Guatemala. My parents do not want me to return.

10. I came to the United States because I thought I would be safe here with my aunts and uncles.

11. I understand that there is a prospect of release to a safe sponsor here in the United States, and I am hopeful that I may be placed with a trusted caregiver who can provide me with safety and stability.

12. I want to remain in the United States and continue to fight my case in Immigration Court.

13. I respectfully ask the Court to allow me to remain in the United States while my case is pending and to protect me from being removed before I have had a full day in court.

**DECLARACIÓN DE** ███████████████

Yo, ███████████████████████████████████████, basándome en mi conocimiento personal, presento esta declaración de conformidad con el 28 U.S.C. § 1746 U.S.C, y declaro lo siguiente:

1. Mi nombre es ███████████████████████████████████████. Acabo de cumplir 16 años y soy originario de Quiché, Chichicastenango, Guatemala. Hablo Quiché como mi primer idioma; lo llevo en la sangre.

2. Vivo en el albergue para niños Compass Connections Harlingen en Harlingen, Texas.

3. Crucé el río con un tubo inflable de una llanta y mi mochila con mis pertenencias sobre mi cabeza. Era atardecer. No sé nadar, me resbalé muchas veces y tenía miedo. Creo que estaba en shock cuando los agentes de la Patrulla Fronteriza empezaron a gritarnos, como si todos mis sueños y planes se hubieran ido y yo no estuviera allí. La Patrulla Fronteriza nos dijo que tenían un perro, que no nos moviéramos o nos lo soltarían. Tenían pistolas de descarga eléctrica y amenazaron con usarlas. Nos sacaron del río y nos llevaron al césped. Revisaron nuestras maletas. Nos gritaron preguntando por las demás maletas, dijeron "ya les chingo la madre", pero no teníamos nada más que darles. Esposaron a todos menos a mí. Todavía estaba mojado y enlodado del río.

4. Los agentes de la Patrulla Fronteriza nos llevaron a "la Hielera" y me tomaron mis huellas dactilares. Más tarde esa noche, me llevaron a una estación de inmigración. Estuve allí aproximadamente un día y medio. Durante ese tiempo, los agentes llamaron a mi tía. Intentaron obtener información sobre las direcciones de mi familia y su estatus migratorio. Mi tía tenía demasiado miedo de darles información. Ellos llamaron a mi tío y no contestó el teléfono, así que dijeron que no tenía a nadie que me recibiera. Los oficiales me dijeron que nadie me iba a patrocinar y que permanecería detenido. Uno de los agentes me dijo que debía $5000 por cruzar a los Estados Unidos debido a una nueva ley del presidente. Me dijeron que tenía que regresar a Guatemala.

5. La oficial que me entrevistó tenía un uniforme verde, me habló en español y parecía enojada. Le pregunté si podía ir con un patrocinador que no tuviera documentos, y me dijo que no porque eran indocumentados como yo. Me dijo que tenía que decidir si iba a regresar voluntariamente a Guatemala o si iba a quedarme detenido. No me explicó nada sobre la corte ni sobre mi derecho a pelea un caso legal de asilo o visa. Cuando dijo que me quedaría detenido, creí que se refería a estar detenido en un centro de detención de inmigrantes. No quería ir a Guatemala. No quería estar en un centro de detención de inmigrantes.

6. Le pedí una llamara para poder hablar con mi familia de esto. La oficial dijo no, que tenía que tomar una decisión en ese momento. Dije que firmaría los papeles. No sé cuántos documentos firmé. Los oficiales me explicaron que los papeles que firmé eran para regresar a mi país de

origen. No sé si se trataba de una deportación o de una salida voluntaria. No me dieron la opción de no firmar. No recuerdo si me explicaron las consecuencias de firmar el documento.

7. Poco después, el oficial me dijo que no me enviarían a Guatemala. Soy Cristiano y creo en Dios. Creo que incluso cuando los hombres más fuertes hacen planes, los planes de Dios son más fuertes. Recuerdo haber pensado que, aunque firmé los papeles, iba a un albergue. Recuerdo haber pensado que esto era parte del plan de Dios para mí. Recuerdo haber sentido esperanza.

8. Mi padre es discapacitado: está paralizado y no puede mover las piernas. Mi madre lava ropa ajena y cuida niños, pero no gana lo suficiente para mantenernos. Dejé la escuela a los 12 años para trabajar y mantener a mis hermanos menores. Trabajé en obra manual acarreando arena del río. Mis padres no pueden protegerme, mantenerme a salvo ni darme un futuro.

9. No quiero regresar a Guatemala. Mis padres no quieren que regrese

10. Vine a Estados Unidos porque pensé que estaría a salvo aquí con mis tíos y tías.

11. Entiendo que hay la posibilidad de ser entregado a un patrocinador seguro aquí en Estados Unidos, y tengo la esperanza de que me entreguen a un cuidador de confianza que pueda brindarme seguridad y estabilidad.

12. Quiero permanecer en Estados Unidos y continuar luchando por mi caso en la Corte de Inmigración.

13. Respetuosamente le pido a la Corte que me permita permanecer en Estados Unidos mientras mi caso está pendiente y que me proteja de ser deportado antes de haber tenido una audiencia completa en la corte.

Executed on November 17, 2025 in Harlingen, Texas.

The above statement was read to me in the Spanish language by Rut Castellanos, who is competent in English and Spanish to render such translation. I understand the content of the document and the statements herein are true and correct to the best of my knowledge.

_____  11/17/2025
Signature                Date

---

## CERTIFICATE OF TRANSLATOR'S COMPETENCE

I, Rut Castellanos, hereby certify that I am competent in written and oral Spanish and English, and that I have rendered an oral translation of the foregoing declaration from English to Spanish to the best my ability and skill to (CLIENT NAME).

Rut Castellanos          11/17/2025
Signature                Date