**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| L.G.M.L., *et al.*,<br><br>                              Plaintiffs,<br><br>    vs.<br><br>KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*, *et al.*,<br><br>                              Defendants. | Case No. 1:25-cv-02942 (TJK) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER TO SHOW CAUSE**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ......................................................................................................................... 2

STANDARD OF REVIEW ........................................................................................................ 3

ARGUMENT ............................................................................................................................... 4

    I.    Defendants Have Complied With the Preliminary Injunction. ......................................... 4

CONCLUSION ......................................................................................................................... 11

# TABLE OF AUTHORITIES

...

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. Exec. Off. Of the President, Off. Of Admin.*,
  1 F.3d 1274 (D.C. Cir. 1993) .......................................................................................... 4, 8

*Breen v. Tucker*,
  821 F. Supp. 2d 375 (D.D.C. 2011) ..................................................................................... 4

*Commodity Futures Trading Comm. v. Trade Exchange Network Ltd.*,
  117 F. Supp. 3d 22 (D.D.C. 2015) ....................................................................................... 7

*Common Cause v. Nuclear Regulatory Comm'n*,
  674 F.2d 921 (D.C. Cir. 1982) ............................................................................................. 8

*Flores v. Bondi*,
  No. 25-6308 (9th Cir. Dec. 22, 2025) ................................................................................ 10

*Ford v. Kammerer*,
  450 F.2d 279 (3d Cir. 1971) ................................................................................................. 8

*LaShawn A. ex rel. Moore v. Fenty*,
  701 F. Supp. 2d 84 (D.D.C. 2010) ....................................................................................... 4

*N.L.R.B. v. Blevins Popcorn Co.*,
  659 F.2d 1173 (D.C. Cir. 1981) .................................................................................... 7, 11

*Perez-Funez v. Crosland*,
  No. 2:81-cv-1457 (C.D. Cal.) ........................................................................................ 9, 10

*Phillips v. Mabus*,
  894 F. Supp. 2d 71 (D.D.C. 2012) ....................................................................................... 4

*Potter v. District of Columbia*,
  126 F.4th 720 (D.C. Cir. 2025) .................................................................................. 3, 4, 5

*Shillitani v. United States*,
  384 U.S. 364 (1966) ............................................................................................................ 3

*Taggart v. Lorenzen*,
  587 U.S. 554 (2019) ............................................................................................................ 4

*United States v. Joyce*,
  498 F.2d 592 (7th Cir. 1974) ................................................................................................ 8

*United States v. Microsoft Corp.*,
  147 F.3d 935 (D.C. Cir. 1998) .............................................................................................. 4

**Statutes**

6 U.S.C. § 279(a) ........................................................................................................................ 2
6 U.S.C. § 279(b)(1)(H) .............................................................................................................. 2
8 U.S.C. § 1225(a)(4) .................................................................................................................. 7
8 U.S.C. § 1232(a)(2) .................................................................................................................. 7

**Regulations**

8 C.F.R. § 236.3 .......................................................................................................................... 9
8 C.F.R. § 236.3(g)(1)(i) ........................................................................................................... 10
8 C.F.R., Part 410 ........................................................................................................................ 9

**Rules**

Fed. R. Civ. P. 23(b)(2) ............................................................................................................... 3

**Other Authorities**

The One, Big, Beautiful Bill Act ("OBBBA"),
  Pub. L. 119-21, 128 Stat. 386, § 100051(8)(B) .................................................................... 7

## INTRODUCTION

Plaintiffs supply no evidence—let alone clear and convincing evidence—of any violation of an order of this Court. The preliminary injunction prevents Defendants from transferring, repatriating, removing, or otherwise facilitating the transport of Guatemalan unaccompanied alien children ("UACs") from the United States except under a final order of removal or grant of voluntary departure. Plaintiffs do not claim to have evidence that the government has transported *even one* child from Guatemala outside the United States in violation of the preliminary injunction. Nor has the government permitted any Guatemalan UACs to depart via withdrawal of application for admission because it has interpreted the Court's order to bar such departures. In a nutshell: the preliminary injunction only applies to Guatemalan UACs, and Plaintiffs have not identified a single such child who has been sent to Guatemala through a withdrawal of application for admission. There is thus no conceivable violation of this Court's preliminary injunction, and Plaintiffs' attempt to gin one up merits firm rejection from this Court.

Instead of supplying evidence of any violations of the preliminary injunction the Court issued, Plaintiffs improperly attempt to use a contempt motion to press challenges on behalf of UACs *not* covered by the preliminary injunction and to the government's use of a different statutory authority than the one at issue in this litigation. Plaintiffs' motion asks the Court to treat a range of upstream immigration processing activities, which are not before this Court, as conduct that itself violates the preliminary injunction. But nothing in the Court's order sweeps so broadly. Plaintiffs effectively ask the Court to broaden the injunction through an enforcement motion rather than through proper litigation of the issues. Indeed, much of the motion is devoted to arguing that alleged practices related to withdrawal of application for admission are "substantively unlawful" under the TVPRA and other statutory provisions. *See* Pls.' Mot. 13–15. A contempt motion is not

1

a vehicle to seek reconsideration of a preliminary injunction or submit new evidence about distinct actions based on distinct statutory authority without any evidence of a violation of a court order.

Plaintiffs' motion ultimately confirms that their motion is not about enforcing compliance with the Court's preliminary injunction, but about advancing their broader merits arguments and broadening this litigation. A motion for civil contempt, however, is a narrow enforcement mechanism designed to determine whether a party has violated a clear and unambiguous court order. It is not a vehicle for resolving contested legal questions that can be or are being litigated elsewhere.

The only question presented in a contempt motion is whether Defendants violated the terms of the Court's preliminary injunction. Defendants have unquestionably complied with that order. Plaintiffs lack any basis for pressing this motion, and the Court should deny it.

**BACKGROUND**

The Homeland Security Act of 2002 transferred to the Director of the Office of Refugee Resettlement ("ORR") within the Department of Health and Human Services ("HHS") functions under the immigration laws of the United States with respect to "the care of unaccompanied alien children" in the United States. 6 U.S.C. § 279(a). As part of ORR's functions, it has the responsibility for "reuniting unaccompanied alien children with a parent abroad in appropriate cases." *Id.* § 279(b)(1)(H).

Before the commencement of this litigation, the government sought to exercise this authority by repatriating certain Guatemalan UACs. Plaintiffs challenged the government's reunification plan and obtained a temporary restraining order covering UACs from Guatemala. *See* ECF No. 1 (Pls.' Compl.); ECF No. 48 (Min. Ord. of Aug. 31, 2025). Plaintiffs later sought, and obtained, a preliminary injunction covering UACs from Guatemala. In particular, for purposes of

2

the preliminary injunction, the Court provisionally certified a "class consisting of all unaccompanied alien children from Guatemala in (and who will be in) ORR custody who have not received a final order of removal or . . . permission to voluntarily depart under 8 U.S.C. § 1229c and applicable regulations[]" under Fed. R. Civ. P. 23(b)(2). ECF No. 49 at 14. As to those children, the preliminary injunction barred Defendants "from transferring, repatriating, removing, or otherwise facilitating the transport of any Plaintiff—including both named Plaintiffs and all members of the provisionally certified class—from the United States." ECF No. 48.

To be sure, Plaintiffs requested certification of a broader class—"covering unaccompanied alien children from all non-contiguous countries in ORR's custody"—but the Court denied that request and limited its preliminary injunction to UACs from Guatemala. ECF No. 49 at 24.

On October 14, 2025, Plaintiffs filed their First Amended Complaint and further moved to certify a broader class including all UACs from all countries who would enter ORR custody and who are not subject to a final removal order or grant of voluntary departure. *See* ECF No. 64 (Pls.' Am. Compl.); ECF No. 65 (Pls.' Mot. to Modify the Class Definition). Defendants opposed certification of a broader class and moved to dismiss. *See* ECF No. 69 (Defs.' Opp. to Modify the Class Definition); ECF No. 71 (Defs.' Mot. to Dismiss Pls.' Am. Compl.).

On February 24, 2026, Plaintiffs filed the instant motion, requesting the Court to order Defendants to show cause regarding why they should not be held in civil contempt for violating the preliminary injunction. *See generally* ECF No. 74.

## STANDARD OF REVIEW

"Federal courts possess 'inherent power to enforce compliance with their lawful orders through civil contempt.'" *Potter v. District of Columbia*, 126 F.4th 720, 723 (D.C. Cir. 2025) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). The moving party has the burden

to show "'by clear and convincing evidence' that the alleged contemnor has violated a 'clear and unambiguous' order of the court." *Id.* (quoting *Armstrong v. Exec. Off. Of the President, Off. Of Admin.*, 1 F.3d 1274, 1289 (D.C. Cir. 1993)). Civil contempt is a "severe remedy" intended to "coerce" recalcitrant litigants "into compliance." *Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019) (cleaned up). As such, the moving party further "faces a heavy burden." *United States v. Microsoft Corp.*, 147 F.3d 935, 940 (D.C. Cir. 1998). "'In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate a reasonable certainty that a violation occurred.'" *Phillips v. Mabus*, 894 F. Supp. 2d 71, 91 (D.D.C. 2012) (quoting *Breen v. Tucker*, 821 F. Supp. 2d 375, 383 (D.D.C. 2011)). Any ambiguities in the evidence are resolved in favor of the non-movant. *LaShawn A. ex rel. Moore v. Fenty*, 701 F. Supp. 2d 84, 90 (D.D.C. 2010).

## ARGUMENT

### I. Defendants Have Complied With the Preliminary Injunction.

Plaintiffs lack any evidence, let alone the required clear and convincing evidence, that Defendants have engaged in or are engaging in any conduct that would violate any order of the Court by "transferring, repatriating, removing, or otherwise facilitating the transport of any Plaintiff—including both named Plaintiffs and all members of the provisionally certified class—from the United States." ECF No. 48. Their evidence instead focuses on matters that could not establish contempt even if proven.

**A.** Plaintiffs have provided *no* evidence that *any* Guatemalan UAC has left the United States in violation of the preliminary injunction, through withdrawal of application or otherwise. Just the opposite: They instead say it is "unknowable" to them how many Guatemalan UACs have been returned to Guatemala by voluntarily withdrawing their applications for admission. Mot. 12

& n.8. That is categorically insufficient for a civil contempt finding. The movant bears the burden of showing clear and convincing evidence of a violation of a clear and unambiguous court order. *Potter*, 126 F.4th at 723. Plaintiffs admittedly have *no evidence* of any violation. The Court should deny their motion on that basis.

Plaintiffs have no evidence of even a single violation because the government has not violated the preliminary injunction. The attached declarations supply the number of Guatemalan UACs who have been permitted to leave the United States via withdrawal of application for admission: Zero. *See* Bakopoulos Decl. at ¶ 4; Julien Decl. at ¶ 4.[1] The reason zero Guatemalan UACs have left the United States via withdrawal of application for admission is that DHS has implemented the preliminary injunction by instructing its personnel not to process any Guatemalan UACs for withdrawal and voluntary return to Guatemala. Bakopoulos Decl at ¶ 3; Julien Decl. at ¶ 3.

Plaintiffs' supposed smoking gun is a two-page letter to Congress briefly explaining that the government permits UACs to withdraw their applications for admission. ECF No. 73-4. The letter *does not specifically mention Guatemalan UACs*, and Plaintiffs apparently leap from the letter to the conclusion that the government treats Guatemalan UACs as eligible for withdrawal of application for admission. Mot. 12-13. That inference does not follow: Nothing requires the government to detail every nuance when it provides Congress with a high-level description of an agency activity, so the absence of footnotes addressing every possible exception, contingency, or

---

[1] Together, OBP and OFO are responsible for inspecting and screening individuals who enter the United States at ports of entry and for apprehending individuals who illegally cross into the United States between those ports of entry. *See* U.S. CBP, *Along U.S. Borders*, https://www.cbp.gov/border-security/along-us-borders; U.S. CBP, *Executive Assistant Commissioners' Offices*, https://www.cbp.gov/about/leadership-organization/executive-assistant-commissioners-offices

caveat does not suggest that the government has failed to internally account for those details. As the declarations establish, the government has implemented the preliminary injunction in this context by instructing its employees not to permit Guatemalan UACs to voluntarily return home by withdrawing their applications for admission.

Plaintiffs' other submissions do not come close to establishing any violation of the preliminary injunction, either. Plaintiffs cite a declaration submitted in a different case regarding an advisal given to UACs. Mot. 12 (citing ECF No. 74-3). It is again unsurprising that a declarant would not have spoken to whether Guatemalan UACs are presently permitted to withdraw their applications for admission and voluntarily return home in separate litigation about the legality of an advisal form, and the declaration does not support Plaintiffs' motion.

Plaintiffs also say certain Guatemalan UACs allegedly signed paperwork indicating a desire to voluntarily return to their country of origin. *See* Pls.' Mot. 6–8, 11 (citing Decl. Fisher Flores; Decl. D.A.T.M, ECF No. 74-5; Decl. Y.Y.Z.O., ECF 74-6). But Plaintiffs' own submission acknowledges and confirms that those UACs *were not returned* to Guatemala. *See* Pls.' Mot. 11. In other words, Plaintiffs' own account describes a situation in which the UACs remained in the United States and were placed into removal proceedings, which is not a violation of the Court's injunction. Nothing in the Court's order suggests that permitting a Guatemalan UAC to request withdrawal of application is itself impermissible, so long as the child is not actually transferred, repatriated, removed, or otherwise transported out of the United States without a final order of removal or grant of voluntary departure. Again, as the declarations make clear, the government does not permit Guatemalan UACs to voluntarily return to Guatemala by withdrawing their applications for admission. Bakoplous Decl. at ¶¶ 3-4; Julien Decl. at ¶¶ 3-4. And Plaintiffs refused to provide the government with information sufficient to identify these Guatemalan children and

6

permit the government to determine whether Plaintiffs' account is accurate or anything else about the underlying circumstances. *See generally* Ex. C.

        **B.**     Plaintiffs' remaining contentions likewise do not suggest a violation of any order of the Court. Instead, they pretend the Court's existing orders cover UACs from countries other than Guatemala and seek rulings on matters the Court has not addressed, which are thus improper in a contempt motion. *See, e.g.*, *Commodity Futures Trading Comm. v. Trade Exchange Network Ltd.*, 117 F. Supp. 3d 22, 26 (D.D.C. 2015) ("Civil contempt is remedial in nature and is 'used to obtain compliance with a court order.'" (quoting *N.L.R.B. v. Blevins Popcorn Co.*, 659 F.2d 1173, 1184 (D.C. Cir. 1981)).

     *First*, Plaintiffs suggest that permitting non-Guatemalan UACs to withdraw their applications for admission and depart the country voluntarily could be a basis for a contempt finding, but that is plainly wrong. For one thing, the preliminary injunction expressly does not cover UACs from countries other than Guatemala. Plaintiffs *sought* a broader a preliminary injunction, but the Court expressly limited its preliminary injunction to UACs from Guatemala.

     For another thing, Plaintiffs previously contested the government's authority under Title 6 to reunify children with their parents abroad, but their contempt motion presses distinct arguments about a distinct statutory authority—withdrawal of an application for admission. *See* 8 U.S.C. §§ 1225(a)(4), 1232(a)(2); Pub. L. 119-21, 128 Stat. 386, § 100051(8)(B). Plaintiffs underscore that withdrawal of application for admission is an entirely distinct legal authority from the Title 6 reunification authority the Court previously considered by devoting pages of their brief to making an argument in the first instance that non-Guatemalan UACs are statutorily ineligible for withdrawal of application for admission. Mot. 13-15.

Contempt requires previous court orders that clearly prohibit the government's conduct, and an argument that requires new statutory interpretation, rather than parsing previous court orders, is categorically misplaced in a contempt motion. Indeed, the "long-standing, salutary rule in contempt cases is that ambiguities and omissions in orders redound to the benefit of the person charged with contempt." *Ford v. Kammerer*, 450 F.2d 279, 280 (3d Cir. 1971). And it is "settled law that contempt will not lie for violation of an order of the court unless the order is clear and decisive and contains no doubt about what it requires to be done." *United States v. Joyce*, 498 F.2d 592, 596 (7th Cir. 1974).

Statutory questions about eligibility to withdraw an application for admission are not before the Court in this case (in which Plaintiffs sued to challenge the government's exercise of a distinct authority under Title 6) or this posture (in which the Court need only examine its existing orders). Indeed, Plaintiffs do not even plead any claims about the withdrawal of application mechanism. The government accordingly does not brief those issues in this posture.

The Court's indication that its order was not "an invitation to take similar action" with respect to other UACs is thus inapposite. *See* Mot. 12 (citing PI Op. at 24). The government has not attempted a "similar action" under its Title 6 reunification authority with respect to non-Guatemalan children. For purposes of a contempt motion, the key point is that an order *declining* to preliminarily enjoin operation of an authority under Title 6 for non-Guatemalan UACs is far removed from a clear and unambiguous command regarding non-Guatemalan UACs. *Armstrong*, 1 F.3d at 1289; *Common Cause v. Nuclear Regulatory Comm'n*, 674 F.2d 921, 927 (D.C. Cir. 1982).

*Second*, Plaintiffs rely on the declaration of Ms. Fisher Flores, which describes what Plaintiffs characterize as a "Processing Advisory" provided to certain UACs and asserts that the

advisory is coercive or misleading. *See* Pls.' Mot. 6–7, 11 (citing Decl. Fisher Flores, ECF No. 74-5). The Court's preliminary injunction prohibiting certain transfer, repatriation, removal, or facilitation of transport of Guatemalan UACs did not address any documents provided to UACs, and a contempt motion is not the proper vehicle to litigate Plaintiffs' newly identified objections to documents the Court has not addressed and that are beyond the scope of this litigation. The declaration does not identify any instance in which Defendants transferred, repatriated, removed, or otherwise facilitated the transport of a class member from the United States after entry of the preliminary injunction. At most, the declaration reflects Plaintiffs' disagreement with the manner in which certain immigration processing procedures are explained to children. This allegation does not suggest that Defendants have engaged in, are engaging in, or will engage in any conduct prohibited by the Court's order.

*Third*, Plaintiffs argue that the government attempts to pressure UACs into agreeing to withdraw their applications for admission and return to their home countries.

As an initial matter, the government takes seriously its obligations to keep UACs in its custody safe, and the government emphatically denies mistreating or coercing children in its custody, including in the context of withdrawal of application for admission. *See* Bakopoulos Decl. at ¶ 5; Julien Decl. at ¶ 5. Care and treatment of UACs has been the subject of extensive legislation (such as the TVPRA), regulations (*see, e.g.*, 8 C.F.R. § 236.3; 45 C.F.R. Part 410), and intense judicial scrutiny in past and present litigation. For example, in the Central District of California, the government is currently engaged in litigation regarding the notices provided to UACs to advise them of their rights, which are presently governed by a pre-IIRIRA injunction and subject to ongoing judicial supervision. *See Perez-Funez v. Crosland*, No. 2:81-cv-1457 (C.D. Cal.); ECF No. 74-3 at ¶¶ 2, 5 (declaration filed in *Perez-Funez* stating that "USBP continues to provide all

minors apprehended by USBP" with "a copy of Form I-770, *Notice of Rights and Request for Disposition*"). And in the Ninth Circuit, the government seeks to dissolve a settlement agreement held by the district court to invalidate numerous UAC-protective regulations, in part because "through statutes, regulations, and policies, the government is complying with the underlying federal law through means other than the" settlement. *See* Opening Br. 28, *Flores v. Bondi*, No. 25-6308 (9th Cir. Dec. 22, 2025); *see, e.g.*, 8 C.F.R. § 236.3(g)(1)(i) (regulation enjoined by *Flores* district court that would require a notice to be "provided, read, or explained to" a UAC who seeks to withdraw his or her application for admission, "in a language and manner that he or she understands," that he or she "may make a telephone call to a parent, close relative, or friend").

More to the point, Plaintiffs' allegations are entirely misplaced in a contempt motion in this case. The Court's order regarding transferring, repatriating, removing, or otherwise facilitating the transport of Guatemalan UACs from the United States did not address treatment of UACs as a general matter, let alone govern procedural protections for permitting a child to withdraw his or her application for admission and voluntarily return to his or her home country. Plaintiffs' allegations could not establish contempt even if they were true. Indeed, a contempt motion in this case is one of the least effective vehicles imaginable for obtaining prompt judicial action that could address Plaintiffs' concerns on this front.

Similarly, these allegations are also misplaced in a contempt motion because Plaintiffs have not permitted the government to even investigate their allegations of specific coercive incidents. Instead, they have refused to provide information the government could use to determine what actually happened in these cases, what government employees could have been involved, and what corrective actions, if any, are needed. *See* Ex. C, at 1; *see also* Bakopoulos Decl. at ¶ 5; Julien Decl. at ¶ 5. Plaintiffs' refusal to provide information to the government that would permit the

government to identify and correct any problems, and the mismatch between their chosen procedural vehicle and their allegations, suggest that Plaintiffs filed their motion for a purpose other than seeking "to obtain compliance with a court order." *Blevins Popcorn Co.*, 659 F.2d at 1184.

*     *     *

In sum, Plaintiffs lack any evidence that the government has violated any order of the Court. This Court's preliminary injunction dealt only with children from Guatemala, and Plaintiffs do not offer a scintilla of evidence that a single such child has been returned to Guatemala in violation of this Court's preliminary injunction. If anything, their motion appears to reflect a cynical misuse of the contempt mechanism, which merits this Court's emphatic rejection.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' Motion for Order to Show Cause.

DATED: March 10, 2026                    Respectfully submitted,

                                                  BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW ENSIGN
Deputy Assistant Attorney General

SARAH WELCH
Counsel to the Assistant Attorney General

GLENN M. GIRDHARRY
Acting Deputy Director
Office of Immigration Litigation

MCKENNA N. RACKLEFF
Trial Attorney

*/s/ Joshua A. Clem*
JOSHUA A. CLEM
(AR Bar No. AR2023202)
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 253-6762
Email: Joshua.Clem2@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

    I hereby certify that on March 10, 2026, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. Participants in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system to all counsel of record.

DATED: March 10, 2026                                       Respectfully submitted,

                                                        */s/ Joshua A. Clem*
                                                        JOSHUA A. CLEM
                                                        Trial Attorney
                                                        U.S. Department of Justice