Exhibit B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| L.G.M.L., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> NOEM, *et al.* <br><br> Defendants. | Case No. 1:25-cv-02942 <br><br><br> DECLARATION OF CLAIRE TRICKLER-MCNULTY |

I, Claire Trickler-McNulty, declare under penalty of perjury that the following is true and correct pursuant to 28 U.S.C. § 1746:

1. I am an attorney with extensive experience working in immigration law. This includes experience in private practice, with leading nonprofit organizations, and in various offices within the Department of Homeland Security (DHS) and its subcomponents, beginning in 2005 and extending through the present. I submit this declaration based on my general expertise, acquired throughout my career.

2. From October 2005-December 2008 I was in private practice as an immigration attorney. From January 2009 through April 2011, I was a Staff Attorney and Associate Director for the American Bar Association, Commission on Immigration. From July 2019-January 2021, I was the Regional Director for Legal Services at Kids in Need of Defense (KIND) an organization that provides legal representation to unaccompanied migrant children.

3. From May 2011 through July 2014, I served as a Senior Advisor and then the Acting Deputy Director for Compliance in DHS's Office for Civil Rights and Civil Liberties. From July 2014 through June 2019, I served as a Deputy Assistant Director in the Office of Detention Policy and Planning and then within the Enforcement and Removal Operations, Custody Management Division in U.S. Immigration and Customs Enforcement (ICE). From January 2021 through April 2024, I was the Assistant Director of the Office of Immigration Program

1

Evaluation in ICE. And from April 2024 through January 2025, I was a Senior Counselor to the Director at U.S. Citizenship and Immigration Services (USCIS).

4. I am generally familiar with the systems of record maintained by DHS and its subcomponents, including ICE and Customs and Border Protection (CBP). I also am familiar with general practices regarding the detention, custody, transfer, and treatment of unaccompanied minors encountered by DHS and the general practices regarding their transfer to the Office of Refugee Resettlement (ORR).

5. In 2019, the federal government launched the Unified Immigration Portal (UIP), a multi-agency system that combines data from DHS, ICE, CBP, USCIS, Health and Human Services (HHS), including ORR, and the Department of Justice. *See* https://www.cbp.gov/sites/default/files/2025-03/oit_yearinreviewfy2019_508_final.pdf at 8. The UIP allows agencies to track individuals throughout the immigration system, including their apprehension, custody, transfer between agencies, and disposition of individual cases. *See generally* Privacy Impact Assessment for the Unified Immigration Portal (UIP) (April 1, 2022), https://www.dhs.gov/sites/default/files/2023-10/23_1024_priv_pia-cbp-072-uip.pdf.

6. To determine whether any unaccompanied child had been removed pursuant to a specific authority or disposition, DHS could draw data from the UIP. Data from the multi-agency UIP would likely capture whether any unaccompanied child from a specific country had been transferred out of the United States by either agency or its sub-agencies, and whether these children had been removed. Other ICE and Department of Justice, Executive Office for Immigration Review (EOIR) systems would indicate if the child had a final order of removal or grant of voluntary departure by an immigration judge.

7. In my opinion, DHS could track unaccompanied minors, including Guatemalan unaccompanied minors specifically, that have been encountered by CBP since entry of the Court's injunction and verify each individual's movement through the system as well as the disposition or current status of individual cases.

8. In my experience, CBP's system of records data about unaccompanied children is limited to CBP's unique interaction with the unaccompanied children in its custody. Historically, CBP did not itself return children to any non-contiguous countries. Instead, CBP transferred custody to ICE Enforcement and Removal Operations, which carried out primarily transfers to ORR and

2

where appropriate, removals under various dispositions. This transfer to ICE was reflected in CBP's book-out information.

9. For these reasons, I believe it is unlikely that noncontiguous-country unaccompanied minors would be coded as "Returned Foreign by OFO" in CBP's systems of record. This is because unaccompanied minors from noncontiguous countries have not generally been returned by CBP specifically but are instead transferred to ICE's Enforcement and Removal Operations, where they may be transferred to ORR or, under DHS's new "voluntary return" program, placed on removal flights for expulsion to their home country. Based on my experience, I believe that unaccompanied minors removed through "voluntary return" would possibly be reflected as a transfer to ICE ERO in CBP's systems of record.

10. Similarly, I believe it is unlikely that noncontiguous country unaccompanied minors who accept "voluntary return" while in USBP custody would show as "booked out … for withdrawal/voluntary return" to their home countries. This is because the children would first be transferred to ICE's Enforcement and Removal Operations before going to ORR or being placed on a flight to their home countries.

11. I do not believe CBP's systems of record alone would provide reliable and complete information regarding whether Defendants have removed unaccompanied minors to Guatemala without final orders of removal or voluntary departure since entry of the Court's injunction, but that data *is* available to Defendants through also looking at ICE and ORR systems and likely though UIP.

I declare the foregoing is true to the best of my knowledge and belief.

Signature: _____ Date: 03/16/2026