**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| L.G.M.L. et al., | |
| *Plaintiffs*, | |
| v. | Civil Action No. 25-2942 (TJK) |
| MARKWAYNE MULLIN et al., | |
| *Defendants*. | |

**MEMORANDUM ORDER**

In September 2025, the Court provisionally certified a class of unaccompanied alien children from Guatemala who are or will be in Defendants' custody. At the same time, the Court enjoined Defendants from transferring or facilitating the transfer of any class member out of the United States. Plaintiffs now claim that Defendants are violating the injunction and move the Court to order Defendants to show cause why they should not be held in civil contempt. For the reasons explained below, the Court will deny the motion.

**I.     Background**

The Court provisionally certified a class and issued a related preliminary injunction on September 18, 2025. The class included "all unaccompanied alien children from Guatemala who are or will be in the custody of Defendants and who (1) are not subject to an executable final order of removal and (2) have not been permitted to voluntarily depart under 8 U.S.C. § 1229c and applicable regulations." ECF No. 48. And the preliminary injunction enjoined Defendants "from transferring, repatriating, removing, or otherwise facilitating the transport of any Plaintiff—including both named Plaintiffs and all members of the provisionally certified class—from the United States." *Id.* The injunction remains in effect.

Plaintiffs now argue that "[s]ubstantial evidence indicates that Defendants are systematically violating the plain terms of this Court's preliminary injunction by pursuing policies to expeditiously expel unaccompanied children, including those from noncontiguous countries." ECF No. 74 at 10. And, they say, Defendants "are doing so are doing so through a coercive, threatening, and misleading 'Processing Advisal' that seeks to persuade vulnerable children to relinquish [their rights] and accept such returns 'voluntarily.'" *Id.* The Processing Advisal warns that those who "seek a hearing with an immigration judge or indicate a fear of returning" will face various consequences. *Id.* at 4. It also tells those who receive it that "there will be no administrative consequences" if they "choose to voluntarily return to [their] country." *Id.* at 3–4. Plaintiffs allege that the Processing Advisal is a part of a "practice" in which Customs and Border Patrol ("CBP") agents "are returning unaccompanied children . . . including class members, to their home countries within 72 hours of entering government custody." *Id.* at 1.

Soon after filing their motion, Plaintiffs advised that in April 2026, a court in the Central District of California prohibited the use of the Processing Advisal in connection with a "nationwide class composed of all unaccompanied minors" in immigration enforcement custody. ECF No. 82-2 at 2. The injunction in that case now prohibits "United States Homeland Security and its officers, servants, employees, and attorneys, and other persons in active concert or participation with them . . . from providing the UAC Processing Pathway Advisal . . . to any class member in their custody." ECF No. 82-2 at 2. Still, Plaintiffs maintain, the "issues presented in their motion remain live." ECF No. 82 at 3.

## II.    Legal Standard

"Federal courts possess 'inherent power to enforce compliance with their lawful orders through civil contempt.'" *Potter v. District of Columbia*, 126 F.4th 720, 723 (D.C. Cir. 2025) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). Civil contempt sanctions are

2

designed not to punish wrongdoing but to "to compel compliance with a court order." *In re Contempt Finding in United States v. Stevens*, 663 F.3d 1270, 1274 (D.C. Cir. 2011). "The party moving for civil contempt 'faces a heavy burden.'" *Potter*, 126 F.4th at 723 (quoting *United States v. Microsoft Corp.*, 147 F.3d 935, 940 (D.C. Cir. 1998)). They must show "'by clear and convincing evidence' that the alleged contemnor has violated a 'clear and unambiguous' order of the court." *Id.* (quoting *Armstrong v. Exec. Off. of the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993)). The burden is lighter, however, on a party moving for an order to show cause than it is for a party moving directly for civil contempt. A party moving for an order to show cause must put forward "some indication that sufficient evidence exists that the Court *might* find evidence sufficient to hold [the alleged contemnor] in contempt." *Stewart v. O'Neill*, 225 F. Supp. 2d 6, 10 (D.D.C. 2002).

### III.    Analysis

For the reasons explained below, the evidence Plaintiffs cite, considered closely, does not satisfy even the modest burden set forth above. In the end, Plaintiffs have not met their burden to prove that this Court should order Defendants to show cause why they should not be held in civil contempt for violating the preliminary injunction. And however Defendants may have used the Processing Advisal with respect to unaccompanied minors from countries other than Guatemala is beside the point here, because those minors are not covered by the preliminary injunction in this case.

Plaintiffs rely mainly on a declaration from Lauren Fisher Flores, the Legal Director of the South Texas Pro Bono Asylum Representation Project ("ProBAR"). ECF No. 74-5 ¶ 1. In part through that declaration, Plaintiffs provide specific information about two unaccompanied alien children from Guatemala who interacted with CBP personnel, at least potentially after September 18, 2025, when the preliminary injunction was entered.

3

First, Fisher Flores identifies an "indigenous Guatemalan boy" whom she personally spoke with, and who was allegedly detained by CBP in October 2025.  ECF No. 74-5 ¶ 11; *see* ECF No. 74 at 7.  The boy was allegedly given the choice between signing voluntary return paperwork and "remain[ing] detained for an extended period of time."  ECF No. 74-5 ¶ 11.  In a purportedly coercive environment where "CBP agents shouted, cursed, and threatened the child with a dog and a stun gun," the child "signed the paperwork."  *Id.*  Yet rather than being removed from the country, this child was "told . . . he was being sent to a shelter."  *Id.*  Plaintiffs also attach a declaration from "D.A.T.M."—who appears to be this child, because his declaration provides specific details that line up with Fisher Flores's account.  *Compare* ECF No. 74-5 ¶ 11, *with* ECF No. 74-6 ¶¶ 3, 6–8.  D.A.T.M. alleges that while in CBP custody, he was confronted with many "documents," that "[t]he officers explained that the papers I signed were to return to my home country," and that he "sign[ed] the papers" under coercive conditions.  ECF No. 74-6 ¶ 6.  But he represents that "[a]fter a little while, the Officer told me I was not going to be sent to Guatemala."  *Id.* ¶ 7.

Second, Fisher Flores identifies a Guatemalan boy whom Plaintiffs allege "was told to sign 'voluntary return' paperwork or he 'would be detained for a long time.'"  ECF No. 74 at 7; *see* ECF No. 74-5 ¶ 12.  Plaintiffs say that "despite not understanding what he was signing," the boy signed the papers.  ECF No. 74 at 7.  "[B]ut with ProBAR's help, he revoked his acceptance of 'expedited voluntary return' and is now in immigration proceedings."  *Id.*

The experiences of these two unaccompanied Guatemalan boys—which the Court has no reason to doubt—do not suggest that the Court should order Defendants to show cause why they should not be held in contempt.  To begin, there is no evidence that either was transferred out of the United States in violation of the preliminary injunction.  To the contrary, D.A.T.M.'s declaration represents that he "live[s] at the Compass Connections Harlingen children's shelter" in Texas.

4

ECF 74-6 ¶ 2; *see* ECF No. 74-5 ¶ 11.  Similarly, the second boy "is now in court proceedings." *See* ECF No. 74-5 ¶ 12.

Plaintiffs seem to suggest that intervention by ProBAR was the reason that the second boy, and perhaps others, were not transferred out of the United States.  ECF No. 74 at 8, 11.  But the Court cannot make that leap from the evidence before it.  Fisher Flores's mention of "ProBAR's help"—without any further details—hardly suggests that without that help the boy would have been returned to Guatemala.  The more plausible inference is simply that CBP self-corrected after realizing that this boy—like D.A.T.M.—was Guatemalan, and so was covered by the preliminary injunction.  That inference is strengthened by a declaration submitted by CBP's Acting Division Chief for Immigration, Prosecution, and Custody Operations attesting that the Acting Chief "instructed the field that USBP should not process any Guatemalan UAC for withdrawal/voluntary return to Guatemala."  ECF No. 75-2 ¶ 3.

The timing of events also undercuts any suggestion that CBP's conduct with respect to the second boy came close to violating the preliminary injunction.  After all, Fisher Flores alleges that CBP detained the boy "around September 15, 2025," and Plaintiffs' motion alleges that the boy "entered the United States on September 16, 2025."  ECF No. 74-5 ¶ 12; ECF No. 74 at 7 n.6.  As Plaintiffs acknowledge, the preliminary injunction did not issue until September 18, 2025.  *See* ECF No. 48; ECF No. 74 at 7 n.6.  Therefore, it is possible—perhaps even probable—that the second boy's interaction with CBP happened before the injunction was issued or communicated to the field.  And the temporary restraining order in place before that would not have covered the boy, because he was not "in Department of Health and Human Services Office of Refugee Resettlement Custody as of 1:02 AM on August 31, 2025."  Minute Order of August 31, 2025; *see* ECF No. 12 at 7; ECF No. 1 ¶ 71.

More broadly, Plaintiffs allege that "ProBAR staff have identified" eight children from Guatemala who "signed purported voluntary return paperwork" and "required immediate intervention to halt their return." ECF No. 74 at 8. Assuming that D.A.T.M. and the other boy discussed above are two of them, Fisher Flores's declaration—and the record as whole—contain no specific information about the other six. Of course, again, Plaintiffs do not allege that in any of these cases the child at issue was transported out of the United States. And notably, Plaintiffs do not even allege that these events happened when the preliminary injunction was in effect. *See* ECF No. 74-5 ¶ 10. Indeed, one of them, it appears, happened well beforehand—in "the first week of August." *Id*. ¶ 6. Thus, none of this gets Plaintiffs anywhere. Nor does any of the other information that Plaintiffs bring to bear about CBP's use of the Processing Advisal in general or how Defendants have treated unaccompanied minor children from countries *other than Guatemala*— because the preliminary injunction in this case does not cover them. *See id.* ¶¶ 10, 13, 15; ECF No. 74 at 8.

Defendants, for their part—in addition to the declaration from the CBP official discussed above—have also provided a declaration from CBP's Director for "Systems Enforcement Analysis and Review." ECF No. 75-1 ¶ 1. That declaration represents that "CBP's systems of record show" that from January 20, 2025, until a few days before Plaintiffs filed their motion, "no Guatemalan [unaccompanied alien children were] processed as Returned Foreign" by CBP's Office of Field Operations. *Id.* ¶ 4. Thus, the declaration further undercuts, to some extent, any inference that Defendants have violated the preliminary injunction here. Plaintiffs counter by pointing out its shortcomings and with a declaration of their own asserting that "it is *unlikely*" that minors from noncontiguous countries like Guatemala "would be coded as Returned Foreign by OFO." ECF No. 77-2 ¶ 9 (emphasis added). But that qualified statement hardly helps Plaintiffs meet the (even

6

modest) burden that they must bear.

For these reasons, on this record, Plaintiffs have not given the Court sufficient reason to order Defendants to show cause why they should not be held in civil contempt for violating the preliminary injunction.  Moreover, the Court notes that—to the extent Plaintiffs' motion was motivated by concern about Defendants' use of the Processing Advisal going forward—CBP has been enjoined by another court from using it with respect to all unaccompanied minors in its custody, which includes the current class members here.  *See* ECF No. 82 at 1–2.  All that said, nothing about the Court's ruling should be understood as determining that all the conduct Plaintiffs attribute to CBP was lawful or appropriate, or suggest anything about the merits of Plaintiffs' pending motion to modify the class, which the Court will resolve in due course.

## IV.    Conclusion and Order

For all these reasons, it is hereby **ORDERED** that Plaintiffs' Motion for Order to Show Cause, ECF No. 74, is **DENIED**.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: July 27, 2026

7